CAUSE NO. 71,595

IN THE TEXAS COURT OF CRIMINAL APPEALS

AT AUSTIN, TEXAS

----------------------------------------------------------------

NO. 612408

FROM THE 179TH DISTRICT COURT

OF HARRIS COUNTY, TEXAS

----------------------------------------------------------------

| | | |
|---|---|---|
| RICK ALLAN RHOADES | * | APPELLANT |
| | * | |
| V | * | |
| | * | |
| THE STATE OF TEXAS | * | APPELLEE |

----------------------------------------------------------------

**APPELLANT'S SECOND MOTION TO SUPPLEMENT APPELLANT'S
BRIEF WITH ADDITIONAL AUTHORITIES AND ARGUMENTS**

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW, **RICK ALLAN RHOADES**, Appellant, by and through his attorney of record, James Stafford, pursuant to Rule 221, R. App. Pro. and files this Motion To Supplement Appellant's Brief With Additional Authorities and Arguments and would request the Court to supplement as follows:

I.

In support of Appellant's Points of Error 1-4 the Appellant requests this Court to consider the following authority:

**Simmons v. South Carolina,** ____ S.Ct. ____ (W.L.

263483, June 14, 1994).

## II.

In support of Appellant's Points of Error 1-4 based on **Simmons** the Appellant requests this Court to consider the following argument:

As stated in our original brief, each and every one of the Appellant's jury panels asked the trial judge what life in prison actually meant in terms of years served. (R. 4: 35, 1: 16-19, R. 4: 36, 1: 18-37, R. 6: 453, 339, 375, R. 7: 551, 552, R. 8: 676-677, R. 9: 900, 905-910, R. 10: 979, R. 16: 1978, 1980).  From the questions that they asked, it would cause a reasonable person to acknowledge, that the average Texas juror believes that a Defendant convicted of Capital Murder who receives a life sentence will be released from prison on parole after serving very little time in confinement.  The State confirmed this belief during their closing argument. (R. 39: 11, 12, 71, 72).  The failure to inform a jury when the Appellant was eligible to be released created the Due Process and Eighth Amendment violations.

If a survey, similar to that in **Simmons,** was conducted in Texas concerning how long an inmate would serve before being released on parole, the opinion of the Texas jurors, based on the responses of the Appellant's jury panels, would be the same as South Carolina.  The survey indicated that the

amount of time a Defendant would serve was a "very important factor in chosing between life and death." **Simmons,** p. 4. This Appellant argued at the trial level, in his original brief and during oral arguments that without proper instructions from the trial court, the jurors' misconception about what a life sentence means would result in the death penalty being assessed because the jurors feared early release from confinement. (R. 3: 40-46).

The Appellant's jury knew that he would be released someday.  The fact that they did not know when he would be released created a paradox and resulted in unfairness for the Appellant during punishment.  During final arguments the prosecutor dwelled on Appellant's risk to "society on the streets" (R. 39; 11, 12, 71, 72).  Since the amount of time a Defendant must serve plays a significant part in the jury's decision between life or death, they must be informed, by the trial court, of the mandatory minimum of 35 years served prior to parole eligibility to enable the jury to make an informed intelligent decision.  The sadness of the Texas Scheme that the State is asking this Court to approve is that Texas Jurors repeatedly ask the meaning and/or effect of a sentence of **"Life Imprisonment."** They express horror about the early release of prisoners convicted for murder.  Jurors are not told about the substantial difference between a life

3

sentence for a non-capital crime and life sentence for a capital crime. The trial courts of this State have been repeatedly put on notice of this confusion in the jurors minds. The courts refuse to correct this misconception. In Appellant's case the only attempt by the Court to dispel this misconception was to instruct the jury that during their deliberation they were not to consider or discuss how long the Appellant would be required to serve to satisfy a sentence of life imprisonment. (R. 1-A: 291, 292). This instruction, in essence, told the jury that the Appellant would be released but did nothing to dispel the fear or misunderstanding the jurors had about the meaning of life imprisonment. This was addressed in **Simmons** where the Court observed:

> "While juries ordinarily are presumed to follow the court's instruction, ... we have recognized that in some circumstances, 'the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the Defendant, that the practical and human limitation of the jury system cannot be ignored.'" **Simmons,** p. 9.

The failure to accurately inform Appellant's jury violated his rights afforded him under the Eight Amendment and the Due Process Clause of the 14th Amendment.

When a jury is "assessing future dangerousness the actual duration of the Defendant's prison sentence is indisputably relevant." **Simmons,** p. 6. The relevancy of the

4

mandatory 35 years in the Appellant's case effected the
jury's assessment of future dangerousness and mitigation.
During oral arguments the Appellant reminded this Court that
Dr. Dickerson, the Defendant's psychologist, told the
Appellant's jury, that when an individual grows older his
risk of violence or his propensity for violence decreases
substantially.  The Doctor testified that the risk level for
the Appellant or any person when they reach 65 or 70 years of
age is significantly lower than that for a man in his
twenties. (R. 35: 997-1001, R. 34: 885, 886).  Dickerson also
testified that the Appellant would not be a danger to the
prison society. (R. 35: 1,000, 1,001, R. 34: 873, 874).  This
testimony had no relevant meaning to the jury on the issue of
future dangerousness nor could the testimony be given any
mitigating effect without the jury's knowledge of the
mandatory 35 years.  Dr. Dickerson's testimony was proper
rebuttal to the state's contention that the Appellant would
be a continuing threat if released.  The prosecutor was able
to secure a death sentence based on the future dangerousness
of the Appellant to "society on the street" (R. 39: 11, 12)
while it was being concealed from the jury that by the time
the Appellant would be eligible for release he would be a
very low risk to "street society."  The Appellant's jury, as
in **Simmons,** was left to speculate about Appellant's parole

5

eligibility when determining his future dangerousness.  The trial court's refusal to instruct the jury concerning the mandatory sentence when it played such a crucial part in the sentencing determination cannot be reconciled with the defined principles of Due Process or the rights afforded the Appellant under the Eight Amendment.  **Simmons,** supra.

WHEREFORE, PREMISES CONSIDERED, the Appellant asks the Court to supplement his original brief with the above cited authority and arguments and his judgement of conviction and sentence of death imposed in this case be reversed or a new trial ordered.

Respectfully submitted,

JAMES STAFFORD
Attorney for the Appellant
1512 Alabama
Houston, Texas 77004-3936
(713) 521-3600
State Bar No. 18996900

## CERTIFICATE OF SERVICE

I, JAMES STAFFORD, do hereby certify that a true and correct copy of the foregoing **Appellant's Second Motion To Supplement Appellant's Brief With Additional Authorities And Arguments,** has been forwarded to Mr. Dan McCrory, Assistant District Attorney, 201 Fannin, Houston, Texas 77002 on this the 5th day of July, 1994.

JAMES STAFFORD