AP-76188

**CAUSE #1195044**
**230th DISTRICT COURT**
**ROBERT ALAN FRATTA**
**VS.**
**THE STATE OF TEXAS**
**VOLUME II OF II**
**COURT OF CRIMINAL APPEALS**

FILED IN
COURT OF CRIMINAL APPEALS

OCT 02 2009

Louise Pearson, Clerk

# CAUSE # 1195044

# ROBERT ALAN FRATTA
# VS
# THE STATE OF TEXAS

# 230TH DISTRICT COURT

# VOLUME II of II

# ROBERT FRATTA

## 230th District Court Cause No. ~~1145044~~ 1195044

## CAPITAL MOTIONS
(VOLUME 3)

## ORIGINALS

FILED
Loren Jackson
District Clerk

FEB - 9 2009

Harris County, Texas

Time: _____

By _____ Deputy

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)


RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)


ATTORNEYS FOR DEFENDANT

: 00327

# ROBERT FRATTA
## 230th District Court Cause No. 1145044
## CAPITAL MOTIONS
## TABLE OF CONTENTS

**7.   SUPPRESSION**

7.2   MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT, WHETHER WRITTEN OR ORAL, OR EVIDENCE RESULTING FROM SAME

7.5   MOTION TO PREVENT IMPROPER JURY ARGUMENT BY STATE

7.8   MOTION TO SUPPRESS GUN LINE-UP EVIDENCE DUE TO SUGGESTIVENESS OF THE IDENTIFICATION PROCEDURE AND TO PRECLUDE IN-COURT DETERMINATION

7.10   MOTION TO PRECLUDE THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES USING *RING V. ARIZONA*

7.11   MOTION TO PRECLUDE CREATION OF SNITCH TESTIMONY

7.12   MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

**10.   LIMINE**

10.1   MOTION IN LIMINE FOR A GUARANTEE OF NO VIOLENCE

10.2   MOTION IN LIMINE AGAINST INCONSISTENT THEORIES OF PROSECUTION

10.3   MOTION IN LIMINE AGAINST VICTIM IMPACT EVIDENCE

10.4   MOTION IN LIMINE TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

10.5   MOTION IN LIMINE (PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS)

10.6   MOTION FOR ODER "IN LIMINE" TO PRESERVE THE TRUE AND CORRECT MEANING OF "PROBABILITY" IN THE FUTURE DANGEROUSNESS INSTRUCTION

10.7   MOTION IN LIMINE AGAINST INTRODUCTION OF EVIDENCE THAT IS UNFAIRLY PREJUDICED UNDER TEX. R. EVID. 403

: 00328

## 13.  SENTENCING

13.5  DEFENDANT'S  AMENDED  MOTION  REGARDING  VICTIM CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY v. STATE* dms1141942

13.7  MOTION  PRECLUDE  THE  STATE  FROM  OFFERING  VICTIM  IMPACT TESTIMONY dms1141941

13.8  ELECTION OF JURY PUNISHMENT

13.9  DEFENDANT'S MOTION FOR LIFE WITHOUT PAROLE AS A SENTENCING OPTION dms1141940

## 14.  MISCELLANEOUS

14.2  MOTION TO ADOPT ALL MOTIONS FILED BY PREVIOUS COUNSEL FOR THE DEFENDANT dms1141939

14.4  MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS dms1141938

VIVIAN R. KING          (713) 222-2019
RANDY McDONALD     (713) 521-3324

7

: 00329

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Vivian R. King and Randy McDonald, Attorney for the Accused, Robert Fratta, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. Code Crim. Proc. art. 28.01 and respectfully requests the Court to hold a hearing, in advance of the trial, on the admissibility of:

(a) statements made by the Defendant;

(b) acts that are tantamount to statements made by the Defendant;

(c) statements made in the presence of the Defendant which Defendant did not deny in response; or

(d) any physical items, statements or witnesses obtained as a result of same, or evidence/testimony discovered from same. In support of this Motion, Defendant respectfully shows the Court as follows:

: 00330

1.  Defendant makes this request based upon the Constitutional provisions cited above and Tex. Code Crim. Proc. art. 38.21, 38.22 and 38.23 and the requirements of *Jackson v. Denno*, 378 U.S. 368, as well as the doctrine of the fruit of the poison tree of *Wong Sun v. United States*, 371 U.S. 471 (1963).

2.  Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

3.  In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, and are therefore inadmissible.

4.  This motion is sought by the defendant as a continuing motion to suppress any and all statements or acts.  It is sought to suppress evidence as the same exists at the time of the hearing on this motion to suppress, or at any time during trial when evidence appears, subsequent to the initial suppression hearing, to be the subject of this motion.  Defendant moves this honorable court to consider this motion as continuing from the date of filing to the time this case is finally concluded.

5.  Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury concerning:

     (a)  statements made by the Defendant;

: 00331

(b) acts or the failure to act that may be considered tantamount to statements made by the Defendant; and

(c) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminating or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

6. It is further urged, that this hearing be held prior to the empaneling of the jury. The jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. This reasoning was endorsed by the Court of Criminal Appeals in *Martinez v. State*, 437 S.W.2d 842 in a parallel suppression situation.

7. Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful *voir dire* regarding the prospective jurors' attitudes toward a confession that may found to be inadmissible.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility of any statements by Defendant, at the conclusion of which, such statements by Defendant be found to be inadmissible.

3

: 00332

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorneys' Office, on February 06, 2009.

Vivian R. King

4

: 00333

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## <u>ORDER</u>

BE IT REMEMBERED, that on the _____day of _____, 2009, came

to be considered the defendant's MOTION FOR HEARING ON ADMISSIBILITY OF ANY

STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE

RESULTING FROM SAME. The court is of the opinion the motion should be in all things:


      GRANTED    _____

      DENIED    _____


                           _____

                           JUDGE PRESIDING

5

: 00334

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION TO PREVENT
## IMPROPER JURY ARGUMENT BY STATE

COMES NOW, the Accused, Robert Fratta, by counsel, and pursuant to the Fifth,

Sixth, Eighth and Fourteenth Amendments to the UNITED STATES CONSTITUTION, Article 1,

Sections 3, 10, 13, 19 and 29 of the TEXAS CONSTITUTION and Articles 1.03, 1.04, 1.05,

38.04 and 38.05 of the TEXAS CODE OF CRIMINAL PROCEDURE and moves the court to

Prevent Improper Jury Argument by the State and in support thereof would show:

## I.

## FACTUAL STATEMENT

Fratta has been indicted for the offense of capital murder and the State is seeking the

death penalty. The Eighth Amendment requires a greater degree of accuracy and fact finding

than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson

v. North Carolina*, 428 U.S. 280, 305 (1976).

## II.

: 00335

## MOTION AND ARGUMENT

There are four permissible areas of jury argument for the State:

    1) A summary of the evidence;

    2) Discussion of reasonable deductions from the evidence;

    3) Response to arguments of Defense counsel; and

    4) A proper plea for law enforcement.

*Mc Farland v. State,* 845 S.W. 2d 824, 844 (Tex. Crim. App. 1992); *Walker v. State*, 664 S.W.2d 338 (Tex.Crim.App. 1984).

Naturally, any plea for law enforcement must be consistent with the oath that a juror takes pursuant to Article 35.22 of the TEXAS CODE OF CRIMINAL PROCEDURE. That oath requires to juror to A. . .a true verdict render according to the law and the evidence.@ Accordingly, Fratta seeks an Order requiring the State to confine its summation to the areas stated above, and to refrain from any mention whatsoever of the various arguments which have caused appellate courts to reverse convictions. The arguments that the defense seeks to preclude are:

        <     AConscience of the community@ arguments;

        <     Personal opinion and vouching for the State=s case or its witnesses;

        <     Derogatory references to Fratta;

        <     Suggestions that Fratta has engaged in unproven acts of misconduct;

        <     Comments on Fratta=s failure to testify;

        <     Improper reasons for conviction;

        <     Attacks on Fratta=s defense counsel;

: 00336

<      Comments on Fratta=s non-testimony courtroom demeanor;

<      Argue, where drug usage is referenced in evidence, the impact of drugs on the community;

<      Comment on witnesses= motives for testifying or failing to testify;

<      Pleas for sympathy for the victims;

<      Arguments for a certain punishment;

<      Improper legal arguments not supported by the Court=s charge;

<      Arguments outside the record.

## A.

## "CONSCIENCE OF THE COMMUNITY" ARGUMENTS ARE IMPROPER

It is improper for a prosecutor to argue that the people of the community want or expect a conviction, that there is community pressure or sentiment to convict, or that the jury verdict may or may not meet with public approval. Prohibited argument includes, but is not limited to, the following:

a.      That the people are asking the jury to convict Fratta. *Cox v. State*, 247 S.W.2d 262, 263-64 (Tex.Crim.App. 1952).

b.      That the community would want Fratta sent to prison if the people knew what he had done. *White v. State*, 699 S.W.2d 607, 611 (Tex.Crim.App. 1985) (citing *Prado v. State*, 626 S.W.2d 775 (Tex. Crim. App. 1982).

c.      That any particular punishment is required to satisfy the community. *Cortez v. State*, 683 S.W.2d 419, 420-21 (Tex.Crim.App. 1982).

d.      Urging the jury to convict or return a verdict of death in order to solve a social problem.

3

e.   Any argument that diverts the jurors from their correct task which is the determination of the proper sentence for Fratta before them, based upon his own past conduct.

f.   Inquiring of the jury as to whether or not it has the Aintestinal fortitude© to do its "legal duty" or using similar language that would suggest that the jury has a duty to return any particular verdict or that returning a guilty verdict or sentence of death was doing "its job."

g.   Any argument that is intended to appeal to a jury=s partiality.

h.   Any argument that is contrary to the law as charged.

**B.**

**PERSONAL OPINION AND VOUCHING FOR CREDIBILITY OF WITNESSES OR THE STATE'S CASE ARE IMPROPER**

It is improper for a prosecutor to express a personal opinion regarding the credibility of the witnesses, the strength of the evidence, the guilt of Fratta or the appropriate punishment.  Prohibited argument includes, but is not limited to, the following:

a.   That the Prosecutor believes that Fratta is guilty.  *Villalobos v. State*, 568 S.W.2d 134 (Tex.Crim.App. 1978).

b.   That the Prosecutor is not paid enough to try to convict an innocent man. *Elizondo v. State*, 545 S.W.2d 453 (Tex.Crim.App. 1976).

c.   That the Prosecutor does not introduce evidence unless he believes it is true. *Robillard v. State*, 641 S.W.2d 910 (Tex.Crim.App. 1982).

d.   That the Prosecutor would not prosecute Fratta unless the State's witnesses were telling the truth and Fratta was guilty.  *Hickerson v. State*, 286 S.W. 2d 437, 438-39 (Tex.Crim.App. 1956).

<center>4</center>

e.   That the Prosecutor has personal knowledge regarding the credibility of the witnesses.   *Tinker v. State*, 93 S.W.2d 441 (Tex.Crim.App. 1936).

f.   That the Prosecutor believes that any particular witness was honest or truthful. *Menefee v. State*, 614 S.W.2d 167 (Tex.Crim.App. 1981); *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref=d).

g.   That police officers are entitled to greater belief than Fratta because Fratta has an interest in acquittal, whereas the officers are impartial and only arrest people whom they believe have committed an offense. *Caka v. State,* 302 S.W.2d 939 (Tex.Crim.App. 1957).

h.   That because the jurors are paying the police officers through their taxes and because the city has retained the officers on the payroll that the city must have confidence in their honesty and integrity. *Stearn v. State,* 487 S.W.2d 734, 736 (Tex.Crim.App. 1972) (citing *Woodard v. State*, 368 S.W.2d 623 ( Tex.Crim.App. 1963)).

i.   That police officers are sworn to tell the truth, and did tell the truth. *Puckett v. State*, 330 S.W.2d 465 (Tex.Crim.App. 1959).

j.   That the race, creed or color of any witness should be a factor in assessing his credibility. *Allison v. State*, 248 S.W.2d 142 (Tex.Crim.App. 1952), *Arnold v. State*, 256 S.W.2d 919 (Tex.Crim.App. 1923).

## C.

## DEROGATORY REFERENCES TO Fratta<br>ARE IMPROPER

It is improper for the prosecution to refer to a defendant by any name other than his given name or nickname, nor by any generic term designed to subject a defendant to personal

: 00339

abuse or suggest that the is "less than human."  Prohibited argument includes, but is not limited to, the following:

a.   References to heinous, infamous criminals such as John Dillinger, Clyde Barrow, Lee Harvey Oswald, Jeffrey Dahmer, Ted Bundy, John Wayne Gacy, or any other well known criminal.  *Rehm v. State*, 78 S.W.2d 983 (Tex.Crim.App. 1935); *Lee v. State,* 97 S.W.2d 697, (Tex Crim. App. 1936); *Stell v. State,* 711 S.W.2d 746, 748 (Tex. App. 1986, no pet.), *Brown v. State,* 978 S.W.2d 708, 713-714 (Tex.App. 1998) .

b.   Derogatory references such as, but not limited to:

1)   "cowardly cur."  *Jupe v. State*, 217 S.W. 1041 (Tex. Crim. App. 1920);

2)   "fiend from Hell."  *McGrew v. State*, 143 S.W.2d 946 (Tex. Crim. App. 1940);

3)   "beast." *Marx v. State*, 150 S.W.2d 1014 (Tex. Crim. App. 1941);

4)   "punk."  *Duran v. State*, 356 S.W.2d 937 (Tex. Crim. App. 1962);

5)   "hippie, anti-Christ and Communist." *Renn v. State*, 495 S.W.2d 922, 924 (Tex. Crim. App. 1973) (overruled on other grounds).

6)   Aa thug, a thief and a vagrant.@ *Martinez v. State*, 332 S.W.2d 718 (Tex.Crim.App. 1960).

7)   Aheathen, animal,@ or references to Fratta's race. *Richardson v. State*, 257 S.W.2d 308 (Tex. Crim. App. 1953).

## D.

## SUGGESTING Fratta HAS ENGAGED IN OTHER ACTS OF MISCONDUCT NOT IN EVIDENCE IS IMPROPER

6

: 00340

It is improper for a prosecutor to suggest or infer that a defendant has committed any offense or act of misconduct not in evidence.  Prohibited argument includes, but is not limited to, the following:

a.   There is a reasonable deduction that Fratta has previously been arrested or jailed. *Lookabaugh v. State*, 352 S.W.2d 279 (Tex.Crim.App. 1961).

b.   That Fratta earns his livelihood committing the type of offense for which he is on trial. *Walker v. State*, 664 S.W.2d 338 (Tex. Crim. App. 1984).

c.   That the evidence raised the inference that Fratta has committed other crimes similar to the offense on trial.   *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App. 1986); *Rodriguez v. State*, 520 S.W.2d 778 (Tex.Crim.App. 1975).

d.   That the State is limited in its ability to introduce evidence regarding Fratta's background, prior criminal record, juvenile record, or other offenses or acts of misconduct. *Parson v. State*, 652 S.W.2d 616 (Tex.App. 1983, no pet.); *Everett v. State*, 707 S.W.2d 638 (Tex.Crim.App. 1986).

e.   That the Prosecutor was prohibited from inquiring about extraneous offenses committed by Fratta, and was thus limited to asking the State's witnesses the only questions allowed by law.   *Robinson v. State*, 701 S.W.2d 895 (Tex.Crim.App. 1985).

**E.**

**IT IS IMPROPER TO COMMENT ON THE FAILURE
OF Fratta TO TESTIFY**

It is improper for a prosecutor to comment, directly, or indirectly, on a defendant=s

7

: 00341

failure to testify at either stage of the trial. Prohibited argument includes, but is not limited to, the following;

a.   That the motive for the offense has not been revealed because the only person who knows the motive (referring to Fratta) did not offer one. *Koller v. State*, 518 S.W.2d 373 (Tex.Crim.App. 1975) (overruled on other grounds); *Lee v. State*, 628 S.W.2d 70 (Tex.Crim.App. 1982).

b.   That it has not been contested that Fratta committed the offense. *Angel v. State* 627 S.W.2d 424 (Tex.Crim.App. 1982).

c.   That there has been no explanation for the offenses. *Myers v. State*, 573 S.W.2d 19 (Tex.Crim.App. 1978).

d.   Where only the perpetrator was in a position to rebut the State's witness or witnesses, that the State's evidence was uncontradicted or that the Defense had presented no evidence to challenge the credibility of a State's witness. *Dubose v. State*, 531 S.W.2d 330 (Tex.Crim.App. 1975); *Pollard v. State*, 552 S.W.2d 475 (Tex.Crim.App. 1977).

e.   That the Prosecutor not refer to or gesture at Fratta and argue, "There is somebody we have not heard from in this case, and I think you know who it is," or words to that effect. *Hicks v. State*, 525 S.W.2d 177 (Tex.Crim.App. 1975); *Thompson v. State*, 651 S.W.2d 785 (Tex.Crim.App. 1983).

f.   That the Prosecutor not ask rhetorical questions of Fratta under the guise of argument. *Bird v. State*, 527 S.W.2d 891 (Tex.Crim.App. 1975).

g.   That the Prosecutor not refer to Fratta's failure to raise any particular defense, followed by references in the first person to the manner in which Fratta would

8

have articulated that defense. *Cherry v. State*, 507 S.W.2d 549, (Tex. Crim. App. 1974); *Cook v. State*, 702 S.W.2d 597, (Tex. Crim. App. 1984).

h.  That Fratta has not apologized, expressed remorse, or explanation. *Koller v. State*, 518 S.W.2d 373 (Tex.Crim.App. 1975); *Anderson v. State*, 525 S.W.2d 20, 23 (Tex. Crim. App. 1975); *Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981); *Elkins v. State*, 647 S.W.2d 663 (Tex. Crim. App. 1983); *Dickinson v. State*, 685 S.W.2d 320 (Tex. Crim. App. 1984).

## F.

## IT IS IMPROPER TO ARGUE REASONS TO CONVICT THAT ARE UNRELATED TO THE CRIME

It is improper for the prosecutor to argue that a defendant should be convicted for any reason other than that the evidence has established guilt beyond a reasonable doubt. Prohibited argument includes, but is not limited to, the following:

a.  That Fratta should be convicted because of the rising cost of crime or that conviction would solve any other social ill. *Bridewell v. State*, 114 S.W.2d 259 (Tex.Crim.App. 1938).

b.  That Fratta can appeal a conviction but the State cannot appeal an acquittal. *Stone v. State*, 751 S.W.2d 579, 586-87 (Tex.Crim.App. 1988) (overruled on other grounds).

c.  That any mistake made would be corrected by an appellate court. *Borgen v. State*, 682 S.W.2d 620 (Tex.App. 1984, no pet.).

d.  That Fratta would not have hired an attorney unless he was guilty. *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980).

e.  That if found not guilty, Fratta will continue to engage in criminal behavior.

9

: 00343

*Morris v. State,* 755 S.W.2d 505 (Tex.App.1988, pet. ref'd.).

f.     That the jury must Asend a message@ to the community by their verdict. This

       is contrary to the oath of a juror that requires each of them to render a true

       verdict according to the law and the evidence.@ TEX. CRIM. CRIM. PROC. Art.

       35.22

## G.

### IT IS IMPROPER TO CRITICIZE
### DEFENSE COUNSEL

It is improper for the prosecutor to argue that defense counsel is subject to criticism

for representing persons accused of crime nor criticize counsel's conduct or ethics.

Prohibited argument includes, but is not limited to, the following:

a.     That Defense counsel is a mouthpiece for criminals whereas the prosecutor is

       a public servant paid to represent the people of the community. *Dykes v.

       State*, 325 S.W.2d 135 (Tex.Crim.App. 1959).

b.     That the Prosecutor is grateful that he represents the people of the community

       and does not have to make a living representing criminal Defendants. *Bray v.

       State*, 478 S.W.2d 89 (Tex.Crim.App. 1972).

c.     that the Prosecutor took an oath to seek justice, but no such oath bears on

       Defense counsel. *Lewis v. State*, 529 S.W.2d 533 (Tex.Crim.App. 1975).

d.     That Defense counsel's duty is to get Fratta off, even if counsel has to put on

       witnesses to lie. *Bell v. State*, 614 S.W.2d 122, (Tex. Crim. App. 1981).

e.     Asking the jury whether, assuming Defendant is guilty, they believe that

       Defense counsel wants the truth before the jury. *Lewis v. State*, 529 S.W.2d

       533 (Tex.Crim.App. 1975).

10

f.   References to any other criminal cases handled by Defense counsel. *Summers v. State*, 182 S.W.2d 720 (Tex.Crim.App. 1944).

g.   That Defense counsel has manufactured or destroyed evidence or is capable of doing so. *Jones v. State*, 205 S.W.2d 590, 592-93 (Tex.Crim.App. 1947); *Gomez v. State*, 704 S.W.2d 770 (Tex.Crim.App. 1985); *Sunday v. State*, 745 S.W.2d 436, 440 (Tex.App. 1988, pet. ref'd).

h.   That Defense counsel and Fratta lied in entering a plea of not guilty. *Lopez v. State*, 500 S.W.2d 844 (Tex.Crim.App. 1973).

i.   That Defense counsel was willing to or did lie to or Apull the wool over the eyes of@ the jury. *Anderson v. State*, 525 S.W.2d 20 ( Tex.Crim.App. 1975); *Everett v. State*, 707 S.W.2d 638 (Tex. Crim. App. 1986).

j.   That Defense counsel did not argue that Fratta was innocent. *Anderson v. State*, 525 S.W.2d 20 (Tex.Crim.App. 1975).

k.   References to or derogatory comments concerning Defense counsel's strategy, courtroom tactics or ethics, such as suggesting that counsel is shrewd, tricky or acting in bad faith.   *Jones v. State*, 205 S.W.2d 590, 592-93 (Tex.Crim.App. 1947);   *Cook v. State*, 537 S.W.2d 258 (Tex.Crim.App. 1976); *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App. 1984); *Lopez vs. State*, 705 S.W.2d 296, 298 (Tex.App. 1986, no pet.).

l.   Reference to the fact that Defense counsel made objections during the trial. *Garza v. State*, 160 S.W.2d 926, 928 (Tex.Crim.App. 1942); *Anderson vs. State*, 525 S.W.2d 20, 22 (Tex.Crim.App. 1975); *Fuentes v. State*, 664 S.W.2d 333, 336-37 (Tex.Crim.App. 1984).

11

m.    That as long as lawyers are for hire, justice is for sale. *Borgen v. State*, 672 S.W.2d 456, 457-58 (Tex.Crim.App. 1984).

## H.

### IT IS IMPROPER TO COMMENT ON COURT PROCEEDINGS OR FRATTAS= NON-TESTIMONIAL DEMEANOR

It is improper for the prosecutor to comment on rulings of the Court or Fratta's non-testimonial demeanor.  Prohibited argument includes, but is not limited to, the following:

a.    That the State could not introduce certain evidence due to Fratta's objections. *Lopez vs. State*, 705 S.W.2d 296, 297- 98 (Tex.App. 1986, no pet.).

b.    That the Court's inclusion in the jury charge of a defensive theory or lesser included offense  does not mean that the Court believes it. *McClory v. State*, 510 S.W.2d 932 (Tex.Crim.App. 1974);  *Dunbar v. State*, 551 S.W.2d 382 (Tex.Crim.App. 1977).

c.    Reference to Fratta's non-testimonial demeanor in the courtroom. *Reynolds v. State*, 505 S.W.2d 265 (Tex.Crim.App. 1974); *Good v. State*, 723 S.W.2d 734 (Tex.Crim.App. 1986).

## I.

### IT IS IMPROPER TO ARGUE THE LAW IN A MANNER CONTRARY TO COURT'S CHARGE

It is improper for the prosecutor to argue the law in a manner contrary to the Court's charge.  Prohibited argument includes, but is not limited to, the following;

a.    Any statement of substantive law that is not contained in or is contrary to law or to the Court's charge. *Davis v. State*, 506 S.W.2d 909 (Tex.Crim.App. 1974); *Burke v. State*, 652 S.W.2d 788 (Tex.Crim.App. 1983).

12

: 00346

b. That evidence admitted for a limited purpose be considered for any other purpose. *Sanchez v. State*, 591 S.W.2d 500 (Tex.Crim.App. 1979).

c. That hearsay can be considered for the truth of the matter asserted. *Girard v. State*, 631 S.W.2d 162, 164-65 (Tex. Crim. App. 1982) (overruled on other grounds).

## J.

### IT IS IMPROPER IN DRUG CASES TO ARGUE ABOUT THE IMPACT OF DRUGS ON THE COMMUNITY

It is improper, in a case involving illegal drugs, for the prosecutor to argue about the impact of drugs on the community in any manner not supported by the evidence. Prohibited argument includes, but is not limited to, the following:

a. That the quantity of drugs possessed was enough to keep someone high for a specified period of time. *Turrentine v. State*, 536 S.W.2d 219 (Tex.Crim.App. 1976).

b. That on the basis of the quantity of drugs possessed, Fratta was probably selling drugs. *Turrentine, v. State*, 536 S.W.2d 219 (Tex.Crim.App. 1976).

c. That drug users also sell drugs. *Hemmeline v. State*, 314 S.W.2d 833 (Tex.Crim.App. 1958).

d. That the jurors, as citizens, are in some manner responsible for the drug problem in the community. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

e. That Fratta is responsible for the drug problem among young people. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

f. That the number of drug dealers in the community would fill any particular

13

: 00347

location. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

g.      That any particular percentage of crime in the community is attributable to

drugs. *White v. State*, 492 S.W.2d 488 (Tex.Crim.App. 1973).

h.      That Fratta's conduct has adversely affected others in the community.

*Rodriguez v. State*, 520 S.W.2d 778 (Tex.Crim.App. 1975); *Thomas v. State*,

527 S.W.2d 567 (Tex.Crim.App. 1975).

i.      That Defendant's involvement with drugs is responsible for numerous crimes

committed by others to obtain money for drugs. *Person v. State*, 706 S.W.2d

153, 155-56 (Tex.App. 1986, no pet.).

## K.

## IT IS IMPROPER TO COMMENT ON VICTIM OR WITNESS MOTIVES FOR TESTIFYING OR FAILING TO TESTIFY

It is improper for the prosecutor to argue or imply that Fratta has anything to do with

a witness or victim=s failure to testify or motive for testifying.  Prohibited argument

includes, but is not limited to, the following:

a.      That the complaining witness is not asking for a conviction because he/she is

afraid of Fratta. *Chambliss v. State*, 200 S.W.2d 1003 (Tex.Crim.App. 1947).

b.      That absent witnesses are afraid to testify or have been Afrightened from the

courtroom@ by Fratta. *Person v. State*, 706 S.W.2d 153 (Tex.Crim.App.

1986, no pet.); *Johnson v. State*, 662 S.W.2d 368, 369-70 (Tex.Crim.App.

1984); *Thomas v. State*, 519 S.W.2d 430, 431 (Tex.Crim.App. 1975).

c.      That Fratta did not call certain witnesses because he is afraid that they will

incriminate him. *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App. 1940).

d.      That Fratta has been Acourting@ the witnesses in order to gain favorable

14

testimony.     *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App. 1940).

e.     Inviting the jury to speculate as to why co-defendants were not called by

Fratta to testify, and on what the co-defendant=s testimony might have been.

*Berryhill v. State*, 501 S.W.2d 86 (Tex.Crim.App. 1973).

## L.

### SYMPATHY FOR THE VICTIM=S FAMILY

It is improper for the prosecutor to make improper pleas for sympathy and from

speculating on the future plight of the victim=s children or family members.  Prohibited

argument includes, but is not limited to, the following:

a.     That the victim=s children will no longer receive Christmas of Birthday gifts

from their deceased parent. *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App.

1940).

b.     A plea for an abandonment of objectivity or for consideration of the

expectations of the victim=s family.     *Stahl v. State*, 749 S.W.2d 826

(Tex.Crim.App. 1988).

## M.

### PLEAS FOR A CERTAIN PUNISHMENT
### ARE IMPROPER

It is improper for the prosecutor to argue for imposition of the maximum sentence

based on comparisons to what other defendants have received for the same or similar crimes,

or that anything less than the maximum penalty would be insufficient.  Prohibited argument

includes, but is not limited to, the following:

a.     That giving Fratta probation or anything less than the maximum sentence is

the same as Aexcusing@ defendant for his actions or Aletting him off the

15

hook.@.  *Morris v. State,* 755 S.W.2d 505 (Tex.App.1988, pet. ref'd.).

b.   That there is no reason why this Defendant should not be dealt with the same as other defendants who were tried and convicted for the same or a similar crime. *Johnson v. State*, 158 S.W.2d 313 (Tex.Crim.App. 1942).

## N.

## IT IS IMPROPER TO ARGUE
## OUTSIDE OF THE RECORD

It is improper for the prosecution to make statements during closing argument that go outside of the record to evidence not presented at trial.  Prohibited argument includes, but is not limited to, the following:

a.   To improperly call upon the jury to speculate as to other activities of the accused, not shown by the evidence nor can be inferred from the evidence, and to consider them in reaching a decision. *Walker v. State*, 664 S.W.2d 338 (Tex.Crim.App. 1984).

b.   To persuade the jury that Fratta is responsible for more than just the offense alleged in the indictment and to convict him on that basis. *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App. 1986).

c.   Injecting new facts, either directly or by inference, such as implying to the jury that Defendant has been involved in criminal proceedings as a juvenile and emphasizing that the prosecution can only show in evidence final convictions of the accused as an adult. *Parson v. State*, 652 S.W.2d 616 (Tex.Crim.App. 1983, no pet.).

d.   That time in prison will Ado Fratta some good,@ such as give him the opportunity to receive a college degree or to continue his education, and will

16

ultimately make him a more productive member of society. *Alejandro v. State*, 493 S.W.2d 86 (Tex.Crim.App. 1973).

e.    Using hypothetical or rhetorical questions to imply that other evidence exists which was not admitted into the record, and inviting the jury to speculate on what that evidence may be. *Berryhill v. State*, 501 S.W.2d 86 (Tex.Crim.App. 1973).

WHEREFORE, PREMISES CONSIDERED, Fratta respectfully prays that the Court grant this motion in its entirety and enter an Order precluding the prosecution from engaging in the following improper jury arguments in this case:

a)    AConscience of the community@ arguments;

b)    Personal opinion and vouching for the State=s case or its witnesses;

c)    Derogatory references to Fratta;

d)    Suggestions that Fratta has engaged in unproven acts of misconduct;

e)    Comments on Fratta=s failure to testify;

f)    Improper reasons for conviction;

g)    Attacks on Fratta=s defense counsel;

h)    Comments on Fratta=s non-testimony courtroom demeanor;

i)    Argue, where drug usage is referenced in evidence, the impact of drugs on the community;

j)    Comment on witnesses= motives for testifying or failing to testify;

k)    Pleas for sympathy for the victims;

l)    Arguments for a certain punishment;

m)    Improper legal arguments not supported by the Court=s charge;

17

: 00351

n)    Arguments outside the record.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713-224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on February 06, 2009.

VIVIAN R. KING

18

: 00352

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____,

2009, came to be considered the defendant's MOTION TO PREVENT IMPROPER JURY

ARGUMENT BY STATE.  The court is of the opinion the motion should be in all things:


GRANTED       _____

DENIED       _____



_____
JUDGE PRESIDING

19

: 00353

INDICTMENT NO. 1195044

THE STATE OF TEXAS                          IN THE DISTRICT COURT OF

Vs.                                         HARRIS COUNTY, TEXAS

ROBERT FRATTA                               230TH JUDICIAL DISTRICT

## MOTION TO SUPPRESS GUN LINE-UP EVIDENCE DUE TO SUGGESTIVENESS OF THE IDENTIFICATION PROCEDURE AND TO PRECLUDE IN-COURT IDENTIFICATION

TO THE HONORABLE JUDGE OF SAID COURT:

Robert Fratta, defendant in the above-entitled and numbered criminal action, moves to suppress evidence of the gun line-up of the alleged gun alleged to have been owned by defendant made by the complainant's father, Lex Baquer due to suggestiveness of the identification procedure, the unreliability of the suggestive procedure, the bias of the Complainant's father, Lex Baquer, and to preclude in-court identification. In support, the defendant will show the following.

### Background

The defendant has been indicted by the Harris County Grand Jury for capital murder. The State of Texas is seeking the death penalty.

### Facts

After the incident in question, Lex Baquer told law enforcement officers that he once possessed a gun that was returned to Defendant and later used by Defendant to have Complainant killed. Lex Baquer was shown a **gun line-up** and Lex Baquer identified a

1

: 00354

gun alleged to be owned by Defendant and alleged to be the murder weapon. He allegedly selected the defendant from these line-ups. The discovery provided by the State does not indicate any additional line-ups.

<u>Analysis of Eyewitness Identification should be Extended to this Gun Line Up</u>

> [T]he confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. . . . A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.

<u>United States v. Wade</u>, 388 U.S. 218, 228 (1967). This same reasoning should be extended to a suggestive and prejudicial **gun line-up**. A criminal defendant may claim that an identification procedure conducted was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." <u>See</u> <u>Stovall v. Denno</u>, 388 U.S. 293, 301-02 (1967). However, "[c]onvictions based on eyewitness identification at trial following a pretrial identification [procedure] will be set aside on that ground only if the . . . procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>See</u> <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968). In other words, there is no *per se* rule of exclusion for identifications stemming from suggestive identification procedures. <u>See</u> <u>Manson v. Brathwaite</u>, 432 U.S. 98, 109-14 (1977)

"[R]eliability is the linchpin in determining the admissibility of identification

2

testimony." <u>Manson</u>, 432 U.S. at 114. A totality of the circumstances test is utilized to determine if an identification is "reliable" even though it was based upon a suggestive identification procedure. <u>See</u> <u>Manson</u>, 432 U.S. at 114; <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972). Under this test, several factors are weighed against the corrupting effect of the suggestive identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the identification procedure, and (5) the length of time between the crime and the confrontation. <u>See</u> <u>Manson</u>, 432 U.S. at 114; <u>Neil</u>, 409 U.S. at 199-200; <u>Garza v. State</u>, 633 S.W.2d 508, 512-13 (Tex. Crim. App. 1982) (panel op.). The danger of misidentification is likewise increased if the police indicate to the witness that they have other evidence linking a given suspect to the crime. <u>See</u> <u>Simmons</u>, 390 U.S. at 383.

The pre-trial identification procedure utilized the law enforcement was unduly suggestive because, <u>inter alia</u>, the witness was shown a newspaper article containing the defendant's photograph and identifying him as a suspect, and the choice of photo spread and the manner it was administered. This procedure tainted the identification and made it unreliable. As such, allowing this evidence would violated due process as guaranteed by the United States Constitution as well as due course of law as guaranteed by the Texas Constitution.

Furthermore, any mention of an out-of-court **gun line up** or in-court identification

3

: 00356

of the alleged gun must be precluded because the in-court identification was tainted by the pre-trial identification procedure. See Jackson v. State, 628 S.W.2d 446, 448 (Tex. Crim. App. 1982) (panel op.).

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to  was hand delivered to the District Attorney's office on February 06, 2009.

VIVIAN R. KING

4

: 00357

INDICTMENT NO. 1195044

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
| Vs. | HARRIS COUNTY, TEXAS |
| ROBERT FRATTA | 230TH JUDICIAL DISTRICT |

## <u>ORDER</u>

BE IT REMEMBERED, that on the _____day of _____, 2009, came to be considered the above MOTION TO SUPPRESS GUN LINE-UP EVIDENCE DUE TO SUGGESTIVENESS OF THE IDENTIFICATION PROCEDURE AND TO PRECLUDE IN-COURT IDENTIFICATION.  After consideration of the motion, it is the opinion of the court that defendant's motion be:

GRANTED    _____

DENIED    _____

_____

JUDGE PRESIDING

: 00358

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION PRECLUDE THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES (RING V. ARIZONA)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Vivian R. King and Randy McDonald, Attorney for the accused, Robert Fratta, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the offer of extraneous offenses during any penalty phase of this case because of the constitutionally defective indictment against him. In support of his motion, Mr. Fratta states as follows:

1. Mr. Fratta was indicted for the offense of capital murder. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071

1

are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3.   The maximum penalty for the offense of capital murder is life without parole.  Tex. Penal Code § 12.31 ( 2005).  It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."   Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002).  The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty.  Tex. Penal Code § 12.31(a) (2005).

4.   Mr. Fratta has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury.  Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses).  Further, Mr. Fratta has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him.  *See In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense … are basic in our system of jurisprudence…").

2

5.   Indictment by grand jury protects citizens against arbitrary accusations by the government. *King v. State*, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971).  The most "celebrated purpose" of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution. *United States v. Mara*, 410 U.S. 19, 33 (1973).

6.  An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); *Cook*, 902 S.W.2d at 475.  The purpose of an indictment is to provide notice of the charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." *Brasfield v. State*, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980) (overruled on other grounds by *Janecka v. State*, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987)).

7. Therefore, an indictment must aver all the elements of the crime with which it charges. *Campbell v. State*, 5 S.W.3d 693, 701 (Tex. Crim. App. 1999); *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) ("[A]n indictment must allege, in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged."); *Ward v. State*, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992) (overruled on other grounds, *Riney*, 28 S.W.3d at 566); *Labelle v. State*, 720 S.W.2d 101, 110 (Tex. Crim. App. 1986); *Ex parte County*, 577 S.W.2d 260, 261 (Tex. Crim. App. 1979); *Benoit v. State*, 561 S.W.2d 810, 813 (Tex. Crim. App. 1977); *State v. Draper*, 940 S.W.2d 824, 826 (Tex. App.—

3

Austin 1997); *cf. Hamling v. United States*, 418 U.S. 87, 117 (1974). Indeed, the Texas Legislature has mandated that an indictment must contain all material elements of the offense charged: "Everything should be stated in an indictment which is necessary to be proved." Tex. Code Crim. Proc. Ann. art. 21.03 (West 2002); *see also* Tex. Code Crim. Proc. Ann. art. 21.11 (West 2002).

8.   In the past, Texas courts have rejected the contention that, where the State seeks the death penalty, the failure of the capital murder indictment to allege the punishment criteria—the special issues for the jury, mandated by Article 37.071, section 2(b), of the Texas Code of Criminal Procedure—renders a subsequent death sentence constitutionally invalid. *See, e.g., Moore v. State*, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998).

9.   Those courts justified their holdings with two arguments. First, the courts reasoned that since the purpose of an indictment is to provide notice, the punishment special issues need not be alleged in the indictment because "the very fact of a capital murder indictment places the defendant on notice that conviction will result in either life imprisonment or the death penalty" *Aranda v. State*, 640 S.W.2d 766, 770 (Tex. App.—San Antonio 1982); *see also, Moore*, 969 S.W.2d at 13; *Callins v. State*, 780 S.W.2d 176, 187 (Tex. Crim. App. 1986) ("a defendant who is charged under capital murder indictment is effectively put on notice that the special questions under Article 37.071, . . . will be issues in the case and that such procedural provisions need not be alleged in the indictment") (citations omitted); *Castillo v. State*, 739 S.W.2d 280, 298-99 (Tex. Crim. App. 1987); *Vigneault v. State*, 600 S.W.2d 318, 330 (Tex. Crim. App. 1980) (observing that "the fact that the issues to be submitted to the jury are in every capital case

4

identical and wholly independent of the varying fact situations which may come to trial places the capital defendant in a substantially different posture as regards notice thereof, from that of a civil litigant," and therefore holding that the failure to allege the special issues in the indictment did not deprive the appellant of notice) (footnote omitted).

9.    The argument that capital defendants are already provided all the notice constitutionally required of the punishment special issues by a capital murder indictment that does not allege the facts to support the issues cannot seriously be maintained.  With respect to Mr. Fratta's rights under the Texas Constitution, that notice must "come from the face of the indictment.  Indeed the accused is not required to look elsewhere."  *Ward*, 829 S.W.2d at 794; *Labelle*, 720 S.W.2d at 110 (observing that Article I, section 10, of the Texas Constitution requires that notice must come from the face of the indictment); *Benoit*, 561 S.W.2d at 813 (holding that defendant's knowledge of the offense with which he was charged does not obviate inquiry into whether the charge, in writing, furnished that information in plain and intelligible language).  An indictment that does not allege, for example, that a probability exists that  Mr. Fratta would commit criminal acts of violence that constitutes a "continuing threat to society" fails to provide notice of that accusation from its face.   Likewise, an indictment that fails to allege that no circumstance exists that would justify a life sentence fails to provide notice of that allegation.   Mr. Fratta is not clairvoyant; he cannot use the indictment sworn out against him as a crystal ball to read the prosecutor's mind and foresee the State's intention to prove at trial that Mr. Fratta is a "continuing threat to society" and that there is nothing that will justify a life sentence.

5

: 00363

10. The clear purpose of the state in offering evidence of extraneous offenses is to convince the jurors that each should agree to elevate the level of the Defendant's punishment above the maximum of life, and return a verdict of death. The extraneous offenses are used by the state as "non-statutory aggravators" which function as the equivalent of an element of a greater offense. *Ring*, 122 S. Ct.at 2443. The relevant inquiry is one of form, but of effect. *Apprendi*, 530 U.S. at 494.

It doesn't make any difference what you call them, it is what effect they have on the sentencing process. Accordingly, evidence of extraneous offenses must be presented to the grand jury, and if true billed the extraneous offenses must be alleged in the indictment. At trial, each of them must be submitted to the jury and proven beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227, 243, n.6. (1999) However, the indictment returned by the grand jury against this defendant fails to allege any extraneous offenses that the jurors may be asked to consider in determining if the level of punishment should be raised above the maximum. Therefore, this court should preclude the state from offering evidence of extraneous offenses.

11. The Texas Court of Criminal Appeals has held that a capital defendant is not entitled to notice (absent unfair surprise) of the state's intent to offer extraneous offenses at the punishment phase under either article 37.07 or rule 404(b) because neither of these provisions applies to the punishment phase of a capital trial. This penalty phase is instead governed by Article 37.071 and Rule 404(c), neither of which have notice requirements. *Guidry v. State*, 9 S.W.3d 133,153 (Tex. Crim. App. 1999). This result oriented opinion in *Guidry*, not only fails to provide justification for further depriving the Defendant of due process and equal protection of the laws, but it also fails to provide justification for the prosecutors who fail to properly give

6

notice to an accused by indictment    This ruling (and many others of the Court of Criminal Appeals) cannot stand under the weight of *Jones, Apprendi and Ring.*

WHEREFORE, PREMISES CONSIDERED, Mr. Fratta prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on February 06, 2009.

VIVIAN R. KING

7

: 00365

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the defendant's MOTION PRECLUDE THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES (RING V. ARIZONA). The court is of the opinion the motion should be in all things:

GRANTED    _____

DENIED     _____

_____
JUDGE PRESIDING

8

: 00366

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION TO PRECLUDE CREATION OF SNITCH TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Vivian R. King and Randy McDonald, Attorney for the Accused, Robert Fratta, and moves this Court pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, sections t 3, 10, 13, 15 & 19 of the Texas Constitution, and such other law as may be set forth below, to take measures to assure that no jailhouse snitches are created in this case.  In support of his motion, Mr. Fratta states as follows:

## REQUEST

1. Mr. Fratta seeks, by this motion, to close the stable door before the horse escapes.  He notes the following facts:

a. He has absolutely NO intention of talking to anyone but his lawyers about the facts of the case.  He has been approached by law enforcement officers, the F.B.I., and others, and has established a track record of refusing to discuss anything about his case.  He is not about to change that now.  *See Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (where—as here—accused invokes right to counsel, the state cannot even approach the suspect to initiate interrogation); *Michigan v. Jackson*,

1

475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986) (same rule under the Sixth Amendment).

b.  He is incarcerated, against his will, in the penal institutions of the State, with other persons who are being held by the State.  It is therefore beyond his own control to dictate with whom he is permitted to come in contact.  He views anyone who wishes to talk to him about his case as an agent of the states.  *See Massiah v. United States*, 377 U.S. 201 (1964);  *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977); *United States v. Henry*, 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980).

c.  If he had the decision as his own, he would not associate with *anyone* whom he did not absolutely trust between now and such time as he may be tried.

d.  He is aware—as is this Court—that he does not have to actually *say* anything for a jailhouse snitch to come forward and testify that he made a statement.  He is therefore justifiably nervous that someone in the cell with him will simply make up a story.

e.  He would prefer to be placed in a single cell, and has requested so on numerous occasions, where it would be much more difficult for a jailhouse snitch to make up such a story.


2.  On advice of counsel, Mr. Fratta is keeping a log of all the inmates with whom he comes in contact in the jail cells.  He is also submitting to each person a statement for him or her to sign acknowledging Mr. Fratta's intent neither to discuss any aspect of his case, nor permit the other person to initiate such discussion.  Of course, the committed snitch may refuse to sign such a statement, but there is little else Mr. Fratta can do to avert the creation of snitch testimony.

2

: 00368

3. Mr. Fratta therefore needs this Court's assistance to prevent the situation from arising where a snitch may make up a story. He requests an order:

a. Precluding any state actor from sending in a *Henry* snitch to try to exact a statement out of Mr. Fratta, without prior notice to counsel, and an opportunity for counsel to be present.

b. Requiring that Mr. Fratta be held in solitary confinement, where no snitch can come close to him, and make up a story.

## THE LAW GOVERNING SNITCH TESTIMONY

4. Since this is to be a capital prosecution, exacting standards must be met to assure that it is fair. The death penalty "is unique in its total irrevocability." *Furman v. Georgia*, 408 U.S. 238, 306, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Stewart, J., concurring). As the United States Supreme Court has held, "[t]he fundamental respect for humanity underlying the Eighth Amend-ment's prohibition against cruel and unusual punishment gives rise to a special '"need for reliability in the determination that death is the appropriate punishment"' in any capital case." *Johnson v. Mississippi*, 486 U.S. 578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988) (quoting, *Gardner v. Florida*, 430 U.S. 349, 363-64, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (quoting, *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976) (White, J., concurring) (overruled in part on other grounds).

5. The Fifth Circuit's approach is a reflection of the fact that cases are built on opportunist "snitches" on a frighteningly frequent basis. For this reason, that court has affirmed that accomplice-witness testimony must be scrutinized with greater care and caution than the

3

: 00369

testimony of ordinary witnesses and that an accomplice's testimony may be influenced by the hope of benefits and may be considered by the jury as tainted because of such influence. *United States v. Esparza*, 882 F.2d 143, 146, 1989 U.S. App. LEXIS 13234 (5th Cir. Tex. 1989). *see also Cool v. United States*, 409 U.S. 100, 103, 93 S. Ct. 354, 34 L. Ed. 2d 335 (1972) (there is a "recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity").

      6.  Indeed, the Supreme Court has also noted that

> [t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility.

*On Lee v. United States*, 343 U.S. 747, 757, 72 S. Ct. 967, 96 L. Ed. 1270 (1952) (emphasis supplied) (overruled on other grounds by *Lee v. State*, 489 So. 2d 1382 (Miss. 1986); *see also United States v. Swiderski*, 539 F.2d 854 (2d Cir.N.Y. 1976) (informer paid $10,000 for his services, worked on a contingent fee basis); *United States v. Sarvis*, 523 F.2d 1177, 1180 (D.C. Cir. 1975); *United States v. Wasko*, 473 F.2d 1282 (7th Cir. 1973); *United States v. Leonard*, 494 F.2d 955, 961 (D.C. Cir. 1974); *United States v. Garcia,* 528 F.2d 580 (5th Cir.Tex. 1976), cert. denied sub nom., *Sandoval v. United States*, 426 U.S. 952, 96 S. Ct. 3177, 49 L. Ed. 2d 1190 (1976).

      7.  For these reasons, the Court has held that snitch testimony "ought not to be passed upon . . . under the same rules governing other and apparently credible witnesses. . . ." *Crawford v. United States*, 212 U.S. 183, 204, 29 S. Ct. 260, 53 L. Ed. 465 (1909). Indeed, the Nevada Supreme Court recently noted "that a jail-house incrimination is not available in a fairly large number of homicide cases." *D'Agostino v. State*, 823 P.2d 283, 285 (Nev. 1991). The

4

: 00370

Court went on to hold that special precautions must be taken to avoid presenting unreliable evidence to the jury:

> A legally unsophisticated jury has little knowledge as to the types of pressures and inducements that jail inmates are under to "cooperate" with the state and to say anything that is "helpful" to the state's case.  It is up to the trial judge to see that there are sufficient assurances of reliability prior to admitting this kind of amorphous testimony to keep this kind of unreliable evidence out of the hands of the jury. . . .

*Id.* at 284;   *see also Cal. Penal Code Section 1127a* (trial courts must instruct jurors that "testimony of an in-custody informant should be viewed with caution and close scrutiny").

In light of this law that points to the inherent dangers of the snitch, this Court must take action to assist Mr. Fratta in preventing them from surfacing--when it is clear that Mr. Fratta has no intention of talking to *anyone* but his lawyers about this case.

WHEREFORE, Mr. Fratta respectfully requests that this Court enter an order as follows:

a.  Setting the motion down for an evidentiary hearing at which  may prove the basis of his motion; and,

b.  Ordering that Mr. Fratta be held in a single-person cell; and,

c.  Ordering that nobody in the custody of the State may seek to initiate questioning of Mr. Fratta concerning his case; and,

d.  Taking such other action as the Court may deem fit and just.

5

: 00371

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on February 06, 2009.

VIVIAN R. KING

6

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the MOTION TO PRECLUDE CREATION OF SNITCH TESTIMONY. The court is of the opinion the motion should be in all things:

GRANTED   _____

DENIED   _____

_____
JUDGE PRESIDING

7

: 00373

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

COMES NOW, Robert Fratta the Defendant, by counsel, and pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of The Texas Constitution and Tex. Code. Crim. Proc. arts. 1.03, 1.04, 1.05, 38.04 and 38.05 and moves the Court to refrain from commenting on the weight to be given to evidence and in particular the credibility of testimony of any witness for the State or Defendant and in support thereof would show:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the Defendant anticipates that the State will offer testimony from a witness who will attempt to offer one or more opinions pursuant to Tex. R. Evid. 702.

1

: 00374

4.  A determination by the Court that any witness who testifies for the State or the Defendant is an expert should be made outside of the hearing of the jury.  Announcing to the jury that a witness is accepted by the Court as an "expert" is an inappropriate and unfair comment by the Court on the credibility of the testimony and the weight that should be given to testimony by the witness and violates Tex. Code Crim. Proc. arts. 38.04 and 38.05. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of her or her designation as an expert." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 722 (Tex. 1998) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *see also, Flores v. Johnson*, 210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J. specially concurring) "the problem here is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education [not to mention designation as an 'expert'], gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact.

5.  Tex. Code Crim. Proc. art. 38.04 provides, in part:

   "[t]he jury is the **exclusive** judge of the facts proved, and of the weight to be given to the testimony...". (emphasis added)

6.  Tex. Code Crim. Proc. art. 38.05 provides in part:

   "In ruling upon the admissibility of evidence, the judge shall not discuss or

2

: 00375

comment upon the weight of the same or its bearing in the case, **but shall simply decide whether or not it is admissible**..." (emphasis added)

WHEREFORE, PREMISES CONSIDERED, Movant prays that upon hearing herein, this Court make its Order that any determination that a particular witness qualifies as an "expert" shall be made outside of the presence of the jury. Further, that the Defendant have such other relief as he may show himself to be justly entitled.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same on February 05, 2009.

VIVIAN R. KING

3

: 00376

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## **ORDER**

BE IT REMEMBERED, that on the _____day of _____, 2009, came to be considered the MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL.  The court is of the opinion the motion should be in all things:


GRANTED    _____

DENIED     _____



_____
JUDGE PRESIDING

4

: 00377

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

<u>MOTION IN LIMINE</u>
(Guarantee of No Violence)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta, Defendant, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and makes this his Motion in Limine. In support thereof, Defendant would show:

1.   The Defendant has been indicted for capital murder.

2.   The state is seeking the death penalty. The Eighth Amendment to the United States Constitution  requires a greater degree of accuracy, fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306  (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

1

: 00378

3.  It is the duty of this Court and the Texas Court of Criminal Appeals to make certain that the death sentence is not "wantonly or freakishly" imposed and that the purposes of Art. 37.071 are accomplished. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

4.  A fact ("future dangerousness") that increases the penalty for a crime beyond the prescribed statutory maximum( a sentence of LWOP-40 increased to death) must be alleged in the indictment and proved to the jury beyond a reasonable doubt. *Jones v. United States* 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530, U.S.466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), the Supreme Court held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to capital cases.

5.  The burden is on the state to prove, beyond a reasonable doubt, that a probability exists that the accused will commit criminal acts of violence that will constitute a continuing threat to society.  Any attempt by the State, to shift that burden, whether it be through the introduction of evidence, direct or cross examination of witnesses or argument to the jury is a violation of the rights of the accused as guaranteed by the 5th, 6th, 8th and 14th Amendments to the United States Constitution.

6.  Just as a juror would be challengeable for cause because he would assign a burden (or greater or lesser burden) to the State or Defendant than is provided by the law so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

2

7. Just as it would be improper for a judge in his or her charge to the jury, to improperly assign to a party a burden that is contrary to the law, so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

8. The Defendant anticipates that a prison classification witness will be called to testify should this case proceed to the mitigation phase.   This witness will, among other things describe the classification, security and safety policies within TDCJ for an inmate who has been convicted of capital murder.   This witness cannot "guarantee" or "insure" to the jury that this defendant or any other defendant will not commit some act of violence in the future.   Not only is this not within the capability of this witness, it is not relevant to the issues as they are framed by Art. 37.071.   The jury must decide if there is a "probability" that the defendant will commit criminal acts of violence that will constitute a continuing threat to society.   Therefore, any questioning concerning violence within TDCJ should be limited to the "probability" of any such violence occurring.

9.  Any cross-examination wherein the witness is asked if he can "guarantee" or "insure" or similar language will not only serve to confuse the jury and the issue, but will be an impermissible shifting of the burden to the defendant, all in violation of the Constitutional protections cited above.

        WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be sustained and relief be granted by appropriate Order.

: 00380

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx. 77006
713-521-2585 (office)
713- 521-3324 (fax)
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

4

: 00381

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009,

came to be considered the foregoing MOTION IN LIMINE (Guarantee of No Violence).

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

5

: 00382

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION IN LIMINE
(Inconsistent Theories of Prosecution)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta, Defendant, by and through his attorneys of record, and makes this his Motion in Limine. As grounds therefore, Defendant would show as follows:

I.

The Defendant requests that this Honorable Court order the State and its counsel, witnesses, and agents, to refrain from making any mention, reference, argument, or interrogation, either directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth, or alternatively, instruct the aforesaid individuals by appropriate order to refrain from making any such motion, reference, argument, or interrogation without first approaching the Bench and obtaining a ruling from the Court outside the presence and outside the hearing of all prospective jurors and jurors ultimately selected in this cause in regard to any alleged theory or admissibility of such matters, set out in Paragraph II below.

MOTION IN LIMINE, Page 1

## II.

The State and its counsel, witnesses and agents are not to allude to, make any mention of, refer to, argue, or interrogate about, either directly or indirectly, in any manner, by statement or opinion, at any time, to any witness, to the jury panel or to the jury or within the hearing and presence thereof, any theory or argument that is inconsistent with the position taken by the State and its counsel during the first trial of Robert Fratta and the trials of Howard Paul Guidry (both the first trial and second trial) and the trial of Joe Prystash which originated from the same set of facts and circumstances as this action does.

## III.

"It is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime." *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997), *rev'd on other grounds*; *Calderon v. Tho*mpson, 523 U.S. 538 (1998). Defendant Thompson and defendant Leitch were both convicted for murder with special circumstances by the same prosecutor in separate trials for the rape and murder of Ginger Fleischli. *Id.* In both trials, the prosecutor stated that the defendant on trial was the only person who had a motive to kill the victim and offered inconsistent theories and fact scenarios. *Id.* Thompson was denied his right to due process because the prosecutor argued critical facts and theories at Thompson's trial that were inconsistent with those asserted both at the preliminary hearing and at Leitch's trial. *Id.* at 1059.

The prosecutor violates the Due Process Clause if he knowingly presents false testimony—whether it goes to the merits of the case or solely to a witness's credibility. *Napue v. Illinois*, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959); *Mooney v. Holohan*, 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340 (1935).  Moreover, inconsistent theories may be precluded by a motion in limine. *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1110 (C.D. Cal. 1999).

## IV.

Based on the above, the Defendant would respectfully urge the Court to instruct the District Attorney and its witnesses not to refer to, allude to any discussion of or mention any theory or argument inconsistent with that used in the aforementioned previous trial in comments to the jury, jury selection, comments to the court, comments to opposing counsel, opening statement, closing statement, direct examination or cross examination of any witness.  In the event the District Attorney feels that such evidence is probative and admissible, and would like to inquire as to the Defendant's desire to have an instruction on the use of inconsistent theories by the District Attorney to convict defendants involved in the same set of circumstances, the jury should be retired and the matter considered outside the presence of the jury.  This would prevent prejudicial error which no subsequent instruction could cure.

Similarly, the Defendant would ask that if the District Attorney believes that the statute allows him to request such an instruction at his own request, that arguments on such be made outside the presence of the jury.

MOTION IN LIMINE, Page 3

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be granted and sustained by appropriate Order of this Honorable Court.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx.  77006
713-521-2585 (office)
713- 521-3324 (fax)
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

MOTION IN LIMINE, Page 4

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009,

came to be considered the foregoing MOTION IN LIMINE (Inconsistent Theories of

Prosecution).

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

MOTION IN LIMINE, Page 5

: 00387

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

<u>MOTION IN LIMINE</u>
(Victim Impact Type Evidence)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta, Defendant, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and  makes this his Motion in Limine.  In support thereof, Defendant would show:

1.   The Defendant requests that this Court order the State and its counsel, witnesses, and agents, to refrain from making any mention, reference, argument, or interrogation, either directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth.  In the alternative, Movant asks the Court to  instruct the aforesaid individuals by appropriate order to refrain from making any such motion, reference, argument, or interrogation without first approaching the Bench and obtaining a ruling from the Court.   The Court should further order that any argument as to the admissibility of any of the evidence set out below  should be made outside of the presence of both prospective jurors and those jurors who are sworn to hear this case.

1

2.  The State and its counsel, witnesses and agents, during the **guilt/innocence** phase of this trial, are not to allude to any evidence regarding the physical or psychological effect of the alleged crime on victims or their families or friends, including, but not limited to, any testimony that could be considered as "victim impact" as defined in *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991). Such evidence does not make more or less probable any fact that is of consequence during the **guilt/innocence** phase of the trial. *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990).

3.  Further, the State, its witnesses and agents should be prevented by Order of this court from offering, at the guilt/innocence **OR** the penalty phase of the trial, any characterizations or opinions about the crime, the Defendant or the appropriate sentence. *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled) and *Payne v. Tennessee*, 501 U.S. 808 (1991) or any evidence that tends to measure the worth of the victim as compared to other members of society. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); *accord Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999).

4.  Prior to the offer of any evidence, the court should perform an analysis under Rule 403 of the Texas Rules of Evidence to determine if the evidence is relevant. If the evidence is found not to be relevant, it should be inadmissible. If the evidence is found to be relevant, the Court should determine if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion or the issues or misleading the jury. This analysis should consider the (a) nature of the testimony, (b) the

2

relationship between the witness and the victim, (c) the amount of testimony to be introduced, (d) the availability of other testimony relating to victim impact and character and (e) mitigating evidence introduced by the defendant.   Further, the Court should prevent evidence that is cumulative and place appropriate limits upon the amount, kind and source of victim impact and character evidence *Mosley*, 983 S.W.2d at 262. Specifically, the Court should preclude the use of friends and family to prove facts which can be established through less prejudicial witnesses.  As to "victim impact" evidence that is found to be relevant, the Court should appropriately instruct the jury on the limited purpose for which each juror may consider that evidence.

5. Further,  the State should be precluded from offering, at any time during the course of this trial,  any "victim impact" evidence from an alleged victim of an offense for which the Defendant is not indicted in this cause.  Such "extraneous victim impact evidence" is irrelevant to the special issues under Rule 401 of the Texas Rules of Evidence and Tex. Code Crim. Proc. art. 37.071.  The danger of unfair prejudice from such evidence is unacceptably high. *Cantu v. State*, 939 S.W.2d 627, 635-38 (Tex. Crim. App. 1997).

6. So as to provide the Defendant with effective assistance of counsel and due process of law, as guaranteed to him by the 6th and 14th Amendments to the United States Constitution and Article 1, Sections 10 and 13 of the Texas Constitution and Art. 1.09 of the Tex. Code Crim. Proc., the Defendant moves the Court to require the prosecutor to provide to counsel for the Defendant, well in advance of trial, the names of family and friends of the deceased who will testify and any other witnesses that will offer evidence

3

: 00390

that is any way related to what is described herein as "victim impact" evidence and the substance of that testimony.   Such notice is necessary so that counsel for the Defendant can effectively advocate on behalf of the Defendant during the trial of this case generally, and specifically, when the court conducts its Rule 403 analysis.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be sustained and relief be granted as prayed for herein by appropriate Order of the Court.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx.  77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

4

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009,

came to be considered the foregoing MOTION IN LIMINE (Victim Impact Type Evidence).

After consideration, the court has determined that the motion shall be, and is hereby,


_____ GRANTED.

_____ DENIED.


SIGNED the _____ day of _____, 2009.


_____

JUDGE PRESIDING

5

: 00392

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

Pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex. Code Crim. Pro. art. 28.01 and Tex. R. Evid. 401, 403, 702, 703, and 705, and for the reasons set forth below and in the attached *Memorandum of Law*, the Defendant respectfully moves this Court to exclude all psychiatric or psychological expert opinion testimony offered by the State as to the probability that the Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. Code Crim. Proc. Ann. art. 37.071 (2)(b)(1)(Vernon Supp. 2001).

1. The Defendant has been indicted by the Harris County Grand Jury for the offense of capital murder;

2. The State is seeking the death penalty;

3. The State seeks to call one or more witnesses to offer psychiatric or psychological expert opinions or predictions as to the Defendant's eligibility for the death penalty under Tex. Code Crim. Proc. Ann. art. 37.071 § (2)(b)(1)(Vernon Supp. 2001).

1

4. The opinions proffered will be either scientific in nature or based on personal training and experience.

5. The admissibility of these opinions is governed by Tex. R. Evid. 401, 403, 702, 703, and 705 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *E.I. du Pont Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713 (Tex. 1998); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds).

6. Psychiatric or psychological predictions as to a whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," are inadmissible because they do not meet the standards for reliability articulated in the rules of evidence and the common law. Such predictions are unreliable due to (a) their overwhelming rate of error; (b) their lack of acceptance in the relevant scientific community, (c) the subjective, inconsistent, ad-hoc, and standardless manner in which they are formed, (d) the absence of a proper and adequately reliable data source upon which to base them. Any testimony the State seeks to admit incorporating such predictions does not satisfy the reliability requirement of Tex. R. Evid. 702, and must be excluded.

7. Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because they do not meet the standards for relevance articulated in the rules of evidence and the common law.   Such predictions are irrelevant because they do not assist the juror in determining a question of fact.

Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because any probative value is substantially outweighed By the danger of unfair prejudice pursuant to  Tex. R. Evid. 403.

: 00394

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant is a future danger or will constitute a continuing threat to society.

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

3

: 00395

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
## PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE
## DANGEROUSNESS

Pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex. Code Crim. Proc. art. 28.01 and Tex. R. Evid. 401, 403, 702, 703, and 705, Defendant requests that this Court exclude all psychiatric or psychological expert opinion testimony offered by the State as to the probability that Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. Code Crim. Proc. art. 37.071  (2)(b)(1)(Vernon Supp. 2001).   Defendant respectfully submits that such testimony does not meet the requirements of Rules 702 or 403.

### INTRODUCTION

For expert testimony to be admitted as evidence under Tex. R. Evid. 702, a trial court must determine whether such testimony is reliable and relevant. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 720 (Tex. 1998). The trial court functions in a "gatekeeping role" for the admission of such evidence. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds). The proponent of expert testimony bears the strict burden of proving both the reliability and relevance of such testimony before it may be admitted into evidence. *Robinson*, 923 S.W.2d at 557.

4

: 00396

Additionally, evidence deemed reliable and relevant must be excluded if "its probative value is substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

In the penalty phase of a capital trial, a court must evaluate psychiatric or psychological testimony that predicts a defendant's continuing threat to society under Art. 37.071 § (2)(b)(1), or "future dangerousness," using these reliability, relevance, and prejudice considerations. *Nenno*, 970 S.W.2d 549 (performing a reliability, relevance, and prejudice inquiry for psychiatric testimony in penalty phase of capital murder trial); *Joiner v. State*, 825 S.W.2d 701 (Tex. Crim. App. 1992) (same). When evaluated for reliability, relevance, and prejudice, the gross impropriety and inadmissibility of psychiatric and psychological predictions of future dangerousness becomes clear. The admission of testimony that incorporates these predictions violates the rules of evidence, the constitutional rights of the accused, and the common law.

## ARGUMENT

**1. PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE UNRELIABLE, AND <u>MUST BE EXCLUDED UNDER TEX. R. EVID. 702.</u>**

The reliability of expert testimony rests on a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and may properly be applied to the facts in issue. *Daubert*, 509 U.S. at 593-94. A preliminary assessment of reliability is guided by (a) the validity of the underlying scientific theory (b) the validity of the technique applying the theory and (c) the proper application of the technique on the occasion in question. *Kelly*, 824

: 00397

S.W.2d at 573; *Nenno*, 970 S.W.2d at 561. Questions of validity and proper application are to be guided by certain factors, which include, but are not limited to:

(a) The qualifications, experience, and skill of the person testifying;

(b) The extent to which the reasoning or methodology can be and has been tested;

(c) The extent to which the reasoning or methodology relies upon the subjective interpretation of the person testifying;

(d) Whether the reasoning or methodology has been subjected to peer review and/or publication, and whether the theory or technique has been rejected in such literature;

(e) The availability of other experts to test and evaluate the technique;

(f) The potential or known rate of error of the reasoning or methodology;

(g) Whether the reasoning or methodology has been generally accepted as valid by the relevant scientific community;

(h) The non-judicial uses which have been made of the reasoning or methodology;

(i) The clarity with which the underlying theory and technique can be explained to the court.

*Daubert,* 509 U.S. at 593; *Gammill* 972 S.W.2d at 720; *Kelly,* 824 S.W.2d at 573.

The above-listed factors [*Daubert* and *Kelly* factors] are germane to evaluating the reliability of both scientific and non-scientific expert testimony, "[w]hether the expert would opine on economic valuation, advertising psychology, or engineering. . . ." *Gammill*, 972 S.W.2d at 725. *See also Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (holding that clinical medical expert's testimony was not admissible because it did not fulfill the *Daubert* factors); *Perez v. State*, 25 S.W.3d 830 (Tex. App.—Houston [1st Dist.] 2000) (applying *Daubert* analysis to non-scientific expert); *American Tourmaline Fields v. International Paper Co.*, No.

: 00398

CIV.A.3:96CV3363D, 1999 WL 242690 at *4 (N.D. Tex. April 19, 1999)(same). As such, the above listed principles govern the admissibility of psychiatric and psychological testimony, which is based on a combination of training, experience, and scientific inquiry. *Nenno*, 970 S.W.2d at 560-62. *See also Muhammad v. State*, 46 S.W.3d 493, 506-507 (Tex. App.—El Paso [8[th] Dist.] 2001) (using the *Kelly* factors to determine whether psychological evidence should be admitted); *Green v. State*, 55 S.W.3d 633, 639-41 (Tex. App.—Tyler [12[th] Dist.] 2001)(same). In evaluating "fields of study aside from the hard sciences," courts should tailor the above analysis to examine closely the data collection procedures, such as personal interviews, document review, or statistical analysis, conducted by the witness in question. *Nenno*, 970 S.W.2d at 561.

### A. Psychiatric or psychological predictions of future dangerousness, as generally performed and offered, fail to meet the Rule 702 standards of reliability.

In general, psychiatric or psychological testimony as to whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," in capital cases is an ad-hoc determination solicited by a hypothetical fact pattern presented to the witness by the State. Occasionally, a limited record review accompanies the hypothetical fact pattern. The hypothetical fact pattern primarily incorporates the facts of the specific crime for which the defendant has been convicted. Occasionally, the hypothetical fact pattern will incorporate supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence, to be considered in the ad-hoc determination.

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, must be excluded because they fail to meet adequate standards for reliability.

i.    **The proponent of the expert testimony bears the burden of proving the reliability of the expert's testimony.**

: 00399

The proponent of psychiatric or psychological predictions of a defendant's future dangerousness bears the burden of proving the reliability of such predictions. *Robinson*, 923 S.W.2d at 557. In order to satisfy this burden the proponent must demonstrate his experience and skill in a sub-specialty of forensic psychology or psychiatry that addresses the prediction of future dangerousness of criminal defendants in capital cases. A general degree in psychiatry or psychology is not sufficient to establish expertise in the predictions of future dangerousness in capital cases. *See Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)(holding that a testifying expert must have expertise on the very matter about which he is to give an opinion and that a medical degree is not sufficient to establish this expertise). The proffered expert also bears the burden of proving his skill in predicting the future dangerousness of criminals. Experience testifying as an expert witness on the issue at hand is not sufficient to establish reliability. In fact, absent a showing of the reliability of the proffered testimony, the Texas Supreme Court has squarely rejected the testimony of those who have had long histories of testifying by noting that "'the only review the plaintiffs' experts' work has received has been by judges and juries, and the only place their theories and studies have been published is in the pages of the federal and state reporters.'" *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 726 (Tex. 1997) (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1318 (9th Cir. 1995)). Furthermore, experience in the field is not sufficient to establish expertise if such experience is not skillful. *See Sosa v. State*, 841 S.W.2d 912, 916 (Tex. App.—Houston [1st Dist.] 1992) (rejecting testimony of proffered "graphonalaysis" expert who had been a graphoanalyst for fifteen years and had reviewed thousands of handwriting samples because testimony otherwise not proved reliable).

In order to demonstrate this skill, the expert should be asked to proffer specific publications on the reliability and acceptability of the methodologies employed in predicting

: 000400

future dangerousness. *See Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 794-95 (S.D. Tex. 2000) (rejecting experts' testimony who did not point to medical or scientific literature supporting their conclusions); *Green*, 55 S.W.3d at 640 (rejecting expert's testimony who did not provide the trial court with any actual authorities and authorities supporting his analysis); *American Tourmaline Fields*, 1999 WL 242690 at *3 (rejecting testimony of proffered expert who has not provided court with copies of articles upon which he purported to rely and could not recall the name or citation for any articles that have discussed his technique). Further, the methodologies that the proffered expert employs in predicting future dangerousness must be consistent with the methodologies and principles of predicting future dangerousness that are detailed in those publications the expert brings to the court's attention. *See Green*, 55 S.W.3d at 640 (rejecting expert's testimony when expert did not indicate that he had followed the methodologies of the "authorities" that he cited); *Bennett v. PRC Pub. Sector*, 931 F. Supp. 484, 494 (S.D. Tex. 1996) (rejecting expert's testimony noting that the methodology he employed was not consistent with the methodologies described by experts and literature in the field that he had named).

ii.     **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable, and therefore inadmissible, due to the overwhelming potential rate of error of such predictions.**

It is generally accepted by the scientific community that psychiatrists and psychologists are more often incorrect in their assessments of future dangerousness than they are correct. The American Psychiatric Association [APA], has consistently maintained that "[t]he unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession." *Barefoot v. Estelle*, 463 U.S. 880, 920 (1983) (Blackmun, J., dissenting) (quoting Brief Amicus Curiae for the American Psychiatric Association, *Barefoot v. Estelle*, 463

: ☉☉４☉１

U.S. 880 (1983)(No. 82-6080) [hereinafter APA Brief]. *See also Flores v. Johnson*, 210 F.3d 456, 463 (5th Cir. 2000) (Garza, J., specially concurring) (noting that the scientific community's rejection of the reliability of predictions of future dangerousness is "as true today as it was in 1983."). Predictions that a person will be dangerous in the future are wrong two out of three times. *Barefoot*, 463 U.S. at 920 (citing APA Brief at 9, 13); J. Monahan, <u>The Clinical Prediction of Violent Behavior</u> 47-49 (1981); C. Slobogin, <u>ARTICLE: DANGEROUSNESS AND EXPERTISE</u>, 133 U. Pa. L. Rev. 97, 111-17 (1984) (citing results of the major studies: Baxstrom study: 20% accuracy; Thornberry Study: 20% accuracy; New York study 14% accuracy: Kozol study: 34.7% accuracy; Paxtuxent study: 41.3% accuracy; Wenk study: 8% accuracy). As such, a jury member could more accurately predict dangerousness by flipping a coin rather than relying on an expert psychologist or psychiatrist's testimony. Because the conclusions drawn from ad-hoc psychiatric or psychological predictions of future dangerousness are more often wrong than right, the amorphous and undefined methodologies they employ should be deemed unreliable. *See GE v. Joiner*, 522 U.S. 136, 146 (1997) (holding that "conclusions and methodology are not entirely distinct from one another" and that erroneous conclusions may indicate a faulty underlying methodology).

Even the more generous studies, done under the most controlled settings, indicate that predictions of future dangerousness will be accurate only half of the time. As such, these predictions are no better than chance determinations of who will be dangerous in the future. Randy Otto, <u>On the Ability of Mental Health Professionals to "Predict Dangerousness": A Commentary on Interpretations of the "Dangerousness" Literature</u>, 18 Law & Psych. Rev. 43, 64 & n.65 (1994); *See also* Melvin Goldzband, <u>Dangerousness: A Mutating Concept Passes Through the Literature</u>, 26 J. Am Acad. Psych. & L. 649, 651 (1998) (noting that predictions of dangerousness are increasingly demanded by courts but because of their unreliability such

: 00402

predictions are "inherently fruitless" and "possibly dangerous."); George B. Palermo, et al. On the Predictability of Violent Behavior, 36 J. Forensic Sci. 1435, 1442 (1991) (noting that supportive scientific studies for the accuracy of long-term predictions of violence are lacking); David Freedman, False Prediction of Future Dangerousness: Error Rates and the Psychopathy Checklist-Revised, 29 J. Am. Acad. Psych. & L. 89, 92 (2001) ("The prediction of complex behaviors such as violence remains exceedingly difficult and uncertain, and the plethora of new instruments fails to reach a scientifically reliable or valid standard of performance to be used to make decisions about a person's life or liberty in any setting.").

The reliability of psychiatric and psychological predictions of future dangerousness is tenuous when one considers how Texas courts have treated the admissibility of polygraph evidence. The Texas Court of Criminal Appeals has erected a "policy-based barrier to the admission of the existence and results of polygraph tests." Reed v. State, 48 S.W.3d 856, 860 (Tex. App.—Texarkana [6th Dist.] 2001). The court has held polygraph testimony categorically inadmissible "because it is not objective, but rather subjective, unreliable, and unduly persuasive." Reed, 48 S.W.3d at 863. The polygraph technique accurately predicts truth or deception "between seventy and ninety percent of the time." United States v. Posado, 57 F.3d 428, 434 (5th Cir. 1995). The best estimates of the accuracy of future dangerousness predictions indicate that they are correct merely fifty percent of the time. Psychiatric and psychological predictions of future dangerousness, which are both less reliable and more subjective than polygraph tests, should similarly be deemed inadmissible.

Research and literature that may indicate a more accurate prediction rate of future dangerousness is based on methods of prediction that are very different from those used in capital trials. More accurate prediction rates are garnered from studies in which clinicians have the opportunity to observe behavior in a mental health facility over an extended period of time.

11

: 00403

The procedure used in this trial instead has been an ad-hoc determination of dangerousness based upon a hypothetical scenario provided by the State.

### iii. Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not generally accepted in the relevant scientific community.

The American Psychiatric Association [APA] has insisted that psychiatrists are not qualified to make determinations of long-term future dangerousness and has consistently urged that expert psychiatric expert testimony on future dangerousness be deemed inadmissible. The APA has urged that "[a]bsent an in-depth psychiatric examination and evaluation, the psychiatrist cannot exclude alternative diagnoses; nor can he assure that the necessary criteria for making the diagnosis in question are met. As a result, he is unable to render a medical opinion with a reasonable degree of certainty." *Flores*, 210 F.3d at 467 (Garza, J., specially concurring) (quoting APA Brief). "The scientific community virtually unanimously agrees that psychiatric testimony on future dangerousness is, to put it bluntly, unreliable and unscientific." *Flores*, 210 F.3d at 463 (Garza, J., specially concurring). As an indication of the strength of the scientific community's rejection of this sort of ad-hoc psychiatric and psychological determinations, the APA expelled Dr. James Grigson because he consistently testified as to a defendant's future dangerousness without personal examination. Bruce Vincent, A Dearth of Work for 'Doctor Death': the Once Ubiquitous James Grigson Now Finds Little Demand for his Testimony in Texas Capital Murder Sentencings, Texas Lawyer, Dec. 4, 1995, at 4.

A testifying expert cannot establish that his methodologies are accepted in the relevant scientific community through "mere assurances . . . as to the accuracy of his own methods or results, in the absence of other credible supporting evidence." *Castellow*, 97 F.Supp.2d at 792 (citations omitted). *See also Robinson*, 923 S.W.2d at 559 (holding that an expert's "self-serving statements that his methodology was generally accepted and reasonably relied upon by other

: 00404

experts in the field are not sufficient to establish the reliability of the technique and theory underlying his opinion."). Thus, the proffered expert's assertion that the scientific community accepts his methodologies is not sufficient in light of the overwhelming rejection of this testimony by the scientific community.

iv.   **Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are purely subjective.**

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are "simply subjective testimony without any scientific validity." *Flores*, 210 F.3d at 458 (Garza, J., specially concurring). Each psychiatric or psychological prediction of future dangerousness is determined in a different manner. There is no established and consistent methodology applied or required for psychiatric or psychological analyses of future dangerousness, and "standards controlling the operation of the technique are nonexistent." *Id.* at 465-66; *see also* Kenneth B. Dekleva, Psychiatric Expertise in the Sentencing Phase of Capital Murder Cases, 29 J. Am. Acad. Psych. & L. 58, 60 (2001) ("'specific'… guidelines for making dangerousness predictions in forensic populations do not currently exist.").

An ad-hoc determination of dangerousness is not externally verifiable by other experts. There has been no "testing" of the methodologies used in the predictions of each expert. The factors an expert uses in determining dangerousness are not weighted and do not correspond to any graded scale of factors that would contribute to or predict dangerousness. Other experts looking at the same data are unable to determine whether the testifying expert's particular weighting of such factors is accurate. Thus, peer review of predictions of future dangerousness is

13

: 00405

rare, and "peer review of making such predictions in general has been uniformly negative." Flores, 210 F.3d at 465 (Garza, J., specially concurring)(citing G. Morris, SYMPOSIUM: Defining Dangerousness: Risking a Dangerous Definition, 10 J. Contemp. Legal Issues 61, 85-86 (1999)). See also, William M. Grove & Paul E. Meehl, Comparative Efficiency of Informal (Subjective, Impressionistic) and Formal (Mechanical, Algorithmic Prediction Procedures: The Clinical-Statistical Controversy, 2 Psych. Pub. Pol'y & L. 293, 320 (1996) (noting that clinical experiences cannot resolve disputes among psychologists because each can appeal to his own unique clinical experiences which lack an objective referent). Testimony such as this that is "subjective and 'not readily re-produceable [sic]'" by others in the field should not be admissible. Green, 55 S.W.3d at 638.

Key terms and concepts of the witness' testimony are amorphous and inexact. The scope of dangerousness and the length of time at issue are not defined. Concepts such as "conscience," "malice," and "evil," upon which determinations of dangerousness rely, are not adequately defined by the testifying witness.

> **v.      Ad-hoc psychiatric or psychological predictions are unreliable due to the absence of a reliable data source upon which to base a determination of dangerousness.**

As an essential component of assessing the reliability of the proffered testimony, "the underlying data should be independently evaluated in determining if the opinion itself is reliable." Havner, 953 S.W.2d at 713. The data set upon which the testifying expert here rests is not reliable and the expert's opinion should therefore not be admissible. The data set upon which the testifying expert relies has been prepared by the prosecution, and the testifying witness has not verified the data provided her. As such, the data upon which this determination is based have not been compiled objectively, and the data have been specifically compiled to prove

14

dangerousness. Compilation of data in this manner has been held to "give[] rise to a 'common-sense skepticism' regarding the expert's evaluation" which has proved fatal to the reliability of such testimony. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Circ. 2000) (citations omitted). *See also Castellow*, 97 F.Supp.2d at 797 (rejecting reliability of proffered expert noting that the "detailed investigation" upon which the witness relied was prepared by Plaintiff's investigator); *Green*, 55 S.W.3d at 638 (rejecting reliability of proffered expert noting that witness had not independently investigated data provided him).

Further, ad-hoc determinations based on a hypothetical fact pattern prepared and presented by the State are unreliable because they do not incorporate any personal interviewing, investigation, or background examination. Testimony which relies only on a hypothetical provided by the State decidedly lacks any of the investigation, examination, or interviewing that courts have stipulated as the bedrock of a testifying mental health professional and proper clinical opinion provider. Testifying experts "whose convictions about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests [may] properly be viewed by the district as lacking the objectivity" that is required to assure the reliability of the testimony. *Castellow*, 97 F.Supp.2d at 793 (quoting *Claar v. Burlington N.R.R.*, 29 F.3d 499, 503 (9th Cir. Mont. 1994)).

The Texas Criminal Court of Appeals has acknowledged "the pivotal role that psychiatry has come to play in criminal proceedings" and has characterized that role as one in which "psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury." *Jackson v. State*, 992 S.W.2d 469, 473 (Tex. Crim. App. 1999) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 79 (1985)). The Supreme Court in *Ake v. Oklahoma* stipulated that a "competent psychiatrist" is one "who will conduct an appropriate examination." *Ake*, 470 U.S. at 83. Finally, the Texas Court of Criminal Appeals has held that

psychiatrists assist the jury by "laying out their investigative and analytic process to the jury." *Jackson*, 992 S.W.2d at 473. It is thus clearly recognized that an essential role of a mental health professional in court is to conduct an "investigative process" which includes examinations and interviews of the defendant.

The lack of investigation makes this method particularly unreliable because, without more information the testifying expert is unable to rule out other diagnoses and hypotheses with regard to the defendant. *See* Paul S. Appelbaum, Hypotheticals, Psychiatric Testimony, and the Death Sentence, 12 Bull. Am. Acad. Psych. & L. 169 (1984). The expert is unable to ascertain all the facts that might make these alternate hypotheses or diagnoses more plausible for the defendant's situation. *See Mata v. State*, 46 S.W.3d 902, 915 (Tex. Crim. App. 2001) (rejecting expert's testimony that did not take into account facts that the court found salient to the analysis). An expert's inability or failure to rule out other hypotheses for the question at issue has proved fatal to the reliability of his proffered testimony. *See Bennett v. PRC Public Sector, Inc.*, 931 F. Supp. 484, 492 (S.D. Tex. 1996) (limited fact collection impeded expert's ability to rule out other causes of Plaintiff's injury and indicated that expert's testimony was unreliable).

> **vi.     Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not used outside the judicial/legal context.**

The Texas Supreme Court has asked of experts whether the methodology or study they employ "was prepared only for litigation" and whether it has "been used or relied upon outside the courtroom." *Havner*, 953 S.W.2d at 726. The expert testimony in this case is decidedly prepared only in the context of litigation and, given its lack of acceptance within the scientific community, would never be relied upon outside of the courtroom. While it is true that determinations of future dangerousness are used in involuntary civil commitment of individuals, psychotherapists' liability for their patients' actions, and post-jail detention of sexual predators,

: 00408

these are all judicial uses of determinations of future dangerousness. Predictions about future dangerousness are non-existent outside of these judicial contexts.

Furthermore, the predictions of future dangerousness in these contexts are predictions of dangerousness in the short term; whereas future dangerousness predictions in capital cases are predictions of behavior in the long term. There is no procedure in Texas for reevaluating determinations of future dangerousness during the span of the defendant's sentence. Thus, the prediction of future dangerousness may concern behavior that extends for over a decade into the future. Whereas short-term predictions may be made with some degree of accuracy, long-term predictions cannot be made accurately or reliably. *See* Grant H. Morris, Defining Dangerousness: Risking a Dangerous Definintion 10 J. Contemp. L. Issues 61, 78 (1999); Douglas Mossman, Dangerous Decisions: An Essay on the Mathematics of Involuntary Hospitalization 2 U. Chi. L. School Round Table 95, 97 (1995).

### B.   The Psychopathy Checklist Revised [PCL-R] is an unreliable method for predicting a defendant's dangerousness in the future.

In certain instances, the Psychopathy Checklist Revised [PCL-R], a psychiatric tool used to diagnose and assess for the presence of psychopathic traits, is utilized as a basis for predicting a defendant's future dangerousness. High scores on the PCL-R have been used to predict a defendant's "continuing threat to society." J.F. Edens, et al., Psychopathy and the Death Penalty: Can the Psychopathy Checklist-Revised Identify Offenders Who Represent a "Continuing Threat to Society?", J. Pscyh. L. (Winter 2001).

The PCL-R is both more objective and more accurate than the ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State. It has been held to be the most reliable known indicator of future dangerousness. *Muhammad*, 46 S.W.3d at 506. Despite this comparative reliability, the PCL-R is not reliable enough a basis upon which to

: 00409

admit a proffered expert's testimony. The PCL-R is unreliable primarily because of its very high false-positive rates. The PCL-R has been estimated to predict violent behavior with a false positive rate of between 54.3 and 75%. This indicates that the PCL-R predicts violence at a rate worse than chance. *See* David Freedman, <u>False Prediction of Future Dangerousness: Error Rates and the Psychopathy Checklist-Revised</u>, 29 J. Am. Acad. Psych. & L. 89, 92 (2001). The PCL-R is further unreliable for predicting future dangerousness because it does not evaluate the potential psychopathy as modified by age of the evaluee. Thus, the PCL-R cannot indicate how dangerous an evaluee will be when he is released from prison decades into the future. Edens et al., *supra* at *. It has been shown that risk of violence decreases significantly with age. J. Sorenson & R. Pilgrim, <u>CRIMINOLOGY: AN ACTUAL RISK ASSESSMENT OF VIOLENCE POSED BY CAPITAL MURDER DEFENDANTS</u>, 90 J. Crim. L. & Criminology 1251, 1266 (2000). Finally, research examining the relationship between psychopathy and violence within institutions and prison settings has indicated that this relationship is, at best, tenuous and weak. Thus, researchers have concluded that "the position that PCL-R scores for any one offender provide much useful information regarding his relative or absolute risk for future institutional violence while incarcerated clearly is untenable." Edens et al., *supra* at *. *See also* Freedman, *supra* at 94.

Thus, while the PCL-R is touted as the most reliable indicator of dangerousness, this reliability is merely reliable *comparatively* to the completely inaccurate ad-hoc predictions made by testifying experts. Because of the above listed factors the PCL-R is not a reliable enough tool upon which to admit psychological or psychiatric expert testimony of future dangerousness. Expert psychological or psychiatric testimony that does not rely on the PCL-R and which is instead merely an ad-hoc determination, *a fortiori* should be inadmissible.

: 00410

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are unreliable. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

## II. PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE IRRELEVANT, AND <u>MUST BE EXCLUDED UNDER TEX. R. EVID. 702.</u>

Even if found to be reliable, expert testimony must be shown to be relevant to a factual issue in question. In determining relevance, expert testimony should be admitted only when it will aid the jury in making inferences regarding fact issues more effectively. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (affirming trial court's exclusion of expert testimony on blood-banking procedure and industry); *Glasscock v. Income Property Servs.*, 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994) (reversing trial court exclusion of expert testimony regarding security procedures in commercial office buildings because not an area of expertise within knowledge of reasonable juror).  Psychiatric and psychological predictions of future dangerousness do not aid the jury in determining questions of fact, and are therefore inadmissible due to irrelevance under Tex. R. Evid. 702.

When the jury is equally competent to form an opinion regarding ultimate fact issues, the expert's testimony as to these issues should be excluded. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) ("That a witness has knowledge, skill, expertise, or training does not necessarily mean that the witness can assist the trier-of-fact."); *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (same). If a purported expert testifies to an analysis based on factors that an average layperson juror would generally be aware of and utilize absent the expert testimony, such testimony is irrelevant. *Douglas v. State*, No. 01-98-01151-CR, 2001 WL 1048533, at *7 (Tex. App.—Houston [1st Dist.] Aug. 31, 2001) (affirming exclusion of expert testimony regarding the voluntariness of defendant's confession). Testimony that might be "of

19

: 00411

some benefit" to the jury is not admissible unless the jury would not be qualified to answer the question without the benefit of the expert's specialized knowledge. *Speer v. State*, 890 S.W.2d 87, 96 (Tex. App.—Houston [1st Dist.] 1994) (affirming exclusion of expert testimony regarding defendant's "dependent personality disorder").

Psychiatric predictions of future dangerousness are not offered in every capital case. There are many instances in which juries decide the special question of future dangerousness without consideration of psychiatric testimony. *See, e.g., Jasper v. State*, No. 73,817, 2001 WL 1504674, at *1-2 (Tex. Crim. App. Nov. 28, 2001) (affirming jury finding of future dangerousness based on facts of crime, evidence of escalating criminal activity, and lack of remorse); *Conner v. State*, No. 73,591, 2001 WL 1043248, at *4 (Tex. Crim. App. Sep 12, 2001) (affirming jury finding of future dangerousness based on defendant's prior criminal history); *Trevino v. State*, 991 S.W.2d 849, 854 (Tex. Crim. App. 1999) (same); *Salazar v. State*, 38 S.W.3d 141, 146 (Tex. Crim. App. 2001) (affirming jury finding of future dangerousness based on facts of offense alone). As such, it is clear that jurors are qualified to answer the future dangerousness question, and unreliable psychiatric testimony regarding the same point must be excluded.

In cases where the State offers psychiatric expert testimony regarding future dangerousness, as described in Section IA, above, predictions are ad-hoc determinations solicited by a hypothetical fact pattern presented orally to the witness by the State. This hypothetical fact pattern is generally limited to the facts of the specific crime for which the defendant has been convicted, although occasionally incorporates supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence. As described above in Section IA(v), the proffered "expert" rarely has interviewed or investigated the defendant personally. The factors used in constructing the hypothetical are sufficient, independent of any

: 00412

psychiatric or psychological analysis, to form the basis of a jury determination. *Jasper*, 2001 WL 1502674 at *1-2; *Conner*, 2001 WL1043248 at *4; *Trevino*, 991 S.W.2d at 854; *Salazar*, 38 S.W.3d at 146.

Further, a psychiatric or psychological "spin" or interpretation of these same facts is unreliable, as described in Section I. Because psychiatric and psychological predictions of dangerousness have been shown to be grossly unreliable, they have no relevance to a jury's determination of the factual question. Unreliable information cannot be considered helpful, and therefore relevant, to a jury. *See Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000) ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue, as is required by Rule 702."); *Griffith v. State*, 983 S.W.2d 282, 287-88 (Tex. Crim. App. 1998) ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts."); *Bennett*, 931 F.Supp. at 500 (finding testimony unreliable where "completely lacks specificity" and "borders on sheer speculation," and therefore irrelevant).

Psychiatric or psychological predictions of future dangerousness rely exclusively on matters within the average juror's common knowledge, and thus should be excluded. *K-Mart Corp.*, 24 S.W.3d at 361. Whereas relevant scientific or expert testimony assists a juror by introducing new facts or expertise, psychiatric predictions of future dangerousness merely "tell the jury how they should view the facts." *Id.* This is not sufficient to meet the necessary criteria for relevance. *See also Flores v. State*, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993) (Clinton, J., dissenting) (noting that expert psychiatric testimony regarding future dangerousness does not "add[] anything of substance to whatever inference of future dangerousness may be gleaned from the facts themselves."); *Speer*, 890 S.W.2d at 97 (finding that psychiatric testimony regarding

: 00413

defendant's dependent personality disorder could be found within the range of a layperson's knowledge).

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are irrelevant. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

## III.   PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS CREATE AN UNACCEPTABE DANGER OF UNFAIR PREJUDICE AND NEEDLESS PRESENTATION OF CUMULATIVE EVIDENCE AND <u>MUST BE EXCLUDED UNDER TEX. R. EVID. 403.</u>

Psychiatric or psychological predictions of future dangerousness are irrelevant and unreliable, and thus, inadmissible under Tex. R. Evid. 702. However, even if such predictions were to be found reliable and relevant, they are inadmissible under Tex. R. Evid. 403, under which reliable and relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *Morales*, 32 S.W.3d at 865-66; *Kelly*, 824 S.W.2d at 572. Presentation to the jury of psychiatric or psychological predictions of future dangerousness creates an unacceptable risk of prejudice and needless cumulative evidence, and is impermissible under Rule 403.

In determining whether the prejudicial potential of evidence outweighs its probative value, courts are to consider (a) how compelling evidence serves to make more or less probable a fact of consequence; (b) the potential the evidence in question will impress the jury in an irrational and indelible way; (c) the extent of the proponent's need for such evidence; and (d) how much trial time will be consumed in the admission of such evidence. *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).

### A.   Because psychiatric predictions of a defendant's future dangerousness are unreliable and irrelevant, they do not make any more or less probable a fact of consequence in capital sentencing proceedings.

22

: 00414

Psychiatric or psychological predictions of a defendant's future dangerousness, because of unreliability and lack of relevance alone, as described in Sections I and II, above, create an unacceptable danger for unfair prejudice. The flawed underlying methodology and high potential rate of error render psychiatric or psychological future dangerousness predictions insignificant as to whether future danger is any more or less probable. *See Morales*, 32 S.W.3d at 865 ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue…"); *Griffith*, 983 S.W.2d at 288 ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts.")

**B. Psychiatric or psychological predictions of a defendant's future dangerousness impress the jury in an inappropriate, irrational, and indelible way.**

Expert testimony is placed under additional evidentiary constraints because courts have reasoned that jurors are unable to evaluate such testimony thoroughly and, therefore, give it excessive weight regardless of its reliability and veracity. *Gammill*, 972 S.W.2d at 722 (citing *Robinson*, 923 S.W.2d at 553). *See also Kelly*, 824 S.W.2d at 573. In capital sentencing proceedings, there are four preexisting juror biases that compound the general tendency of unchecked acceptance of expert testimony. These biases affect jurors' perceptions of the likelihood of violent recidivism, the opportunities for recidivism, the accuracy of clinical expert testimony in general and the accuracy of expert predictions of future dangerousness specifically. Such biases reduce the effectiveness of traditional methods of adversarial testing in capital sentencing proceedings. The result is unfair prejudice that might not arise in other legal contexts.

23

: 00415

Jurors in capital cases have a predisposed tendency to overestimate the likelihood of violent recidivism. Capital jurors estimate the probability that a defendant charged with capital murder, and given a life sentence, will commit another homicide between 25 and 50%, whereas studies show the likelihood to be approximately 0.2% over a forty-year term. J.R. Sorenson & R. Pilgrim, CRIMINOLOGY: AN ACTUAL RISK ASSESSMENT OF VIOLENCE POSED BY CAPITAL MURDER DEFENDANTS, 90 J. Crim. L. & Criminology 1251, 1269 (2000). Jurors estimate the probability that a criminal defendant convicted of a violent crime will continue to engage in assaultive behavior between 50 and 85%. Again, studies show this sense to be greatly exaggerated; the risk of additional violent crimes in general is approximately 16%. Sorenson & Pilgrim, supra at 1269. Jurors in capital cases also have a predisposed tendency to overestimate the opportunity defendants will have to commit acts of violence in the outside community. Studies in Texas indicate that, on average, jurors believe a defendant sentenced to life in prison will be paroled after fifteen years, whereas under Texas law, defendants given a life sentence after conviction for a capital crime must serve forty years before becoming eligible for parole. V.T.C.A., Gov't Code § 508.145(b) (2001); Sorenson & Pilgrim, supra at 1255.

Furthermore, jurors also believe clinicians to be capable of predicting future dangerousness at a far more accurate rate than empirical studies have suggested. D.A. Krauss & B.D. Sales, The Effects of Clinical and Scientific Expert Testimony on Juror Decision Making in Capital Sentencing, 7 Psych. Pub. Pol'y & L. 267, 276, 301 (2001). Finally, jurors have an extreme predisposition toward acceptance of "clinical" opinion expert testimony, which is based on a subjective, personal assessment of the evaluee. Krauss & Sales, supra at 305. Psychiatric or psychological predictions of a defendant's future dangerousness, particularly those based on an

24

: 00416

expert's ad-hoc analysis of a hypothetical fact pattern prepared and presented by the State, are clinical determinations. *Id.* Jurors weigh clinical opinion testimony heavily in final decisions and often fail to distinguish between more and less accurate clinical opinion testimony. *Id.*

In general, jurors do not scrutinize expert testimony as intensely as lay testimony and the presumption of credibility for expert witnesses is falsely enhanced. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of his or her designation as an expert." *Gammill*, 972 S.W.2d at 722 (citing *Robinson*, 923 S.W.2d 549); *See also Flores v. Johnson*, 210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J., specially concurring) ("the problem here . . . is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education (not to mention designation as an 'expert') gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact."); Krauss & Sales, supra at 273; C. Haney, ARTICLE: Violence and the Capital Jury: Mechanisms of Moral Disengagement and the Impulse to Condemn to Death, 49 Stan. L. Rev. 1447, 1486 & n.113 (1997) ("In this light, capital penalty trials sometimes become forums in which grossly prejudicial and unreliable predictions of future dangerousness [are presented] . . . with the imprimatur of state authority.") (citations omitted).

The preexisting tendencies of jurors in capital cases to overestimate the likelihood of violent recidivism, the opportunities criminal defendants have for recidivism, as well as the accuracy of clinical predictions of future dangerousness and the veracity and reliability of clinical predictions in general, reinforce the disproportionate credence jurors generally give

25

: 00417

expert testimony. These tendencies combined create a dangerous and unacceptable risk of prejudice in capital sentencing proceedings.

Adversarial testing is not a sufficient safeguard against the prejudicial effect of psychiatric or psychological predictions of future dangerousness. Faulty presuppositions and disproportionate acceptance of expert testimony may cause jurors to discredit expert testimony and cross-examination offered to counter a psychiatric or psychological determination of future dangerousness. Krauss & Sales, *supra* at 276; E.H. Mantell, <u>A Modest Proposal to Dress the Emperor: Psychiatric & Psychological Opinion in the Courts</u>, 4 Widener J. Pub. L. 53, 65-66 (1994) ("Given a choice between an expert who says that he can predict with certainty that the defendant, whether confined in prison or free in society, will kill again, and an expert who says merely that no such prediction can be made, members of the jury charged by law with making the prediction surely will be tempted to opt for the expert who claims he can help them in performing their duty, and who predicts dire consequences if the defendant is not put to death."). The "apparent endorsement" of a medical or scientific community can be extremely detrimental to a defendant's substantive rights. *Perez v. State*, 25 S.W.3d 830, 831 (Tex. App.—Houston [1st Dist.] 2000) (finding trial court erred in allowing state's expert witness testimony as to "child abuse accommodation syndrome").

Adversarial procedures are generally insufficient to remove the prejudice caused by psychiatric or psychological predictions of a defendant's future dangerousness. Krauss & Sales, *supra* at 305. The ability to impeach, or discredit, expert witnesses through cross-examination is limited. Opposing counsel is allowed to question the expert using statements contained in treatises and authoritative scientific materials, however, such cross-examination is limited to

: 00418

publications that the witness recognizes as authoritative or publications upon which the expert has relied. *Reynolds v. Warthan*, 896 S.W.2d 823, 827 (Tex. App.—Tyler [12th Dist.] 1995) (citing *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 182 (Tex. App.—Amarillo [7[th] Dist.] 1992, writ denied). *See also Bowles v. Bourdon*, 219 S.W.2d 779, 783. (Tex. 1949). This detracts from the ability to legitimately subject the testimony to the rigors of adversarial testing.

Unreliable psychiatric opinion testimony creates a risk that the jury will be impressed in an irrational and indelible way. The prejudicial potential of such testimony is great and parties confronted with such testimony have limited, if any, means to rebut or remove the prejudicial impact.

### C. The State has a limited need to present psychiatric or psychological prediction of a defendant's future dangerousness because such evidence is cumulative to other evidence already presented to the jury.

The State has no pressing "need" for the admission of psychiatric or psychological predictions of future dangerousness, because it has a variety of other means available to prove the Art. 37.071 § (2)(b)(1) special question. The predictions, are generally ad-hoc determinations solicited by a hypothetical fact pattern generally limited to the facts of the specific crime for which the defendant has been convicted, occasionally incorporating supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence. The hypothetical fact pattern, with or without the supplemental evidence, and resulting psychiatric or psychological prediction of future dangerousness, needlessly present cumulative evidence, specifically prohibited by Rule 403.

Such predictions are needless because they lack validity or reliability and thus, offer nothing to the jury in addition to the mere repeat recitation of the facts of the crime, or other

27

: 00419

evidence, that has already been presented and made a part of the record. Merely cumulative evidence that serves no additional purpose must be excluded. *Sims v. Brackett*, 885 S.W.2d 450, 454 (Tex. App.—Corpus Christi [13th Dist.] 1994) (reversing trial court exclusion of expert medical witness testimony as to cause of patient's intestinal leak because not *"merely cumulative"*) (emphasis added). *See also Pace v. Sadler*, 966 S.W.2d 685 (Tex. App.—San Antonio [4th Dist.] 1998) (excluding personal narrative describing facts already on the record in medical malpractice case because cumulative and would have only served to prejudice defendants).

The admission of unreliable psychiatric predictions of a defendant's future dangerousness sheds no credible scientific, medical, or other light on the individual circumstances of the defendant at issue. The potential rate of error of such predictions, described in Section I(A)(ii), above, shows that a witness providing the opinion is no more qualified to accurately do so than any of the members of the jury panel might be. Because the jurors otherwise have access to the underlying evidence presented to the opinion witness in the hypothetical fact pattern, and have the authority to base their determination of future dangerousness on this data alone, the opinion testimony itself is useless except for its prejudicial potential. *See, e.g., Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991) (excluding autopsy photographs in murder case, even though relevant and probative, because of prejudicial nature and cumulative effect where less gruesome photographs were already in the record); *Penry v. Johnson*, 215 F.3d 504, 513 (5th Cir. 2000) (Dennis, J., dissenting) (expressing concern regarding the "cumulative effect and reinforcement" of the "erroneous" admission of psychiatric testimony regarding future dangerousness) (overruled on other grounds); *See also Jasper*, 2001 WL 1502674 at *1-2; *Conner*, 2001

28

: 00420

WL1043248 at *4; *Trevino*, 991 S.W.2d at 854; *Salazar*, 38 S.W.3d at 146 (juries may find future dangerousness based on the facts of the offense alone or some combination of the facts of the offense, the defendant's prior criminal history, and juror interpretation of remorse or other character evidence).

Psychiatric testimony offering a prediction of a defendant's future dangerousness is cumulative to other testimony or evidence already presented to the jury. As a result, such testimony, especially given its overwhelming potential for unfair prejudice, indelible and irrational impression on the jury, and consumption of judicial resources and time, must be excluded under Rule 403.

### D. The interests of efficiency, preservation of judicial resources, and the rules of evidence demand the exclusion of psychiatric predictions of a defendant's future dangerousness.

Because psychiatric and psychological predictions of future dangerousness impress the jury in an irrational and indelible manner, do not serve to make the fact of a defendant's future dangerousness any more or less probable, and do not fill a need of the proponent of such predictions that would not be met otherwise, the predictions consume an unnecessary amount of time in the sentencing phase of a capital trial.

For the reasons articulated above, the minimal, if any, probative value of psychiatric or psychological predictions of future dangerousness is outweighed by the danger of unfair prejudice such predictions cause. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 403.

### CONCLUSION

29

: 00421

For the foregoing reasons, Defendant requests that this Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant will constitute a continuing threat to society, or Defendant's future dangerousness.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx.  77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

: 00422

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the foregoing MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS.

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

31

: 00423

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION IN LIMINE

### (PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS)

COMES NOW, Robert Fratta, the Defendant, by counsel, and pursuant to Tex. R. Evid. 104 and the 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. Code Crim. Proc. arts. 1.05, 1.06 and 1.09  and moves the Court to preclude the death penalty as a sentencing option and in support thereof would show the court the following:

1.  The Defendant has been indicted by the county grand jury for capital murder.

2.  The State is seeking the death penalty.  The Eighth Amendment to the United States Constitution  requires a greater degree of accuracy and fact-finding than would be true in a noncapital case.  *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3.  Movant reasonably anticipates that the State will offer evidence concerning the "potential" for violence in the Texas Department of Criminal Justice (TDCJ).  This testimony will include isolated incidences of violence in maximum security facilities.  These acts were committed by others in the past, under often unknown security rules, measures and

1

: 00424

regulations, and as such have no relevancy to the Defendant.

4.     These alleged incidents of violence will have naturally occurred prior to this Defendant ever entering TDCJ. They may be isolated and never occur again if TDCJ successfully implements policies of intervention and prevention that are designed to prevent them occurring again.  This whole analysis reveals how simplistic and speculative that such evidence can make the sentencing process. The speculation that is inherent in the anticipated testimony denies to the Court, and this Defendant, the heightened reliability in the sentencing requirement that is mandated by the 8th and 14th Amendments to the United States Constitution.

5.     The jury's consideration of such evidence will violate the Constitutional requirement that sentencing of a defendant in a capital case be "individualized" as to that defendant. *Jurek v. Texas*, 428 U.S. 262 (1976) and *Woodson v. North Carolina*, 428 U.S. 280, 303-305, (1976).

6.  Defense counsel has been notified on April 25, 2002 of a TDCJ policy that prohibits TDCJ employees from testifying as to prison classifications, safety and security issues.  This leaves the defense with its hands tied behind its back while the State offers testimony from State employees or contractors who are allowed to testify about violent acts that have nothing to do with this Defendant.  The actions of the State of Texas are denying this Defendant the right to a fair trial and are further denying to the jurors who will be deciding his fate all of the information that they need to make a rational and informed

2

decision.

Wherefore, premises considered, Movant prays that upon hearing herein, this Court order that during the penalty phase of the Defendant's trial, the State be precluded from offering on direct exam, or eliciting on cross-exam, any evidence of prior acts of violence in TDCJ that have been committed by offenders other than this Defendant and any evidence that is not otherwise individualized to this Defendant.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx. 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

3

: 00426

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the foregoing MOTION *IN LIMINE* TO PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS.

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

4

: 00427

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION FOR ORDER "IN LIMINE" TO PRESERVE THE TRUE AND CORRECT MEANING OF "PROBABILITY" IN THE FUTURE DANGEROUSNESS INSTRUCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause, who makes and files the above captioned motion, on the following grounds:

1.    Defendant stands charged with capital murder; the state seeks to impose death as a penalty.

2.    In order to impose the death penalty, Texas law requires the state to secure a jury verdict finding that the defendant will be sufficiently dangerous in the future that his death is the appropriate penalty. Tex. Code Crim. Proc. art. 37.071 (2)(b)(1).

3.    The text of the future dangerousness special issue is as follows: "Whether there is a *probability* that the defendant would commit criminal acts of violence that would constitute a continuing threat to society".

: 00428

4.                Defendant says that the common and ordinary understanding of the word "probability" is "more likely than not", rather than the mathematical sense of the word, " any possibility". *See Robison v. State*, 888 S.W.2d 473 (Tex. Crim. App. 1994), where our Court of Criminal Appeals declared that our legislature intended the common and ordinary meaning, suggested above, in the "future dangerousness" special issue.

5.               The force and meaning of the word "probability" in this special issue may not be diluted or rendered meaningless without serious constitutional implications affecting the conduct of this trial. *See Jurek v. Texas*, 428 U.S. 262 (1976) (citing *Furman v. Georgia*, 408 U.S. 238 (1972), where the Supreme Court made it clear that the three Texas special issues were needed to accommodate the Eighth Amendment and the Due Process Clause). Put simply, after *Furman*, the death penalty was reserved for the worst murders and the worst murderers; the three special issues were upheld because they were thought adequate to assist and guide Texas sentencing juries in making the final selection among those death eligible individuals for whom death is the appropriate penalty.

: 00429

6. Further, after *Furman*, the death penalty cannot be imposed under sentencing procedures that create a substantial risk that it will be inflicted in an arbitrary and capricious manner. *Gregg v. Georgia*, 428 U.S. 153, 188 (1976), cautioned that the sentencing authority must be apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information." *Id.* 195. That guidance is sufficient only if it channels the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death. *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

7. Aggravating factors, (such as the Texas future dangerousness requirement), essential to the constitutionality of any death penalty scheme, must genuinely narrow the class of death-eligible persons in a way that reasonably justifies the imposition of a more severe sentence on the defendant compared to others found guilty of murder. *Zant v. Stephens*, 462 U.S. 862 (1983).

8. Further, both on their face, and as applied, aggravating circumstances must permit the sentencer to make a "principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990); *see also Richmond v. Lewis*, 506 U.S. 40, 46 (1992) ("a statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty"); *Clemons v. Mississippi*, 494 U.S. 738, 738 (1990) ("invalid aggravating circumstance [provided] 'no principled way to distinguish the case in which the death penalty is imposed, from the many cases in which it was not'"); *Maynard v. Cartwright*, 486 U.S. 356 (1988) ("[t]he construction or application of an aggravating

: 00430

circumstance is unconstitutionally broad or vague if it does not channel or limit the sentencer's discretion in imposing the death penalty").

9.      The three special issues upheld in *Jurek* inquired into the defendant's deliberation, his expectation that his acts would cause the death of the victim, and whether the defendant had any sense of provocation or self defense, in addition to the "future dangerousness" of the defendant.

10.     The Supreme Court has not been called upon to determine the constitutionality of the Texas "future dangerousness" question, stripped, as it now is, of the other important guiding and channeling elements present in *Jurek*.

11.     Further, the many Texas and federal cases rejecting claims of Texas death sentenced prison inmates for instructional definitions of the words in the future dangerousness question have been cast into doubt by the so-called "Penry Amendments" to Art. 37.071, which *eliminated* the specific safeguards described above while adding a new, conditional, special issue on mitigating evidence which comes into play, if at all, under a presumption in favor of death, far too easily raised by an affirmative "future dangerousness" finding.

12.     The recent Texas cases rejecting complaints of the trial court's failure or refusal to define the term "probability" have misplaced their great reliance on *Jurek v. Texas*, supra, as our Supreme Court did not then have the present, abbreviated statutory scheme before it. *See Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999).

13.     The elimination of the requirement of a reasonable expectation of the death of the victim has huge implications in this case; Mr. Blue apparently caused

the death of the victim with less than a pint of gasoline, some of which was used on a Mr. Larence Williams, not the murder victim. The new, stripped-down version of the Texas special issues now requires the inquiry into future dangerousness to do the job of all three former issues.

14.    Defendant says that the jurors must be instructed, from voir dire on, that the word "probability" means a very high probability, because life itself is in the balance. [See the dissenting opinions of justices Odom and Roberts in *Jurek v. State*, 522 S.W.2d 934 (Tex. Crim. App. 1975) (overruled on other grounds).]

15.    This is necessary to assure that the jury will not impose death except for the worst murders and murderers, *see Furman,* and that it will engage in a *reasoned* moral process, rather than a frivolous or capricious one, as required by *Penry v. Johnson*, 121 S. Ct. 1910 (2001).

16.    By indoctrinating the jury that "probability" meant "any possibility", the state secured so great and unfair an advantage over the defendant, at the expense of the Eighth Amendment and the Due Process Clauses contained in our Bill of Rights, that confidence in the reliability of the outcome is undermined.

17.    By way of illustration, Defendant says that it is useful here to imagine the most pious and righteous person in the recent history of our civilized society, perhaps Mother Teresa, the Reverend Billy Graham, Barbara Bush, or former president Jimmy Carter. One simply cannot say that there is "no possibility" that such a person would never, ever, pose some danger to person or property in the future. The truthful answer to the Texas special issue would have to be "yes", even in the cases of the three great citizens mentioned. To give this meaning to

the word "probability" deprives the whole special issue of its intended purpose: to separate the merely bad from the worst of the worst.

18.     Defendant says that in order to secure to him the true and intended, and constitutional, meaning of the "future dangerousness" special issue, the court should order the prosecutors to refrain from stating or even suggesting to the prospective jurors, or the trial panel of 12, that the word "probability" as used in the "future dangerousness" issue, means anything less than 95% probable, and if such relief is denied, then defendant requests that the jury be instructed that the word "probability" means a high probability, and if such relief is denied, he requests that as a very minimum, the word be defined for the jury as meaning "more likely than not".

19.     To permit the prosecutor to give a false impression of our law in this regard would effectively deprive the Defendant of his rights under Texas Code of Criminal Procedure, Article 37.071, Section 2(b)(1), and the Fifth, Sixth, Eighth, and Fourteenth Amendment to the United States Constitution; the requested order in limine must issue.


WHEREFORE PREMISES CONSIDERED, Defendant prays the court to grant this motion in all things, by signing an order in substantially the same form as that appended hereto.

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx. 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx.  77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the above and foregoing document has
been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

: 00434

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the foregoing MOTION  FOR ORDER  "IN LIMINE" TO PRESERVE THE TRUE AND CORRECT MEANING OF "PROBABILITY" IN THE FUTURE DANGEROUSNESS INSTRUCTION.

After consideration, the court has determined that the motion shall be, and is hereby,

_____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

: 00435

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION IN LIMINE
### (Unfair Prejudice)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta, Defendant, by and through his attorneys of record, and pursuant to Rules 104, 401, 402, 403, 404, 802, 803, 804, and 805 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and makes this his Motion in Limine.

Robert Fratta, defendant in the above-entitled and numbered criminal action, believes the prosecuting attorney and prosecution witnesses, during the course of this trial, will seek to allude to certain matters, outlined below, either during voir dire examination of the prospective jurors, opening statement, direct and cross-examination, and closing argument.

These matters include:

1. That the defendant in this case has the right to appeal the judgment of conviction.

2. A hearing outside the presence of the jury is necessary because of a motion or request filed by the defendant in this case, thereby placing "blame" upon the defendant for actions taken by counsel for the defendant in accordance with the defendant's constitutional and statutory rights.

1

: 00436

3. That the defendant, subsequent to his arrest in this case, exercised his constitutional right to remain silent and not answer any questions asked of him by law enforcement officials.

4. That the defendant may have made a statement immediately after he was detained and/or arrested in this cause, to any law enforcement official.

5. That any witness for the prosecution or the defense including the accused, has taken or refused to take the polygraph examination and the results of any such polygraph examination.

6. That the prosecutor represents the family of the victim. *Rougeau v. State*, 738 S.W.2d 651 (Tex. Crim. App. 1987) (*overruled on other grounds*).

7. That the defendant may have been previously convicted of any criminal offense or may have been charged or arrested for any criminal offense or may have any criminal case presently pending against him, or may have committed some "bad act" at some prior time. This evidence is inadmissable because the defendant has not been given proper notice as requested and its probative value is substantially outweighed by unfair prejudice and confusion of the issues pursuant to Rule 403 of the Texas Rules of Evidence. Moreover, the court must hold a hearing outside the jury's presence to determine if an offense was committed by the defendant. *See Kemp v. State*, 846 S.W.2d 289, 309 (Tex. Crim. App. 1992). If the court ultimately rules that the proffered evidence is admissible, the court must instruct the jury that it cannot consider that evidence unless the state has proved, beyond a reasonable doubt, that the defendant committed the acts. *Mitchell v. State*, 931 S.W.2d 950, 954 ( Tex. Crim. App. 1996); *Ex parte Varelas*, 45 S.W.3d 627, 630-31 (Tex. Crim. App. 2001). Lastly, the court must determine whether this evidence is relevant to "deathworthiness." *See Rachal v. State* 917 SW.2d 799, 807 (Tex. Crim. App. 1996)

2

8. That certain prosecution witnesses may be called to testify that the defendant has a "bad reputation" in the community or has an unfavorable character trait.

9. Any and all testimony concerning the impact of the offense on the deceased's family and friends and evidence of the deceased's character.

10. Any and all photographs and videos of Howard Paul Guidry, Joe Prystash, Mary Gipp, Farah Fratta, and as well as the defendant.

11. Any and all evidence concerning violence in the Texas Department of Criminal Justice, Institutional Division. Admission of this evidence is unconstitutional because it runs afoul of the request that sentencing must be individualized. *See Jurek v. Texas*, 428 U.S. 262 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 303-051 (1976).

12. Any statement made, or adopted, by the defendant. It must be determined whether (1) the dictates of Article 38.22 and 15.17 were observed; (2) the statement was freely and voluntary given, *Jackson v. Denno*, 378 U.S. 368 (1964); TEX. CODE CRIM. PROC. Art. 38.21; (3) whether dictates *Miranda v. Arizona*, 384 U.S. 436 (1966), were observed; and (4) whether the statement is the product of a unconstitutional search or seizure.

13. Any and all expert testimony concerning, *inter alia*, future dangerousness, ballistics, cause of death, DNA, blood spatter, and scene reconstruction. *See Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds).

14. Any evidence or assertions of the deceased's family members' opinions of the alleged offense or of the defendant.

15. That the prosecutor takes an oath to see that justice be done, while defense counsel

3

does not.

16.   Any expression relating to the prosecutor's belief that the defendant is guilty of the offense with which he has been charged.

17.   Any expression of any law that is not included in the court's charge to the jury.

18.   Any appeal to the jury using racial, national, or religious prejudice.

19.   Any reference to public opinion if the defendant were acquitted.

20.   Any reference as to punishment during the guilt/innocence phase of the trial.

21.   Any reference to the previous trial of Robert Fratta, Howard Paul Guidry, Joe Prystash and any reference to these individuals receiving the death penalty.

22.   Any BACK DOOR hearsay statements of any witness including Mary Gipp about the murder of Farah Fratta.

23.   Any DOUBLE hearsay statements from Mary Gipp or any other witness.


WHEREFORE, PREMISES CONSIDERED, the defendant respectfully prays that this court instruct the prosecuting attorney not to mention, refer to or otherwise bring before the jury either directly or indirectly the matters set forth above without first obtaining a specific ruling from the court outside the presence of the jury that such reference and testimony is proper and admissible.   Moreover, the defendant requests the court to instruct the prosecutor to advise his witnesses of this motion and order.   Failure to grant this motion will adversely affect the defendant's substantial rights and cannot be cured by an instruction to disregard.

4

: 00439

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's office, on February 06, 2009.

VIVIAN R. KING

5

: 00440

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## <u>ORDER</u>

BE IT REMEMBERED, that on the _____ day of _____,

2009, came to be considered the above Motion in Limine (Unfair Prejudice).  After consideration

of the motion, it is the opinion of the court that defendant's motion be:


GRANTED    _____

DENIED     _____



_____

JUDGE PRESIDING

6

: 00441

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## <u>DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE*</u>

COMES NOW, Robert Fratta, by and through his attorneys of record, and files this his Amended Motion Regarding Victim Character/Impact Testimony After *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), and as grounds therefor would show the following:

1. The Court of Criminal Appeals has recently issued a significant opinion on the issue of victim impact and character evidence. In that opinion, written by Judge Keller, the Court informs us that:

> "Our jurisprudence in this area has been somewhat inconsistent and confusing at times. We take this opportunity to announce a consistent, if not always clear-cut rule to be followed in future cases: Both victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the Defendant, and as rebuttal to the Defendant's mitigating evidence. Rule 403 limits the admissibility of such evidence when the evidence predominantly encourages comparisons based upon the greater or lesser worth or morality of the victim. When the focus of the evidence shifts from humanizing the victim and illustrating the harm caused by the Defendant to measuring the worth of the victim compared to other members of society then the State exceeds the bounds of permissible testimony. We recognize that this standard does not draw a bright and easy line for determining when evidence concerning the victim is admissible and when it is

1

not.   Trial judges should exercise their sound discretion in permitting some evidence about the victim's character and the impact on others' lives while limiting the amount and scope of such testimony.  Considerations in determining whether testimony should be excluded under Rule 403 should include the nature of the testimony, the relationship between the witness and the victim, the amount of testimony to be introduced, and the availability of other testimony relating to victim impact and character.  And, mitigating evidence introduced by the Defendant may also be considered in evaluating whether the State may subsequently offer victim-related testimony" *Mosley* 983 S.W.2d 249 (Tex. Crim. App. 1998)

## 2.  VICTIMS DEFINED BY INDICTMENT

There are several things this opinion does not do.  It does not broaden the right of the State to include victim impact or character evidence about people not named in the indictment.  Only those named in the indictment are properly considered as "victims." *See Cantu v. State* 939 S.W.2d 627 (Tex. Crim. App. 1997).

## 3.  DISCOVERY AND HEARING NECESSARY

Counsel requests that the State be required to detail, in writing, exactly which witness will testify and the substance of the testimony regarding victim impact.  Counsel further requests that the Court conduct a pretrial hearing to evaluate each witness's testimony and demeanor.  Only with this pretrial disclosure and hearing can the Court properly engage in the balancing test now required by the Court of Criminal Appeals, and only in that manner can Counsel render effective assistance in deciding whether to waive submission of the mitigation special issue to prevent the State's introducing the victim testimony.

## 4.  *BRADY* IMPLICATED

2

If the State attempts to offer victim impact or character evidence to create a sympathetic picture of the victims, the State is also obligated to disclose, and indeed to discover, any information which is to the contrary. The "anti-victim impact" evidence sought includes conviction and arrest records, problems in school, work or family, and any other character related information which, in fairness, might rebut the good character or impact evidence as offered by the State. This evidence must be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Motion be in all things sustained.

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)
ATTORNEY FOR DEFENDANT

3

: 00444

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

4

: 00445

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009,

came to be considered the DEFENDANT'S MOTION REGARDING VICTIM

CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE.*

After consideration, the court has determined that the motion shall be, and is hereby,

_____GRANTED

_____DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

5

: 00446

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## MOTION PRECLUDE THE STATE FROM OFFERING VICTIM IMPACT TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta,  Defendant in the above cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3,10, 13 & 19 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05, 1.051, 15.17, 16.01, 20.17, 26.04 26.052 and would show the court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.  The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case.  *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).   This Court and the Court of Criminal Appeals are bound by the law to make certain that a sentence of death is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3.   Victim Impact Evidence generally includes the following types of evidence that the state commonly seeks to offer during the punishment phase of a capital trial:

(a) A**victim impact@ evidence**: the impact of the capital murder on relatives and friends of the deceased;

(b) Avictim worth@ evidence: aspects of the deceased=s character and background that increased the worth of her life to others;

(c) victim opinion evidence: an opinion of a relative or friend of the deceased about the punishment that the defendant deserves the crime that he committed or his character and background.

4. In *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled) the United States Supreme Court ruled that admission of the Avictim impact evidence@ described above was not admissible during the punishment phase of a trial because it violated the 8th Amendment to the United States Constitution. The Court reasoned that the evidence was inflammatory, irrelevant to the defendant=s moral culpability, impossible to rebut without offending the jury, allowed jurors to discriminate against victims who are members of unpopular minorities and invited jurors to arbitrarily determine the value of a victim=s life by comparing him to other victims. Its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner. *Id.* at 503-503. The dissenting opinion in Booth wrote that Athe legislature=s judgment to allow a capital sentencing jury to consider victim impact evidence is entitled to particular deference; determinations of appropriate sentencing considerations are peculiarly questions of legislative policy. The Court should recognize that in a democratic society, legislatures not courts are constituted to respond to the will and consequently the moral values of the people.@ *Id* at 515.

5. Further, the Court prohibited prosecutors from making jury arguments that were based upon the victim=s worth or the impact of his murder on others, even if the evidence was admitted for a different purpose. *South Carolina v. Gathers*, 490 U.S. 805 (1989) (overruled).

6.  In 1991 the Supreme Court partially overruled Booth and Gathers in holding that the 8th Amendment did not bar *per se* evidence about the victim=s personal characteristics or the impact of the murder on the victim=s family at the punishment stage of a capital trial if the State chooses to permit it.  However, the Due Process Clause provides a safety net to protect a defendant if that evidence or argument was unduly prejudicial or fundamentally unfair.  *Payne v. Tennessee*, 111 S. Ct. 2597 (1991); and *Tong v. State*, 25 S.W.3d 707, 711 (Tex. Crim. App. 2000).

7.  Admissibility of victim impact evidence is governed by state law, subject to protections afforded by the Constitutions of the United States and the State of Texas.  *Goff v. State*, 931 S.W.2d 537, 554-55 (Tex. Crim. App. 1996).

8.  The Court of Criminal Appeals, not the Texas legislature, has adopted a rule that both victim impact and victim character evidence is admissible, in the context of the mitigation issue, to show the uniqueness of the victim, the harm caused by the defendant and as a rebuttal to the defendant=s mitigating evidence. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); and *Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999).  The court in *Mosley* limits the admissibility of such evidence when the evidence predominantly encourages comparisons based upon the greater or lesser worth or morality of the victim.  The evidence cannot measure the worth of the victim to other members of society.  The court also admonished courts to place appropriate limits on the amount, kind and source of victim impact and character evidence.  *Id.* at 263.

9.  All forms of victim impact evidence should be precluded by this Court upon the trial of the

Accused for the following reasons:

(a) Allowing any degree of victim impact evidence that is not shown to be known by the defendant when he committed the crime creates an unacceptable risk that the jury=s verdict will be influenced by community pressure, emotion or passion.  Such a verdict would be arbitrary and capricious in violation of the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Section ____ of the Texas Constitution.  The cited risks are enhanced because of the refusal by the Court of Criminal Appeals to conduct a sufficiency review of the jury=s answer to the mitigation issue. ABecause the weighing of >mitigating evidence= is a subjective determination undertaken by each individual juror, we decline to review that evidence for >sufficiency.=" *McFarland v. State*, 928 S.W.2d 482,498 (Tex. Crim. App. 1996) (overruled by *Mosley v. State*, *supra*).

(b) The Texas legislature has never seen fit to provide for the admission of any kind of victim impact evidence during the punishment phase of a capital trial.  This is particularly noteworthy in light of Court of Criminal Appeals decisions that have effectively said that if it is not provide for in Article 37.071 then it is not part of a capital prosecution.  AIt is within the legislature=s exclusive power to define the elements of capital murder and establish guidelines for deciding when the sentence of death is an appropriate penalty." *Wesbrook v. State*, 29 S.W.3d 103, 112-13 (Tex. Crim. App. 2000).  AIf the long march of death penalty jurisprudence means anything, it is that it is the legislature=s obligation to carefully structure a statutory procedure which achieves the twin goals of individualized sentencing and channeled discretion in the sentencing authority and which avoids arbitrary and capricious action by that sentencing authority. Obviously, at the heart of that statutory

procedure lie those matters which are deemed relevant to determination of the sentence.  Those matters can only be identified and authorized by the legislative representatives of the people, not by the courts.@  *Olsen v. State*, 67 P.3d. 536, 595 (Wyo. 2003); *accord Commonwealth v. Fisher*, 681 A.2d 130, at 144, *et. seq.* (Penn. 1996).

Accordingly, neither the court nor counsel have guidance from the legislature on significant issues that relate to this evidence, such as (a) whether or not defense counsel is entitled to discovery of the victim impact evidence; (b)  whether or not the court will hear the proposed witnesses prior to trial in order to determine the permissible scope and content of their testimony; (c)  whether or not the testimony shall be in a written form and be read to the jury by a neutral party; (d)  how many witnesses may testify and how close their relationship to the deceased must be; (e) whether the court must give cautionary instructions to the jury and what the instructions must say.    As noted by Justice Antonin Scalia, in his concurrence in *Payne*, the 8th Amendment Apermits the people to decide (within the limits of other constitutional guarantees) what a crime is and what constitutes aggravation and mitigation of a crime." *Payne*, 111 S. Ct. at 2613 (O=Connor and Kennedy, J.J., joining).

The Wyoming Supreme Court=s decision in 2003, in *Olsen, supra*, identified the following states which amended their statutes in a way that would provide direction to the courts on the issue of Victim Impact Evidence: Arkansas, Colorado, Florida, Louisiana, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, South Dakota and Utah.  Margaret F. Case, AVictim Impact Evidence Not Admissible in Kentucky Death Penalty Trials,@ *The Advocate*, Vol. 26, No.1 (January, 2004).

In determining the intent of the Texas legislature, it is clear that the legislature has had the

opportunity to amend the Texas Death Penalty Statute, Article 37.071, but did not do so. Tex. Code Crim. Proc. art. 56.03 (amended as late as September, 2001), entitled AVictim Impact Statement,@ clearly has no application to the capital sentencing process. Additionally, Tex. Code Crim. Proc. art. 42.03 Sec. 1(b)(1) allows for a victim statement to be made **after sentencing**. This statute was amended as late as 1995 and certainly if the legislature had intended to make this type of evidence admissible in a capital trial, Article 37.071 could easily be amended as well.

    (c) Victim Impact Evidence is not probative of any issue that prosecution is required to prove. The Court of Criminal Appeals has held that it is relevant to the mitigation issue, but the defendant has the burden as to that issue. The very nature of victim impact evidence assures that any probative value that it has is substantially outweighed by the danger of unfair prejudice to the defendant under Rule 403 of the Texas Rules of Evidence. Evidence is unfairly prejudicial when it has Aan undue tendency to suggest that a decision be made on an improper basis@. *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000). It is improper for jurors to make a decision as to whether someone lives or dies when that decision is bound to be influenced in some irrational, but indelible way. *Wiley v. State*, 74 S.W.3d 399, 407 n.21 (Tex. Crim. App. 2002). The more Arespectable@ a victim is shown to be, the less open the jurors are to consider mitigating evidence. Green, Koehering & Quiat, AVictim Impact Evidence in Capital Cases: Does the Victim=s Character Matter?@, 28 *Journal of Applied Social Psychology*, No. 2 (1998).

    WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)
ATTORNEYs FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorney's Office, on February 06, 2009.

Vivian R. King

7

: 00453

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the MOTION PRECLUDE THE STATE FROM OFFERING VICTIM IMPACT TESTIMONY.

After consideration, the court has determined that the motion shall be, and is hereby,

_____GRANTED

_____DENIED.

SIGNED the _____ day of _____, 2009.

_____

JUDGE PRESIDING

8

: 00454

INDICTMENT NO. 1195044

THE STATE OF TEXAS

Vs.

ROBERT FRATTA

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

230TH JUDICIAL DISTRICT

## ELECTION OF JURY PUNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Robert Fratta, defendant in the above-entitled and numbered criminal action, hereby requests through his attorneys of record, Randy McDonald and Vivian R. King, that the jury assess punishment if convicted of a lesser-included offense, in accordance with Tex. Code Crim. Proc. art. 37.07.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

1

: 00455

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR LIFE WITHOUT PAROLE AS A SENTENCING OPTION

COMES NOW, the Accused, Robert Fratta, by and through counsel and pursuant to the Fifth, Eighth and Fourteenth Amendments to the UNITED STATES CONSTITUTION, and Article 1 sections 3, 3a, 11, 11a, 13, 16, and of the TEXAS CONSTITUTION, and moves this Court to allow life without the possibility of parole as a sentencing option in this case. In support, Fratta would show the following:

### I.

### FACTUAL BACKGROUND

Fratta has been indicted by the county grand jury for capital murder and the State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy, fact fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

On September 1, 2005, Texas capital sentencing law changed such that life without parole ("LWOP") is now a sentencing option in a capital case. *See* TEX. PENAL CODE § 12.31; *see also* TEX. CODE CRIM. PROC. art. 37.071. The capital crime with which Fratta is charged occurred on or about November 09, 1994, before the law was

changed. Thus, to the extent there is some question whether whether Fratta could be sentenced to life without parole in this case, Fratta moves this Court for an Order permitting LWOP to be one of the penalties to which he is exposed.

## II.

## LEGAL BASIS OF MOTION

### A.

## LIFE WITHOUT PAROLE IS NOW A SENTENCING OPTION IN CAPITAL MURDER CASES IN TEXAS

Life without the possibility of parole is now available as a sentence for a defendant found guilty of a capital felony. The TEXAS PENAL CODE, amended in 2005, now states that a defendant found guilty of a capital felony in a case where the State seeks the death penalty will be punished by life imprisonment without parole or death. TEX. PENAL CODE ANN. § 12.31(a) (Vernon 2005). The statute also states that a jury in such a case will be instructed that life without parole or death is mandatory on conviction. TEX. PENAL CODE ANN. § 12.31(b) (Vernon 2005). In a case where the state does not seek the death penalty, a sentence of life without parole is the mandatory sentence upon conviction for a capital felony. *Id.*

Previously, a defendant who was convicted of capital murder in Texas could be sentenced to death or life *with* the possibility of parole. TEX. PENAL CODE ANN. § 12.31 (Vernon 2004) (prior to 2005 amendment). The amended statute eliminated life with parole and substituted LWOP as the sentencing alternative to death for those defendants convicted of capital murder.

### B.

## LWOP Should Be A Sentencing Option in this Case

1.    **The Language of Section 12.31 of the Penal Code Does Not Foreclose the Application of LWOP as a Sentencing Option in this Case.**

The language of section 12.31 of the Penal Code does not preclude the application of LWOP to any case that occurred prior to the amendment of the statute. Indeed, a plain reading would lead to the conclusion that LWOP is available.

According to the Texas Penal Code, "[t]he provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." Tex. Penal Code Ann. § 1.05 (Vernon 2005).

The Texas Court of Criminal Appeals has found that the purpose of statutory interpretation is to "effectuate the 'collective' intent or purpose of the legislators," and in order to do this the Court states, "we necessarily focus our attention on the literal text of the statute in question." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). The Court relies on the established plain meaning rule, explaining that only "where application of a statute's plain language would lead to absurd consequences," should the language not be literally applied. *Id.*

Both the Texas courts as well as the Penal Code provide that a statute should first and foremost be read plainly and the utmost effect be given to the language itself. *Id.*; Tex. Penal Code Ann. § 1.05 (Vernon 2005). It is unmistakable that the section of the Code providing LWOP as an option does not state a date or mention anything about its application to certain offenses and not others. There is neither a date of effectiveness nor a specifically mentioned time that the LWOP option is to apply. Because there are many capital cases in the state of Texas that are at various points in the litigation process,

the logical question is whether defendants currently in a position of being sentenced will get the benefit of LWOP as a sentencing option.

If the statute is to be strictly and narrowly construed, an approach clearly favored by the courts, then there is no reason why LWOP should not apply to all defendants. *See State v. Mancuso*, 919 S.W.2d 86, 88 (Tex. Crim. App. 1996); *see also Boykin*, 818 S.W.2d at 785. Had the Legislature truly intended to set clear limitations on this statute's application, then the statute itself would explicitly mention an effective date.

A faithful reading of the law does not foreclose the LWOP option to any defendant. In fact, because the plain meaning of the language does not bar its application to this case. Because LWOP is the most current available sentencing option, it would require unnecessary interpretation to find a reason why it should not apply. *Smith v. State*, 789 S.W.2d 590, 592 (Tex. Crim. App. 1990); *United States v. Scrimgeour*, 636 F.2d 1019, 1022-23 (5th Cir. 1981). As noted above, unless a statute is so ambiguous that a strict interpretation would lead to an absurd result, the plain language controls. The current law states that LWOP is a sentencing option at this time and there is no ambiguity to warrant any further consideration.

2. **The Plain Language of Article 37.071 of the TEXAS CODE OF CRIMINAL PROCEDURE Does Not Foreclose the Application of LWOP as a Sentencing Option in this Case**

Along with amending the sentencing options in the PENAL CODE, the Texas Legislature has also provided for the LWOP option in a section of the CODE OF CRIMINAL PROCEDURE which deals with capital sentencing. This statute outlines the options that a sentencing judge has when a defendant has been found guilty of a capital murder. Whether the state does or does not seek the death penalty, LWOP is either an option or

the mandatory sentence respectively. The relevant section for this case now states that if a defendant is found guilty of capital murder in a case where the state seeks the death penalty, then a separate sentencing proceeding should be conducted to determine whether he is sentenced to life without parole or death. TEX. CODE CRIM. PROC. ANN. art. 37.071 (Vernon 2005).

Much like the pertinent PENAL CODE provisions mentioned above, the sentencing guidelines in the CODE OF CRIMINAL PROCEDURE offer LWOP as an option without any explicit limitations. There is nothing in the plain language that would lead the Court to believe that only some defendants should receive the benefit of this sentencing option. All the statute states explicitly is that LWOP is an option for a defendant found guilty of a capital murder.

Only upon review of the entire Article 37.071 and all of its subsections does one find a date at all. Section 2(i) states:

> This article applies to the sentencing procedure in a capital case for an offense that is committed on or after September 1, 1991. For the purposes of this section, an offense is committed on or after September 1, 1991, if any element of that offense occurs on or after that date.

*Id*. Significantly, Section 2(i) was not amended or otherwise changed by this latest act of the Legislature. If the legislative intent was to change the date of effectiveness, then surely Section 2(i) would have also been amended.

The only question is whether there is anything in the language of either statute that limits the application of the changes to defendants whose crimes were committed before September 1, 2005. The only possible argument against applying LWOP as a sentencing option to capital crimes before September 1, 2005, is if the plain language of the amended statutes forecloses such an application by including such a bar. Neither the

pertinent sections of the CODE OF CRIMINAL PROCEDURE nor the TEXAS PENAL CODE contain such prohibitive language. Because the statutory language is clear and unambiguous, there is no need for this Court to look beyond the plain language and meaning of the law or to engage in any further interpretation.

3. **Even if this Court Were to Find that This Crime Was Not Committed When LWOP was Available as a Punishment, the Defendant Hereby Waives all Objections to Ex Post Facto Application of Section 12.31 of the PENAL CODE.**

   a. **There is Precedent to Allow Defendants to Waive Ex Post Facto Objections**

If this Court finds that LWOP is not available to a defendant whose crime was committed before the passing of the September 1, 2005 amendment, there is no law preventing Fratta from waiving any *ex post facto* claims so that he may be eligible for life imprisonment without parole..

The UNITED STATES CONSTITUTION provides two protections from *ex post facto* laws. Article I, Section 9, refers to the limits on Congress and states, "No Bill of Attainder or ex post facto Law shall be passed." Section 10, extends this prohibition to the states.

The exact definition and scope of the *ex post facto* clause was elusive until the Supreme Court explained its interpretation in *Calder v. Bull*, 3 U.S. 386 (1798). In his opinion, Justice Chase reaffirmed the idea that the prohibition on *ex post facto* laws applies only to criminal laws and provided four categories of laws that run afoul of the constitutional bar. They are as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder,* 3 U.S. at 390. To the extent that this Court would interpret the amendment to Section 12.31 of the Texas Penal Code as an *ex post facto* law, ostensibly because LWOP is a "greater punishment" than life with the possibility of parole, the next logical question is whether a defendant can waive an *ex post facto* claim in order to avoid the constitutional limitation.

This question has been answered in the affirmative in several jurisdictions in the United States. For example, in Mississippi, the Supreme Court has accepted that – like other constitutional rights – *ex post facto* rights may be waived in a knowing and intelligent manner. *See Twillie v. State*, 892 So.2d 187, 190 (Miss. 2004), *Willie v. State*, 738 So.2d 217, 220 (Miss. 1999), *West v. State*, 725 So.2d 872, 879-80 (Miss. 1998), *Stevenson v. State*, 674 So.2d 501 (Miss. 1996).

The issue first arose in Mississippi where defendant attempted to plead guilty in exchange for a newly adopted LWOP sentence on retrial. *Lanier v. State*, 635 So.2d 813, 815 (Miss. 1994). At first the Mississippi court ruled that the plea bargain with the state was a contract void for public policy reasons. *Id.* at 816. In a follow-up case, a defendant pleaded to life without parole and the Mississippi Supreme Court followed its *Lanier* decision, denying the validity of such a plea. *Patterson v. State*, 660 So.2d 966, 969 (Miss. 1995). However, the next set of cases brought a change in the Court's approach and waiver of *ex post facto* rights became the central issue. Since *Twillie*, the Mississippi courts accept waivers of *ex post facto* claims not only in plea bargain situations but also for retrials and re-sentencing. *Twillie v. State*, 892 So.2d 187, 190 (Miss. 2004). The

: 00462

Court reasoned that even though an amended sentencing scheme has the potential to run afoul of *ex post facto* prohibitions, as long as a defendant waives any future claims in an appropriate manner there is no prohibition to applying these amendments retroactively. *Id.*

Similarly, a New Jersey court ruled that as long as a defendant waived his *ex post facto* rights, it was appropriate to instruct a jury on the newly added LWOP option. *State v. Fortin*, 178 N.J. 540, 609-10 (2004). The New Jersey court found that it was not novel to waive *ex post facto* rights under this circumstance, given that several jurisdictions "have allowed defendants to waive *ex post facto* challenges to the application of life imprisonment without the possibility of parole sentencing options that took effect after the commission of a capital murder." *Id.* at 611.

Indeed, several state and federal courts have accepted waivers of *ex post facto* rights. The Kentucky Supreme Court authorized the retroactive application of an LWOP statute to a defendant whose crimes were committed before such an option existed as long as he consented. *See Furnish v. Commonwealth*, 95 S.W.3d 34, 50 (Ky. 2002). The Oklahoma Supreme Court was also compelled by a defendant's desire to waive *ex post facto* claims when it authorized the retroactive application of an LWOP statute. *Allen v. State*, 821 P.2d 371, 376 (Ok. 1991). And finally, in two Oregon cases, the United States Court of Appeals for the Ninth Circuit also upheld *ex post facto* waivers in both capital and non-capital cases. *See US v. Gilcrist*, 106 F.3d 297, 301-02 (9th Cir. 1997); *see also Rose    v.    Palmateer*,    395    F.3d    1108,    1113    (9th    Cir.    2005).

## Conclusion

Because the Texas Legislature has provided life imprisonment without the possibility of parole as a sentencing option and the plain language of the amended portions of the TEXAS PENAL CODE and the CODE OF CRIMINAL PROCEDURE do not foreclose its application to capital cases before September 1, 2005, LWOP should be permitted as a sentencing option in this case. It is an axiom of statutory construction and interpretation that a court is not required to read anything extra into a statute unless it that statute is clearly ambiguous. There is no such ambiguity on the books in Texas. Both the PENAL CODE and the CODE OF CRIMINAL PROCEDURE now include LWOP without any mention of September 1, 2005 as the cutoff date for the commission of a crime. Thus there is nothing explicitly stated which would prohibit the application of the amended statute in this case.

Even if this Court were to find that the crime in issue here was not committed when LWOP was an option, Fratta will waive any *ex post facto* claims or objections. The abundance of case law on this subject suggests that waiver of *ex post facto* claims is not only accepted, it is commonly used as a means to authorize the application of LWOP statutes retroactively. It is established that the main problem with retroactive criminal laws is that they run the risk of increasing a punishment which is explicitly prohibited by the UNITED STATES CONSTITUTION. But it is also recognized that there are many constitutional rights that can and are commonly waived. Many courts have ruled that there is no reason why an *ex post facto* objection cannot be waived like any number of other rights.

In conclusion, this Court should find that life without possibility of parole is a sentencing option for Fratta based on the fact that there is nothing in the pertinent language of the amended statute that forecloses such an application or, alternatively, because Fratta is willing to waive any *ex post facto* rights if LWOP is applied retroactively.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the February 06, 2009.

Vivian R. King

: 00465

INDICTMENT NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## <u>ORDER</u>

BE IT REMEMBERED, that on the _____day of _____, 2009, came to be considered the defendant's DEFENDANT'S MOTION FOR LIFE WITHOUT PAROLE AS A SENTENCING OPTION. The court is of the opinion the motion should be in all things:

GRANTED _____

DENIED _____

_____
JUDGE PRESIDING

INDICTMENT NO. 1195044

THE STATE OF TEXAS

Vs.

ROBERT FRATTA

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

230TH JUDICIAL DISTRICT

## MOTION TO ADOPT ALL MOTIONS
## FILED BY PREVIOUS COUNSEL FOR THE DEFENDANT

Robert Fratta, defendant in the above-entitled and numbered criminal action, moves to adopt all motions filed by previous counsel for the defendant in Cause number 712409. In support, the defendant will show the following.

Robert Fratta was originally represented by Michael Charleton and John Ackerman in this criminal action. Mr. Charleton and Mr. Ackerman filed several pre-trial motions which were ruled upon in cause number 712409.

Thereafter, the court appointed Vivian R. King and Randy McDonald to represent the defendant. Vivian R. King and Randy McDonald filed several pre-trial motions, several of which are currently pending. In an effort to clarify the record, the defendant requests that the all motions filed by Charleton and Ackerman be adopted and considered as current in this cause number 1195044 in the event any motions filed by Ms. King and Mr. McDonald are deemed deficient.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be granted and that he be given any other relief to which he is justly entitled.

1

: 00467

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYs FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorneys' Office, on FEBRUARY 06, 2009.

VIVIAN R. KING

2

: 00468

INDICTMENT NO. 1195044

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
| Vs. | HARRIS COUNTY, TEXAS |
| ROBERT FRATTA | 230TH JUDICIAL DISTRICT |

## **ORDER**

BE IT REMEMBERED, that on the _____day of _____, 2009, came to be considered the defendant's Motion to Adopt All Motions Filed by Previous Counsel for the Defendant. After consideration of the motion, it is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____

_____
JUDGE PRESIDING

3

: 00469

INDICTMENT NO. 1195044

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
| Vs. | HARRIS COUNTY, TEXAS |
| ROBERT FRATTA | 230TH JUDICIAL DISTRICT |

## MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Fratta, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and  files this Motion to Preserve Right to File Other Motions, and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Defense counsel is not always able to present every pertinent motion at the initial pre-trial motion hearing in that, even with due diligence, they may not learn of the relevance of a particular motion until after said hearing, e.g., Motion to Quash because of defective indictment based on recent Court of Criminal Appeals of federal court ruling, or a Motion to Suppress based on evidence that is produced as a result of a Pre-Trial Motion hearing.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

1

: 00470

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713/ 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS  FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been hand delivered to the District Attorney's Office, on February 06,  2009.

Vivian R. King

: 00471

INDICTMENT NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the foregoing MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS.

After consideration, the court has determined that the motion shall be, and is hereby, _____ GRANTED.

_____ DENIED.

SIGNED the _____ day of _____, 2009.

_____
JUDGE PRESIDING

3

: 00472

P2

Cause #712409, 1195044

| THE STATE OF TEXAS | )( | IN THE 230th DISTRICT |
| V. | )( | COURT OF |
| ROBERT ALAN FRATTA | )( | HARRIS COUNTY, TEXAS |

**MOTION TO RELEASE EVIDENCE**

**FILED**
Loren Jackson
District Clerk

FEB 1 2 2009

Time: _____

By _____
Harris County, Texas
Deputy

COMES NOW THE STATE OF TEXAS by and through the undersigned Assistant District Attorney and moves this court to order the custodian of evidence for the Harris County District Clerk's Office to release all evidence that was introduced in the trial styled The State of Texas v. Robert Alan Fratta Cause #712409. In support of the Motion the State would show the court the following:

I.

The defendant was convicted by a jury of the offense of Capital Murder on April 23, 1996. There were 92 exhibits offered into evidence during the trial.

II.

The defendant was granted a new trial by Judge Vanessa Gilmore in a Federal Writ of Habeas Corpus. The defendant's case was re-indicted as Cause #1195044. The retrial of the defendant's Capital Murder case is scheduled for March 20, 2009 in the 230th District Court.

III.

The evidence introduced in the first trial is needed for the Capital Murder case that is currently pending against the defendant.

Respectfully Submitted,

_OR Bradley_
Assistant District Attorney

IMAGED

: 00473

dmg131993
dmg131999

Cause #712409, 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 230th DISTRICT |
| V. | )( | COURT OF |
| ROBERT ALAN FRATTA | )( | HARRIS COUNTY, TEXAS |

**O R D E R**

On this the __23__ day of __February__ 2009 came to be heard the State's Motion to Release Evidence from the Harris County District Clerk's Office. The State's Motion is hereby:

GRANTED: _____

DENIED: _____

JUDGE

: 00474

CAUSE #1195044

| THE STATE OF TEXAS | § | IN THE 230TH DISTRICT |
| V. | § | COURT OF |
| ROBERT ALAN FRATTA | § | HARRIS COUNTY, TEXAS |

## STATE'S MOTION TO TRANSFER ALL MOTIONS AND DOCUMENTS

Comes now the State of Texas, by and through the undersigned Assistant District Attorney and respectfully requests the Court to transfer all motions and documents filed in Cause # 712409 styled the State of Texas v. Robert Alan Fratta to the above entitled Cause. In support of the motion the State submits the following:

I.

Cause number 1195044 styled the State of Texas v. Robert Alan Fratta is the reindictment of Cause number 712409. The majority of information pertaining to this case has been filed in the original Cause number.

II.

The information filed in the original cause number is relevant and pertinent to the above entitled cause. It is in the interest of both parties to have all the information from the original Cause number 712409 transferred to the current Cause # 1195044.

**FILED**
Loren Jackson
District Clerk

MAR - 9 2009

Harris County, Texas

Time: _____

By _____
                Deputy

1.

: 00475

The State, therefore requests that the court grant the above Motion to Transfer all Motions and Documents.

Respectfully Submitted,

Denise Bradley
Asst. District Attorney
Harris County, Texas

# O R D E R

On this the _____ day of March the State's Motion to Transfer All Motions and Documents is hereby:

GRANTED/DENIED

Hon. Belinda Hill
230th District Court

2.

NO. 1195044

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 230th DISTRICT |
| VS. | § | COURT OF |
| ROBERT ALAN FRATTA | § | HARRIS COUNTY, TEXAS |

## NOTICE OF INTENTION TO USE EVIDENCE OF PRIOR CONVICTIONS
## AND EXTRANEOUS OFFENSES

COMES NOW, the undersigned Assistant District Attorney, Denise Bradley, and files this Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses and would show the Court the following:

1. Cause No. 1195044 is presently pending in this Court and is set for jury trial for the week of April 13, 2009.

2. Pursuant to Rules 404(b) and 609 of the Texas Rules of Criminal Evidence and section 37.07 of the Texas Rules of Criminal Procedure, the undersigned Assistant District Attorney hereby gives notice to the Defendant, his Counsel, and the Court that the State intends to offer evidence of Prior Convictions and Extraneous Offenses of this Defendant to impeach the testimony and/or enhance the range of punishment of the Defendant as such become admissible. Such evidence may further be admissible for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. The prior convictions/extraneous offense(s) which the state intends to introduce at trial are as follows:

On or about May of 1994 the defendant asked Jason Terry to find someone to kill his wife in Harris County, Texas.

On or about 1994 the defendant asked Richard Orlando if he knew anyone who would kill his wife.

On or about October of 1994 the defendant asked Helen Faye Welch if she knew anyone who would kill somebody else and he asked specifically if she knew any black murderers.

On several occassions from on or about May of 1994 until on or about November of 1994 the defendant asked James Podhorsky if he knew anyone who would kill his wife.

On or about August of 1994 the defendant asked James Podhorsky to commit a burglary in Missouri City, Texas.

On or about August or September of 1994 the defendant told Mike Melton he would kill Farah, get out on parole and get his kids.

On or about October of 1994 the defendant told Jerry Parker that he should "go ahead and kill her (Farah), do my time and get the kids".

In the summer of 1994 the defendant offered James Ray Thomas $3,000 to kill his wife.

On or about August of 1994 the defendant asked Alicia Barren if she knew someone who would kill his wife.

FILED
Loren Jackson
District Clerk

MAR - 9 2009

Time: _____
Harris County, Texas
By _____
Deputy: 00477

On or about 1994 the defendant asked John Ruiz if he knew someone who would "knock someone off". He also stated "you're a Mexican I thought some of your people would do this".

On or about September 27, 1993 the defendant was found to be in contempt of court in the 308th District Court of Harris County, Texas for failure to pay child support.

On or about September 18, 1991 the defendant sexually harrassed Marilyn Stepp in Missouri City, Texas.

On or about June 28, 1994 the defendant solicited, encouraged, aided or attempted to aid Joseph Prystash in the commission of a Burglary of a Habitation that occurred at 19610 Forest Fern Drive, Humble, Harris County, Texas.

On or about July 16, 2001 the defendant was found guilty of Possession of illegal contraband namely one piece of steel approximately 12 inches long and one half inch wide.

The defendant allegedly committed deviant sexual acts as described by the complainant on December 15, 1993. These acts allegedly occurred during the course of their marriage from May of 1983 through their separation in June of 1992.

The defendant has admitted that he used illegal steroids.


The State presents further that the defense has been provided a full copy of the offense report and has had full access to the State's file and transcripts which contain detailed accounts of the information briefly detailed above. Should we obtain additional information of a 404(b) nature we will provide notice of the same.

Respectfully submitted,

Denise Bradley
Assistant District Attorney
Harris County, Texas

00478

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the above foregoing motion was sent via facsimile and/or certified mail to Defense Counsel on this 9th day of March, 2009.

*hand delivered*

Denise Bradley
Assistant District Attorney
Harris County, Texas

CAUSE NO. 1195044

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **In the 230th DISTRICT COURT** |
| | § | |
| **v.** | § | **IN AND FOR** |
| | § | |
| **ROBERT FRATTA** | § | **HARRIS COUNTY, TEXAS** |

## MOTION FOR DISCOVERY of EXPERTS:  CCP Art. 39.14 (b)

TO THE HONORABLE JUDGE OF SAID COURT:

ROBERT FRATTA, defendant in the above-entitled and numbered criminal action, pursuant to the Code of Criminal Procedure (CCP) Article 39.14 (b) moves this Honorable Court and the State to:

(1) disclose to the defense the name and address of each person the State may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence; and

(2) specify the time and manner in which the State must make the disclosure to the defense, but not later than the 20th day before the date the trial begins.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

**FILED**
Loren Jackson
District Clerk

MAR 1 6 2009

Time: _____
By _____
Harris County, Texas
Deputy

1

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

ATTORNEYS FOR THE DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Suppress Evidence and Statements was emailed to the District Attorney's office on March 13, 2009.

Vivian R. King

2

: 00481

CAUSE NO. 1195044   ORIGINAL

| STATE OF TEXAS | § | In the 230th DISTRICT COURT |
| | § | |
| v. | § | IN AND FOR |
| | § | |
| ROBERT FRATTA | § | HARRIS COUNTY, TEXAS |

## NOTICE OF DEFENSE EXPERTS:  CCP Art. 39.14 (b)

TO THE STATE OF TEXAS:

ROBERT FRATTA, defendant in the above-entitled and numbered criminal action, pursuant to the Code of Criminal Procedure (CCP) Article 39.14 (b) discloses the following experts:

(1) Ballistics expert: Ronald L. Singer, 7958 Dusty Way, Ft. Worth, Texas 76123.

(2) Hand writing expert: Global Executing Protection, 2125 N. Loop 336 West #120, Conroe, Texas, 77304.

(3) Family Law expert: If needed.

(4) Dr. Rahn Bailey, Psychiatrist, Meharry Medical College, 1005 Dr. D.B. Todd Blvd., Nashville, TN 37208.

(5) Other experts that might become necessary to confront Mr. Fratta's accusers as guaranteed by the 6th and 14th Amendments of the United States Constitution.

**F I L E D**
Loren Jackson
District Clerk

MAR 1 6 2009

Time: _____
Harris County, Texas

By _____
Deputy

Respectfully Submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

1

: 00482

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice of Experts was emailed to the District Attorney's office on March 13, 2009.

Vivian R. King

2

: 00483

NO. 1195044

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 230th DISTRICT COURT |
| VS. | § | OF |
| ROBERT ALAN FRATTA | § | HARRIS COUNTY, TEXAS |

## STATE'S DISCLOSURE OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the STATE OF TEXAS, a party in the above captioned and numbered cause, by and through the undersigned Assistant District Attorney, pursuant to TEX. CODE CRIM. PROC., art. 39.14 (b) [1999]. The undersigned Assistant District Attorney hereby gives notice that the state may use to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence at the trial in the above captioned and numbered cause the following individuals:

1. Dr. Wolfe Asst.- Medical Examiner 1554 Old Spanish Trail Houston, Texas 77054

2. Charlie Anderson- Ballistics 6123 Manry Ave. Brookside Valley, Texas 77581

3. Robert Baldwin- Ballistics 1554 Old Spanish Trail Houston, Texas 77054

4. Dr. Larry Abrams- Psychologist 510 Bering Dr. #200 Houston, Texas 77057

5. Dr. Gregory Riede-Psychologist Office of Psychological Services HPD 4949 W. 34th #133 Houston, Texas 77092

6. Dr. Lois Friedman-Psychologist Baylor College of Medicine One Baylor Plaza Houston, Texas 77030

7. Stephen Rogers –TDC Classification Expert P.O. Box 99 Huntsville, Texas 77342

8. George Jordan – Records Analyst DA's Office 1201 Franklin Houston, Texas 77002

RESPECTFULLY SUBMITTED,

*Denise Bradley*

Denise Bradley
Assistant District Attorney
Harris County, Texas
1201 Franklin
Houston, Texas 77002
(713) 755-6158
FAX: (713) 755-6976

**FILED**
Loren Jackson
District Clerk

MAR 1 6 2009

Time: _____
Harris County, Texas
By _____
Deputy

: 00484

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the above foregoing motion was sent via facsimile and/or certified mail to Defense Counsel on this 16th day of March, 2009.

Denise Bradley
Assistant District Attorney
Harris County, Texas

CAUSE NO. _1195044_

THE STATE OF TEXAS                          IN THE _230th_ DISTRICT COURT

VS.

_ROBERT PRATTA_
(Name of Defendant)

AKA_____                          OF HARRIS COUNTY, TEXAS

## MOTION FOR COMMUNITY SUPERVISION

NOW COMES the defendant ~~charged~~ *CONVICTED* with the offense of _A NOW CAPITAL OFFENS_
and prior to entering a plea of (not guilty) / guilty / nolo contendere states the following:

"I am the defendant in this case and I swear that the following is true and correct. I have:

☐ never been convicted of a felony in this or any other state;

☐ never been placed on community supervision for a felony offense in this or any other state;

☐ been convicted of a felony, namely, _____ in the state of _____ in 20_____;

☐ been convicted of a federal crime, namely, _____ a misdemeanor / felony in 20_____;

I request:

☐ the judge presiding place me on community supervision;

☑ the jury recommend to the judge presiding that I be placed on community supervision

**FILED**
Loren Jackson
District Clerk

MAR 1 6 2009

Time:_____
By_____
    Harris County, Texas
          _____
              Deputy

_Pratta_
Defendant

MAR 1 6 2009

Sworn to before me on this date:

LOREN JACKSON
District Clerk, Harris County, Texas
By_____
Deputy

: 00486

CAUSE NO. 1195044

THE STATE OF TEXAS

VS.

Robert Alan Fratta
**(Name of Defendant)**

AKA _____

IN THE 230th DISTRICT COURT

COUNTY CRIMINAL COURT AT

LAW NO. _____

OF HARRIS COUNTY, TEXAS

## PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐ MOTION TO ADJUDICATE GUILT

☐ MOTION TO REVOKE COMMUNITY SUPERVISION

☒ CAPITAL VENIRE FOR THE WEEK OF 3 - 30 - 09

☐ SHOW CAUSE ORDER FOR CONTEMPT

☐ OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on _____ 3 - 24 - 09

Loren Jackson
~~THERESA CHANG,~~
District Clerk, Harris County, Texas

By _____
Deputy

---

### SHERIFF'S RETURN

Came to hand_____A.D., 19_____, at _____ o'clock _____.m.

And executed_____A.D., 19_____, at _____ o'clock _____.m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____, Deputy

CRIMCSCB12  9-7-99

: 00487

CAUSE NO. 1195044

THE STATE OF TEXAS
vs
Robert Alan Fratta

IN THE 230th DISTRICT COURT
OF HARRIS, TEXAS

## JURY

1. #3- Michael Glenn Ebow - 3.30.09
2. #26- Michael Herbert Joseph - 4.1.09
3. #40- Bobby Joe McDaniel - 4.1.09
4. #52- Fred Eugene Kuhn - 4.2.09
5. #62- David James Rials - 4.3.09  X
6. #67- Her Tahpense Robinson - 4.6.09
7. #73- Cynthia Adrienne Hurrington - 4.6.09
8. #98- Jason Alexander Roddy - 4.7.09
9. #116- AUBREY LYNN WADDAIL 4-8-
10. #126- Charles Thorp 4-9-09
11. #158- William C. Moore 4-9-0
12. #177- Barbara A Archie - 4.15.09
13. #178- Maria Humble Chip - 4.15.09
14. #184- CHUKWU E OFOR - 4.15.09

## DEFENDANT

1. #16 Kathy Lynn Guenther - 3.31.09
2. #18- Lisa Ann Cooper - 3.31.09
3. #20- Raymond J Glass - 3.31.09
4. #6 Timothy D Cartwright - 4.2.09
5. #56 Wesley Ray Corley - 4.2.09
6. #77- Mary Garcia Torres - 4.6.09
7. #88- Ethel Kruse - 4.7.09
8. #93- Jimmy Wayne Henderson - 4.7.09
9. #100- Marcilia Ann Westerman - 4.7.09
10. #117- David Gessing - 4-9-09
11. #121- William Folts 4-9-09
12. #139- Steven Meyer - 4.13.09
13. #143- Francis James Aubrey - 4.13.09
14. #145- William Allen Kyzar - 4.13.09
15. #180- Ione B Hernandez - 4.15.09

## STRIKES

## STATE

1. #5- Susan Valeria Crawford - 3.30
2. #21- Michelle Lynette Hood - 3.31.09
3. #27- Katherine Jean Hoagland - 4.1
4. #49- Lula Mae Banks - 4.2.09
5. #58- Gail Marie Montano - 4.2.09
6. #90- Marissaelena Y Montenegro - 4.7.09
7. #94- Calvin Lott - 4.7.09
8. #107- Judy Ellen Haner - 4.8.09
9. #118- Marco Rodriguez 4-9-09
10. #137- Claudia Bivirana Guzman - 4.13
11. #176- Janice Marie Scott - 4.15.09
12. #179- Dennis John Miller - 4.15.
13.
14.
15.

FILED
Loren Jackson
District Clerk
MAR 26 2009
Harris County, Texas
By _____ Deputy

## CAUSE/ARGUMENTS

1. #46- Zakia Nuruddin - 3.30.09
2. #1- Mary Rita Stark-Love - 3.30.09
3. #3- Larry Gilliam - 3/30.09
4. #4- Rory Richard Knott - 3.30.09
5. #7- Steven Wayne Coats - 3.30.09
6. #8 Pedro Alonso Sanchez - 3.30.09
7. #9- Grover Eugene Erpey - 3.30.09
8. #11- Kathleen Kay Reich - 3.30.09
9. #12- Melissa Talbot James - 3.30.09
10. #14- Dougar M. Chancellor - 3.30.0
11. #15- David Glenn Wooldridge - 3.30
12. #17 Nancy Helen Taylor - 3.30.09

: 00488

CAUSE NO. 1195044

THE STATE OF TEXAS

vs

Robert Alan Fratta

IN THE 23D DISTRICT COURT

OF HARRIS, TEXAS

13. #19- Linda Ameil Reece - 3/30/09
14. #22 - Paul A Jackowski - 3/30/09
15. #23- Nancy Renee Rocha - 3/30/09
16. #28 Grady Marie Paris - 3/30/09
17. #34- Judith Emerson Casello - 3/30/09
18. #35- Marcelino Lopez Padilla - 3/30/09
19. #36- Shawn Michael Webb - 3/30/09
20. #38- Eleanor C Johnson - 3/30/09
21. #39- Steven Matthew Bagwell - 3/30/09
22. #41- Janice Hicks Weatherton - 3/30/09
23. #42- Tonya Alisse Richard - 3/30/09
24. #43- Manuel Antonio Agramont - 3/30/09
25. #45- Marla Nicole Henderson - 3/30/09
26. #48- Michael C Biederstadt - 3/30/09
27. #54- Wilbert Lee Williams - 3/30/09
28. #55- Rameshchandra A Patel - 3/30/09
29. #57- Victoria Ann Delmonico - 3/30/09
30. #59- Ralph Marron - 3/30/09
31. #60- Jesse Lee Whitley - 3/30/09
32. #61- John Curtis Martinez - 3/30/09
33. #64- Louise R Cochran - 3/30/09
34. #65- Noma Fleming Olmsted - 3/30/09
35. #2 - Virginia Lee Duke - 3/30/09
36. #5D- Janet Toole Sink - 3/30/09
37. #10- Steven Mark Fradkin - 3/30/09
38. #24 Michael Scott Murphy 3.31.09
39. #29- Frederick Wayne Dagel - 3.31.09
40. #25- Steven Donell Gillespie - 4.1.09
41. #30 Maya Jeanine Holmes-Scott 4.1.09
42. #31- Michael Joe Aguilar - 4.1.09
43. #32- Hongloan Tran Nguyen - 4.1.09

44. #33- Melissa Ortega Nikolaidis - 4.1.09
45. #37- Kelly Magee Berube - 4.1.09
46. #47- Gabriela Hernandez Zabala - 4.2.
47. #53- Xue Yang - 4.2.09
48. #44- Elizabeth Ann Glover - 4.2.09
49. #51- Orlando Fonseca - 4.2.09
50. #63- Kirk A Williams - 4.3.09
51. #66- Tiffany Elizabeth Mathew - 4.
52. #69- Rafael Edric Hawkins - 4.3.09
53. #70- Jay B Clark - 4.3.09
54. #71- Rafael Ramirez - 4.3.09
55. #72- Brian Douglas Landler - 4.3.09
56. #74- Maria Antonia Duran - 4.3.09
57. #75- Melanie Marie Martin - 4.3.09
58. #80- Daniel Theodore Uebbing - 4.3.09
59. #81- Kevin Wayne Boyer - 4.3.09
60. #83- Martin J Crowin - 4.3.09
61. #85- Stephen D Woods - 4.3.09
62. #86- Elizabeth B Bowen - 4.3.09
63. #88- David Michael Dickinson - 4.3.09
64. #95- Allen Ray Glenewinkel - 4.3.09
65. #96- Nancy Zbranek Mayer - 4.3.09
66. #97- Michele Rae Blythe - 4.3.09
67. #99- Mark Jackson Dooney - 4.3.09
68. #101- Michael L Cabiran - 4.3.09
69. #104- Ida Castaneda Hytche - 4.3.09
70. #105- Michelle Burton Fisher - 4.3.09
71. #106- Shailey Nidhi Gupta-Brietzke - 4.3.09
72. #108- David Paul Schmidt - 4.3.09
73. #103- Jeffrey Allan Boswell - 4.3.09
74. #92- Gerardo Rodriguez - 4.3.09

CAUSE NO. 1150044

THE STATE OF TEXAS

vs

Robert Alan Fratta

IN THE 230th DISTRICT COURT

OF HARRIS, TEXAS

75. #110-Jerie Terico Creal-4.3.09
76. #168- Michael James Sigmund-4.6.09
77. #84- Kimberly Cresso Stout-4.6.09
78. #109-Clara Cadena Hernandez-4.6.09
79. #82- Norman Douglas Ryer-4.6.09
80. #87- Reynaldo Nieto, Jr-4.6.09
81. #76-Ronald Glenn Wachtman-4.6.09
82. #78-Louise Ann Wynne-4.6.09
83. #79- Amy Jo Ryan-4.6.09
84. #89-Luis Miquel Garrido-4.7.09
85. #102-Brenda Lovett Coleman-4.8.09
86. #113-Irene Susana Pozzerle-4.8.09
87. #114-Megan Dean Richardson-4.8.09
88. #115-carla Sight Mckee-4.8.09
89. #119-Jashondra Denise Williams-4.8.09
90. #120-Donna Manuel Long-4.8.09
91. #122-JoeBob Rivers Thompson-4.8.09
92. #123-Leroy Moura-4.8.09
93. #124-Carrie Eden Flick-4.8.09
94. #125-Susan Plsek Phillips-4.8.09
95. #128-Jairo Francisco Rojas-4.8.09
96. #131-Brenda Crowe Sadler-4.8.09
97. #132-James Stephen Shockley-4.8.09
98. #133-Feliciano G Alcaraz-4809
99. #134-Michael Lee McDonald-4.8.09
100. #135-Mark Andrew McEachin-4.809
101. #136-Rosa Alvidrez-4.8.09
102. #138-Felneetra Cottrere Wilson-4809
103. #147-Mark Alan Farrior-4.8.09
104. #149-Victoria Ann Casey-4.8.09
105. #151-Cesar Rosario Lebron-4.8.09
106. #152-Louis Matthew Toussaint-4.809

107. #154-Robert Eugene Wilson-4.8.09
108. #157-Sandra Larigne Leno-4.8.09
109. #159-William Howard Emanuel-4.8
110. #160-Jerry W Walters-4.8.09
111. #141-Blanca Raquel Rodriguez-4.8.09
112. #148-Leveryi Adams-4.8.09
113. #111-William A Laing-4.8.09
114. #112 Teddy Dewayne Gayden-4.8
115. #155 Amy Collins 4-9-09
116. #127 Raphael Romigh 4-9-09
117. #144-Tuong Anh Do-4.13.09
118. #153-Nhon C Van-4.13.09
119. #140-John Thomas Klug-4.13.09
120. #142-William R Hillier-4.13.09
121. #150-Cruz Ramirez Flores-4.9.09
122. #146-Harry Boyton Grant-4.14.09
123. #156-Orbdella Clark Mclamb-4.14.09
124. #161-Alexander P Daniel-4.14.09
125. #164-Jeanette Alison Garay-4.14.09
126. #166-William Clayton Gunter-4.14.
127. #169-Patricia Bailey Bryant-4.14.0
128. #170-Allen McGhee-4.14.09
129. #173-Bryan Lee Franta-4.14.09
130. #175-William Joseph White-4.14.09
131. #162-Eric Edmundo Villagomez-4.14.
132. #163-Samantha Jo Depper-4.14.09
133. #165-Lewis Allen Kelly-4.14.09
134. #167-Bennett J Edwards-4.14.09
135. #171-Carolyn Kay Nickson-4.14.09
136. #182-Adriana Senato Cortez-4.14.09
137. #189-Deborah Lee Symonds-4.14.09
138. #168-Bessie Richards Pruitt-4.14.0

: 00490

CAUSE NO. 1195044

THE STATE OF TEXAS

VS

Robert Alan Fratta

IN THE 230 DISTRICT COURT

OF HARRIS, T E X A S

139. #172 - William Charles Hanf - 4.14.09
140. #174 - Tamma Ellis Berkovsky - 4.14.09
141. #181 - Stacy Lynn Berger - 4.15.09
142. #185 - Robert V. Griffith - 4.15.09
143. #186 - Pete Holguin - 4.15.09
144. #187 - Deidra Justine Turek - 4.15.09
145. #188 - Amanda Powell McEwan - 4.15.09
146. #190 - Sheric Klein Hensley - 4.15.09
147. _____
148. _____
149. _____
150. _____
151. _____
152. _____
153. _____
154. _____
155. _____
156. _____
157. _____
158. _____
159. _____
160. _____
161. _____
162. _____
163. _____
164. _____
165. _____
166. _____
167. _____
168. _____
169. _____
170. _____

171. _____
172. _____
173. _____
174. _____
175. _____
176. _____
177. _____
178. _____
179. _____
180. _____
181. _____
182. _____
183. _____
184. _____
185. _____
186. _____
187. _____
188. _____
189. _____
190. _____
191. _____
192. _____
193. _____
194. _____
195. _____
196. _____
197. _____
198. _____
199. _____
200. _____
201. _____
202. _____

CAUSE NO. _____

THE STATE OF TEXAS

VS

_____

IN THE _____ DISTRICT COURT

OF HARRIS, T E X A S

203. _____
204. _____
205. _____
206. _____
207. _____
208. _____
209. _____
210. _____
211. _____
212. _____
213. _____
214. _____
215. _____
216. _____
217. _____
218. _____
219. _____
220. _____
221. _____
222. _____
223. _____
224. _____
225. _____
226. _____
227. _____
228. _____
229. _____
230. _____
231. _____
232. _____
233. _____
234. _____
235. _____

236. _____
237. _____
238. _____
239. _____
240. _____
241. _____
242. _____
243. _____
244. _____
245. _____
246. _____
247. _____
248. _____
249. _____
250. _____
251. _____
252. _____
253. _____
254. _____
255. _____
256. _____
257. _____
258. _____
259. _____
260. _____
261. _____
262. _____
263. _____
264. _____
265. _____
266. _____
267. _____
268. _____

CAUSE NO. _____

THE STATE OF TEXAS

VS

_____

IN THE _____ DISTRICT COURT

OF HARRIS, T E X A S

269._____

270._____

271._____

272._____

273._____

274._____

275._____

276._____

277._____

278._____

279._____

280._____

281._____

282._____

283._____

284._____

285._____

286._____

287._____

288._____

289._____

290._____

291._____

292._____

293._____

294._____

295._____

296._____

297._____

298._____

299._____

300._____

CAUSE NO. _____

THE STATE OF TEXAS

VS

_____

IN THE _____ DISTRICT COURT

OF HARRIS, T E X A S

**SELECTED JURORS**
**JURY POOL**

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____
26. _____
27. _____
28. _____
29. _____
30. _____
31. _____
32. _____

33. _____
34. _____
35. _____
36. _____
37. _____
38. _____
39. _____
40. _____
41. _____
42. _____
43. _____
44. _____
45. _____
46. _____
47. _____
48. _____
49. _____
50. _____
51. _____
52. _____
53. _____
54. _____
55. _____
56. _____
57. _____
58. _____
59. _____
60. _____
61. _____
62. _____
63. _____
64. _____

CAUSE NO. 595044

THE STATE OF TEXAS

VS.

Robert Alan Fratta
**(Name of Defendant)**

AKA _____

IN THE 230th DISTRICT COURT

~~COUNTY CRIMINAL COURT AT~~

~~LAW NO.~~ _____

OF HARRIS COUNTY, TEXAS

### PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐ MOTION TO ADJUDICATE GUILT

☐ MOTION TO REVOKE COMMUNITY SUPERVISION

☒ CAPITAL VENIRE FOR THE ~~WEEK~~ DAY OF 3-27-09

☐ SHOW CAUSE ORDER FOR CONTEMPT

☐ OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on 3-25-09

~~THERESA CHANG,~~   Loren Jackson
District Clerk, Harris County, Texas

By _____
Deputy

---

SHERIFF'S RETURN

Came to hand_____A.D., 19_____, at _____ o'clock _____.m.

And executed _____A.D., 19_____, at _____ o'clock _____.m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____, Deputy

CRIMCSCB12   9-7-99

: 00495



**ADRIAN GARCIA**
Sheriff of Harris County
1200 Baker Street
HOUSTON, TEXAS 77002-1206
www.hctx.net/so

March 5, 2009

Ms. Vivian King, Attorney at Law
c/o Carmen Laffey, Investigator
2900 Smith, Suite 220
Houston, Texas 77006
*Hold for Pick-Up*

Re:    *Records of Harris County Sheriff's Office Sought by Defense Attorney Vivian King in Cause No. 1195044, Styled* **The State of Texas v. Robert Fratta***, in the 230th Judicial District Court of Harris County, Texas.*

Dear Ms. King and Ms. Laffey:

In response to a *subpoena* (*see* copy attached) issued on your behalf in the above-referenced and -styled criminal prosecution, the Harris County Sheriff's Office herewith produces certain records responsive to such request, specifically, Jail disciplinary and classification records for Robert Fratta, SPN 01456938. Inasmuch as the Sheriff's Office has a policy of not providing records directly to defense counsel when we have reason to believe that a criminal prosecution is pending, this record is being produced to you *directly* pursuant to an Order signed by Judge Belinda Hill on February 23, 2009, which directly orders the Harris County Sheriff's Office to produce the said records to you or your Investigator, Carmen Laffey. To assist you, a business records affidavit has been prepared and is being submitted with such records. Please advise if I can be of further assistance; I can be reached in my office in the Sheriff's Office, at 1200 Baker Street, telephone 713-755-8139.

Sincerely,

Dalora Miller, Paralegal
DM/st
Enclosures

**FILED**
Loren Jackson
District Clerk

MAR 2 5 2009

Time _____
Harris County, Texas

By _____
Deputy

cc:    Clerk, 230th Judicial District Court of Harris County, Texas
           1201 Franklin, 16th Floor, Houston, TX 77002
       Chief Prosecutor, 230th Judicial District Court of Harris County, Texas
           1201 Franklin, 16th Floor, Houston, TX 77002



*An Internationally Accredited Agency*

: 00496

2 30th
dms|131994

Cause No. 1195044

The State of Texas

vs.

Robert Alan Fratta

Please allow the defendant to shave each morning before he is sent to court. This Request Applies only during his trial on days he is sent to court.

Signed this 31st day of March 2009.

Judge Presiding

IMAGED

: 00497

CAUSE NO. 1195044

THE STATE OF TEXAS

VS.

Robert Alan Fratta
(Name of Defendant)

AKA _____

IN THE 230th DISTRICT COURT

~~COUNTY CRIMINAL COURT AT~~

~~LAW NO.~~ _____

OF HARRIS COUNTY, TEXAS

## PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐ MOTION TO ADJUDICATE GUILT

☐ MOTION TO REVOKE COMMUNITY SUPERVISION

☒ CAPITAL VENIRE FOR THE ~~WEEK~~ OF 3-27-09

☐ SHOW CAUSE ORDER FOR CONTEMPT

☐ OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on 3-25-09

Loren Jackson
~~THERESA CHANG,~~
District Clerk, Harris County, Texas

By _____
Deputy

---

### SHERIFF'S RETURN

Came to hand 3-25 A.D., 19 3009, at 1140 o'clock __ .m.

And executed 3-25 A.D., 19 3009, at 1230 o'clock __ .m.

By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____ 3078, Deputy

FILED
Loren Jackson
District Clerk

MAR 31 2009

Time: _____
By _____
Harris County, Texas

CRIMCSCB12 9-7-99

: 00498



CAUSE NO. <u>1195044</u>

| | |
|---|---|
| THE STATE OF TEXAS | IN THE <u>230TH</u> DISTRICT COURT |
| VS. | COUNTY CRIMINAL COURT AT |
| <u>ROBERT ALAN FRATTA</u> | LAW NO. _____ |
|    **(Name of Defendant)** | |
| AKA _____ | OF HARRIS COUNTY, TEXAS |

### PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐   MOTION TO ADJUDICATE GUILT

☐   MOTION TO REVOKE COMMUNITY SUPERVISION

☒   CAPITAL VENIRE FOR THE WEEK OF <u>4/6/2009</u>

☐   SHOW CAUSE ORDER FOR CONTEMPT

☐   OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on <u>3/31/2009</u>.

LOREN JACKSON,
District Clerk, Harris County, Texas

By _____
Deputy

---

SHERIFF'S RETURN

Came to hand _____ MAR 3 1 2009 _____ A.D., 19_____, at __9:02__ o'clock __A__.m.

And executed _____ MAR 3 1 2009 _____ A.D., 19_____, at __9:02__ o'clock __A__.m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____, Deputy

**FILED**
Loren Jackson
District Clerk

MAR 3 1 2009

Time: _____
By _____
Harris County, Texas
Deputy

CRIMCSCB12   9-7-99

00499



CAUSE NO. <u>1195044</u>

THE STATE OF TEXAS

VS.

<u>ROBERT ALAN FRATTA</u>
   **(Name of Defendant)**

AKA _____

IN THE <u>230TH</u> DISTRICT COURT

COUNTY CRIMINAL COURT AT

LAW NO. _____

OF HARRIS COUNTY, TEXAS

## PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐    MOTION TO ADJUDICATE GUILT

☐    MOTION TO REVOKE COMMUNITY SUPERVISION

☒    CAPITAL VENIRE FOR THE WEEK OF <u>4/13/2009-4/17/2009</u>

☐    SHOW CAUSE ORDER FOR CONTEMPT

☐    OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on <u>4/3/2009</u>.

LOREN JACKSON,
District Clerk, Harris County, Texas

By _____
Deputy

---

### SHERIFF'S RETURN

Came to hand _____ APR - 3 2009 _____ A.D., 20_____, at __10:54__ o'clock __A__.m.

And executed _____ APR - 3 2009 _____ A.D., 20_____, at __10:54__ o'clock __A__. m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____ , Deputy

1084

**FILED**
Loren Jackson
District Clerk
APR - 3 2009
Harris County, Texas
Time: _____
By _____

: 00500

CAUSE NO. 1195044

State of Texas )   IN THE DISTRICT COURT OF
✓ )
Robert Alan Fratta )   HARRIS COUNTY, TEXAS
)   230th JUDICIAL DISTRICT

## DEPUTY REPORTER STATEMENT

Pursuant to Rule 13.5 of the *Texas Rules of Appellate Procedure*, Appointing Deputy Reporter, I hereby certify the following:

A.   The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause.

B.   I, the undersigned deputy reporter, worked the following dates in the above court and on the above cause no.

3-31-09, 4-1-09, 4-2-09
4-9-09

SIGNED on this 2nd day of April 2009

**FILED**
Loren Jackson
District Clerk

APR - 9 2009

Time:
Harris County, Texas
By
Deputy

Cheryl Lo Pierce
Signature

Cheryl L. Pierce
Print Name

16523 Royal Mile Lane
Address

Houston Tx 77084
City/State/Zip

(281) 463-7836
Phone

CSR # 2711   CSR Expiration Date 12-31-10

: 00501



CAUSE NO. <u>1195044</u>

| | |
|---|---|
| THE STATE OF TEXAS | IN THE <u>230TH</u> DISTRICT COURT |
| VS. | COUNTY CRIMINAL COURT AT |
| <u>ROBERT FRATTA</u><br>(Name of Defendant) | LAW NO. _____ |
| AKA _____ | OF HARRIS COUNTY, TEXAS |

## PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐ MOTION TO ADJUDICATE GUILT

☐ MOTION TO REVOKE COMMUNITY SUPERVISION

☒ CAPITAL VENIRE FOR THE WEEK OF <u>4/20/2009- 4/24/2009</u>

☐ SHOW CAUSE ORDER FOR CONTEMPT

☐ OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on <u>4/14/2009</u>.

LOREN JACKSON,
District Clerk, Harris County, Texas

By _____
Deputy

---

SHERIFF'S RETURN

Came to hand _____ APR 1 4 2009 _____ A.D., 20_____, at 8:59 o'clock A .m.

And executed _____ APR 1 4 2009 _____ A.D., 20_____, at 8:59 o'clock A .m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____ # 1544 _____, Deputy

**FILED**
Loren Jackson
District Clerk

APR 1 4 2009

Time: _____
By _____
Harris County, Texas
Deputy

: 00502

NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| V. | § | HARRIS COUNTY, TEXAS |
| ROBERT FRATTA | § | 230TH JUDICIAL DISTRICT |

## ADMISSIBILITY OF THE STATEMENTS OF JOSEPH PRYSTASH THROUGH THE TESTIMONY OF MARY GIPP

### PROCEDURAL HISTORY

*The Original Decision of the Court of Criminal Appeals*

The defendant, Robert Fratta, was tried and convicted for the Capital Murder of his wife, Farah Fratta, in a murder-for-hire scheme. On direct appeal, along with other points of error, the defendant claimed that the admission into evidence of certain statements violated his rights under the Confrontation Clause. The basis for the defendant's Confrontation Clause claim was primarily the State's offer of the co-defendants' custodial statements through the testimony of Detective Danny Billingsley. The Court of Criminal Appeals rejected the defendant's Confrontation Clause claim regarding those custodial statements and affirmed the trial court's decision relying on the *Bruton* line of cases. *See Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (not published) (slip opinion at 9-10). *See also Bruton v. United States,* 391 U.S. 123 (1968)

There were also several complaints regarding the admission of certain statements made by the co-defendant, Joseph Prystash, to his girlfriend, Mary Gipp.

The Court of Criminal Appeals did not address all of the conversations between Prystash and Gipp, but only certain statements that the defendant set out in his brief. *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (not published) (slip opinion at 1-28).

Specifically, the court addressed a statement **made by Mary Gipp** to Mike Edens at the gym. She told Edens that she was upset that Prystash and Fratta had gone into the locker room to plan the murder of Farah. The Court of Criminal Appeals correctly noted that the statement made by Mary Gipp to Mike Edens constituted inadmissible hearsay. Nevertheless, the court held that the admission of the statement in light of all of the other solicitation evidence was cumulative and not harmful. *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (not published) (slip opinion at 24-25). During the defendant's current trial, the State will not attempt to offer the hearsay statement of Mary Gipp, but she may certainly testify that the Fratta and Prystash were indeed planning the murder of Farah Fratta.

The court next addressed the statements that Prystash made to Gipp shortly after the murder occurred. Gipp asked Prystash if he killed her, and he said "yes". She then asked him how he knew that she was dead, and he said because he saw her. This conversation took place as Prystash was unloading the gun. He also said that Guidry killed her in the garage. The Court held that these statements were admissible as statements against interest. *See* TEX. R. EVID. 803(24). *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (not published) (slip opinion at 25-27). The State will be offering these statements once again under the same theory, Rule 803(24) of

the Rules of Evidence.

The court then addressed the statement that Prystash made to Gipp that he (Prystash) was going to the gym to get a thousand dollars from Bob. The court reasoned that the trial court could have understood this statement to be admissible pursuant to TEX. R. EVID. 801(e)(2)(E) as a statement of a co-conspirator in furtherance of the conspiracy to murder Farah Fratta. *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (slip opinion at 26-27). Since there is little basis to believe that the statement was made *in furtherance* of ***that particular*** conspiracy, the State will not offer the statement under that theory. However, in addition to being admissible under Rule 803(24), the State contends that the statement is admissible under Rule 801(e)(2)(E) as a statement in furtherance of the conspiracy (1) to compensate Prystash and Guidry for their part in the murder of Farah Fratta, and (2) to ensure Mary Gipp's continued participation and/or acquiescence in the successful completion of the murder-for-hire scheme.

The last statement that the defense cited as improperly admitted was a conversation that Gipp had on the following day with Prystash regarding how the victim was killed. Portions of the conversation implicated Prystash, with other portions implicating both Prystash and Guidry, and another portion of the conversation regarding how **Guidry** shot Farah in the garage implicated Guidry. The Court of Criminal determined that the trial court did not abuse its discretion in admitting the statements as admissions against the declarant's (Prystash's) interest. *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (slip opinion at 27-28).

The State intends to offer only the portions of the conversation that implicate either Prystash alone or both Prystash and Guidry equally and not the statements that might be perceived as implicating Guidry alone.

It is important to note that the statements outlined above are the only statements that the Federal District Court and ultimately the 5th Circuit Court of Appeals addressed. *See Fratta v. Quarterman,* 536 F.3d 485 (5th Cir. 2008); *Fratta v. Quaterman,* No. H-05-3392, 2007 WL 2872698 (S.D. Tex., Sept. 28, 2007). Mary Gipp testified about several other admissions that Prystash made to her before, during, and after the murder. These portions of conversations between Prystash and Gipp were properly admitted and thus were not addressed subsequently by the reviewing courts. During the defendant's current trial, the State again intends to introduce these statements into evidence.

### *Federal District Court: (Judge Harmon's Opinion)*

By way of his federal writ of habeas corpus, in which the State was not represented by the Harris County District Attorney's Office, Fratta challenged only three groups of hearsay statements related by Gipp. *Fratta,* 2007 WL 2872698, at * 18-20 (slip opinion at 17-20). The statements were outlined by Judge Harmon as follows:

The first set of statements relate to Gipp's statement to Mike Edens regarding Prystsh and Fratta in the locker room discussing the murder.

The second set of statements relate to the discussion between Gipp and Prystash after the murder when Prystash tells Gipp he's going to the gym to meet Fratta and get the one thousand dollars.

The third set of statements relate to the detailed account of the murder by Prystash

describing Guidry as the shooter.

Fratta's contention before the federal district court was that these three groups of hearsay statements violated his rights under the Confrontation Clause. *Fratta,* 2007 WL 2872698, at * 18. Judge Harmon analyzed the three statements to determine whether there was a Confrontation Clause violation using the now-rejected *Ohio v. Roberts* standard, which required that the hearsay statement fall within a firmly rooted hearsay exception or contain particularized guarantees of trustworthiness. *See Ohio v. Roberts,* 448 U.S. 56 (1980). Judge Harmon further noted that the Court of Criminal Appeals had already determined that the hearsay exception for statements against penal interest was not within a firmly rooted exception to the hearsay rule, thus failing to meet one of the requirements of *Ohio v. Roberts.* Judge Harmon then found the error in the admission of all of the hearsay statements to be harmful, and that hearsay testimony given at trial primarily consisted of Sgt. Billingsley's recitation of the co-defendants custodial statements and the three groups of statements offered through Gipp. *Fratta,* 2007 WL 2872698, at * 20-24. Judge Harmon's Confrontation Clause analysis was not unreasonable. But it was based upon law that is no longer applicable under current Confrontation Clause claims. Such claims are now addressed by determining if the challenged hearsay statements are "testimonial." *See Crawford v. Washington,* 541 U.S. 36 (2004).

### Fifth Circuit Court of Appeals Opinion

The 5th Circuit Court of Appeals again addressed the three sets of statements that the other courts had evaluated. The federal court of appeals made no real

comment on the first set of statements that consisted of Gipp's statement to Edens at the gym. The court did, however analyze the second set of statements that consisted of Prystash telling Gipp that he was going to the gym to get a thousand dollars from Fratta as a co-conspirator statement made in furtherance of a conspiracy. The federal court of appeals noted that, under the then-applicable pre-*Crawford* analysis, using the *Ohio v. Roberts* standard, statements in furtherance of a conspiracy fall within the "firmly rooted exception to the hearsay rule" and, therefore, do not violate a defendant's rights under the Confrontation Clause. However, the federal court of appeals noted that Prystash's statements appeared to do nothing to further the conspiracy to kill Farah Fratta and merely reported the status of the conspiracy. *Fratta*, 536 F.3d at 504. Once again, it is not the State's contention that this particular statement in admissible as being in furtherance of the conspiracy to murder Farah Fratta, especially in light of the fact that the murder had already occurred. In addition to being admissible under Rule 803(24), the State contends that the statement is admissible under Rule 801(e)(2)(E) as a statement in furtherance of the conspiracy (1) to compensate Prystash and Guidry for their part in the murder of Farah Fratta, and (2) to ensure Mary Gipp's continued participation and/or acquiescence in the successful completion of the murder-for-hire scheme.

The federal court of appeals next addressed the third set of statements and recognized that the statements were admissible as statements against penal interest. The court again addressed the asserted Confrontation Clause violation using the pre-*Crawford* standard and found that statements against penal interest did not fall within

a firmly rooted exception to the hearsay rule. The court next analyzed these statements under the second prong of *Roberts* to determine whether there were "particular guarantees of trustworthiness" so as not to offend the Confrontation Clause. *Fratta,* 536 F.3d 505. The State relied on the previous decision of the 5th Circuit Court of Appeals in *Ramirez v. Dretke* 398 F.3d 691 (5th Cir. 2005), to support the position that Prystash's statements against interest were trustworthy. *Fratta,* 536 F.3d at 505. The court then performed some mental gymnastics to try and distinguish the two cases. *Fratta,* 536 F.3d at 505-06. While this makes for entertaining reading, the federal court of appeals ultimately pointed out—as noted above—that, "should the State seek to re-try Fratta, the question of the admissibility of the custodial confessions and Prystash's statements to Gipp will not be governed by the reliability framework established by *Roberts*. Instead, the Confrontation Clause analysis will focus on whether these statements are "testimonial" pursuant to *Crawford. Fratta,* 536 F.3d at 507 n.15.

## Conclusion

There were three sets of statements that were offered into evidence and that were the subject of Confrontation Clause complaints on appeal and on federal writ of habeas corpus. The State does not intend to offer the first set of statements regarding Gipp's statements to Mike Edens. The State will again offer the second set of statements regarding Prystash going meet Fratta and get the one thousand dollars, but the State will offer that testimony under different theories than that which has been previously advanced. The Courts have held that the portions of third set of

statements that occurred the day after the murder where Prystash made admissions against his penal interest are properly admissible, but the State will not offer the portions of Prystash's statements that shift the blame solely to Guidry.

SUMMARY OF PREVIOUS STATEMENTS AND TESTIMONY OF MARY GIPP:

The following are portions of Mary Gipp's written statement from March 4, 1995, that will be the subject of discussion:

. . . At least a month before Farah Fratta was killed, Joe (Prystash) told me that Bob Fratta wanted him (Joe) to kill his wife. He said it kind of jokingly. I thought he was serious about Bob's request but I didn't think he was seriously considering it . . . .

. . . A few days before Farah's murder, Joe told me that her murder was going to happen on Wednesday. He told me that it was happening Wednesday because Bob was taking his kids to church. I know that Bob taking his kid's to church was part of Bob's alibi. Bob was supposed to return with the kids on the night of the killing and find Farah dead. Bob was supposed to pay Howard (Guidry) $1000 Dollars. Howard didn't know who Bob was and Bob didn't know who Howard was. Joe subcontracted Howard to kill Farah. I don't know how much Howard was getting paid. . . .

On the day of Farah's death, I came home from work about 5:30 p.m. I met Howard at the top step between our apartments. Howard asked where Joe was. I told him Joe was supposed to be at home. Joe came home a short time later. I believe he came inside the house. I remember that I was on the phone. Joe stayed just a few seconds. Joe left a short time later. (I didn't see Joe leave with Howard, but later that night they came home together). Joe came home with Howard about 8:30 p.m. that evening. Joe went right back into my bedroom. Howard went to his apartment. A few minutes after Joe got back, I went back into my bedroom and saw Joe unloading a silver .38 with wood grips. I saw him remove two empty shell casings from the gun. . . . I think I must have asked him that night if they had killed Farah. He told me they did. I asked, "How do you know she's dead?" and he told me, "Because I saw her. She was dead." Joe left shortly after. He told me he was going to meet Bob Fratta at the Presidents and First

Lady.  I believe he left sometime after 9:00. . . .

The following day, in what I believe was the morning, Joe and I were in my apartment.  I asked him "What happened?"  He told me that Howard was waiting for Farah to come home in her garage.  He told me that when Farah pulled in, she was in her boyfriend's car.  He said that when she got out of the car, Howard shot her in the head, and her head kind of flew back.  Joe told me that he drove the getaway car.  Joe told me that he waited by a nearby pay phone.  He stated that Howard called the pay phone with my hand held mobile phone to let Joe know that he had shot Farah.  Joe told me that he picked up Howard after the call.  Joe said that Howard was waiting between two garages. . . .

Sometime after the shooting, Joe told me that he was supposed to get Bob Fratta's Jeep in payment for killing Farah.  Howard was supposed to get $1000.00 cash.  Joe never got the Jeep and Howard never got the cash.

Joe told me that Howard got rid of the murder weapon a few days after the killing.  He said that Howard threw it in a lake or river.  I don't know which.

The getaway car belonged to Joe. . . .

The following is a summary of portions of Gipp's testimony at the defendant's first

trial, (excluding those sets of statements already discussed):

Gipp testified that, when Joe (Prystash) came in after the murder, she asked him if they had killed her.  Joe replied "Yes."  She asked him if she knew that she was dead, and he said "yes".  She asked him how do you know, and he said he saw her. (R. 1025)

She also testified that Prystash told her "Howard killed her in the garage." (R. 1025).

Gipp testified further that Joe left the apartment to go meet Bob at the gym.  He was going to get a thousand dollars from Bob. (R. 1027)

Gipp later testified about the conversation that she had with Prystash on the morning after the murder when he told her that Howard was waiting for Farah Fratta in the garage and that he shot her once in the head, and then her head flew back and he shot her again.  He said that he had been waiting by a pay phone.  Howard called him and he said

that Howard was waiting for him between two garages somewhere. (R.1038-39)

Gipp also testified that Joe told her he gave the gun to Howard, and Howard was going to throw it in a lake or something like that. (R. 1041)

She also testified that in addition to the cash, Joe was supposed to receive a jeep for the murder of Farah. (R. 1042-43).

PROFFER

Joe Prystash began making admissions to Mary Gipp before the murder of Farah Fratta. He told her that Bob wanted him to kill Farah. He told her that the murder was going to happen on Wednesday and that Bob was taking the kids to church and that would be his alibi. During this conversation, Prystash admitted that he was subcontracting Howard to kill Farah. After the murder, Prystash admitted that they had killed her, and he knew that she was dead because he had seen her dead in the garage. After the murder, Prystash told Gipp that he was going to the gym to meet Bob and get the thousand dollars. Prystash told her that he gave the murder weapon to Guidry and that he was going to throw it in a lake. Prystash also told Mary that Howard was getting a thousand dollars, and he was getting a jeep for murdering Farah.

*Argument in support of Admissibility of Prystash's Statements to Gipp:*

The State intends to offer most of the statements proffered above as statements against the declarant's (Prystash's) penal interest pursuant to Rule 803(24). The rule governing the hearsay exception for statements against penal interest sets out a two-step requirement for admissibility: First, the trial court must determine

whether the statement, considering the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made the statement; and, second, the court must determine whether there are sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement. *Walter v. State*, 267 S.W.3d 883 (Tex. Crim. App. 2008). One factor in finding that a statement against penal interest is trustworthy is to look at the person to whom the statement is made. The Court in *Walter* recognized that statements made to friends, loved ones and family members normally do not raise the same trustworthiness concerns as those made to investigating officers where a person has a motive to minimize his own role and are thus more likely to be admitted. *Walter*, 267 S.W.3d at 898. The court also noted that determining whether or not a statement is self-inculpatory can only be done by viewing the statement in context. Even statements that are on their face neutral may actually be against the declarant's interest. *Walter*, 267 S.W.3d at 890 n.24 (quoting *Williamson v. United States*, 512 U.S. 594, 603-04 (2004)). *See also Graham v. State*, 3 S.W.3d 272, 275 (Tex. App.—Fort Worth 1999, pet. ref'd).

The following is an analysis of each statement that the State intends to offer:

(1) ... A few days before Farah's murder, Joe told me that her murder was going to happen on Wednesday. He told me that it was happening on Wednesday because Bob was taking his kids to church. I know that Bob taking his kid's to church was part of Bob's alibi. Bob was supposed to return with the kids on the night of the killing and find Farah dead. Bob was supposed to pay Howard $1000 Dollars. Howard didn't know who Bob was and Bob didn't know who Howard was. Joe subcontracted Howard to kill Farah. I don't know how much Howard was getting paid. . . .

Clearly the statements above subject Prystash to criminal liability. He admitted to Gipp that he, Fratta and Guidry were conspiring to commit the murder of Farah Fratta for money. Prystash inculpates himself and the others equally in the murder-for-hire plot. He confided in Gipp, who was his girlfriend and, in relating the conspiracy to Gipp, he had no motive to fabricate the details. The murder did in fact occur on a Wednesday night, and witnesses testified that Fratta was at church with the children at the time of the murder. *See Maynard v. State,* 166 S.W.3d 403, 412 (Tex. App.—Austin 2005, pet. ref'd) (case in which co-defendant told State's testifying witness that he had been ordered by the defendant to kill the intended victim, with the threat that he would be killed if he did not follow through on the order, even though the co-defendant did not want to carry out the order and attempted to warn the intended victim).

> (2) Gipp testified that, when Joe came in after the murder, she asked him if they had killed her. Joe replied "Yes." She asked him if she knew that she was dead, and he said "yes". She asked him how do you know, and he said that he saw her . . . in the garage. (R. 1025)

These statements made by Prystash to Gipp shortly after the murder are the classic self-inculpatory statements envisioned by Rule 803(24). In this conversation, the co-defendant Prystash admitted that "we" had killed her. There is no blame-shifting, and again there was no motive for Prystash to lie to his girlfriend who he trusted. He told her immediately after the murder occurred as he was unloading the murder weapon. *See Dewberry v. State,* 4 S.W.3d 735, 749-51 (Tex. Crim. App. 1999)

(statements that "we" or "they" killed someone sufficiently incriminated declarant and were admissible).

   (3) Gipp testified further that Joe left the apartment to go meet Bob at the gym. He was going to get a thousand dollars from Bob. (R. 1027)

   During the first trial the trial court determined that this statement by Prystash to Gipp could be construed as a statement by a co-conspirator in furtherance of the conspiracy to murder Farah Fratta. *See* TEX. R. EVID. 801(e)(2)(E) (statement not hearsay when statement offered against a party and the statement was made by co-conspirator of the party during the course and furtherance of the conspiracy). As noted above, the Court of Criminal Appeals affirmed the trial court's decision under this theory. *Fratta v. State,* No. 72,437 (Tex. Crim. App., June 30, 1999) (not published). As the Fifth Circuit Court of Appeals also correctly noted, the Court of Criminal Appeals has the final say on matters of state evidentiary law and their finding regarding the admissibility, which will not be disturbed by a federal court. *Fratta,* 536 F.3d at 503. Even though the admissibility of this statement has already been determined, in light of the dicta in the federal court's opinion questioning whether the statement actually furthered the conspiracy to murder Farah Fratta, the State will not rely solely on the prior admissibility under Rule 801(e)(2)(E).

   The statement is also admissible as a declaration against Prystash's interest. *See* TEX. R. EVID. 803(24). As the Court in *Walter* noted, there are self-inculpatory statements that might appear on their face to be neutral when in fact the statement, when viewed in context, actually inculpates the declarant. *See also Williamson,* 512 U.S.

at 603-04 (the statement "Sam and I went to Joe's house," may not be a confession to a crime, but might be against the declarant's penal interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy). Similarly, while the statement, "I'm going to the gym to meet Bob and get the thousand dollars," might appear to be neutral on its face, it clearly inculpates Pystash as an active participant in the murder-for-hire scheme. Context is the key to this analysis. The evidence also revealed that Prystash actually swiped his membership card at the gym shortly before closing, and Fratta was found to be in possession of $1,050.00 dollars in cash (found in a plain white envelope in his glove box) that same night, never having had the opportunity to give the money to Prystash, so that it could be given to Guidry.

While this statement by Prystash is not admissible as furthering the conspiracy to murder Farah Fratta (which had already occurred), the State additionally contends that the statement is admissible under Rule 801(e)(2)(E) as a statement in furtherance of the conspiracy (1) to compensate Prystash and Guidry for their part in the murder of Farah Fratta, and (2) to ensure Mary Gipp's continued participation and/or acquiescence in the successful completion of the murder-for-hire scheme. *See Arroyo v. State*, 239 S.W.3d 282 (Tex. App.—Tyler 2007, pet. ref'd) (discussion of statement made right after offense involving flight from offense & conspiracy to hinder apprehension); *King v. State*, 189 S.W.3d 347 (Tex. App.—Fort Worth 2006, no pet.) (discussion on conspiracy to conceal murder after offense).

To come within Rule 801(e)(2)(E), the State must show that a conspiracy existed, that the co-conspirator was a member of or participated in the conspiracy, and that the statement was made to advance or facilitate the conspiracy; it is not enough that the statement was made merely in the course of or was somehow related to the conspiracy. Statements made in furtherance of a conspiracy include attempts to induce others to cooperate with or assist co-conspirators; attempts to induce another to join or continue with the conspiracy; discussions related to concealment of the conspiracy; or conversations to identify the roles of the conspirators. *Maynard v. State,* 166 S.W.3d 403, 411 (Tex. App.—Austin 2005, pet. ref'd).

In *Maynard,* the State's testifying witness had accompanied the co-defendant to the defendant's apartment, but only to purchase drugs, not to commit a murder. She testified that the co-defendant told her that he needed to get a car from his girlfriend's house, and she knew that he needed to do that in order to commit the charged murder. The court held that the State's testifying witness could be somewhat blameworthy because she was informed of the co-defendant's orders and did not report it to the police and because, after being told of the planned killing, she drove the co-defendant to his girlfriend's house so that he could get a car. *See Maynard,* 166 S.W.3d at 410-11. The court of appeals held that the trial court could have properly decided that the co-defendant's statement to the State's testifying witness was admissible under Rule 801(e)(2)(E). *See Maynard,* 166 S.W.3d at 413.

In this case, when Prystash informed Gipp that he was going to meet Fratta in order to obtain the previously promised $1,000.00 as partial payment for the murder of Farah Fratta, he was informing her that her role in participating in and/or acquiescing in the murder-for-hire scheme was almost at an end. The murder had occurred. The payment would soon be made. And her life could soon return to normal after all elements of the charged offense had been committed. She had not informed the police (yet), and she had not attempted to prevent any aspect of the crime or any related crime committed thereafter. Prystash's statement to her can properly be considered to have been made in furtherance of a conspiracy.

(4) The following day, in what I believe was the morning, Joe and I were in my apartment. I asked him "What happened?" He told me that Howard was waiting for Farah to come home in her garage. He told me that when Farah pulled in, she was in her boyfriend's car. He said that when she got out of the car, Howard shot her in the head, and her head kind of flew back. Joe told me that he drove the getaway car. Joe told me that he waited by a nearby pay phone. He stated that Howard called the pay phone with my hand held mobile phone to let Joe know that he had shot Farah. Joe told me that he picked up Howard after the call. Joe said that Howard was waiting between two garages. ... (Mary's statement)

Gipp later testified about the conversation that she had with Prystash the morning after the murder when he told her that Howard was waiting for her in the garage and that he shot her once in the head, and then she flew back and he shot her again. He said he had been waiting by a pay phone. Howard called him and he said that Howard was waiting for him between two garages somewhere. (R.1038-39)

Once again, these statements, even though made after the fact, inculpate Prystash in the murder of Farah Fratta, and were admissible under Rule 803(24). *See United States v. Honken*, 541 F.3d 1146, 1162 (8th Cir. 2008) (statement revealing knowledge of where victims' bodies were buried was admissible as statement against

declarant's penal interest).  *See also McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), overruled on other grounds by *Bingham v. State*, 915 S.W.2d 9, 14 (Tex. Crim. App. 1994).

In *McFarland*, the Court of Criminal Appeals held that certain statements made by the defendant's accomplice were admissible under Rule 803(24) as a statement against interest.  *McFarland*, 845 S.W.2d at 835-36.  The statement was made after the offense was committed, and the accomplice indicated that he and the defendant had decided to burn the victim's clothes.  When asked specifically, the accomplice indicated that the defendant actually burned the clothes.  With regard to blame shifting, the Court also noted that the statements were not made to the police, and there was no showing that they were made to curry favor or place principal blame on the defendant.  And the Court found there was enough corroborating evidence to admit the statements under Rule 803(24).

> (5) Gipp also testified that Joe told her that he gave the gun to Howard, and that Howard was going to throw it in a lake or something like that. (R. 1041)

Gipp testified previously about this conversation with Prystash, and the Court properly admitted this testimony under Rule 803(24).  In addition to implicating Prystash in the murder of Farah Fratta, especially in context, the statement also implicated Prsytash in tampering with material evidence.

(6) She also testified that in addition to the cash, Joe was supposed to receive a jeep for the murder of Farah. (R. 1042-43).

Gipp also testified regarding this statement made by Prystash, which was also properly admitted by the Court under Rule 803(24).

### Confrontation Analysis pursuant to *Crawford*:

As noted above, the 5th Circuit Court of Appeals correctly pointed out in its *Fratta* opinion that *Crawford v. Washington* would govern the re-trial of this case, rather than the reliability framework set forth in *Ohio v. Roberts*. Therefore, the Court must determine whether or not the statements are "testimonial". This Court should have no difficulty in determining that Joseph Prystash's statements to his girlfriend, Mary Gipp, are non-testimonial and therefore admissible over any Confrontation Clause objection.

Respectfully Submitted,

Denise Bradley
Assistant District Attorney

Alan Curry
Assistant District Attorney

Jessica McDonald
Assistant District Attorney

Harris County District Attorney
1201 Franklin, Room 600 (attn. 230th)
Houston, Texas 77002
(713) 755-6173


## C E R T I F I C A T E

I certify that a copy of this response was served on the Defendant by delivering a copy to his attorney of record Vivian King and/or Randy McDonald by hand delivering a copy on April 20, 2009.

Assistant District Attorney

: 00521

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:   HOWARD PAUL GUIDRY

If incarcerated, fill out following information:
TDC NO.: 999226
UNIT: Polunsky
TYC NO.:
DOB: 04/15/1976   RACE: B   SEX: M
SPN NO.: 01446317

TO THE DIRECTOR:

or
TO THE SHERIFF:     Walker County, Texas
or
TO:     Any Peace Officer of the State of Texas

**FILED**
Loren Jackson
District Clerk

APR 2 1 2009

The above named individual is a witness or defendant in the above styled and numbered case. The case is set on the court's docket for **May 4, 2009** at 9:00 a.m./p.m. in the Harris County District or County Court listed above. Witness bond is fixed at _____ By _____

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date April 21, 2009.

_____
Presiding Judge

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____
(Deputy Clerk)

Officer's Return

I received this writ / warrant on _____ (date). I executed it on _____ (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court / District Court / Harris County Jail as ordered.

Sheriff, _____ County, Texas
By: _____, Deputy

FEES: Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents
Other: _____

$ _____
$ _____
$ _____

Total:   $ _____

Attach Peace Officer's Return

: 00522

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:     JOSEPH ANDREW PRYSTASH

If incarcerated, fill out following information:
TDC NO.: 999202
UNIT: **Polunsky**
TYC NO.:
DOB: **09/05/1956**  RACE: **W**  SEX: **M**
SPN NO.: 00614438

**FILED**
Loren Jackson
District Clerk

APR 2 1 2009

Time: _____
Harris County, Texas
By _____ Deputy

TO THE DIRECTOR:

or
TO THE SHERIFF:     **Walker County, Texas**
or
TO:     Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case. The case is set on the court's docket for **May 4, 2009** at 9:00  a.m./p.m. in the Harris County District or County Court listed above. Witness bond is fixed at _____

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date **April 21, 2009.**

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____
(Deputy Clerk)

_____
Presiding Judge

Officer's Return

I received this writ / warrant on _____ (date). I executed it on _____ (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

_____
Sheriff, _____ County, Texas
By: _____, Deputy

FEES: Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents            $ _____
Other: _____            $ _____
                                       $ _____

Total:     $ _____

Attach Peace Officer's Return

: 00523

CAUSE NO. 1195044

| THE STATE OF TEXAS | § | IN THE 230TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| ROBERT FRATTA | § | HARRIS COUNTY, TEXAS |

## MOTION TO SUPPRESS THE SEARCH AND SEIZURE OF EVIDENCE FROM THE DEFENDANT'S MOTOR VEHICLE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ROBERT FRATTA, defendant, by and through his court-appointed counsels, Randy McDonald and Vivian King, and files this his motion to suppress the search and seizure of evidence from the defendant's motor vehicle, and would show the Court as follows:

I.

On November 9, 1994, the defendant voluntarily followed the police to the police station and was interviewed by members of the Harris County Sheriff's Office on tape for approximately two hours and three minutes. After the interview, the defendant was detained for another twelve hours before defendant was released. During that time, the defendant was subjected to physical and mental abuse as well as other tactics in an attempt to induce, coerce, or change his statements regarding the death of Farah Fratta.

During this continued fourteen hour period, the defendant was deprived of sleep, food, water. The and the defendant's repeated requested for an attorney to be present during the interview was repeatedly denied. The defendant was presented with a consent to search form for his motor vehicle form which he had driven to the sheriff's office. The defendant signed the consent to search form only after the coercion, duress and being convinced that he would not be allowed to leave until he had signed it.

II.

As soon as the defendant left the police station, there were video cameras from the media waiting outside. It was caught on film a deputy throwing keys at the defendant and hitting him in the face with them. Therefore, it was clear that the defendant did not have possession of his keys the entire time he was at the police station where he was being physically detained and not free to leave.

# FILED
Loren Jackson
District Clerk

APR 2 3 2009

Time: _____
Harris County, Texas

By _____
Deputy

: 00524

### III.

Once the defendant was released, he spoke to the news media and made statements indicating that he had been cooperative regarding the search of his car and his house. These statements were made in an effort for defendant to continue being released and not re-detained.

### IV.

The items seized in the search of defendant's motor vehicle included money, an address book and other items. These items were seized as a result of the tactics that the deputies engaged in order to have the defendant sign the consent form. The defendant signed the alleged consent to search the motor vehicle form only because of the physical and mental abuse, as well as the loss of sleep for fourteen hours, the lack of food and water, and the constant interrogation by the deputies in order for the defendant to be freed after his repeated request for counsel had been ignored by the deputies.

WHEREFORE, PREMISES CONSIDERED, defendant respectfully prays that this Court grant this motion and exclude any testimony of the seizure of these items as well as testimony of any evidence adduced as a result of the search and seizure.

Respectfully submitted,

RANDY MCDONALD
State Bar No. 13556570
3000 Smith Street
Houston, TX 77006
(713) 521-2585
(713) 521-3324 Fax

VIVIAN R. KING
State Bar No. 00784399
440 Louisiana, Suite 800
Houston, TX 77002

Attorneys for Defendant,
ROBERT FRATTA

## CERTIFICATE OF SERVICE

A copy of this motion was served on the attorney for the State of Texas on this the 23rd day of April, 2009.

_____
**RANDY MCDONALD**

CAUSE NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 230TH JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| ROBERT FRATTA | § | HARRIS COUNTY, TEXAS |

## O R D E R

On this the __5__ day of ~~February~~ May, 2009 came before the Court defendant's motion to suppress the alleged consent to search defendant's motor vehicle, and said motion is:

_____ Granted

___X___ Denied

SIGNED on this the __5__ day of __May_____, 2009.

**JUDGE PRESIDING**

IMAGED

: 00527

CAUSE NO. 1195044

| STATE OF TEXAS | § | In the 230th District Court |
|---|---|---|
| v. | § | of |
| ROBERT FRATTA | § | HARRIS COUNTY, TEXAS |

## Objections to Inadmissible Hearsay of Mary Gipp as a violation of Fratta's Constitutional Rights under the Federal *Confrontation Clause*

**ISSUE:** Do the inadmissible hearsay statements of Joseph Prystash through the testimony of Mary Gipp violate the Federal *Confrontation Clause* when introduced to satisfy elements of the State's case against Robert Fratta?

1.     Prystash's statements to Gipp on the morning after the murder are inadmissible hearsay under the Federal *Confrontation Clause*.

2.     Prystash's statements to Gipp before and after the murder are inadmissible under Rule 801(e)(2)(E) as a statement in furtherance of the conspiracy as a violation of the Federal *Confrontation Clause*.

3.     Prystash's statements to Gipp before and/or after the murder are inadmissible under Rule 803(24) as a statement "against penal interest."

### The Law: Federal *Confrontation Clause*

The *Confrontation Clause* of the Sixth Amendment—which is made applicable to the states by the Fourteenth Amendment – provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S.CONST. amend.VI. This bedrock procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas, 380 U.S. 400, 406 (1965).*

The *Confrontation Clause* reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right of cross-examination." *Ohio v. Roberts, 448 U.S. 56, 63 (1980).*

The *Confrontation Clause* applies to "witnesses" against the accused -- in other words, those who "hear testimony." *See Crawford at 51.*

Fratta's Objections to Inadmissible Hearsay          1

**FILED**
Loren Jackson
District Clerk

APR 2 3 2009

Time: _____
Harris County, Texas

By _____
Deputy

: 00528

1.    Prystash's statements to Gipp on the morning after the murder are inadmissible hearsay under the Federal *Confrontation Clause.*

The federal case that controls the admission of third party hearsay statements introduced by the prosecution against a defendant on trial is *Lilly v. Virginia, 527 U.S.116, 134 (1999).* An "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule."    *See Lilly v. Virginia, 527 U.S.116, 134 (1999).*

The question whether the statements fall within a firmly rooted hearsay exception for *Confrontation Clause* purposes is a question of federal law." *Lilly, 527 U.S. at 125* (plurality opinion).  Whether a defendant's *Confrontation Clause* rights were violated is a mixed question of law and fact. *Lilly v. Virginia, 527 U.S. 116, 136 (1999)* (plurality opinion) (whether a hearsay statement has particularized guarantees of trustworthiness is a "fact-intensive, mixed question of constitutional law" subject to independent review by appellate courts).

In *Lilly v. Virginia, 527 U.S.116 (1999),* the Supreme Court reversed the conviction of capital murder and held that the accused's rights under the *confrontation clause* of the Federal Constitution's Sixth Amendment were violated by the introduction at trial of accomplice's confession which incriminated the accused for murder.  In *Lilly,* Mark Lilly admitted he stole alcohol with co-defendant's Benjamin *Lilly* (the accused) and Gary Barker; however, Benjamin *Lilly* and Barker stole the guns and Benjamin *Lilly* killed the Complainant.  The trial court admitted co-defendant Mark Lilly's statements to police as declarations of an unavailable witness against penal interest overruling the accused's objection that it violated his *Sixth Amendment's Confrontation Clause.*

*Lilly* teaches us that the simple categorization of a statement as "against penal interest" defines too large a class for meaningful *Confrontation Clause* review. Such statements are offered into evidence  and fall into three categories of statements against penal interest. The third one applies here:  as evidence offered

Fratta's Objections to Inadmissible Hearsay     2

by the prosecution to establish the guilt of an alleged accomplice of the declarant. The third category are presumptively unreliable, when the government seeks to introduce a confession by an accomplice which incriminates himself with the defendant. See *Lilly at 127*. The admission of the untested confession of Mark Lilly violated the accused's Confrontation Clause rights. *Lilly at 139*.

The *Lilly* case references to the *Williamson* case as follows. In *Williamson v. United States*, *512 U.S. 594 (1994)*, without reaching the *Confrontation Clause* issue, the Supreme Court held that an accomplice's statement against his own penal interest was **not admissible** against the defendant. Reasoning the presumptive unreliability of the "non-self-inculpatory" portions of the statement: "One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." *Id.at 599-601. Lilly* cites the Texas case that adopted *Williamson* in *Miles v. State, 918 S.W.2d 511, 515 (Tex.Crim.App.)*. *Miles* interprets the federal counterpart to the Texas Rule 803(24) [Fed.R.Evid.804(b)(3)]. The United States Supreme Court said: "... the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *citing Williamson v. United States, 114 S.Ct. 2431, 2435 (1994)]*. See, *Miles v. State, at, 515*. Therefore, in Texas, pursuant to Rule 803(24), the statements against interest hearsay exception does not allow the admission of Prystash's statements against his penal interest made to Ms. Gipp in a trial against Robert Fratta.

## Federal Relief was Granted for those claims involving Ms. Gipp's recitation of Out-of-Court Statements

In the September 28, 2007 Memorandum and Order, Judge Harmon granted federal relief for those claims involving Ms. Gipp's recitation of the out-of-court statements of Joseph Prystash. Judge Harmon categorized Ms. Gipp's testimony in three sets of statements:

First set of statements:  Gipp described her feelings as Prystash and Fratta entered the locker room at the gym to discuss the murder plot. Because Prystash told her about the murder-for-hire plot, she was '[j]ust kind of shocked" and "a little angry"

Fratta's Objections to Inadmissible Hearsay     3

and told a friend that "Bob wanted Joe to kill Farah."   Tr. Vol. 24 at 1051-53. [Judge Harmon's Memorandum and Order, p.35].

Second set of statements:  Gipp recounted that Prystash described on the night of the murder how Guidry killed Farah and that Prystash said he was going to the gym "to get a thousand dollars" from Fratta Tr. Vol. 24 at 1068-71. [Judge Harmon's Memorandum and Order, p.35-36].

Third set of statements:  Ms. Gipp related statements Prystash made to her the day after the murder including a more-detailed account of the murder.  Tr. Vol. 42 at 1082-84. [Judge Harmon's Memorandum and Order, p.36].

*Judge Harmon's Memorandum and Order* held that these three groups of hearsay violated the Confrontation Clause.  [Judge Harmon's Memorandum and Order, p.38].  Judge Harmon cited *Lilly* and other federal cases have clearly held that statements cannot be held admissible by relying on the declarations-against-interest exception to the hearsay rule.  Secondly, the statements fully implicated Fratta in the murder-for-hire scheme.  Ms. Gipp clearly stated that Prystash not only went to the gym to get money, but that he went to get $1000 from Fratta. Judge Harmon's opinion noted that Ms. Gipp's testimony as a whole filled in otherwise-absent details about the murder-for-hire that strongly implicated Fratta. [Judge Harmon's Memorandum and Order, p.38-39].

Judge Harmon recited findings from the *Guidry's* Fifth Circuit opinion:

The fatal error identified by the *Guidry* case was that, absent the constitutionally defective ... [Gipp] testimony, no evidence proved that Guidry committed a murder for remuneration. Footnote 26: Under Texas law, proof of murder for remuneration or promise of remuneration requires a "focus ... on the actor's intent or state of mind:  Did the actor kill in the expectation of receiving some benefit or compensation?"   *Urbano v. State, 837 S.W.2d 114, 116 (Tex.Crim.App.1992).* ... this state of mind element must be proven beyond a reasonable doubt; "[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is

insufficient." Id.   Although $1050 was found in Robert Fratta's vehicle, there is no admissible evidence tying Guidry to it.

[Judge Harmon's Memorandum and Order, p.42].

The Fifth Circuit affirmed Judge Harmon's order and stated the following: The CCA resolved Fratta's state-law evidentiary challenge to the admission of Prystash's hearsay statements on the night of the murder admitting that he and Guidry had killed Farah by finding these statements admissible into evidence under the hearsay exception for declarations against penal interest. *See Fratta v. Quaterman, No. 07-70040, p.26.*   But state-law hearsay exception for declarations against penal interest did not dispose of the *Confrontation Clause* issue because "the use of such statements to inculpate another defendant is not within a firmly rooted exception to the hearsay rule" for *Confrontation Clause* purposes.   The CCA relied on the *Bruton* line of cases.   However, the Fifth Circuit stated it was unreasonable for the CCA to extend the rule of Bruton, which applies only in the context of joint or multi-defendant trials, to the context of a single defendant trial like Fratta's. *See Fratta v. Quaterman, No. 07-70040, p.27.*

<u>*Bruton* does not apply to Ms. Gipp's statements:</u> The Fifth Circuit stated, *Bruton* stands for the proposition that in joint trials the admission of hearsay against one defendant (such as the defendant's own confession) violates the *Confrontation Clause* rights of a co-defendant against whom the hearsay is not admissible but nonetheless incrimination.   For these situations, the rule is that the co-defendant's *Confrontation Clause* rights are not violated if the hearsay only incriminates the co-defendant "inferentially" in a way that will be possible for the jury to put out of their mind.   But when the question is simply whether the *Confrontation Clause* allows for the admission of a hearsay statement against a particular defendant, the analysis does not turn on the degree of inference required for incrimination; rather, the question is whether the statement is sufficiently reliable under *Roberts. See Fratta v. Quaterman, No. 07-70040, p.27.*

Fratta's Objections to Inadmissible Hearsay      5

**Ms. Gipp's testimony is hearsay statements of Prystash violate the Confrontation Clause under a co-conspirator theory and are not a co-conspirator statements under Federal Law:** The Fifth Circuit also noted that in *Bourjaily v. United States, 483 U.S. 171 (1987),* the Supreme Court examined the history of the co-conspirator exception to the hearsay rule. The Court made clear that such statements must have been "made in the course and in furtherance of the conspiracy" to qualify as statements falling within a firmly rooted hearsay exception for *Confrontation Clause* purposes. *Bourjaily, 483 U.S. at 183.* The Fifth Circuit held that Prystash's statements to Gipp did not meet this requirement. *See Fratta v. Quaterman, No. 07-70040, p.29.* The Fifth Circuit notes that in *Guidry's* direct appeal, the CCA stated "Prystash's statements to Gipp did nothing to advance the cause of or facilitate the conspiracy. The statements were not made in an effort to enlist Gipp's assistance or cooperation, elicit information that could be used in the conspiracy, or do anything other than report the status of the conspiracy to Gipp. Prystash was merely describing to Gipp what was occurring or what had occurred." *Guidry v. State, 9 S.W.3d 133, 148 (Tex.Crim.App.1999).* Because Prystash's statements were not made in the course and in furtherance of a conspiracy, as a matter of federal law they do not fall within a firmly rooted hearsay exception for Confrontation Clause purposes, and the CCA's decision to the contrary was objectively unreasonable. *See Fratta v. Quaterman, No. 07-70040, p.29.*

The Fifth Circuit noted that in Prystash's statements to Gipp he specifically assigned the role of the triggerman to Guidry, and limited his own involvement to dropping off and picking up Guidry. Prystash's clear delineation of these roles calls into question the reliability of his statement. *See Fratta v. Quaterman, No. 07-70040, p.33.* -- Gipp's testimony at trial indicates that Prystash's statements on the night of the murder were in response to her own repeated questions. *See Fratta v. Quaterman, No. 07-70040, p.33-34.* There were no assurances that when questioned by Gipp Prystash's account was particularly reliable, or that he did not put his own spin on things. In fact, he would have had good reason to do so. Since he lived off Gipp or had no steady income, he had an incentive to minimize or distort the extent of his involvement and to attempt to shift the blame to other

parties, in order to placate and stay in good graces with Gipp. *See Fratta v. Quaterman, No. 07-70040, p.34.*

In *Fratta*, the Fifth Circuit noted that in *Guidry* they had found the same statements of Prystash to Gipp admitted into evidence through Gipp violated the Confrontation Clause. *See Guidry v. Dretke, 397 F.3d 306, 329 (5th Cir.2005).* (Gipp testified to the statements made by Prystash implicating Guidry in the murder, including Prystash's statement that Guidry shot Farah in the head, that Prystash then picked up Guidry from the scene, and that Guidry was to receive $1,000 from Fratta. *Id. At 329. See Fratta v. Quaterman, No. 07-70040, p.34.*

## Crawford does not apply because Gipp's Hearsay Testimony because Gipp is not the Declarant

In *Crawford v. Washington, 541 U.S. 36 (2004)* the Supreme Court held that the prosecution may not introduce a declarant's out-of-court testimonial statement against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Mary Gipp is not the declarant of the out-of-court testimonial statement of Joseph Prystash. Therefore, *Crawford* does not apply to her testimony.

## CONCLUSION

Joseph Prystash's statements to Mary Gipp violate Robert Fratta's rights under the Federal *Confrontation Clause* as they are not co-conspirators statements or statements against penal interest pursuant to *Lilly v. Virginia* and related federal cases and *Fratta's* 5th Circuit Opinion.

Since the issue of Mary Gipp's testimony concerning the three sets of hearsay statements of Joseph Prystash has been litigated and decided in Federal Court and found to be a violation of Fratta's rights under Federal *Confrontation Clause*, the State of Texas should be barred from re-litigation this issue under the doctrine of *collateral estoppel.*

Fratta's Objections to Inadmissible Hearsay      7

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully submitted,

VIVIAN R. KING
Second Chair Lawyer
SBN: 00784399
440 Louisiana St., Ste. 800
Houston, Tx 77002
713- 222-2019 (office)
713- 224- 6008 (fax)

RANDY MCDONALD
First Chair Lawyer
SBN: 13556570
3000 Smith St.
Houston, Tx 77006
713-521-2585 (office)
713- 521-3324 (fax)
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection was hand delivered to the District Attorney's office on April 23, 2009.

Vivian                    R.                    King

Fratta's Objections to Inadmissible Hearsay        8

: 00535

CAUSE NO. 1195044

| STATE OF TEXAS | § | In the 230th District Court |
| v. | § | of |
| ROBERT FRATTA | § | HARRIS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED, that on the _____ day of _____, 2009, came to be considered the above Motion to Suppress Evidence and Statements.  After consideration of the motion, it is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____

_____
JUDGE PRESIDING

9

: 00536

NO. 1195044

| STATE OF TEXAS | § | IN THE 230th DISTRICT |
|---|---|---|
| VS. | § | COURT OF |
| ROBERT ALAN FRATTA | § | HARRIS COUNTY, TEXAS |

### SUPPLEMENTAL NOTICE OF INTENTION TO USE EVIDENCE OF PRIOR CONVICTIONS AND EXTRANEOUS OFFENSES

COMES NOW, the undersigned Assistant District Attorney, Denise Bradley, and files this Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses and would show the Court the following:

1. Cause No. 1195044 is presently pending in this Court and is set for jury trial for the week of May 4, 2009.

2. Pursuant to Rules 404(b) and 609 of the Texas Rules of Criminal Evidence and section 37.07 of the Texas Rules of Criminal Procedure, the undersigned Assistant District Attorney hereby gives notice to the Defendant, his Counsel, and the Court that the State intends to offer evidence of Prior Convictions and Extraneous Offenses of this Defendant to impeach the testimony and/or enhance the range of punishment of the Defendant as such become admissible. Such evidence may further be admissible for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. The prior convictions/extraneous offense(s) which the state intends to introduce at trial are as follows:

On or about May 1994 at 19610 Forest Fern in Humble, Harris County, Texas, the Defendant parked in front of the Complainant's residence and watched her house. The Complainant was on the phone with Kitty Waters at the time that this event was occurring and the Complainant related the event to Ms. Waters as she was perceiving it.

On or about May 1994, in Harris County, Texas, the Defendant told the Complainant that "if she continued to see her boyfriend (David Dietz), that he would kill her." The Complainant relayed this statement of the defendant to Suzanne Cartwright.

On or about May 1994, in Harris County, Texas, the Defendant told the Complainant that "if she left him, she'd be dead." The Complainant relayed this statement to Larry DePriest, a friend and co-worker.

On or about October 19, 1994, in Harris County, Texas the Defendant told the Complainant that "he would see her dead before signed divorce papers." The Complainant relayed this statement to Warren Thomas.

On or about November 12, 1994, in Harris County, Texas the defendant asked Mike Edens "Do you always sleep with your head by the window?" when Edens responded "yes" the defendant said "That's a good place for someone to shoot you in the head".

**FILED**

Loren Jackson
District Clerk

MAY - 4 2009

Time: _____
Harris County, Texas

By _____
Deputy

Respectfully submitted,

*AL Bradley*

Denise Bradley
Assistant District Attorney
Harris County, Texas

: 00537

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the above foregoing motion was sent via facsimile and/or certified mail to Defense Counsel on this 9th day of ~~March~~, 2009.

Denise Bradley
Assistant District Attorney
Harris County, Texas

: 00538



□ ORIGINAL
dMJ1141928

## CAUSE NO. 1195044

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **230TH JUDICIAL DISTRICT** |
| | § | |
| **ROBERT FRATTA** | § | **HARRIS COUNTY, TEXAS** |

## DEFENDANT'S MOTION IN LIMINE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Defendant in the above styled and numbered cause, joined by Defendant's Attorney of Record, and files this Motion with the Court, and in support of said Motion would show the Court as follows:

The Defendant, by and through Defendant's Attorney of Record, requests the Court to instruct the Prosecuting Attorney, his staff, and any of the State's witnesses, in this cause, not to allude to, refer to, or in any way bring before the jury, whether as a panel or a jury selected to try this cause, any of the following, and would show the Court that to allow such testimony would be prejudicial to the rights of the Defendant in this cause and a violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 19 of the Texas Constitution, Articles 1.04, 1.05 and 1.051 of the Texas Code of Criminal Procedure, and the Texas Rules of Criminal Evidence §609 and the 403 balancing test.

Defendant would urge the Court to instruct the District Attorney not to refer to, or allude to, any of the following without first approaching the bench and making known to the Court and attorney for the Defendant, outside the presence and hearing of the jury,

FILED
Loren Jackson
District Clerk

MAY -5 2009

1
Fratta: Motion in Limine

Time: _____ Harris County, Texas

By _____ Deputy

: 00539

that he intends to offer such proof, thus permitting the jury to be retired and the evidence and objections heard, and the Court to rule on the admissibility of such evidence, before it is placed before the jury, thus preventing prejudicial error no subsequent instruction could cure.  Defendant requests this instruction concerning the following:

1.    Any reference, either directly or indirectly, whether in opening statement, argument, jury selection, or otherwise, concerning the possibility or possible fact that the accused has been charged with or convicted of any offense.

a.    No reference to a prior trial for Fratta, prior trials of the co-defendants, Fratta's previous conviction for capital murder.  Due Process requires the Defendant have a fair trial from an unbiased jury.

b.    No reference to Fratta being on death row because Due Process requires the Defendant be given a fair trial with an unbiased jury listening to the facts of this case.

c.    No reference to deviate sexual preferences as inadmissible character evidence.  The allegation that Mr. Fratta committed deviant sexual acts as described by the complainant on December 15, 1993.  These acts allegedly occurred during the course of their marriage from May of 1983 through their separation in June of 1992.

d.    No PowerPoint presentations without showing same to Defense Lawyers to lodge legal objections.

e.    Joseph Prystash and Howard Guidry have both been bench warranted from TDC by the State.  Mr. Prystash's lawyer, William S. Helfand, told defense counsel that Mr. Prystash is not competent to stand trial.

We OBJECT to the State parading both Joseph Prystash and Howard Guidry before the jury. This would be prejudicial to Mr. Fratta's Due Process right to a fair trial because both Prystash and Guidry will be in prison clothes and the Jurors will wonder why we did not subpoena them to testify. Witnesses do not have to take the Fifth in front of the jury and similarly, they should not be shown to the jury in person.

We will stipulate to booking photographs of both Joseph Prystash and Howard Guidry as long as they are not shown in jail clothes to prejudice the jury.

      f.       No reference to the false allegation that Mr. Fratta admitted to the use of illegal steroids.

      g.       No reference to the allegation that on or about September 18, 1991, Mr. Fratta sexually harassed Marilyn Stepp in Missouri City, Texas.

      h.       No reference to the allegation that on or about June 28, 1994 that Mr. Fratta solicited, encouraged, aided or attempted to aid Joseph Prystash in the commission of a Burglary of a Habitation that occurred at 19610 Forest Fern Drive, Humble, Harris County, Texas.

      i.       No reference to the allegation that on or about July 16, 2001, Mr. Fratta was found guilty of Possession of illegal contraband namely one piece of steel approximately 12 inches long and one half inch wide.

In this regard, Defendant specifically would show the Court that the above topics are not relevant to whether or not Defendant is guilty of capital murder. If Mr. Fratta has a record of any kind, **it is not admissible in accordance with T.R.E. 403,** until after the balancing test is performed in compliance with Rule 609 of the Texas Rules of Evidence.

: 00541

In this regard, Defendant specifically would show the Court that if Defendant has a record of any kind or bad character as a person, **it is not admissible in accordance with T.R.E. 404(b),** until after the balancing test is performed in compliance with Rule 404(b) of the Texas Rules of Evidence.

2.      That the Prosecuting Attorney or any member of his staff be instructed not to elicit from any witness any oral or written statement from the Defendant which may have been made as a result of the transaction in question without first taking the matter up outside the presence of the jury to ascertain whether or not such statement is admissible and meets the Constitutional test set out in **Miranda v. Arizona,** 384 U.S. 436 (1966), **and Articles 15.17, 38.21 and 38.22 of the Texas Code of Criminal Procedure.**

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that prior to going into any of the foregoing, the Prosecuting Attorney and any member of his staff and any witnesses in behalf of the State be instructed not to allude to such evidence until first approaching the bench and making it known to the Court that it is the intention to go into such matters, outside the presence and hearing of the jury and that the Prosecuting Attorney intends to offer such proof, thus permitting the jury to be retired and the evidence and objections heard and the Court be given an opportunity to rule on the

: 00542

admissibility of the evidence before it is before the jury, thus preventing prejudicial error in such cause, and error which no instruction could cure.

RESPECTFULLY SUBMITTED,

VIVIAN R. KING
SBN: 00784399
440 Louisiana St., Suite 800
Houston, Texas 77002
(713) 222-2019 (Phone)
(713) 224-6008 (Fax)

JOINED BY:

Randy McDonald, First Chair
ATTORNEYS FOR ROBERT FRATTA

## CERTIFICATE OF SERVICE

As Attorney of Record for Defendant, I do hereby Certify that a true and correct copy of the above and foregoing document was provided to the Attorneys for the State assigned to this Court on May 05, 2009.

VIVIAN R. KING

: 00543

<u>CAUSE NO. 1195044</u>

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **230TH JUDICIAL DISTRICT** |
| | § | |
| **ROBERT FRATTA** | § | **HARRIS COUNTY, TEXAS** |

## O R D E R

BE IT REMEMBERED, that on the _____ day of _____, 2009, came on

to be considered the above and foregoing Motion in Limine by Defendant. After

consideration of the same, it is the opinion of the Court that Defendant's Motion be:

( )     GRANTED.

( )     DENIED, to which ruling the Defendant excepts.


**SIGNED BY:**

_____

**JUDGE PRESIDING**

: 00544

CMS1141926

**CAUSE NO. 1195044**     *ORiGiNAL*

| | | |
|---|---|---|
| **STATE OF TEXAS** | }{ | **IN THE DISTRICT COURT** |
| **v.** | }{ | **HARRIS COUNTY, TEXAS** |
| **Robert Alan Fratta** | }{ | **230TH JUDICIAL DISTRICT** |

*ex parte*

## DEFENDANTS MOTION FOR INVESTIGATORS TO HAVE ACCESS TO DEFENDANT COURTROOM DURING BREAKS AND LUNCH

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW VIVIAN R. KING, attorney of record in the above entitled and numbered cause and files this Motion for Investigators to have access to Defendant in the courtroom during breaks and lunch, and in support of thereof, would respectfully show as follows:

I.

Defendant has been indicted by the Harris County Grand Jury for Capital Murder. The undersigned counsel was appointed to represent the Defendant. The Defendant is requesting the opportunity to have access to his investigators in the courtroom during all breaks and lunch, each day as the trial progresses. The Defendant makes this request because has testimony is presented the Defendant has a need to consult with his investigators regarding testimony as it is being presented, in continued preparation during the trial. The Defendant is requesting that the investigators be allowed to bring in necessary electronic devices to accommodate his request. These electronic devices shall include mini CD/DVD player, laptop computer, audio cassette recorder/player, earphones, electronic stop watch, and digital photos. I believe that allowing my investigators, Sonja Dee Raffeet TDL 10321862, Carmen Laffey TDL 02032165, and Misty Graham TDL 20688329 access to the Defendant in the courtroom during all breaks and lunch will be valuable in the investigation and continued preparation during trial.

II.

The attorney in this case is of the opinion that the special order is needed to allow effective representation of the Defendant for the above reason. The investigators shall be authorized by this motion to have access to the Defendant during all breaks and lunch, each day as the trial progresses.

MAY - 7 2009

Loren Jackson
District Clerk

Time: _____
        Harris County, Texas
By _____
          Deputy

00545

1

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that this Motion be, in all things granted without further hearing, or in the alternative that the Court set a hearing to determine the foregoing motion.

Respectfully submitted,

Vivian King
440 Louisiana St., Ste 800
Houston, Texas 77002
Telephone #: (713) 222-2019
SBN: 00784399

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion has been sent to the Assistant District Attorney for the 230th Judicial District of Harris County, but has not been sent to the Defendant, ROBERT ALAN FRATTA, Harris County Jail, Houston, Texas 77002 by either regular mail, certified mail return receipt requested, fax, regular mail or hand delivery on this ____ day of April, 2009.

May 7, 2009.

VIVIAN R. KING

2

: 00546

CAUSE NO. 1195044

| | | |
|---|---|---|
| STATE OF TEXAS | )( | IN THE DISTRICT COURT |
| v. | )( | HARRIS COUNTY, TEXAS |
| ROBERT ALAN FRATTA | )( | 230TH JUDICIAL DISTRICT |

## O R D E R

The Court having considered the evidence on the foregoing Defendant's Motion for investigators to have access to Defendant in the courtroom, finds that said Motion shall be GRANTED.

It is ORDERED that Private Investigators Sonja Dee Raffeet, Carmen Laffey, and Misty Graham have access to the Defendant in the courtroom during all breaks and lunch, until the end of this trial.

SIGNED this _____ day of _____, 200 _____.


_____
Judge Presiding


3

: 00547

CAUSE NO. 1195044

State of Texas                    )    IN THE DISTRICT COURT OF
                                  )
                                  )    HARRIS COUNTY, TEXAS
v                                 )
Robert Fratta                     )    230th JUDICIAL DISTRICT

## DEPUTY REPORTER STATEMENT

Pursuant to Rule 13.5 of the *Texas Rules of Appellate Procedure*, Appointing Deputy Reporter, I hereby certify the following:

A.    The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause.

B.    I, the undersigned deputy reporter, worked the following dates in the above court and on the above cause no.

5-12-09

SIGNED on this 12th day of MAY 2009

Cheryl Lo Pierce
Signature

Cheryl L. Pierce
Print Name

16523 Royal Mile Lane
Address

Houston Tx 77084
City/State/Zip

(281) 463-7836
Phone

CSR # 2711     CSR Expiration Date 12-31-10

: 00548

NO:  1195044

THE STATE OF TEXAS

VS.

Robert Alan Fratta

IN THE 230TH DISTRICT COURT

OF

HARRIS COUNTY, TEXAS


# BENCH WARRANT RETURN


TO THE SHERIFF OF HARRIS COUNTY, TEXAS:

RE:  **HOWARD PAUL GUIDRY**
Spn:  **01446317**

HOWARD PAUL GUIDRY, a prisoner in your custody, having been bench warranted from the Texas Department of Criminal Justice Institutional Division, is hereby released by the court and this is your authority to return said prisoner to the Texas Department of Criminal Justice Institutional Division.

Date:  May 14, 2009

Court Coordinator
230th District Court
Harris County, Texas


**F I L E D**
Loren Jackson
District Clerk

MAY 1 4 2009

Time: _____
Harris County, Texas
By _____
Deputy

: 00549

NO: 1195044


THE STATE OF TEXAS                          IN THE 230TH DISTRICT COURT

VS.                                         OF

Robert Alan Fratta                          HARRIS COUNTY, TEXAS


# BENCH WARRANT RETURN


TO THE SHERIFF OF HARRIS COUNTY, TEXAS:

                                 RE:  **JOSEPH A. PRYSTASH**
                                 Spn:  **00614438**


    JOSEPH ANDREW PRYSTASH, a prisoner in your custody, having been bench
warranted from the Texas Department of Criminal Justice Institutional Division, is hereby
released by the court and this is your authority to return said prisoner to the Texas Department of
Criminal Justice Institutional Division.

Date: May 14, 2009

                                  Court Coordinator
                                  230th District Court
                                  Harris County, Texas


**FILED**
Loren Jackson
District Clerk

MAY 1 4 2009

Time: _____
                Harris County, Texas
By _____
                   Deputy


: 00550

# 230th District Court

## Jury Notes

4:02

CAUSE # <u>1195044</u>

DEF. NAME <u>Robert Alan Fratta</u>

The Jury requests the following:

1. Telephone timeline exhibit.

2. Aerial photograph of locations related to trial.

3. Time X-ray ~~radio~~ technician received call from Robert Fatta in ER, based on her testimony.

4. Time Robert Fratta arrived at the crime scene, based on Bailey's testimony.

**FILED**

Loren Jackson
District Clerk

MAY 1 4 2009

4:02 PM

Time: _____

Harris County, Texas

By: _____

Deputy

: 00551

MEMBERS OF THE JURY:

In view of your request for certain testimony, I instruct you as follows:

"If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witnesses' testimony or the particular point in dispute, and no other."

In accordance with this rule, you are instructed that a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness. Therefore, it will be necessary for you to certify that you are in disagreement as to the statement of a witness, and you should request that part of the witness' statement or point in dispute, and only that part or point in which is in dispute. Please fill in the form below and have your foreperson sign the same.

Fred (GENE) Kuhn

Name of witness whose statement is subject to disagreement:

Deputy Bailey

Lawyer questioning witness at time of statement:

Prosecution

Statement in dispute:

Time Robert Fratta arrived at scene.

FILED
Loren Jackson
District Clerk

MAY 1 4 2009
4:13PM
Time: _____ Harris County, Texas
By _____ Deputy

: 00552



STATE

V.

ROBERT FRATTA
CAUSE No. 1195044

RECORDED JAIL PHONE
CALL

5-14-09

STATE'S
EXHIBIT
170

: 00553

MEMBERS OF THE JURY:

In view of your request for certain testimony, I instruct you as follows:

"If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witnesses' testimony or the particular point in dispute, and no other."

In accordance with this rule, you are instructed that a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness. Therefore, it will be necessary for you to certify that you are in disagreement as to the statement of a witness, and you should request that part of the witness' statement or point in dispute, and only that part or point in which is in dispute. Please fill in the form below and have your foreperson sign the same.

Fred (Gene) Kuhn

Name of witness whose statement is subject to disagreement:

Hermann Hospital ER X-Ray Tech

Lawyer questioning witness at time of statement:

Prosecution

Statement in dispute:

Time of telephone call from Robert Fratta

**FILED**
Loren Jackson
District Clerk

MAY 1 4 2009

Time: 4:13 pm

By _____
Harris County, Texas
Deputy

: 00554

# 230th District Court

## Jury Notes

CAUSE # _119504_

DEF. NAME _Robert Alan Fratta_

REQUEST Sears Reciepts for carpet purchase.

**FILED**
Loren Jackson
District Clerk

MAY 1 4 2009

Time: 5:30 pm

Harris County, Texas

By _____
(Deputy)

Gene K___

: 00555

# 230th District Court

## Jury Notes

CAUSE #    1195044

DEF. NAME    Robert Alan Fratta

1) DIVORCE DeRee Listing
INVENTory of MR FRATTA

2) AND MRS Fratta INVENTory

3) Power of Attorney Listing
MR LexBocker AS RESPONSIBle

# FILED
Loren Jackson
District Clerk

MAY 1 4 2009

Time: 6:03 pm
Harris County, Texas
By _____
Deputy

: 00556

CAUSE NO. 1195044

| THE STATE OF TEXAS | § | IN THE 230TH DISTRICT COURT |
|---|---|---|
| VS. | § | OF HARRIS COUNTY, TEXAS |
| ROBERT ALAN FRATTA | § | MAY TERM, A. D., 2009 |

Members of the Jury:

The defendant, Robert Alan Fratta, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about the 9th day of November, 1994, in Harris County, Texas. The defendant has pleaded not guilty.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.

A person commits the offense of capital murder if he:

(1) employs another to commit the murder for remuneration or the promise of remuneration; or

(1) he commits the murder in the course of committing or attempting to commit the felony offense of burglary of a building.

"Remuneration" means payment by one person to another in compensation for a specific service or services rendered pursuant to an agreement.

A person commits the offense of burglary if, without the effective consent of the owner, the person:

(1) enters a building or any portion of a building not then open to the public, with intent to commit a felony or theft; or

(2) enters a building and commits or attempts to commit a felony or theft.

"Attempt" to commit an offense occurs if, with specific intent to commit an offense, a person does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended.

"Enter" means to intrude any part of the body, or any physical object connected to the body.

1

: 00557

"Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

"Theft" is the unlawful appropriation of property with intent to deprive the owner of said property and without the owner's effective consent.

"Appropriate" and "appropriation" means to acquire or otherwise exercise control over property other than real property. Appropriation of property is unlawful if it is without the owner's effective consent.

"Property" means tangible or intangible personal property, or a document, including money, that represents or embodies anything of value.

"Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

"Effective consent" means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threats, deception or coercion.

"Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the defendant.

"Deadly weapon" means a firearm, or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

2

: 00558

The definitions of intentionally and knowingly relative to the offenses of capital murder and murder are as follow:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The definition of intentionally relative to the offense of burglary of a building is as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Robert Alan Fratta, intentionally employed Joseph Prystash and/or Howard Guidry to kill Farah Fratta; and the defendant, Robert Alan Fratta, paid or promised to pay Joseph Prystash and/or Howard Guidry to kill Farah Fratta, as alleged in the indictment; and Joseph Prystash and/or Howard Guidry agreed to kill Farah Fratta pursuant to such employment by the defendant, Robert Alan Fratta; and that Joseph Prystash and/or Howard Guidry did then and there kill Farah Fratta by shooting Farah Fratta with a

3

: 00559

deadly weapon, namely, a firearm, pursuant to such agreement for remuneration by the defendant, Robert Alan Fratta and that the defendant, with intent to promote or assist the commission of the offense of murder of Farah Fratta, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash and/or Howard Guidry in shooting Farah Fratta with the specific intention of thereby killing Farah Fratta; or

You must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was in the course of committing or attempting to commit the felony offense of burglary of a building owned by Farah Fratta, as alleged in this charge, but also that the defendant specifically intended to cause the death of Farah Fratta, by shooting Farah Fratta, with a deadly weapon, namely, a firearm; or you must find from the evidence beyond a reasonable doubt that the defendant, Robert Alan Fratta, with the intent to promote or assist in the commission of the offense of burglary of a building, if any, solicited, encouraged, directed, aided, or attempted to aid Joseph Andrew Prystash and/or Howard Guidry in shooting Farah Fratta, if he did, with the intention of thereby killing Farah Fratta. If you have a reasonable doubt as to the existence of any of the foregoing elements, then you cannot convict the defendant of capital murder.

Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally, or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely a firearm, and the defendant did employ Joseph Prystash to commit the murder for remuneration or the promise of remuneration, namely, a motor vehicle; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, Joseph Andrew Prystash did then and there unlawfully, intentionally, or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely a firearm, and the defendant did employ Joseph

4

: 00560

Prystash to commit the murder for remuneration or the promise of remuneration, namely, a motor vehicle, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and the defendant did employ Howard Guidry to commit the murder for remuneration or the promise of remuneration, namely, money; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, Howard Guidry did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and the defendant did employ Howard Guidry to commit the murder for remuneration or the promise of remuneration, namely, money, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Howard Guidry to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a building owned by Farah Fratta, intentionally cause the death of Farah Fratta by shooting Farah Fratta with a deadly weapon, namely, a firearm; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, Joseph Andrew Prystash and/or Howard Guidry did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a building owned by Farah Fratta,

5

: 00561

intentionally cause the death of Farah Fratta by shooting Farah Fratta with a deadly weapon, namely, a firearm, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash and/or Howard Guidry to commit the offense, if he did, then you will find the defendant guilty of capital murder, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and next consider whether the defendant is guilty of the lesser offense of murder.

You are instructed that you may consider all relevant facts and circumstances surrounding the death, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.

Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of November, 1994, in Harris County, Texas, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm; or if you find from the evidence beyond a reasonable doubt that on or about the 9th day of November, 1994, in Harris County, Texas, Joseph Andrew Prystash and/or Howard Guidry, did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash and/or Howard Guidry to commit the offense, if he did, then you will find the defendant guilty of murder.

: 00562

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder on the one hand or murder on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of murder.

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

: 00563

You are further instructed that if there is any evidence before you in this case regarding the defendant's having committed acts other than those alleged against him in the indictment, to-wit: extraneous sexual acts, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that allegations of extraneous sexual acts were alleged, if any, and even then you may only consider the same in determining the motive of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

: 00564

Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

In this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

: 00565

A Grand Jury indictment is the means whereby a defendant is brought to trial in a felony prosecution. It is not evidence of guilt nor can it be considered by you in passing upon the question of guilt of the defendant. The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by

: 00566

using the appropriate form attached hereto and signing the same as Foreman.

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

No one has any authority to communicate with you except the officer who has you in charge. After you have retired, you may communicate with this Court in writing through this officer. Any communication relative to the cause must be written, prepared and signed by the Foreman and shall be submitted to the court through this officer. Do not attempt to talk to the officer who has you in charge, or the attorneys, or the Court, or anyone else concerning any questions you may have.

Your sole duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause and restrict your deliberations solely to the issue of guilt or innocence of the defendant.

Following the arguments of counsel, you will retire to consider your verdict.

**FILED**
Loren Jackson
District Clerk

MAY 1 4 2009

Time: _10:08 AM_

By _____
Harris County, Texas
Deputy

Belinda Hill, Judge
230th District Court
Harris County, TEXAS

11

: 00567

CAUSE NO.   1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 230TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| ROBERT ALAN FRATTA | § | MAY TERM, A. D., 2009 |

<u>CHOOSE ONE</u>

"We, the Jury, find the defendant, Robert Alan Fratta, not guilty."

_____
Foreman of the Jury

_____
(Please Print) Foreman

"We, the Jury, find the defendant, Robert Alan Fratta, guilty of capital murder, as charged in the indictment."

_____ _Kuhn (GENE)_
_FRED   Kuhn  (GENE)_
Foreman of the Jury

_FRED   Kuhn   (GENE)_
(Please Print) Foreman

FILED
Loren Jackson
District Clerk

MAY 15 2009

Time: _1:20pm_
Harris County, Texas
By _____
Deputy

"We, the Jury, find the defendant, Robert Alan Fratta, guilty of murder."

_____
Foreman of the Jury

_____
(Please Print) Foreman

12

: 00568

# 230th District Court

## Jury Notes

CAUSE # ___1195044___

DEF. NAME ___Robert Fratta___

1) ADDRESS BOOK (Bob's)

2) FIRST contact by (Date)
Police of MARY GIPP

3) Date of search
MARY GIPP's Residence

**FILED**
Loren Jackson
District Clerk

MAY 1 5 2009

Time: _____
Harris County, Texas
By _____
Deputy

MEMBERS OF THE JURY:

In view of your request for certain testimony, I instruct you as follows:

"If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witnesses' testimony or the particular point in dispute, and no other."

In accordance with this rule, you are instructed that a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness. Therefore, it will be necessary for you to certify that you are in disagreement as to the statement of a witness, and you should request that part of the witness' statement or point in dispute, and only that part or point in which is in dispute. Please fill in the form below and have your foreperson sign the same.

**FILED**
Loren Jackson
District Clerk

MAY 1 5 2009

Time: 11:48am

Harris County, Texas

By _____ Deputy

_Belinda Hill_

Name of witness whose statement is subject to disagreement:

_Prosecution_

Lawyer questioning witness at time of statement:

_Date first Questioned by police (MARY GIPPS)_

Statement in dispute:

~~Date of first Residence search.~~

_Geo K_                    Please specify which
                           witness and which lawyer
RE: we are uncertain which attorney
In the prosecution, However the witness is Det Valerio     Belinda Hill

MEMBERS OF THE JURY:

In view of your request for certain testimony, I instruct you as follows:

"If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witnesses' testimony or the particular point in dispute, and no other."

In accordance with this rule, you are instructed that a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness. Therefore, it will be necessary for you to certify that you are in disagreement as to the statement of a witness, and you should request that part of the witness' statement or point in dispute, and only that part or point in which is in dispute. Please fill in the form below and have your foreperson sign the same.

**FILED**
Loren Jackson
District Clerk

MAY 1 5 2009

Time: 11:48 ᵖ m

By _____
        Deputy

Harris County, Texas

_Belinda Hill_

Name of witness whose statement is subject to disagreement:

_Prosecution_

Lawyer questioning witness at time of statement:

_Date of MARY GIPPS RESIDENCE,_

Statement in dispute:
_Search warrant Executed_

_Please specify which witness and which lawyer_

_Belinda Hill_

_E: we are uncertain of which Attorney from prosecution. and witness is Det Velercio._

# 230th District Court

## Jury Notes

CAUSE # 1195044

DEF. NAME Robert Fratta

Judge Hill,
I printed my name
on the line where should
have signed, however I
did sign above the printed
signature.

Fred Kuhn ("Gene")

**FILED**
Loren Jackson
District Clerk

MAY 1 5 2009

Time: _____
By _____
Harris County, Texas
Deputy

: 00572

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:   MARK DARRELL ROBERTSON

If incarcerated, fill out following information:
TDC NO.: 01477033
UNIT: Eastham
TYC NO.:
DOB: 12/17/1970   RACE:   SEX: M
SPN NO.: 02425677

TO THE DIRECTOR:

or
TO THE SHERIFF:     **Houston County, Texas**
or
TO:     Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case. The case is set on the court's docket for **May 26, 2009** at 9:00 a.m./p.m. in the Harris County District or County Court listed above. Witness bond is fixed at _____.

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on the date **May 18, 2009.**

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____
(Deputy Clerk)

_____
Presiding Judge

---

### Officer's Return

I received this writ / warrant on _____ (date). I executed it on _____ (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

Sheriff, _____ County, Texas
By: _____, Deputy

FEES: Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents
Other: _____

$ _____
$ _____
$ _____

Total:   $ _____

**FILED**
Loren Jackson
District Clerk

MAY 18 2009

Time: _____
Harris County, Texas
By _____
Deputy

Attach Peace Officer's Return

: 00573

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the  District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:     CHARLES GLENN HOOD

If incarcerated, fill out following information:
TDC NO.: 00586729
UNIT: Polunsky
TYC NO.:
DOB: 01/22/1963    RACE:     SEX: M
SPN NO.: 02425678

TO THE DIRECTOR:

or
TO THE SHERIFF:     **Walker County , Texas**
or
TO:     Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case.  The case is set on the court's docket for **May 26, 2009** at 9:00  a.m./p.m. in the Harris County District or County Court listed above.  Witness bond is fixed at _____

So that he may appear before this ABOVE ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date May 18, 2009.

_Belinda Hill_
Presiding Judge

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____
(Deputy Clerk)

---

### Officer's Return

I received this writ / warrant on _____(date).  I executed it on _____ (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

Sheriff, _____ County, Texas
By: _____ Deputy

FEES:  Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents          $ _____
Other:     _____          $ _____

Total:     $ _____

**FILED**
Loren Jackson
District Clerk

MAY 18 2009

Time: _____
Harris County, Texas

By _____
Deputy

Attach Peace Officer's Return

: 00574

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:    ERIC DEWAYNE CATHEY

If incarcerated, fill out following information:
TDC NO.: 00999228
UNIT: Ramsey
TYC NO.:
DOB: 07/29/1971   RACE: B   SEX: M
SPN NO.: 01224361

TO THE DIRECTOR:

or
TO THE SHERIFF:     **Brazoria County, Texas**
or
TO:    Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case.  The case is set on the court's docket for May 26, 2009 at 9:00  a.m./p.m. in the Harris County District or County Court listed above.  Witness bond is fixed at _____.

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date May 18, 2009.

_____
Presiding Judge

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____
(Deputy Clerk)

---

### Officer's Return

I received this writ / warrant on _____ (date).  I executed it on _____ (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

---

Sheriff, _____ County, Texas
By: _____ , Deputy

FEES:  Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents
Other: _____

$ _____

$ _____

$ _____

**FILED**
Loren Jackson
District Clerk

Total:    $ _____

MAY 1 8 2009

Attach Peace Officer's Return

Time: _____
Harris County, Texas

By _____
Deputy

: 00575

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE: HOWARD PAUL GUIDRY

If incarcerated, fill out following information:
TDC NO.: 999226
UNIT: Polunsky
TYC NO.:
DOB: 04/15/1976 RACE: B SEX: M
SPN NO.: 01446317

**FILED**
Loren Jackson
District Clerk
MAY 2 3 2009
Time: _____
By _____
Harris County, Texas
Deputy

TO THE DIRECTOR:

or

TO THE SHERIFF: **Walker County, Texas**

or

TO: Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case. The case is set on the court's docket for May 4, 2009 at 9:00 a.m./p.m. in the Harris County District or County Court listed above. Witness bond is fixed at _____

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date April 21, 2009.

ATTEST:
Charles Bacarisse, District Clerk of Harris County, Texas
By: _____

_____
Presiding Judge

_____
(Deputy Clerk)

## Officer's Return

I received this writ / warrant on 4-30-09 (date). I executed it on 5-1-09 (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

Adrian Garcia
Sheriff Harris County, Texas
By: B.V. , Deputy

FEES: Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents
Other: _____
$ _____     $ _____
$ _____
Total: $ _____

Attach Peace Officer's Return

: 00576

Case No.: 1195044

The State of Texas
vs.
Robert Alan Fratta

In the  District Court
of Harris County, Texas

## Writ of Attachment or Bench Warrant

RE:   JOSEPH ANDREW PRYSTASH

If incarcerated, fill out following information:
TDC NO.: 999202
UNIT: Polunsky
TYC NO.:
DOB: 09/05/1956   RACE: W  SEX: M
SPN NO.: 00614438

**FILED**
Loren Jackson
District Clerk
MAY 2 3 2009
Time: _____
By _____
Harris County, Texas
Deputy

TO THE DIRECTOR:

or

TO THE SHERIFF:     **Walker County, Texas**

or

TO:     Any Peace Officer of the State of Texas

The above named individual is a witness or defendant in the above styled and numbered case. The case is set on the court's docket for May 4, 2009 at 9:00  a.m./p.m. in the Harris County District or County Court listed above. Witness bond is fixed at _____

So that he may appear before this Court, we ORDER you to deliver the above named individual to the custody of the Harris County Sheriff or any of his deputies.

ORDERED in Harris County, Texas on this date April 21, 2009.

ATTEST:
Charles Bacarisse, District Clerk of Harris County Texas
By: _____
(Deputy Clerk)

_____
Presiding Judge

Officer's Return

I received this writ / warrant on _____ (date). I executed it on **5-1-09** (date) by delivering it to the proper official named above and by taking the above named individual to the Harris County Court/District Court/Harris County Jail as ordered.

Adrian Garcia
Sheriff _____ Harris County, Texas
By: _____, Deputy

FEES:  Attaching one (1) witness / defendant
Mileage: _____ Miles at _____ cents
Other: _____

$ _____

$ _____

$ _____

Total:     $ _____

Attach Peace Officer's Return

: 00577

CAUSE NO. 1195044

| THE STATE OF TEXAS | X | IN THE 230th DISTRICT COURT |
|---|---|---|
| vs. | X | OF |
| ROBERT ALAN FRATTA | X | HARRIS COUNTY, TEXAS |

### STATE'S SUPPLEMENTAL NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS CONDUCT FOR IMPEACHMENT AND PUNISHMENT

**COMES NOW THE STATE OF TEXAS**, by and through the undersigned Assistant District Attorney, Mia R. Magness, and hereby gives notice to this Honorable Court and other concerned parties that the State intends to offer, when relevant, evidence of extraneous conduct, crimes or bad acts committed by the defendant pursuant to Texas Rules of Criminal Evidence 404(b) and 609(f) and Texas Code of Criminal Procedure Article 37.07 section 3(g). In addition to the extraneous conduct, crimes and bad acts the defense has previously been notified of, the State seeks to show the following:

On May 21, 2009, while incarcerated in the Harris County Jail, the defendant was found in possession of Contraband/Obscene Photographs, namely photographs depicting obscenity and/or nudity, in violation of the Harris County Sheriff's Office Inmate Handbook (see attached).

Respectfully submitted,

MIA R. MAGNESS
Assistant District Attorney
Harris County, Texas
TBN 00787363

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above notice was delivered by hand to Randy McDonald (or his designated representative) on the 22nd day of May, 2009.

MIA R. MAGNESS

**FILED**
Loren Jackson
District Clerk

MAY 2 6 2009

Time: _____
Harris County. Texas
By _____
Deputy

: 00578

JIM LEITNER
FIRST ASSISTANT



CRIMINAL JUSTICE CENTER
1201 FRANKLIN, SUITE 600
HOUSTON, TEXAS 77002-1901

## PATRICIA R. LYKOS
### DISTRICT ATTORNEY
### HARRIS COUNTY, TEXAS

May 22, 2009

Randy McDonald

*Via Hand Delivery*

> Re:   **The State of Texas vs. Robert Fratta**
> **Cause No. 1195044 in the 230th District Court of Harris County, Texas**
> **Capital Murder**

Dear Randy:

As we discussed last night and this morning, I have enclosed the State's Supplemental Notice of Intent to Introduce Evidence of Extraneous Conduct for Impeachment and Punishment. I have also included copies of the materials seized and the relevant portions of the Harris County Sheriff's Office Inmate Handbook.

In addition, I have copied all the phone recordings of your client's jail phone calls that we have received to date. The recorded call referencing the contraband materials can be found on the 4th disc, segment 11, recorded on May 14, 2009.

I have also enclosed another copy of the letter written by the defendant to Bradley Fratta *Baquer* since Ms. King advised that she was unable to locate the copy that we previously supplied.

Please don't hesitate to call me if you have any questions or concerns. You also have my cell phone number, so feel free to call me over the holiday weekend if necessary.

Sincerely,

Mia Magness
Assistant District Attorney
Harris County, Texas
(713) 755-6178

Enclosures

: 00579

# INMATE HANDBOOK

Harris County
Sheriff's Office

# MANUAL DEL PRESO

Harris County
Sheriff's Office

a. No inmate is authorized to keep a telephone usage list or to "schedule" other inmates for telephone usage.

b. No inmate is authorized to "sell" telephone calls.

c. No inmate is authorized to interfere with another inmate's use of the telephone in any way.

d. If any inmate attempts to interfere with your use of the telephone, contact the Floor or Pod Deputy immediately and let them handle the situation.

3. Telephone courtesy:

a. Do not abuse your telephone privileges.

b. Do not stretch the telephone cord by sitting, squatting or lying down while using the telephone.

c. Be considerate toward your fellow inmates; let everyone have their turn at making a call.

d. If there is a dispute over the telephone, contact the Floor or Pod Deputy immediately and let them handle the situation.

4. Messages

a. You are not allowed to receive telephone calls.

b. Tell your relatives and friends that any message of importance (i.e.: a *death in the family or serious illness or injury to a family member*) should be directed to the Chaplain's Office for delivery by a Chaplain's representative.

c. No other messages will be taken or delivered by Sheriff's personnel for you.

**D. CORRESPONDENCE**

1. You may write to anyone, as often as you wish, provided your correspondence does not violate:

a. U.S. Postal regulations or laws;

b. State or local laws or ordinances;

c. Court Orders; and/or,

d. Sheriff's Department rules, regulations or orders.

2. To send letters, you must do the following:

a. Your return address must be shown in the upper left front corner of the envelope;

b. You **must** use the return address and format for the facility you are housed in as shown on page two (2) of this Handbook;

c. Write the name and full, complete address of the person or business you are writing to in the center of the front of the envelope;

d. Be sure the envelope bears enough postage to ensure the letter's delivery; and,

e. Put the letter in the mailbox in your cellblock.

f. ANY MAIL NOT FULLY COMPLYING WITH THE ABOVE FIVE (5) REQUIREMENTS ('a' THROUGH 'e') WILL BE RETURNED.

3. You may receive mail provided the person or business sending it complies with the following:

a. Shows their full name and return address on the envelope;

b. Shows your full name (*Please have them use the name that you are booked into jail on*);

c. Shows your SPN Number; and,

d. Shows your facility and cellblock.

4. General Correspondence Rules:

a. Incoming letters improperly addressed or stamped will be returned to the sender.

b. Advise all persons and businesses who write you that **YOU ARE NOT ALLOWED TO RECEIVE:**

i)    greeting cards;
ii)   pens;
iii)  pencils;
iv)   markers;
v)    newspapers;
vi)   magazines;
vii)  books;
viii) stamps;
ix)   envelopes;
x)    obscene pictures;
xi)   perfumed letters;
xii)  packages;
xiii) stickers;
xiv)  cash;
xv)   food or food items; and/or,
xvi)  contraband.

c. All correspondence received after your release will be returned to the sender.

**F. CLOTHING**

1. You have been issued a shirt, pair of trousers and shoes.

a. You must be fully clothed in these three (3) items when in the Day Room and other common areas of the facility.

2. You shall not damage, alter or mark the clothing issued to you—It is there for you to use, but it does not belong to you.

a. Any item of clothing damaged, altered or marked shall be considered contraband and taken away from you.

b. Disciplinary charges and/or criminal charges may be filed against any inmate who damages, alters or marks on any county property or clothing.

3. Court clothing:

a. If you are scheduled for a court appearance that requires you to be dressed in street cloths, you will be allowed to use the clothing you wore when you were booked into jail; or,

b. Your attorney or a member of your family may bring a change of clothing for you.

i)   Court clothes will be accepted not more than twenty-four (24) hours prior to the scheduled court appearance date;

ii)  Only one (1) set of clothing will be allowed in your property bag at a time;

iii) Court clothes shall be replaced in your property bag after your court appearance and may be picked up by the person who brought them;

iv)  Undergarments and socks are considered court clothes; and,

10

00581

## C. TELEVISION

1. A day room area with a television is provided in most cellblocks.
2. Day rooms are for the use of all inmates assigned to that cellblock.
3. The channel to which the television is turned is determined by:
   a. a majority vote of the inmates in the cellblock; or,
   b. the Deputy or Staff Member.
4. No inmate has the authority to "sell" television time or to override a vote taken by the cellblock as to what channel to watch.
5. If there is any dispute regarding the television, inform a Deputy or Staff Member and let them handle the situation. **Do not attempt to settle the dispute by yourself!**

## D. INMATE TRUST FUND

1. The money that you had with you when you were booked into jail has been put in your Inmate Trust Fund.
   a. If you had less than $1.00, or your money was wet or bloody, it was placed in your valuable property bag.
   b. Upon your release from jail, the balance in your Inmate Trust Fund will be returned to you by check.
   c. If you are sent to the Texas Department of Criminal Justice or Federal Prison System, the balance in your Inmate Trust Fund will be sent with you to Prison.
2. You cannot use cash money for any purpose during your stay in the Harris County Jail System.
   a. Possession of cash money by any inmate is not only useless, but is considered contraband and subjects you to disciplinary action.
   b. Harris County and its employees shall not be responsible for any money you fail to turn over to the Inmate Trust Fund through the proper channels.
3. Money may be deposited into your Inmate Trust account by family or friends, **by mail only.** Deposits made in person will not be accepted. **Only the following** money orders or cashier's checks will be accepted for deposit into the Inmate Trust Fund:
   a. United States Postal Money Orders;
   b. Western Union Money Orders; and,
   c. Cashier's Checks drawn on a state or national bank.
4. The Inmate Trust Fund **does not accept** the following:
   a. Cash;
   b. Convenience Store money orders or cashier's checks;
   c. Personal checks; or,

---

   d. Any money order or cashier's check not listed in Section "4" above.
6. All money orders and cashier's checks submitted for deposit into your Inmate Trust Fund account must be filled out completely.
   a. Deposits must be made payable to: **Inmate Trust Fund.** Include on the money order or cashier's check "sender" line.
   b. **Your Name and SPN Number** must be written on the cashier's check or money order, **but not written on the** *"Pay to the Order of"* line.
   c. Any cashier's check or money order not made payable to the Inmate Trust Fund will be returned to sender.
   d. All cashier's checks or money orders sent in for deposit **must** have
      i) full, correct and true name;
      ii) current home address; and,
      iii) current home telephone number, if any.
7. Cashier's checks and money orders for deposit in your Inmate Trust Fund must be mailed to:

   Inmate Trust Fund
   1200 Baker Street
   Houston, TX 77002-1206

8. When money is deposited to your Inmate Trust Fund, a receipt will be given to you. Deposits must not include letters or other personal items—any deposit received with any of these items will be returned to the sender.
9. You may be allowed to release all of the money from your account or any amount greater than $20.00 to:
   a. members of your immediate family;
   b. your attorney; or,
   c. your bondsman.
10. You may release money no more than three (3) times in any thirty (30) day period exclusive of releases to attorneys or bondsmen; however, approval for you to do so must be obtained from a supervisor.
11. Your money or property cannot be released or transferred to another inmate.

## E. COMMISSARY:

1. Various items of food, clothing, toiletries, over-the-counter medicines, writing materials, and stamps are available for purchase from the Inmate Commissary.
   a. You will be allowed to order commissary items the day your floor is scheduled to order commissary.
   b. Commissary price lists, rules, schedules, and special commissary information will be periodically posted in your cell.
   c. You are encouraged to read this information and follow the instruction carefully.
   d. You shall retain any / all Commissary receipts (Proof of purchases) from all orders placed during your incarceration.
   e. Failure to follow any Commissary rule could result in the voiding of your order and disciplinary action against you.

00582

a. Before submitting an order, you must have enough money in your Inmate Trust Fund account to pay for the order.

b. The following must be correct, legible and written in the spaces provided:

   i) Date of Order
   ii) Cellblock Location
   iii) SPN Number
   iv) Printed Full Name
   v) Signature
   vi) Item Number
   vii) Quantity
   viii) Price
   ix) Total Cost of the Order

c. Use Black Ink Only.

d. Only ONE item number may be used on each line.

e. Do not erase or mark over on your commissary order slip.

f. Order only items that are on the price list and/or those posted on special flyers.

g. List your order according to the groups shown on the price list. Begin at the top of the price sheet, "Group I", and work down to "Group III."

h. Maximum limits for each item and for the total order are posted on the price sheets. These limits may vary based on supply available for sale.

i. Only one (1) order slip per inmate, per scheduled delivery day may be turned in.

j. INMATE WORKERS: you **must** include your job assignment and the hours you work in the blank space at the TOP of your order form.

3. Delivery of commissary:

a. Commissary orders must be turned into the following locations before 10:00 P.M. on the night before your scheduled delivery day:

**701 Facility** - Turn into POD Deputy.
**1200 Facility** - Turn into POD Deputy.
**1307 Facility** - Turn into POD Deputy.

b. It is the responsibility of each inmate to place their order form in the appropriate location. At no time is an inmate floor worker responsible for picking up the order forms.

c. Commissary staff delivers orders according to a posted schedule.

d. Upon entering the cellblock, the commissary staff will state the rules that must be followed in order to receive your order. These rules are posted in your cellblock.

e. You must wear your official inmate armband. The armband must be legible and not be altered, damaged, tied on, or removed for any reason.

f. You must be fully dressed in jail-issued clothing to receive your order.

g. You shall retain any / all Commissary receipts (Proof of purchases) from all orders placed during your incarceration.

4. Indigent Orders:

a. In order to be classified as indigent, an inmate must have no money or less than a dollar in their inmate Trust Fund account for the previous thirty (30) days.

b. If this prerequisite is **met, an** inmate may fill out a commissary order form for an indigent package.

   i) Write at the top of the order form **"Indigent"**.
   ii) Indigent packages will be delivered with the regular deliveries per the posted delivery schedules.

## V. DISCIPLINARY DUE PROCESS

For purposes of inmate discipline, violations of jail rules and regulations, as published in and provided to you by the Inmate Handbook, shall be divided into two (2) categories—Minor Infractions and Major Infractions:

A. **MINOR INFRACTIONS:**

1. Minor infractions are violations of rules and regulations which do not represent serious offenses against persons, and do not pose a serious threat to institutional order and safety.

2. Sanctions for violation(s) of Minor Infractions shall be:

a. counseling;

b. verbal or written reprimand;

c. temporary restriction to cells for a period not to exceed twenty-four (24) hours;

d. loss of visitation and/or commissary privileges for a period not to exceed fifteen (15) days; and/or,

e. confinement to disciplinary separation housing for a period not to exceed fifteen (15) days.

f. Each of these sanctions may be probated by the Disciplinary Committee for a period not to exceed thirty (30) days.

3. Probation

a. Probation means the sanction awarded by the Disciplinary Committee shall be held in abeyance for a finite period of time.

b. If, during the specified period of probation:

   i) The inmate is involved in a subsequent act or omission; and,
   ii) The inmate is found guilty by the Disciplinary Committee of a violation of the Inmate Rules referencing said subsequent act or omission.
   iii) The inmate shall be deemed to have violated the probation and shall serve and complete the entire term of sanction previously probated in addition to any sanction awarded for the subsequent violation.

c. If the inmate satisfactorily completes the specified period of probation, the punishment awarded said inmate shall be dismissed.

00583

## B. MAJOR INFRACTIONS

1. Major Infractions are violations of rules and regulations which:
   a. constitute serious offenses against persons and/or property, and/or,
   b. pose a serious threat to institutional order and safety.

2. Sanctions for violation(s) of Major Infractions shall be one or more of the following:
   a. loss of County "Good Time" credit;
   b. loss of visitation and/or commissary privileges for a period not to exceed thirty (30) days;
   c. removal from work details or any inmate programs; and/or,
   d. confinement to disciplinary separation housing for a period not to exceed thirty (30) days.

3. Probation
   a. Each of these sanctions may be probated by the Disciplinary Committee for a period not to exceed ninety (90) days.
      i. Probation means the sanction awarded by the Disciplinary Committee shall be held in abeyance for a finite period of time.
      ii. If, during the specified period of probation:
         (a) The inmate is involved in a subsequent act; and,
         (b) The inmate is found guilty by the Disciplinary Committee of a violation of the Inmate Rules referencing said subsequent act,
         (c) The inmate shall be deemed to have violated the probation and shall serve and complete the entire term of sanction previously probated in addition to any sanction awarded for the subsequent violation.
      iii. If the inmate satisfactorily completes the specified period of probation, the punishment awarded said inmate shall be dismissed.

## DISCIPLINARY DUE PROCESS

This Plan shall require the following Due Process procedures:

1. Provisions shall be made for a disciplinary hearing before a neutral and impartial board which shall not include anyone involved in the claimed violation or charges;

2. Provisions shall be made for the selection of the disciplinary committee;

3. Provisions shall be made for at least twenty-four (24) hours written notice to be given to the inmate of the claimed violation or charges against him/her;

4. Provisions shall be made for the disclosure of the evidence against the person charged with the violation, although confidential informants may be protected;

5. Provisions shall be made for:
   a. a voluntary waiver of a disciplinary hearing for the charged inmate to plead guilty on the charge for a lesser sentence when applicable. (Plea Bargain).

   b. an opportunity for the charged inmate to be heard in person and to present documentary defensive evidence when not unduly hazardous to institutional safety and correctional goals; and,
   c. the charged inmate to call relevant witnesses on his or her behalf for disciplinary hearings when not unduly hazardous to institutional safety or correctional goals;

6. Provisions shall be made, permitting:
   a. the inmate to seek the aid of another inmate if:
      i) the inmate is illiterate, or
      ii) where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.
   b. if that is not permissible, substitute aid from the staff or from an inmate designated by the staff should be provided.

7. Provisions shall be made for:
   a. a written statement by the disciplinary board, at the conclusion of the hearing, indicating the evidence relied upon and reasons for the disciplinary action taken.
   b. The statement shall be delivered to:
      i) the inmate;
      ii) the Sheriff; and,
      iii) shall be placed in the inmate's disciplinary file.

8. Provisions shall be made for a documented appeals process, if requested by the inmate, by a person or persons not a member of the disciplinary board.

Note: Acceptance of a Plea Bargain precludes the inmate from the Appeal's Process.

23

**BEING IN AN UNAUTHORIZED HOUSING AREA / LOCATION**
No inmate shall enter an unauthorized area, housing location, without permission of any Deputy/Staff Member. Shall include but not limited to specific assignment so designated by job assignment, scheduled school activity,

**DESTROYING, ALTERING OR DAMAGING COUNTY PROPERTY**
No inmate shall destroy, alter or damage any County property.

**STEALING OR POSSESSION OF STOLEN PROPERTY**
No inmate shall take, steal, or have in their possession any property belonging to another without the consent of that person or agency representative.

**LENDING OR LOANING ANYTHING FOR PROFIT**
No inmate shall give, borrow, receive, accept, lend or hold any item for profit or gain.

**POSSESSION OF NARCOTICS AND/OR DRUGS AND/OR DRUG PARAPHERNALIA**
No inmate shall make, obtain, trade, use, sell, or possess any drug or drug paraphernalia narcotic or controlled substance not issued to the inmate.

**MANUFACTURE OR POSSESSION OF AN INTOXICANT OR BEING INTOXICATED**
No inmate shall make or possess any type of intoxicant or be intoxicated.

**SMOKING OR POSSESSION OF ANY TOBACCO PRODUCT AND / OR PARAPHERNALIA**
No inmate shall possess or smoke anything or possess any tobacco product. (To include but not limited to matches, lighter, rolling papers, Etc.)

**MISUSE OF ANY MEDICATION**
No inmate shall use any medication in any manner other than that directed by label or prescription. Not limited to hoarding medications, combining medications in one container, and expired medications. Inmates have a right to refuse health care including refusal of meds. Make sure refusals are documented, but you can't punish them.

**UNAUTHORIZED USE OF EQUIPMENT**
No inmate shall use any mechanical or office equipment in any way not authorized by proper authority.

**SE BY CLASSIFICATION PERSONNEL ONLY**
**REFUSING TO PARTICIPATE IN A WORK PROGRAM**
Any inmate who refuses to participate in an authorized work program may be subject to loss of County Good Time Credit.

**MINOR INFRACTIONS**

**SIMPLE ASSAULT**
No inmate shall touch, push, shove or have any unwanted physical contact with another inmate. Such contact may not necessarily cause pain or injury.

2102 **ALTERCATION / HORSEPLAYING**
No inmate shall engage in any form of wrestling, sparring, shoving, pushing or encourage others to do so. But not limited to holding, grabbing, shadowboxing or rowdy play.

2103 **THREATENING**
No inmate shall place another in fear of physical injury by verbal or physical conduct, or by written communication.

2104 **SEXUAL CONDUCT**
No inmate shall kiss, hug, fondle or expose their breast, buttocks or genitals in any manner or make any sexual comment that may be offensive to another person.

2305 **REFUSING TO OBEY AN ORDER**
No inmate shall refuse to obey any standing orders or order issued by a Deputy or Staff Member whether written or verbal.

2306 **POSSESSION OF CONTRABAND**
No inmate shall possess any item not available through proper channel and/or any item that has been altered or is being used in any way other than its original intent.

2307 **PARTICIPATING IN WORK STOPPAGE**
No inmate shall plan or participate in any action or activity which slows, delays, prevents, stops any work assignment. Such as refusing to work or requesting band to be cut.

2308 **UNAUTHORIZED ABSENCE**
No inmate shall be absent from work, school, or other activity without having been officially excused.

2309 **LYING OR PROVIDING FALSE STATEMENTS**
No inmate shall make any statement to a Deputy or Staff Member whether in written or verbal form that is untrue.

2310 **GAMBLING OR POSSESSION OF GAMBLING PARAPHERNALIA**
No inmate shall plan or participate in any game of chance or possess / manufacture any item that could be used for gambling.

2311 **UNAUTHORIZED USE OF DEPARTMENT OR U.S. MAIL**
No inmate shall use Departmental or U.S. mail for any purpose other than that for which it is intended.

2312 **UNAUTHORIZED USE OF TELEPHONE**
No inmate shall use any telephone in violation of established facility rules or unlawful usage.

2313 **FAILURE TO BE PROPERLY DRESSED**
All inmates shall be properly dressed in accordance with established facility rules

2314 **POSSESSION OF UNAUTHORIZED ISSUED CLOTHING, BEDDING OR TOWELS**
No inmate shall possess any item of clothing, bedding, towels or other item in excess of the number issued to them.

2315 **CONDUCT WHICH DISRUPTS**
No inmate shall physically or verbally interfere with the normal orderly running of the institution.

24

000585

Case 4:14-cv-03152 Document 38-51 Filed on 09/01/16 in TXSD Page 262 of 379

(To: Robert Fratta)

Just in case the envelope gets messed up my mailing address is

Betsy [redacted] 407 [redacted]

[redacted]

[redacted] FLORIDA

[redacted]

P.S. I used some stamps to send the package. I will send a Book [illegible] my next letter. OK

Robt

ATTORNEY / CLIENT PRIVILEGED
WORK product.
Vivian King (713) 222[redacted]
(To: Robert Fratta)





ATTORNEY/CLIENT PRIVILEGED
work product
Vivian King (713) 22[redacted]
(to: Robert Fratta)

: 00590



# 230th District Court

## Jury Notes

CAUSE #  1195044

DEF. NAME  Robert Fratta

1) BOARD DePicting SPECIAL ISSUES 1,2,3

2) REQUEST VIDEO of Mr Fratta at Police station (EXiTiNG.) AND talking with media.

3) VIDEO of Mr Fratte RECIEVING keys At Police Station

4) ADDRESS BOOK of MR Fratta.

5) ExhiBiT # 171, # 107, # 108
"30 A", "30B"
31, 32, 33, 34, 35, 36, 37
170, 172, 173, 174
180, 181, 182, 183, 184

(Over)

: 00593

Exhibits 170 and 173 are not in
evidence. Defense exhibits 107 and
108 are not in evidence.
Exhibit 184 does not exist.
Board depicting special issues
1, 2, and 3 ~~are~~ is not in evidence.

Belinda Hill

**FILED**
Loren Jackson
District Clerk

MAY 2 9 2009

Time: _____
                    Harris County, Texas
By _____
                    Deputy

: 00594

# 230th District Court

## Jury Notes

CAUSE #     1195044

DEF. NAME     Robert Fratta

1) Dr Abrams Report of findings from his evaluation.

2) NM PI and milon report Dr Bailey? or Dr Abrams

These reports are not in evidence.

Belinda Hill

# FILED

Loren Jackson
District Clerk

MAY 2 9 2009

Time: _____ 3:00 PM
Harris County, Texas
By _____
Deputy

: 00596

CAUSE NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 230TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| ROBERT ALAN FRATTA | § | MAY TERM, A. D., 2009 |

Members of the Jury:

By your verdict returned in this case you have found the defendant, Robert Alan Fratta, guilty of the offense of capital murder, which was alleged to have been committed on or about the 9th day of November, 1994, in Harris County, Texas. In order for the Court to assess the proper punishment, it is necessary now for you to determine, from all the evidence in the case, the answers to certain questions, called "Special Issues," in this charge. The Court instructs you in answering these "Special Issues" as follows:

The mandatory punishment for the offense of capital murder of which you have found the defendant guilty is death or confinement in the Texas Department of Criminal Justice, Institutional Division, for life.

In determining your answers to the questions, or special issues, submitted to you, you shall consider all the evidence submitted to you in this whole trial, which includes that phase of the trial wherein you were called upon to determine the guilt or innocence of the defendant, and this punishment phase of the trial wherein you are now called upon to determine the answers to Special Issues submitted to you by the Court. However, in this punishment phase of the trial you should not consider the instructions given you in the first phase of trial that relate to the law of parties and the responsibility of parties for the acts of others in the commission of offenses. You shall consider only the conduct and state of mind of this defendant in determining what your answers to the Special Issues shall be.

You shall consider all evidence submitted to you during the whole trial as to the defendant's background or character or the

1

: 00597

circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

: 00598

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there is a mitigating circumstance or circumstances in this case, you must decide how much weight it/they deserve, if any, and thereafter, give effect and consideration to it/them in assessing the defendant's personal culpability at the time you answer the special issue.

You are instructed that mitigating evidence, if any, may be considered by you in answering the special issues under consideration. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence rather than a death sentence is an appropriate response, let your answers to the special issues reflect that.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all the evidence before you and in answering the special issues.

: 00599

Should you return an affirmative finding on Special Issue No. 1 and Special Issue No. 2 and a negative finding on Special Issue No. 3, the Court will sentence the defendant to death. Should you return a negative finding on Special Issue No. 1 or Special Issue No. 2 or an affirmative finding on Special Issue No. 3 the Court will sentence the defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for life.

: 00600

The State must prove Special Issue No. 1 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 1.

In deliberating on Special Issue No. 1 you shall consider all the evidence admitted at the guilt or innocence stage and the punishment stage of trial, including evidence of the defendant's background, character, record, emotional instability, intelligence, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "YES" unless you agree unanimously.

You may not answer Special Issue No. 1 "NO" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 1.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 1.

It is not required that the State prove Special Issue No. 1 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 1, and only then, are you to answer Special Issue No. 2.

The State must prove Special Issue No. 2 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 2.

In deliberating on Special Issue No. 2 you shall consider all the evidence admitted at the guilt or innocence stage and the punishment stage of trial, including evidence of the defendant's background, character, record, emotional instability, intelligence, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 2 "YES" unless you agree unanimously.

5

You may not answer Special Issue No. 2 "NO" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 2.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 2.

It is not required that the State prove Special Issue No. 2 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 1 and Special Issue No. 2, and only then, are you to answer Special Issue No. 3.

You are instructed that in answering special Issue No. 3, you shall answer the issue "YES" or "NO."

You may not answer Special issue No. 3 "NO" unless you agree unanimously, and you may not answer Special Issue No. 3 "YES" unless ten (10) or more of you agree to do so.

You need not agree on what particular evidence supports an affirmative finding on Special Issue No. 3.

In answering Special Issue No. 3 you shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness, including evidence of the defendant's background, character, record, emotional instability, intelligence, or the circumstances of the offense that mitigates against the imposition of the death penalty.

You are again instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you in answering Special Issue No. 3.

6

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals forty (40) calendar years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

: 00603

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him nor prejudice him in any way.  The defendant has elected not to testify in this punishment phase of trial, and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

: 00604

During your deliberations upon the "Special Issues," you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In arriving at the answers to the "Special Issues" submitted, it will not be proper for you to fix the same by lot, chance, or any other method than by a full, fair and free exchange of the opinion of each individual juror.

After the reading of this charge, you shall not be permitted to separate from each other, nor shall you talk with anyone not of your jury. After argument of counsel, you will retire and consider your answers to the "Special Issues" submitted to you. It is the duty of your foreman to preside in the jury room and vote with you on the answers to the "Special Issues" submitted.

You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law from the Court which has been given you and you are bound thereby.

Belinda Hill, Judge
230th District Court
Harris County, TEXAS

**FILED**
Loren Jackson
District Clerk

MAY 2 9 2009

Time: _____

By _____
Harris County, Texas
Deputy

9

: 00605

SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Robert Alan Fratta, would commit criminal acts of violence that would constitute a continuing threat to society?

ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "YES."

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt as to the probability that the defendant, Robert Alan Fratta, would commit criminal acts of violence that would constitute a continuing threat to society, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

In the event that the jury has answered Special Issue No. 1 in the affirmative, and only then, shall the jury answer Special Issue No. 2 to be found on the following page.

: 00606

SPECIAL ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that Robert Alan Fratta, the defendant himself, actually caused the death of Farah Fratta, the deceased, on the occasion in question, or if he did not actually cause the death of Farah Fratta, that he intended to kill Farah Fratta, or that he anticipated that a human life would be taken?

ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "YES."



**FILED**
Loren Jackson
District Clerk

MAY 3 0 2009

Time: _____ Harris County, Texas

By _____ Deputy

Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt that Robert Alan Fratta, the defendant himself, actually caused the death of Farah Fratta, the deceased, on the occasion in question, or that he intended to kill Farah Fratta, or that he anticipated that a human life would be taken, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

In the event that the jury has answered Special Issue No. 2 in the affirmative, and only then, shall the jury answer Special Issue No. 3 to be found on the following page.

11

: 00607

SPECIAL ISSUE NO. 3

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Robert Alan Fratta, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

ANSWER

We, the jury, unanimously find that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed, find that the answer to this Special Issue is "YES."

_____
Foreman of the Jury

After the jury has answered each of the Special Issues under the conditions and instructions outlined above, the Foreman should sign the verdict form to be found on the last page of this charge.

12

: 00608

<u>VERDICT</u>

We, the Jury, return in open court the above answers to the "Special Issues" submitted to us, and the same is our verdict in this case.

_____
Foreman of the Jury

FILED
Loren Jackson
District Clerk

MAY 3 0 2009

Time: _____
Harris County, Texas

By _____
Deputy

13

: 00609

# 230th District Court

## Jury Notes

CAUSE # 1195044

DEF. NAME Robert ALAN Fratta

The Request is to
IDENtIfy EACh JUroR
By NUMBER Rather than
Name. CAn you
proviDe this DiRectory.

Yes, at the appropriate
time Belinda (Hill

00610



FILED
Loren Jackson
District Clerk

MAY 30 2009

Time:_____
By:_____ Harris County, Texas
Deputy

: 00611



CASE No. 1195044
INCIDENT NO./TRN: 9001859518-D001

*P2*

| THE STATE OF TEXAS | § | IN THE 230TH DISTRICT |
| | § | |
| vs. | § | COURT |
| | § | |
| ROBERT ALAN FRATTA | § | COUNTY, TEXAS |
| | § | |
| SID: TX O5446020 | § | |
| | § | |

## JUDGMENT OF CONVICTION BY JURY – CAPITAL MURDER

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. BELINDA HILL | Date Judgment Entered: | 6/1/2009 |
| Attorney for State: | DENISE BRADLEY/MIA MAGNESS | Attorney for Defendant: | RANDY MCDONALD/VIVIAN KING |

Offense for Which Defendant Convicted:
**CAPITAL MURDER**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | |

Date of Offense:
**11/9/1994**

| Degree of Offense: | Plea to Offense: |
|---|---|
| **CAPITAL MURDER** | **NOT GUILTY** |

| Verdict of Jury: | Findings on Deadly Weapon: |
|---|---|
| **GUILTY** | **N/A** |

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Punished Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
|---|---|---|
| JURY | 6/1/2009 | 6/1/2009 |

Punishment:   **DEATH**

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| $ N/A | $ 414.50 | $ N/A | N/A |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Harris County, Texas.  The State appeared by her District Attorney.

**Counsel / Waiver of Counsel  (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that defendant was mentally competent and had pleaded as shown above to the charging instrument.  Both parties announced ready for trial.  A jury of twelve individuals was selected, impaneled, and sworn.  The INDICTMENT was read to the jury, and defendant entered a plea to the charged offense.  The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel.  The Court charged the jury as to its duty to determine the guilt or innocence of defendant, and the jury retired to consider the evidence.  Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

The jury heard evidence relative to the question of punishment.  The Court charged the jury and it retired to consider the special issues set out in the jury charge.  After due deliberation, the jury was brought into Court, and, in open court, it returned its answers to the special issues as indicated below.

The jury found beyond a REASONABLE DOUBT that there is a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society.

☒ Yes (unanimous)

☐ No (by at least 10 jurors)

: 00612



The jury found beyond a REASONABLE DOUBT that considering all the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?

☐ Yes (by at least 10 jurors)
☒ No (unanimous)

Special Issues to be included if necessary:

**(If defendant is found GUILTY as a party under TEX. PEN. CODE §§ 7.01, 7.02)**
☐ The jury found beyond a REASONABLE DOUBT that the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.
☒ Yes (unanimous)
☐ No (by at least 10 jurors)

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is **GUILTY** of the above offense.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS that the State of Texas shall recover all costs of the prosecution from the Defendant and that execution will issue.

**Punishment Options**
☐ **Confinement in Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, Institutional Division, TDCJ. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS TDCJ to make withdrawals from the Defendant's inmate account as such funds become available. The Court ORDERS TDCJ to pay such funds to the individual / agency cited above until the ordered restitution, court fees, costs, and fines are paid in full. TEX. GOV'T CODE § 501.014. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence.
☒ **Death.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, Institutional Division, TDCJ. Defendant shall be confined in said Institutional Division in accordance with the provisions of the law governing the Texas Department of Criminal Justice, Institutional Division until a date of execution of the said Defendant is imposed by this Court after receipt in this Court of mandate of affirmance from the Court of Criminal Appeals of the State of Texas. The Court Orders Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence.

**Execution**
☒ The Court ORDERS Defendant's sentence EXECUTED.

The Court further ORDERS Defendant to pay restitution to the person(s) named above in the amount specified.

**Furthermore, the following special findings or orders apply:**
"You, your assignees and your representatives acting on your authority are prohibited from directly or indirectly engaging in any profit or benefit generating activity relating to the publication of facts or circumstances pertaining to your involvement in the criminal acts for which you stand convicted, including contracting with any person, firm, corporation, partnership, association, or other legal entity with respect to the commission and/or reenactment of your crimes, by way of a movie, book, magazine article, tape recording, phonograph record, radio or television presentations, live entertainment of any kind, or from the expression of your thoughts, feelings, opinions or emotions regarding such crime. This prohibition includes those events undertaken and experienced by you while avoiding apprehension from authorities. Any action taken by you whether by way of execution of power of attorney, creation of corporate entities or like action to avoid compliance with these provisions will be considered in violation of the Court's order."

**Signed and entered on June 1, 2009**

X _Belinda Hill_
**HON BELINDA HILL**
JUDGE PRESIDING

Ntc Appeal Filed: _6·1·2009_ Mandate Rec'd:_____

After Mandate Received, Sentence to Begin Date is:_____

Received on _____ at _____ AM / PM

By:_____, Deputy Sheriff of Harris County

Clerk: DMS

dms | 04 | 999
jcbt √
dms | 18 | 999

Right Thumbprint

Page 2 of 2

: 00613

Cause No. 1145044            dms124999

THE STATE OF TEXAS

v.

Robert Alan Fratta , A/K/A/ _____

_____ 23rd _____ District Court / County Criminal Court at Law No. _____

Harris County, Texas

NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

On ___6-1-09___ (date), the defendant in the above numbered and styled cause gives NOTICE OF APPEAL of his conviction.

The undersigned attorney (check appropriate box):

- ☑ MOVES to withdraw.
- ☐ ADVISES the court that he will CONTINUE to represent the defendant on appeal.

| | |
|---|---|
| 6-1-09 | *Kelly McDonald* |
| **Date** | **Attorney (Signature)** |
| ROBERT ALAN FRATTA | RANDY MCDONALD |
| **Defendant (Printed name)** 2ND (ATTORNEY) | **Attorney (Printed name)** |
| VIVIAN R KING | 13556570 |
| *Vivian R King* | **State Bar Number** |
| SBN: 00784399 | 300 SMITH |
| 440 LOUISIANA ST., STE. 800 | **Address** |
| HOUSTON, TX 77002 / ofc (713)222-2019 | (713) 521-2595 |
| | **Telephone Number** |

The defendant (check all that apply):

- ☑ REPRESENTS to the court that he is presently INDIGENT and ASKS the court to immediately APPOINT appellate counsel to represent him.
- ☐ ASKS the Court to ORDER that a free record be provided to him.
- ☐ ASKS the court to set BAIL.

Accordingly, Appellant ASKS the Court to conduct a hearing, make findings, and enter an Order Granting the requested relief.

| | |
|---|---|
| *Fratta* | ROBERT ALAN FRATTA |
| **Defendant (Signature)** | **Defendant's Printed name** |

SWORN TO AND SUBSCRIBED BEFORE ME ON ____6-1-2009____

By Deputy District Clerk of Harris County, Texas _____

**FILED**
Loren Jackson
District Clerk

JUN - 1 2009

Time: _____
Harris County, Texas

By _____
Deputy

Page 1 of 2

: 00614

## ORDER

On _6/1/09_ the Court conducted a hearing and FINDS that defendant / appellant

☐ IS NOT indigent at this time.

☒ IS indigent for the purpose of

    ☐ employing counsel

    ☐ paying for a clerk's and court reporter's record.

    ☒ employing counsel or paying for a clerk's and court reporter's record.

The Court ORDERS that

    ☐ Counsel's motion to withdraw is GRANTED / DENIED.

    ☐ Defendant / appellant's motion (to be found indigent) is DENIED.

    ☐ Defendant's / appellant's motion is GRANTED and

        ☐ _____(attorney's name & bar card number)
        is APPOINTED to represent defendant / appellant on appeal.

        ☐ The COURT REPORTER is ORDERED to prepare and file the reporter's record without charge to defendant / appellant.

BAIL IS:

    ☐ SET at $ _____

    ☐ TO CONTINUE as presently set.

    ☐ DENIED and is SET at NO BOND. (Felony Only)

DATE SIGNED: _June 1, 2009_

JUDGE PRESIDING,
_230_ DISTRICT COURT /
COUNTY CRIMINAL COURT AT LAW NO. _____,
HARRIS COUNTY, TEXAS

: 00615

Cause No. _115044_

| THE STATE OF TEXAS | IN THE _23D_ DISTRICT COURT |
| V. | COUNTY CRIMINAL COURT AT LAW NO. _____ |
| _Robert Alan Flatta_ Defendant | HARRIS COUNTY, TEXAS |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

- [✓] is not a plea-bargain case, and the defendant has the right of appeal. [*or*]
- [ ] is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal. [*or*]
- [ ] is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal. [*or*]
- [ ] is a plea-bargain case, and the defendant has NO right of appeal. [*or*]
- [ ] the defendant has waived the right of appeal.

_Belinda Hill_                                   _June 1, 2009_
Judge                                              Date Signed

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, including any right to file a pro se petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals's judgment and opinion to my last known address and that I have only 30 days in which to file a *pro se* petition for discretionary review in the court of appeals. TEX. R. APP. P. 68.2 I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

_Flatta_                                          _Randy McDonald_
Defendant                                          Defendant's Counsel

**FILED**
Loren Jackson
District Clerk
Mailing Address: _____

JUN 0 1 2009                                       State Bar of Texas ID number: _13556570_

Telephone number: _____           Mailing Address: _3000 Smith_
                                                            _Houston TX 77006_
Fax number (if any) Time: _____      Telephone number: _(713) 521-2588_
Harris County, Texas
By _____ Deputy                       Fax number (if any): _____

---

* "A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case-that is, a case in which a defendant's plea was guilty or *nolo contendere* and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant - a defendant may appeal only: (A) those matters that were raised by a written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULES OF APPELLATE PROCEDURE 25.2(a)(2).

: 00616

THE ST. TEXAS     §    IN THE DISTRICT COURT OF

vs.     §
    §    HARRIS COUNTY, TEXAS
    §
ROBERT ALAN FRATTA     §
DEFENDANT     §    230TH JUDICIAL DISTRICT

*Paupers oath on Appeal*

## ~~OATH OF INDIGENCE~~

TO THE HONORABLE JUDGE OF SAID COURT:

The defendant, **ROBERT ALAN FRATTA** swears under oath that he is without funds, property or income. The defendant respectfully asks the Court to appoint counsel to represent him ~~in filing an application for writ of habeas corpus seeking relief from final conviction under TEX. CODE CRIM. PROC. Chapter 11.~~ The defendant also asks the Court to order that a free record be provided to him.

_____
DEFENDANT

SUBSCRIBED AND SWORN to before me, this 30TH day of May, 2009.

**FILED**
Loren Jackson
District Clerk
JUN 01 2009
Harris County, Texas
Time: _____
By _____ Deputy

_____
DEPUTY DISTRICT CLERK
230th DISTRICT COURT
HARRIS COUNTY, TEXAS

## ORDER APPOINTING COUNSEL

On ___June 1, 2009___, the Court conducted a hearing and found that the defendant is indigent.

☑ The Court **ORDERS** that ___Allen Isbell___ is appointed to represent the defendant/applicant *on appeal* ~~under TEX. CODE CRIM. PROC. Chapter 11.~~

☑ The Court **ORDERS** the court reporter to prepare and file the reporter's record without charge to the defendant/applicant *appellant*

The Court further **ORDERS** that the clerk of this court send a copy of this order and the judgment in this case to:

(1)   the court reporter: ___Mary Ann Rodriguez___ ;
(2)   ~~the postconviction writs division of the Harris County District Attorney's Office; and~~
(3)   ~~the Court of Criminal Appeals, P.O. Box 12308, Austin, Texas 78711.~~

The court further **ORDERS** that above-named counsel and counsel for the State appear for a status conference on

_____ at 9:00 a.m.

_____
JUDGE PRESIDING, 230TH DISTRICT COURT
HARRIS COUNTY, TEXAS

## AFFIRMATION

I, ___Allen C. Isbell___, ~~a public defender representing the defendant on appeal~~ Attorney at Law, swear or affirm that I will be solely responsible for writing ~~an application for writ of habeas corpus and representing the defendant/applicant under TEX. CRIM. CODE Chapter 11.~~ If I am unable to perform my duties as ~~habeas~~ counsel, I will immediately notify the Court, so the court may take the appropriate actions deemed necessary.

___Allen C. Isbell___
Attorney-at-Law (Signature)

___202 Travis 208___
Address

___713 236 1000___
Phone

BAR Number / SPN ___10431300___

___Houston Tx 77002___
City / State / Zip

___713 236 1809___
FAX

SUBSCRIBED AND SWORN to before me, this ___ day of ___JUNE___, 20___09___

_____
DEPUTY DISTRICT CLERK

3/13/09

: 00617

NAME: FRATTA, ROBERT ALAN

DCC#: 230    CAUSE NO. 11950401010

OFFENSE: CAPITAL MURDER    FC

FILED: 12/11/08    BAIL: 000000

## ʹERAL ORDERS OF COURT

### reliminary Assigned Court Appearance

MAR 1 6 2009

Defendant, _Fratta_ appeared in person

with Counsel _Vivian King + Randy McDonald_

_____ Appeared for the State

Court Reporter _Robert Alan Roquirre_

Judge Presiding _Hod Belinda Hill_

At 9:06am court came to order to hear pre-trial motions. At 11:21am

Judge Belinda Hill granted specific motions.

---

MAR 27 2009

Defendant _Fratta_ appeared in person

with Counsel _Vivian King + Randy McDonald_

_____ appeared for the State

Court Reporter _____

Judge Presiding _Jafeon Mean_

at 1:05 PM a hearing to have any counsel and oppose counsel
one sworn authenticated Dept to put the behalf on the cause by
return on 3:36pm at 9:36pm.

## Standard Instruments filed

| | |
|---|---|
| Complaint | |
| Indictment | 12/11/08 |
| Information | |
| Exparte | |
| Juv Prob Trans | |
| Writ Hab Corp | |
| Bond Forf | |
| Scire Facias # | |
| Bond Rein | |
| Mo Prob | |
| Jury election: | Jury -- Judge |
| Appeal Notice | |
| date rcvd | |
| Mandate type | |
| MRP/MAJ | |

: 00618

GENERAL ORDERS OF THE COURT

MAR 30 2009

Presiding: Hon Don Emerlin

Reporter: Mary Ann Rodriguez

District Attorney _____ appeared for the State

Defense Counsel: Rocky McDonald / Vivian King

Defendant: Reatti _____ appeared in person

Before court convened parties agreed to excuse juror #46 who did not show. At 10:04 am court convened when a panel of 105 members were seated. I admonished as to the law. At 11:10 am court panel was excused for a break. At 11:30 am court reconvened. Dismissed by agreement the following venireman #s 1, 3, 4, 7, 8, 9, 11, 12, 14, 15, 17, 19, 22, 23, 28, 34, 35, 36, 38, 39, 41, 42, 43, 45, 44, 48, 54, 55, 57, 59, 60, 61, 64, 65. The remaining jurors were admonished but for the rest of the voir dire and admonished accordingly. Court then heard matters over the bench. Recessed for lunch at 12:30 pm. At 1:20 pm court reconvened at which time juror #2, Duke was called to the stand. At 2:25 # Nu_ excused for cause by defense # #5 Crawford was called to the stand. At 3:33 pm. State exercised first premptory strike. Court recessed briefly. At 3:44 pm court reconvened. Juror #50, Sink was called to the stand. At 4:18 pm # 50 was excused by agreement. At 4:20 pm juror #10, Fradelmwas called to the stand. At 5:24 pm #10 was excused for cause by defense. At 5:26 pm #13 was called to the stand. At 11:25 pm. #13 ___ was accepted as juror #1. Court adjourned at 6:30pm.

00619

THE STATE OF TEXAS VS.

Robert Alan Fratta

Def # 230   Cause no. #1050441

# GENERAL ORDERS OF COURT

## FELONY COMPLAINT FILED

Preliminary Assigned Court Appearance:

MAR 3 1 2009

Defendant ___Fratta_____ appeared in person
with Counsel _Randy MadDara/Nicole King_____
_Daniel Bradley / Minh Nguyen_ appeared for the State
Court Reporter _J. Moya, Ann Rodriguez / Nena Delaer____
Judge Presiding _Hon Don Stricklin_

At 9:44 am court convened. Bocor #16, Gunther was called to the stand. At 11:20 am defense exercised preemptory strike #1, juror #16 Gunther was excused. Other matters were discussed. At 11:25 pm court took a break. At 11:30 am court reconvened matters were discussed. At 11:40 am #18 Cooper was called to the stand. At 11:49 am defense exercised preemptory strike #2, juror #18 Cooper was excused. Court recess for lunch. At 1:05 pm court reconvened. #20 Glass was called to the stand. At 3:51 pm state exercised preemptory strike #3, # 20 Glass was excused. #21 Hood was called to the stand. At 5:00 pm State exercised preemptory strike #2 to which defense raised a "Batson challenge." At 5:11pm "Batson challenge" denied. At 5:14 pm, # 24 Murphy was called to the stand. At 5:32 pm #24 Murphy was excused #24 Murphy was excused by agreement. Cococococooooo At 5:40 pm #29 Vogel was excused by agreement.

: 00620

GENERAL ORDERS OF THE COURT

APR - 1 2009 Defendant _Ritte_

appeared in person

with Counsel _Ronald McDonald/Wren Ruta_
_Denise Bradley/Kate Rogers_ appeared for the State

Court Reporter _Mary Ann Ostrowski/Oren Rocco_

Judge Presiding _Hon Don Stricklin_

At 9:00am court convened matters were discussed. At 9:04 am #23 Gillespie was called to the stand At 9:08 am #25 Gillespie was excused for cause # 26 Dagan was called to the stand. At 10:14 Am, # 26 Dagan was excused for cause. At 10:24 am court reconvened. #27 Hoagland was called to the stand. At 11:18 am State exercised peremptory challenge #3. Juror #27 Hoagland was excused #30 Holmes-Scott was called to the stand. At 12:17 pm #30 Holmes-Scott was excused after cause by defense. Court recess for lunch. At 1:01 pm court reconvened #31 Aguilar was called to the stand. At 2:29 pm # 31 Aguilar was excused for cause by defense. At 2:38 pm #32 Hoglan Tran Nguyen was excused by agreement. Other matters were discussed. At 2:47 pm #33 Nikolaidis and #31 Beaube were excused by agreement. At 2:44pm #40 McDanial was called to the stand At 3:53 p.m. McDanial was accepted as a juror. Other matters were discussed. At 4:03 pm court adjourned for the evening.

00621

THE STATE OF TEXAS VS.

Robert Alan Fratta

Def#2> Cause#1050044

## GENERAL ORDERS OF COURT

## FELONY COMPLAINT FILED

Preliminary Assigned Court Appearance:

APR - 2 2009

Defendant __Fratta__ appeared in person

with Counsel __Randy McDonald/Wan Pro__

__Divise Bradley/__ appeared for the State

Court Reporter __Cannon Ann Rodriguez/Crystal Pierce__

Judge Presiding __Hon Jim Smckein__

At 9:28 am court convened. Juror #47 Zabola & Juror #53 Vargas were excused by agreement #44 Glover was called to the stand. At 9:51 am # 44 Glover was excused head on States motion for cause At 9:50 am # 49 Banks was called to the stand At 10:41 am State used peremptory strike #4 defense made Batson challenge on #49 Banks.

At 10:48 am State exercised peremptory strike #4 Juror #49 Banks was excused court took a break. At 10:51 am #16 Cartwright was called to the stand At 12:25 pm defense exercised peremptory strike #4 #49 Other matters were discussed. At 12:31 pm #51 Fonseca was called to the stand At 12:40 pm #51 Fonseca was excused on States motion for cause. Defense concurred. Court then recessed for lunch.

Court reconvened at 1:35 p.m. with #52 Kuhn. Ct 2:40 p.m. he was accepted as our 4th juror. Next came #56)

: 00622

GENERAL ORDERS OF THE COURT

Wesley Corley   At 3:51pm #5 Corley was excused by DeRose peremptory Strike #5 Court took a break

At 4:02 pm #58 Montano was called to the stand. At 5:02 pm #58 Montano was excused by State peremptory

Strike #5. Court adjourned for the evening.

APR – 3 2009 Defendant ___Tratto___

with Counsel _Randy McDonald/Vivian King_ **appeared in person**

_David Rachoff/Matt ___ appeared for the State

Court Reporter _Mary Ann Rodrigue?_

Judge Presiding Hon. _Don Stricklin_

At 9:01 am court convened Juror #62 Rials was called to the stand. At 10:14 am Juror #62, Rials was accepted by both sides as Juror #5. Court took a break. At 10:28 am #63 Williams was excused by agreements. Court took a break. At 11:16 am a panel of 45 prospective jurors entered the courtroom ? were seated. At 11:48 a.m. they were admonished as to the law. Panel took a break at 12:54 pm. Other matters were discussed. At 1:08 pm the following venireman were excused by cause/agreement: # 66 # 69 #70 #71 # 72 #74 #75 #80 #81 #83 #85 #86 #88 #95 #46 #69, #101, #104, #105, #104, #08, #102, #92, #110. At 1:33pm the panel re-entered ? the venireman were formally released. The remaining 20 jurors remained seated. They were admonished as to what time ? day they were to return. At 1:42pm court adjourned until 9:30 am on Monday 4-6-2009.

00623

# THE STATE OF TEXAS VS.

Robert Alan Ratty

D#230 Cause #1195044

## GENERAL ORDERS OF COURT

### FELONY COMPLAINT FILED

Preliminary Assigned Court Appearance:

APR - 6 2009

Defendant _Ratty_ appeared in person

with Counsel _Randy McDonald / Vivian King_

_Denise Bradley / Nancy Zepeda_ appeared for the State

Court Reporter _Indira Arabuleno?_

Judge Presiding _Hon Dim Stricklin_

At 9:37 am court came to order #107 Robinson. Was called to the stand At 10:38 a.m. #107 Robinson was accepted by both sides as Juror #6. Court took a brief break. At 10:41 am court reconvened #166 Sigmund was called to the stand At 11:48 AM #168 Sigmund was excused based on defense motion for cause. #84 Spilt #109 Humondez were excused by agreement. Other matters were discussed At 12:05 pm #73 Huntington was called to the stand At 1:01 pm #73 Huntington was accepted by both sides as Juror #7. court recessed for lunch. At 2:01pm court reconvened Juror #82 Dogar # 87 Nieto were excused by agreement. At 2:07 pm #76 Wachtman was called to the stand. At 3:07 pm #76 Wachtman was excused based on States motion for cause, # 11 Torres was called to the stand At 3:58 pm defense exercised peremptory strike #6, Juror #11 Torres was excused. Court took a brief break. At 4:04 pm court reconvened #73 Nunez Wascalled to the stand At 4:34 pm Juror # 78 Wynne was excused for cause. At 4:39pm

: 00624

GENERAL ORDERS OF THE COURT __Juror # 79 Ryan was called to the stand At 4:42 pm. Juror #79 Ryan was excused

for cause. Court adjourned for evening.

APR - 7 2009

Defendant __TXATN__ appeared in person

with Counsel Randy McDonald/Vivian King

Debra Bactory, thru Cortes appeared for the State

Court Reporter Molly Ann Rodriguez

Judge Presiding Hon Dan Simelim

At 9:31 am court convened. At 9:31 am #89 conrido Was called to the stand. Juror # 89 was excused because at 9:40 am court

break to wait for juror #60 to arrive. At 10:12 am court reconvened. #90 montenegro was called to the stand. At 10:38 am

#90 Montenegro was excused by peremptory strike #6 of State of texas. At 10:44 am #91 kruse was called to the stand.

At 11:40 am defense excused #91 kruse byexcercising peremptory strike #7. Court took a brief break At 11:55 am

court reconvened. #93 Henderson was called to the stand. At 12:43 pm defense excused peremptory strike #8 Juror

#93 Henderson was excused court recess for lunch. At 1:38 pm court reconvened #94 Loft was called to the stand. At 2:34 pm

State exercised peremptory strike # 7. Defers Made Batson motion. At 2:40 pm court denied Batson motion. #94 Loft

was excused Court took a brief break. At 3:00 pm court reconvened #96 Roddy was called to the stand. At 4:04 pm

#96 Roddy was accepted as juror #8. At 4:08 pm #100 Westerman was called to the stand. At 5:02 pm defense

excised peremptory strike #9. Juror #100 Westerman was excused. court adjourned for evening

: 00625

THE STATE OF TEXAS VS.

# GENERAL ORDERS OF COURT

## FELONY COMPLAINT FILED

Preliminary Assigned Court Appearance:

APR - 8 2009

Defendant: _____ PRATTA _____ appeared in person

with Counsel RANDY MCDONALD / N/A MCNESS

DENISE BRADLEY / N/A MCNESS appeared for the State

Court Reporter MARY ANN RODRIGUEZ

Judge Presiding DON STRICKLIN

At 9:10 am court convened #102 Coleman was called to the stand. At 9:15 am #102 Coleman was excused for cause. At 9:23 am #107 Hares was called to the stand. At 10:40 am State exercised peremptory strike #8. #107 Hares was excused. Court recess until new panel arrival. At 11:48am a panel of 50 members [jurors] were seated. At 11:50 am they were admonished at to the law. At 12:14pm court took a brief break. At 12:54pm court came to order, admonishment continued. At 12b pm the panel was excused for a break. Other matters were discussed. At 2:16 pm court reconvened. Juror #: 113, 114, 115, 119, 120, 122, 123, 124, 125, 128, 131, 132, 133, 134, 135, 136, 128, 141, 147, 148, 149, 151, 152, 154, 157, 159, 160, were excused by cause/agreement. The remaining jurors were admonished as to date/time to return. Other matters were discussed. At 2:31 pm #111 Laing was called to the stand. At 2:42 pm #111 Laing was excused on stated motion for cause. At 2:44 pm #112 Gaulden was called to the stand. At 2:49 pm #112 Gaulden was excused by agreement. At 2:51 pm # 116 Maddox was called to the stand.

: 00626

GENERAL ORDERS OF THE COURT

APR - 9 2009

Judge Presiding _Don Stricklin_

Court Reporter _Cheri LoPierro_

appeared for the State _Bradford A. Crowell_

Defendant _____ appeared in person

with Counsel _R. McDonald & V. King_

AT 3:50 pm #116 WADDAIL WAS AGREED UPON BY BOTH SIDES AS JUROR #9

AT 3:55 COURT RECESSED FOR THE DAY.

Court convened at 9:07 A.M. on this #117 David Gessing, took the stand. At 10:17 he was struck by the defense (peremptory #10), Next case #118 Marco Rodriguez. At 10:30 the state exercised their 9th peremptory. Next case #121 William Folts. At 11:30 A.M. the court denied Defense Motion for strike for cause, the Defense exercised peremptory #11. The Court then denied Defense see request for an additional peremptory strike. Court then received briefly. Court reconvened at 11:50 A.M with #126 Charles Thorp. At 1:00 pm he was accepted as our 10th juror. Court then received for a brief lunch. Court reconvened at 11:45 p.m. At this time the parties agreed to excuse juror #155. Then the Court then called the next juror #127, Raphael Roush, to the stand. Then the Court excused by agree at I. Next case #158 William Moore. At 3:30 pm — 2:30 p.m. he was excused by agree at I. Next case #158 William Moore. At 3:30 pm

THE STATE OF TEXAS VS.

Robert Alan Fratta

No. 1195044

230th

GENERAL ORDERS OF COURT

APR 13 2009

Defendant ___Fratta___ appeared in person
with Counsel Randy McDonald/Vivian King
DA Vic Wisner/Eva Magness appeared for the State
Court Reporter Patty McElvaney
Judge Presiding Hon Jim Shirkin

He was accepted as one 11th juror, he was admonished to the nothing. On May 4, 2009 and at 3:35 p.m. Court adjourned until 9:30 AM, Monday, April 13, 2009.

At 9:35 am Court came to order. # 131 Cutman was called to the stand. At 10:10 am # 131 Cutman was excused by agreement on peremptory strike # 10 Court took a brief break.

At 10:17 am court came to order. # 84 Mayer was called to the stand At 10:30 am # 124 Mayer was excused by defense peremption #12. Court took a brief break. At 11:04 AM court came to order. Juror # 144 Duff # 153 Van were excused by agreement. At 11:05 am # 140 King was called to the stand. At 11:38am # 140 King was excused on affirmation. Court recess for lunch.

At 12:58 pm court came to order # 142 Hillier was called to the stand at 1:04 pm # 142 Hillier was excused by agreement. Court recess to wait for next juror At 1:42 pm court came to order. # 143 Aubrey was called to the stand At 3:00 pm defense exercised peremptory

00628

09/0003

GENERAL ORDERS OF THE COURT

APR 14 2009

_____ Defendant ___Fratta___

_____ with Counsel ___Randy McDonald / Vivian King___

_____ District Attorney / Assistant District Attorney appeared for the State

_____ Court Reporter ___Nancy Ann Rodriguez___

_____ Judge Presiding ___Hon. Don Stricklin___

appeared in person

At 3:00 PM court came to order, #14 grant was called to the stand. At 9:19 a.m. #116 Grant was excused by agreement. Court recess to wait for next juror. At 9:41 a.m. court came to order, #156 McLamb was called to the stand. At 10:12 a.m. #156 McLamb was excused by agreement. Court recess to wait for next panel. At 11:35 a.m. State of Texas requested the jury be shuffled. Court granted shuffle over defense objection. At 12:Noon State. Court came to order. The following jurors were excused by agreement. #161, #146, #149, #160, 113, 115. Court took a brief break. At 12:19 pm court came to order. The following remaining panel members were seated. At 12:21 pm they were admonished as to the law. At 1:34 pm the panel was excused for a short break. Other matters were discussed. At 1:59 pm the following jurors were dismissed by agreement. #162, #163, #165, #167, #171, #89. Juror #182 was excused for cause. The remaining jury were admonished as to their duties... to return. At 2:10 pm #168 Pruitt was called to the stand. At 2:30 pm #168 Pruitt was excused by agreement #14 Ellis-Barkinski was also excused by agreement. Court recess for evening.

Court came to order. Strike # 13, Juror #143 Aubrey was excused. Other matters were discussed. Court denied defense request for additional peremptory strike #14, Juror #145 Kynar was called to the stand. At 3:08 pm juror #145 Kynar was called to the stand. At 4:21 pm defense exercised peremptory strike #14, juror #145 Kynar was excused. Court recess until 9:00 am on 4/21/14, 2009.

C:\DOCUME~1\Frachili\LOCALS~1\Temp\bdocket sheet.doc   2 of 2

09/10/03

: 00629

THE STATE OF TEXAS VS.

Robert Alan Fratta.

Dc#230   Cause#1050414

F:\DOCUME~1\chachi\LOCALS~1\Temp\Docket sheet.doc   1 of 1

GENERAL ORDERS OF COURT

APR 15 2009

_____ Defendant: Fratta _____ appeared in person.

with Counsel: Randy McDonald/Vivian Elko

Dana Bradley Rodriguez appeared for the State

Court Reporter: Alan Ann Rodriguez

Judge Presiding: Hon Don Stricklin

At 9:19 AM court came to order #176 Scott was called to the stand. At 9:41 am State of Texas exercised peremptory challenge #11. Juror #176 was excused. Defense made Batson motion. At 9:41 am Batson challenge was denied. At 9:41 am #177 Archie was selected as Juror #12. At both sides court took a brief break. At 11:04 am court came to order. Juror#178 Cutlip was called to the stand. At 12:05 pm Juror #178 Cutlip was accepted by both sides as Juror #13. court recess for lunch. At 1:04 pm court came to order.#179 miller was called to the stand. At 1:19 pm #179 miller was excused. State exercised peremptory strike #12. court took a break. At 1:34 pm #180 Hernandez was called to the stand. At 2:17 pm defense exercised peremptory strike #5. Juror #180 was excused. court denied defense additional strike. At 2:22 pm #181 Birger was called to the stand. At 2:25 pm #181 Birger was excused by agreement. At 2:21pm #183 Villarreal was called to the stand. At 2:34 pm #183 Villarreal was excused for cause. court took a break to wait for next Juror to arrive. At 3:00 pm court

: 00630

GENERAL ORDERS OF THE COURT   Came to order, #184 order. Was called to the stand. At 4:05 pm Juror #184 order.

Was accepted by both sides. Court recessed until May 4, 2009 for trial.

**APR 23 2009**

Defendant: _____ appeared in person.

with Counsel: Rodney McDonald / Manny King

Denise Bradley / Marc Brown appeared for the State

Court Reporter: Mary Ann Rodriguez

Judge Presiding: Hon. Belinda Hill

**MAY - 4 2009** Defendant: _____ appeared in person.

with Counsel: Rodney McDonald / Manny King

Denise Bradley / Marc Brown appeared for the State

Court Reporter: Mary Ann Rodriguez

Judge Presiding: Hon. Belinda Hill

At 10:50 am Came to order. A voir dire. State of Texas made another recording testimony that may be heard. At 11:52 am Defense made their objection. At 11:55 am court withheld ruling until trial date.

At 10:34 am came to order. At particle arrest. Came to be heard a motion to suppress witness. A recess was invoked. Testimony began. At 12:00 pm both defense rested court recess for lunch. At 1:21 pm court came to order. Beginning continued. At 2:54 pm State of Texas rest. Both sides rest before. At 2:51 pm defense made closing argument. At 3:01 pm court recess discussed other matters. At 3:45 pm court withheld any ruling. Court recess for evening.

00631

THE STATE OF TEXAS VS.

Rogelio AbuFrata

Cause # 1105044

C:\DOCUME~1\vhachi\LOCALS~1\Temp\Docket sheet.doc    1 of 1

**GENERAL ORDERS OF COURT**

MAY – 5 2009    Defendant _Fratta_____ appeared in person

with Counsel _Rafael McDonald / Nixon Lila_____

_Terise Buzan / Nicholas_ appeared for the State

Court Reporter _____

Judge Presiding _Hon. Bell G. Hill_____

At 10:16 AM court came to order. Motion to suppress resumed. Witness was sworn and testimony continued. At 10:31 am State of Texas made argument. At 10:40 am court denied the defendant's motion to suppress. Other matters were discussed. At 11:00 AM defendant was arraigned outside the presence of the jury to which he plead "not guilty." At 11:03 court came to order. All parties present. Jury was sworn in. Admonished. At 11:04 am the defendant was arraigned in the presence of the jury to which he plead "not guilty." At 11:05 am State made opening statement. At 11:24 am defense made opening statement. At 11:25 am witness was sworn. At 12:00 am court recess for the rule was invoked. Other matters were discussed. At 12:23 pm all parties present. The rule was invoked. Other matters were discussed. At 1:23 pm all parties present. testimony began. At 1:20 pm court came to order. At 2:14 pm jury was excused. Other matters were discussed. At 2:15 pm court came to order. All parties present, testimony continued.

09/10/03

: 00632

GENERAL ORDERS OF THE COURT

Wednesday, May 06, 2009.

MAY - 6 2009

With Counsel _Patti_

Defendant _Dixie Bradley / Virginia_ appeared in person

Court Reporter _Mary Ann Rodriguez_

Judge Presiding _Hon. Belinda Hill_

All parties present, testimony and . At 4:53 pm THE Jury was Excused. Court Recessed until 10:00 Am on

All parties present, testimony and . At 3:29 pm court took a brief break. At 3:43 pm court came to order.

At 10:00 am court came to order. All parties present, testimony continued. At 10:30 am jury was excused for a brief moment. Other matters were discussed outside the presence of the jury. At 10:51 am court came to order. All parties present. Testimony continued. At 11:31 am court recess for lunch. At 1:15 pm court came to order. All parties present, testimony continued. At 2:30 pm court took a brief break. At 2:15 pm court came to order. All parties present, testimony continued. At 5:30 pm the jury was excused and returned to the jury room for a brief moment. At 5:38 pm the jury was excused and reconvened Thursday, May 07, 2009. At 5:55 pm court recessed for the evening. The jury was instructed to return at 9:45am on

: 000633

THE STATE OF TEXAS VS.

Robert Alan Fratta

DA#230   Cause#1019044

GENERAL ORDERS OF COURT

MAY -7 2009

Defendant ___Fratta___ appeared in person
with Counsel ___Randy McDonald / Vivian Ling___
___Denise Bradley / Mia Magness___ appeared for the State
Court Reporter ___Mary Ann Brown Curd___
Judge Presiding ___Jim Wallace - Hill___

At 10:09 am court came to order. Other matters were discussed. At 10:16 am, all parties present, testimony continued. At 11:34 am court took a brief break. At 11:54 am court came to order. All parties present, testimony continued. At 12:29 pm court took a recess for lunch. Jury excused. Jury for lunch. Other matters were discussed. At 12:48 pm court recess for lunch. At 1:41 pm court came to order. All parties present. Testimony continued. At 2:45 pm the jury was excused for a brief moment. Other matters were discussed. At 3:16 pm court came to order, all parties present, testimony continued. At 4:20 Court excused jury. Short break. At 4:36 all parties present. No jury. Jury deliberated. At 5:15 the court admonished the jury and adjourned. Court adjourned. This jury was sworn to return with the court on 5/8/09 at 9:15 am.

: 00634

GENERAL ORDERS OF THE COURT

MAY - 8 2000   Defendant ___Pratt___                        appeared in person
with Counsel __Randy McDonald/Vivian King__
__Danny Barron/Rick Harrell__ appeared for the State
Court Reporter __Mary Ann Rodriguez__
Judge Presiding __Hon. Belinda Hill__

At 10:15 am, court came to order. Other matters were discussed outside the presence of the jury. At 10:18 am jury entered and

was seated. Testimony continued. At 11:01 am jury was excused (other matters) were discussed court took a brief break.

12:26 pm court excused the jury for lunch. Other matters were discussed. At 12:37 pm court recessed for lunch.

At 1:46 pm court came to order. All parties present. Testimony continued. At 3:23 pm court took a brief break.

At 3:45 pm jury panel returned into open court and testimony resumed. At 5:15 pm court excused the jury panel for the day to

return 5-11-09 at 9:45 am. At 5:17 pm court recessed for the day until 10:00 am on 5-11-09

: 00635

THE STATE OF TEXAS VS.

Robert Alan Fratta

Cause # 1103044

Dkt 230

C:\DOCUME~1\techch\LOCALS~1\Temp\Docket sheet.doc     1 of 1

GENERAL ORDERS OF COURT

MAY 1 1 2009

Defendant ____Fratta_____

with Counsel _Randy McDonald/Vivian King_____  appeared in person

Doris Bradley/Mia Magness_____  appeared for the State

Court Reporter _Mary Ann DeLarge 2_____

Judge Presiding _Jan Krocker 184_____

At 8:52 am court came to order. Matters were discussed outside presence of the jury. At 9:31 am court recess until trial. At 10:15 am court came to order. All parties present, testimony continued. At 10:33am jury was excused for a brief moment. Other matters were discussed. At 10:44 am court came to order. All parties present. Testimony continued. At 10:54am, jury was excused while other matters were discussed. At 10:54 am. All matters present, testimony continued. At 11:24 am court took a brief break. At 11:56am court came to order. All parties present. Testimony continued. At 12:24 pm court recessed, jury for lunch. Other matters were discussed. At 12:26 court recessed for lunch. At 2:02pm court came to order. Matters were discussed outside the presence of the jury. At 2:04 pm court came to order. All parties present, testimony continued. At 2:54pm court took a brief break. At 3:18pm court came to order. All parties present, testimony continued. At 3:53 pm the jury was excused for a brief moment and other matters were discussed outside

09/0003

: 00636

GENERAL ORDERS OF THE COURT outside the presence of the jury.

: 00637

THE STATE OF TEXAS VS.

Name: ROBERT ALAN FRATTA

Cause No. 1195044 Court: 230

GENERAL ORDERS OF THE COURT

05/11/09    Continued

Defendant ROBERT ALAN FRATTA appeared in person

with Counsel RANDY MCDONALD/VIVIAN KING

DENISE BRADLEY/MIA MAGRESS appeared for the State

Court Reporter MARY ANN RODRIGUEZ

Judge Presiding HON. BELINDA HILL

AT 4:30PM THE JURY ENTERED THE COURTROOM, WAS SEATED AND TESTIMONY CONTINUED, AT 4:55PM THE

JURY WAS EXCUSED TO THE JURY ROOM SO THAT THE COURT COULD TAKE A 10 MINUTE RECESS, AT 5:05PM

THE JURY WAS RE-SEATED AND TESTIMONY CONTINUED, AT 5:52PM THE JURY WAS ADMONISHED, INSTRUCTED

TO RETURN AT 9:15AM ON MAY 12, 2009 AND RELEASED FOR THE DAY, AT 6:04PM THE COURT RECESSED FOR

THE DAY

05/11/09

: 00638

Pratty Robert
Dr 230
Cause number 1105004
Capital Murder

# THE STATE OF TEXAS VS.

## GENERAL ORDERS OF COURT

MAY 1 2 2009

Defendant __Pratty Robert__ appeared in person

with Counsel V King, Wendy McDonald

Defendant __Doug Pratty__ _Wendy McDonald_ appeared for the State

Court Reporter __Carol Pierce__

Judge Presiding __Belinda Hill__ _all parties present._

At 9:48am court came to Order. Motion Hearing was offered +
Granted. Jury entered courtroom and testimony continued. At 10:54am
court took a break. Ct resumed at 11:32 am w/ all parties
present. At 12:28pm court recessed Jury for lunch upon
admonishing them. Other matters were discussed.
At 1:52 Court came to Order. All parties present. Testimony
continued. At 2:36 pm jury recessed for short break.
At 2:40 all parties present court came to Order. Testimony
continued. At 3:24 the court granted jury a short break.
At 3:50 all parties present ct resumed testimony continued
At 5:09 pm the Jury was admonished, instructed to return at
9:15am on May 13 2009 and released for the day. At 5:31 pm
the Court recessed for the day.

:00639

O:\DOCUME~1\chachi\LOCALS~1\Temp\Docket sheet.doc   1 of 1

THE STATE OF TEXAS VS.

Chatta, Robert

1195044

Capital Murder

GENERAL ORDERS OF COURT

MAY 13 2009

23rd D...

Judge Presiding _Belinda Hill_

Court Reporter: _Mary Ann Callihug_

_Denise Bradley_ initially appeared for the State

with Counsel _V. Hing, Wanda McDonald_

Defendant _Chatta, Robert_ appeared in person

Motion in limine from both sides were brought before the court and granted. At 9:33 a.m. the court came to order. All parties present the jury was brought in and testimony began. At 10:47 a.m. the jury was retired and other matters were addressed. At 11:22 a.m. the jury returned to open court w/ all parties present & testimony continued. At 12:08 pm the court broke for lunch (Other matters were discussed @ 1:24 and jury returned to open court w/ all parties present and testimony continued. At 2:37 pm the state rested. Jury was retired. A motion was offered by defense in regards to paragraphs of indictment. Ct granted for paragraph 3 and 1, 2 & 4 was denied. Court entered into recess @ 2:50 pm. At 3:09 pm court reconvened and testimony continued w/ defense calling

09/10/03

: 00640

GENERAL ORDERS OF THE COURT

MAY 14 2009   **Defendant** _Jett_ ☑ **appeared in person**
with Counsel _Kacey McDaniel / Nivan King_
_Mike Trent / NiNiang_ ☑ appeared for the State
Court Reporter _Mary Ann Daniarz_
Judge Presiding _Jim Wallace / Jim Bellwag HA_

Witness. At 3:33pm the jury was retired. Other matters
were discussed. At 3:50 Court went on recess. At 4:21pm —
Jett all parties present. Court were discussed testimony continued.
At 4:29 offense not. State rest recess
at actual Return @ 9:05pm. Other matters were discussed on the record w
reference to the charge. Court concluded @ 5:30pm.

At 9:30am court came to order. Matters were discussed outside the presence of the jury. At 9:51am court came
to order. All parties present. Defense rest. Both sides rest close. Charge was read to the jury. At 10:08am
State of Texas made closing argument. At 10:55am defense made closing argument. At 11:28am jury took a
brief break. At 11:42am court came to order. At 11:44am defense made resumed closing argument. At 12:41pm
State of Texas returned closing argument. At 1:19pm court recess for lunch. At 2:40pm court came to
order. Other matters were discussed outside the presence of the jury. At 3:09pm deliberation began.
@ 5:03pm jury returned to Court and was instructions given to jury by Judge
for evening + that jury returned for the evening at 6:07pm. Jury to return at
9:00 am tomorrow by this morning, 5/15/2008

C:\DOC\TIME=1\chaohl\LOCALS~1\Temp\Docket sheet.doc    2 of 2

09/1/003

00641

THE STATE OF TEXAS VS.

Robert Alan Fratta

C:\DOCUME~1\rhaehl\LOCALS~1\Temp\Docket sheet.doc   1 of 1

GENERAL ORDERS OF COURT

MAY 15 2009

Defendant Fratta _____ appeared in person
with Counsel Randy McDonald/Wilson King
Doug Brown/Chrizanne appeared for the State
Court Reporter Mary Ann Rodriguez
Judge Presiding Hon Belinda Hill

At 9:08 am court came to order. All parties present. Deliberation Continued. At 1:28 pm court came to order. At 1:29 pm jury entered the courtroom. The jury reached a verdict. At 1:31 pm the jury found the defendant Robert Alan Fratta guilty of Capital murder. At 1:34 pm jury was excused for a brief moment while other matters were discussed. At 1:43 pm court came to order. All parties present, jury was admonished & told to return on May 26, 2009 at 9:45am.

09/10/003

: 00642

GENERAL ORDERS OF THE COURT

MAY 2 6 2009

Judge Presiding: Jan Benton at th

Court Reporter: Mary Ann Rodriguez

Kris Brown and Travis appeared for the State

with Counsel Randall McDonald / Vivian King — appeared in person.

Defendant: E. Ratti

At 10:06 am court came to order. Motors were discussed outside the presence of the jury. At 10:15 a court came to order. Witnesses were sworn. Jule was involved testimony began. At 11:33 a.m. court took a brief break. At 12:05 pm court came to order. All parties present testimony continued. At 12:16 pm court recess for lunch. At 1:32 pm court came to order. All parties present testimony continued. At 2:30 pm court took a brief break. At 2:50 pm court came to order. All parties present testimony continued. At 3:20 pm State of Texas rest. Jury was excused from the courtroom. All parties present. Jury was admonished & excused, told to return at 9:45 am on Wednesday May 21, 2009 court recess for the evening.

C:\DOCUME~1\rhachib\LOCALS~1\Temp\Docket sheet.doc   2 of 2

09/10/03

: 00643

THE STATE OF TEXAS VS.

Def #230 Cause #1005044

Robert Fratta

C:\DOCUME~1\vhechm\LOCALS~1\Temp\Docket sheet.doc    1 of 1

GENERAL ORDERS OF COURT

MAY 27 2009

Defendant __Fratta__ _____ appeared in person

with Counsel __Vivian King, Randy McDonald__

__Dolly Brent__ (ADC Attorney) appeared for the State

Court Reporter __Mary Ann Rodriguez__

Judge Presiding __Hon. Belinda Hill__

At 8:30am came to be heard pretrial matters outside the presence of the
jury. At 9:14 am hearing concluded. Court recess. At 10:14 am court came
came to order. All parties present. Testimony continued. At 12:07 pm
court recess for lunch. At 1:51 pm court came to order. Other matters
were discussed outside the presence of the jury. At 2:14 pm court came to
order. All parties present. Testimony continued. At 3:30 pm jury was
excused from the courtroom. Court recess for a short break. At 4:08 pm
court came to order. All parties present. Testimony continued. At 4:18 pm
defense rest. Testimony continued. At 4:35 pm jury was excused while
the court discussed other matters outside their presence. 5:24 pm jury
returned to court room and seated. Testimony continued. Jury foreman
jury was admonished/instructed to return at 11:45 am on May
18, 2009 and released for the day. At 6:30 6:45 pm court
recessed for the day.                                              pm the court

09/1003

: 00644

**GENERAL ORDERS OF THE COURT**

MAY 28 2009

_____ appeared in person

with Counsel _____

Defendant _____

_____ Appeared for the State

Court Reporter _____

Judge Presiding _____

At 12:30 pm court came to order. Matters were discussed outside the presence of the jury. At 1:34pm court came to order, all parties present testimony continued. At 2:46pm jury was admonished & told to return at 8:45am on Friday May 29 2009. Other matters were discussed outside the presence of the jury. At 2:50pm court recess for evening

00645

THE STATE OF TEXAS VS.

**GENERAL ORDERS OF COURT**

MAY 29 2009 **Defendant:** Tratta      **appeared in person**

with Counsel: Paula McDonald Nixon King

Dist. Dist. Atty. Mr. Hogins appeared for the State

Court Reporter Deposed Mary Ann Demar?

Judge Presiding HDM Belinda Hill

At 9:14am court came to order. Both sides announced ready. At 9:15am the jury entered the courtroom & was seated. The charge was read. At 9:21am State of Texas made their closing argument. At 9:08am defense made closing argument. At 10:51 am State of Texas resumed closing argument. At 11:20am jury exited the courtroom & deliberations began. At 5:40 pm the jury entered the courtroom. All parties present. The jury was admonished in open court & I instructed that they would be escorted back to the courthouse by 9:00 am on Saturday May 30 2009.

At 8:48 the jury returned to deliberate.

**Defendant** _____ **appeared in person**

with Counsel _____

Denise Bradley Mr Magee appeared for the State

Court Reporter Mary Ann DeGregory

Judge Presiding Belinda Hill

MAY 30 2009

09/10/03

: 00646

GENERAL ORDERS OF THE COURT

JUN - 1 2009

Defendant _____ appeared in person

with Counsel _____

_____ appeared for the State

Court Reporter _____

Judge Presiding _____

At 10:13 am COURT came to ORDER. Court alerted defendant as to the findings of the jury. The defendant was sentenced to death. Judgement will also reflect that he or any other party are ineligible to receive any benefit related to this crime. Court recess at 10:19 am. Notice of appeal filed. Allen Bell was appointed attorney on appeal

09/10/03

: 00647

NO: 1195044

| | |
|---|---|
| THE STATE OF TEXAS | IN THE 230TH DISTRICT COURT |
| VS. | OF |
| Robert Alan Fratta | HARRIS COUNTY, TEXAS |

# BENCH WARRANT RETURN

TO THE SHERIFF OF HARRIS COUNTY, TEXAS:

RE:  **CHARLES GLENN HOOD**
Spn: **02425678**

    CHARLES GLENN HOOD, a prisoner in your custody, having been bench warranted from the Texas Department of Criminal Justice Institutional Division, is hereby released by the court and this is your authority to return said prisoner to the Texas Department of Criminal Justice Institutional Division.

Date:  June 1, 2009

                      Court Coordinator
                      230th District Court
                      Harris County, Texas

**FILED**
Loren Jackson
District Clerk

JUN - 1 2009

Time: _____
By _____
          Harris County, Texas
                Deputy

: 00648

dms1061993

NO: 1195044

THE STATE OF TEXAS

VS.

Robert Alan Fratta

IN THE 230TH DISTRICT COURT

OF

HARRIS COUNTY, TEXAS

# BENCH WARRANT RETURN

TO THE SHERIFF OF HARRIS COUNTY, TEXAS:

RE: **ERIC D. CATHEY**
Spn: **01224361** PID

ERIC DEWAYNE CATHEY, a prisoner in your custody, having been bench warranted from the Texas Department of Criminal Justice Institutional Division, is hereby released by the court and this is your authority to return said prisoner to the Texas Department of Criminal Justice Institutional Division.

Date: June 1, 2009

Court Coordinator
230th District Court
Harris County, Texas

**FILED**
Loren Jackson
District Clerk

JUN - 1 2009

Time: _____
By _____
Harris County, Texas
Deputy

: 00649





NO:  1195044

THE STATE OF TEXAS

VS.

Robert Alan Fratta

IN THE 230TH DISTRICT COURT

OF

HARRIS COUNTY, TEXAS

# BENCH WARRANT RETURN

TO THE SHERIFF OF HARRIS COUNTY, TEXAS:

RE:  **MARK D. ROBERTSON**
Spn:  **02425677**

MARK D. ROBERTSON, a prisoner in your custody, having been bench warranted from the Texas Department of Criminal Justice, Institutional Division, is hereby released by the court and this is your authority to return said prisoner to the Texas Department of Criminal Justice Institutional Division.

Date:  June 1, 2009

Court Coordinator
230th District Court
Harris County, Texas

# FILED

Loren Jackson
District Clerk

JUN - 1 2009

Time: _____

By _____
Harris County, Texas

Deputy

: 00650



NO. 1195044

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, T E X A S |
| ROBERT ALAN FRATTA | § | 230TH JUDICIAL DISTRICT |

### DEFENDANT'S NOTICE OF APPEAL IN CRIMINAL CASE

TO THE HONORABLE JUDGE OF SAID COURT:

This is notice of the defendant's desire to appeal from the judgment or other appealable order in this case.

SIGNED this 5th day of June, 2009.

Respectfully submitted,

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

**FILED**
Loren Jackson
District Clerk

JUN - 5 2009

Time: _____
Harris County, Texas

By _____
Deputy

:00651

CAUSE NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 230th DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| Robert Alan Fratta | § | OF HARRIS COUNTY, TEXAS |
| DEFENDANT | § | |

---

### 11.071 WRIT OF HABEAS CORPUS
### OATH OF INDIGENCE/ FINDINGS OF FACT/
### ORDER APPOINTING COUNSEL / STATEMENT OF FACTS

---

#### OATH OF INDIGENCE

TO THE HONORABLE JUDGE OF SAID COURT:

The defendant has been convicted of capital murder and sentenced to death. Accordingly, defendant notifies the Court that he/she is indigent and asks the court to appoint counsel to represent him/her to pursue a post-conviction writ of habeas corpus. TEX. CODE CRIM. PROC. art. 11.071. The defendant also asks the court to make findings of fact that he/she is indigent and desires counsel appointed to represent him/her on writ of habeas corpus. The defendant further asks the Court to order the Court Reporter to prepare a statement of facts without charge.

Defendant's signature

Sworn and subscribed before me on this date: 6-1-2009

Deputy District Clerk

#### ORDER APPOINTING COUNSEL

The defendant filed an oath of indigence in the above captioned case. After considering the defendant's oath and other evidence presented, the Court FINDS the defendant is indigent and has asked the court to appoint counsel to represent him/her on a writ of habeas corpus. TEX. CODE PROC. art. 11.071 (2)(b).

The Court further FINDS that the Court of Criminal Appeals has approved the attorney listed below to represent indigent defendants on post-conviction death penalty writs.

Accordingly, the Court ORDERS the attorney listed below to represent the defendant on a writ of habeas corpus.

The Court ORDERS the Court Reporter to prepare a statement of facts of the testimony in this case in question and answer form. The Court ORDERS the District Clerk to send a copy of this document and the judgment in this case to the attorney appointed to represent defendant on writ of habeas corpus, to Roe Wilson in the Harris County District Attorney's Office, and to the Court Reporter who took the testimony in said cause.

The Court further ORDERS the District Clerk to send a copy of this document and the judgment in this case to the Court of Criminal Appeals immediately.

| | |
|---|---|
| Patrick F. McCann | 909 Texas Ave #209 |
| Attorney | Address |
| 00792680 | Houston, TX 77002 |
| State Bar Number | City, State, Zip Code |
| (713) 223-3805 | (713) 226-8097 |
| Telephone Number | Fax Number |

---

Court Reporter(s)

6-5-2009
Date Signed

Judge Presiding

101204

: 00652

NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, T E X A S |
| ROBERT ALAN FRATTA | § | 230TH JUDICIAL DISTRICT |

### DESIGNATION OF RECORD ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ROBERT ALAN FRATTA, the Defendant in the above styled and numbered cause and files this his Designation of Record on Appeal, pursuant to Rule 34.5(b) *Texas Rules of Appellate Procedure* (effective September 01, 1997) and requests that the Clerk of this Honorable Court make and prepare as part of the record in the appeal of this case true and correct copies of the following matters:

1.  All pleadings, and motions and waivers filed by the Defendant and by the State of Texas, and all rulings of the Court thereon.

2.  All docket entries made by the Court.

3.  The jury information forms for each potential and actual juror interviewed during the voir dire.

4.  A transcript of the plea hearing if a plea of Guilty or Nolo Contendere was entered.

5.  The testimony of all witnesses, including, but not limited to the complaining witness' testimony, during all pre-trial hearings, the hearing on guilt-innocence and the hearing on punishment, and the hearings on all Motion(s) for New Trial.

6.  All hearings held outside the presence of the Jury.

7.  All communications between the Trial Court and the Jury.

: 00653

8.   All communications between the Trial Court and the Defendant, Counsel for the Defendant, and Counsel for the State.

9.   The Court's charge submitted by the Court to the Jury during the hearings on guilt-innocence and punishment, and all rulings thereon.

10.   All objections, whether oral or written to the Court's charge submitted to the jury during the hearings on guilt-innocence and punishment, and all rulings of the Court made thereon.

11.   All requested instructions, whether oral or written, to the Court's charge submitted to the Jury during the hearings on guilt-innocence and punishment, and all rulings of the Court made thereon.

12.   All jury arguments of Counsel for the State and Defendant during the hearings on guilt-innocence and punishment.

13.   The respective verdicts of the jury during the hearings on guilt/innocence and punishment.

14.   All notes sent by the Jury to the Court, and the Court's response thereto and all objections and requested instructions made by the Defendant to each such jury note and response of the Court thereto.

15.   The pre-sentence investigation report and psycholog-ical reports.

16.   The judgment and sentence of the Court.

17.   The Defendant's Notice of Appeal.

18.   All Bills of Exception, rulings of the Court thereon and a transcription of all proceedings held pursuant to said Bills of Exception.

19.   The originals of the exhibits introduced into evidence before the Jury and before the Court.

20.   The search and/or arrest warrant and affidavits attached thereto.

: 00654

21. A transcription of the voir dire examination of the Jury Panel.

22. The jury strike lists by the State and the Defendant.

23. A list of the names of the jurors who served on the jury.

24. A transcription of the entire statement of facts, including the testimony of all witnesses who testified before the Court and/or the Jury, and the opening statements, if any, made by Counsel for the State and Counsel for the Defendant.

25. A copy of all records presented and reviewed by the Court at the proceedings in this case.

26. The Designation of Record on Appeal.

27. The request by the Defendant of a Statement of Facts in this cause.

29. All Motion(s) to correct the record if any were filed in this cause.

30. The Order of the Court approving the record in this cause.

31. The Brief of the Appellant and of the State.

32. Trial Court's Certification of Defendant's Right of Appeal.

This written Designation of Record is being filed within thirty (30) days after the day Sentence was imposed or suspended in open Court if no timely Motion for New Trial was filed, or within ninety (90) days after the day sentence was imposed or suspended in open court if one or more Motions for New Trial were filed pursuant to Rule 26.2 and Rule 34.5(b), *Texas Rules of Appellate Procedure.*

Appellant requests that the Clerk prepare and file the Clerk's record as required by *Texas Rules of Appellate Procedure*, Rule 35.2 and 35.3(a) with the appellate court in which this cause has been assigned.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Clerk of this Court make and prepare as part of the record in the appeal of this cause true and correct copies of all matters stipulated above and make them a part of the record in the appeal of this cause.

Respectfully submitted,

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

: 00656

# Allen C. Isbell
### Attorney at Law

BOARD CERTIFIED CRIMINAL LAW
COLLEGE OF THE STATE BAR, MEMBER

OLD COTTON EXCHANGE BUILDING
202 TRAVIS, SUITE 208
HOUSTON, TEXAS 77002
(713)236-1000
FAX (713)236-1809

June 5, 2009

Loren Jackson, District Clerk
Appellate Division
P.O. Box 4651
Houston, TX 77210

**ATTN: TRIAL COURT CLERK**

**RE:   REQUEST FOR PREPARATION OF CLERK'S RECORD;
STATE OF TEXAS VS. ROBERT ALAN FRATTA; TRIAL
COURT NO(S). 1195044; 230TH DISTRICT COURT;**

Dear Clerk:

ALLEN C. ISBELL represents the above referenced case on appeal. Request is being made for the preparation of the Clerk's Record in accordance with *TEXAS RULES OF APPELLATE PROCEDURE*, 34.5(a), which requires inclusion of the following items:

1.   The indictment or information, any special plea or defense motion that was presented to the court and overruled, any written waiver, any written stipulation, and, in cases in which a plea of guilty or nolo contendere has been entered, any documents executed for the plea;

2.   the court's docket sheet;

3.   the court's charge and the jury's verdict, or the court's findings of fact and conclusions of law;

4.   the court's judgment or other order that is being appealed;

5.   any request for findings of fact and conclusions of law, any post-judgment motion, and the court's order on the motion;

6.   the notice of appeal;

: 00657

Loren Jackson, District Clerk
Page 02
June 5, 2009

---

    7.   any formal bill of exception;

    8.   any request for a reporter's record, including any statement of points or issues under Rule 34.6(a);  and

    9.   this request for preparation of the clerk's record.

In addition to these, counsel requests that the following designated items be included pursuant to *TEXAS RULES OF APPELLATE PROCEDURE*, 34.5(b):

    1.   All pleadings and motions filed by the Defendant and by the State of Texas, and all rulings of the Court thereon;

    2.   The jury information forms for each potential and actual juror interviewed during the voir dire;

    3.   The jury strike lists by the State and the Defendant;

    4.   A list of the names of the jurors who served on the jury;

    5.   All written requested instructions, to the Court's charge submitted to the Jury during the hearings on guilt-innocence and punishment, and all rulings of the Court made thereon;

    6.   All written objections, to the Court's charge submitted to the jury during the hearings on guilt-innocence and punishment, and all rulings of the Court made thereon;

    7.   The Court's charge submitted by the Court to the Jury during the punishment hearing;

    8.   The verdict(s) of the jury during the punishment hearing.

    9.   All notes sent by the Jury to the Court, and the Court's response thereto and all objections and requested instructions made by the Defendant to each such jury note and response of the Court thereto;

: 00658

Loren Jackson, District Clerk
Page 03
June 5, 2009

---

10.   The pre-sentence investigation report and psychological reports;

11.   The search and/or arrest warrant and affidavits attached thereto;

12.   A copy of all records presented and reviewed by the Court at the proceedings in this case;

13.   All Motion(s) to correct the record if any were filed in this cause;

14.   The Order of the Court approving the record in this cause;

Respectfully submitted,

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

: 00659

# Allen C. Isbell

**Attorney at Law**

BOARD CERTIFIED CRIMINAL LAW
COLLEGE OF THE STATE BAR, MEMBER

OLD COTTON EXCHANGE BUILDING
202 TRAVIS, SUITE 208
HOUSTON, TEXAS 77002
(713)236-1000
FAX (713)236-1809

June 5, 2009

Ms. Cheryl Pierce, Court Reporter
230th District Court
1201 Franklin, 16th Fl.
Houston, TX 77002

RE:   *REQUEST FOR PREPARATION OF REPORTER'S RECORD;*
*STATE OF TEXAS vs. ROBERT ALAN FRATTA; TRIAL*
*COURT NO(S). 1195044; 230TH JUDICIAL DISTRICT*
*COURT;*

Dear Ms. Rodriguez:

ALLEN C. ISBELL, represents the above referenced case on
appeal. Request is being made for the preparation of the
Reporter's Record in accordance with *TEXAS RULES OF APPELLATE*
*PROCEDURE*, 34.6(b). Counsel requests that the following portions
of the proceedings and exhibits be included:

1.   The plea hearing if a plea of Guilty or Nolo
Contendere was entered;

2.   The voir dire examination of the Jury Panel;

3.   The opening statements, if any, made by Counsel for
the State and Counsel for the Defendant.

4.   The testimony of all witnesses, including, but not
limited to the complaining witness' testimony, during all
pre-trial hearings, the hearing on guilt-innocence and
the hearing on punishment, and the hearings on all
Motion(s) for New Trial;

5.   All oral Bills of Exception, rulings of the Court
thereon and a transcription of all proceedings held
pursuant to said Bills of Exception;

6.   All hearings held outside the presence of the Jury.

: 00660

Ms. Cheryl Pierce, Court Reporter
Page 02
June 5, 2009

---

7.   All communications between the Trial Court and the Jury.

8.   All communications between the Trial Court and the Defendant, Counsel for the Defendant, and Counsel for the State;

9.   All jury arguments of Counsel for the State and Defendant during the hearings on guilt-innocence and punishment;

10.  The originals of the exhibits introduced into evidence before the Jury and before the Court.

A copy of this REQUEST FOR PREPARATION OF REPORTER'S RECORD is being sent to the Clerk of the trial court for inclusion in the Clerk's record.

Respectfully submitted,

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

# Allen C. Isbell
### Attorney at Law

BOARD CERTIFIED CRIMINAL LAW
COLLEGE OF THE STATE BAR, MEMBER

OLD COTTON EXCHANGE BUILDING
202 TRAVIS, SUITE 208
HOUSTON, TEXAS 77002
(713)236-1000
FAX (713)236-1809

June 5, 2009

Ms. Mary Ann Rodriguez, Court Reporter
230th District Court
1201 Franklin, 16th Fl.
Houston, TX 77002

RE: **REQUEST FOR PREPARATION OF REPORTER'S RECORD;
STATE OF TEXAS vs. ROBERT ALAN FRATTA; TRIAL
COURT NO(S). 1195044; 230TH JUDICIAL DISTRICT
COURT;**

Dear Ms. Rodriguez:

ALLEN C. ISBELL, represents the above referenced case on
appeal. Request is being made for the preparation of the
Reporter's Record in accordance with *TEXAS RULES OF APPELLATE
PROCEDURE*, 34.6(b). Counsel requests that the following portions
of the proceedings and exhibits be included:

1. The plea hearing if a plea of Guilty or Nolo
Contendere was entered;

2. The voir dire examination of the Jury Panel;

3. The opening statements, if any, made by Counsel for
the State and Counsel for the Defendant.

4. The testimony of all witnesses, including, but not
limited to the complaining witness' testimony, during all
pre-trial hearings, the hearing on guilt-innocence and
the hearing on punishment, and the hearings on all
Motion(s) for New Trial;

5. All oral Bills of Exception, rulings of the Court
thereon and a transcription of all proceedings held
pursuant to said Bills of Exception;

6. All hearings held outside the presence of the Jury.

: 00662

Ms. Mary Ann Rodriguez, Court Reporter
Page 02
June 5, 2009

---

7.   All communications between the Trial Court and the Jury.

8.   All communications between the Trial Court and the Defendant, Counsel for the Defendant, and Counsel for the State;

9.   All jury arguments of Counsel for the State and Defendant during the hearings on guilt-innocence and punishment;

10.  The originals of the exhibits introduced into evidence before the Jury and before the Court.

A copy of this REQUEST FOR PREPARATION OF REPORTER'S RECORD is being sent to the Clerk of the trial court for inclusion in the Clerk's record.

Respectfully submitted,

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

# LOREN JACKSON

### HARRIS COUNTY DISTRICT CLERK

June 9, 2009

ALLEN C. ISBELL
ATTORNEY OF RECORD
202 TRAVIS, SUITE 208
HOUSTON, TX  77002

Defendant's Name:  ROBERT ALAN FRATTA

Cause No:  1195044

Court:  230TH DISTRICT COURT

Please note the following appeal updates on the above mentioned cause:

**Notice of Appeal Filed Date:**  06/01/09
**Sentence Imposed Date:**  06/01/09
**Court of Appeals Assignment:  Court of Criminal Appeals**
**Appeal Attorney of Record:**  ALLEN C. ISBELL

Sincerely,

N. Salinas
Criminal Post Trial Deputy

CC:  Patricia R. Lykos
     District Attorney
     Appellate Division
     Harris County, Texas

   MARY ANN RODRIGUEZ

   CHERYL PIERCE

This is your notice to inform any and all substitute reporters in this cause.

: 00664

Robert Alan Fratt.          Cause No.          In the 230th
v.                           1195044            District Court
The State of Texas                              Harris County, Tx.

## Original/Initial Motion For New Trial & Ruling For Acquittal

Comes now the Appellant, Robert Alan Fratta, and files this Motion pro se and in 1ST person narrative.

I.

I cite 3 issues in this motion:

1) The evidence was legally insufficient to support a capital murder conviction, and an instructed verdict to acquit should have been given as my attorneys motioned prior to deliberation. Legal insufficiency of the evidence is grounds for acquittal on appeal.

2) If it's the court's opinion that the evidence was legally sufficient, then the evidence was certainly factually insufficient. Factual insufficiency is grounds for a new trial.

3) My counsel was ineffective, and it was blatantly obvious during the punishment phase. To substantiate this issue, I am attaching true copies of the 2 letters I had written to Judge Hill during the trial (dated 5/28/09 & 5/31/09), which I had requested my counsel to place on the record and in my file. Vivian King had told me she would. But then due to our increasing conflict of interest, both then refused to. On 6/1/09 I also asked the Bailiff Deputy, Ms. Lacy (sp), if she would give the 2 letters to the clerk to place in my file, but she also declined to. However, Ms. Lacy is a witness, as she was the one who handed me copies, and we had to remove the staples Ms. King had put on them. It's IMPORTANT to read these letters so it can be seen and understood exactly what was transpiring at the times I wrote them, so this issue can be fairly and properly assessed.

II.

My new attorney, Allen C. Isbell, advised me he may NOT be filing any Motion for New Trial; and that IF he does, it will only be for my issue #3 above. For that reason, and because my other trial attorney, Randy McDonald told me the insufficiency of the evidence WOULD be filed by my direct appeal attorney in the Motion for New Trial, I am having to file pro se to cite all 3 issues. Mr. Isbell has requested me to write an affidavit/declaration regarding my issue #3 in the event he decides to file a Motion for New Trial. But unless he cites the insufficiency of the evidence also (as I was told by Mr. McDonald), I'm requesting that he file a supplement motion to this motion of mine; which is why I titled it as an "Original/Initial".

Submitted by: _Alfratta_   6/20/09

Robert Alan Fratta, pro se
Polunsky Unit, # 999189
3872 FM350 South
Livingston, Tx. 77351

Date : June 20, 2009

TO: Judge Hill, 230th District Court

5
5/28/09

      I feel the need to put my opinion on record about the events that have taken place the past few days. As this Court is fully aware, Assistant D.A.'s Denise Bradley + Mia Magness made it an intentional point to let my attorney Randy McDonald know that they had what they deemed incriminating evidence against my other attorney Vivian King, whereby implying, at the very least, that criminal charges could be filed against Ms. King. Upon being told by Randy, Ms. King was understandably upset by this news, + immediately started focusing on clearing her name. I even got drawn into the fray on the morning of 5/27/09 + spoke to the court to defend Ms. King + myself about the photographs of Betsy Gomez seized from my cell. Certainly such a hearing in the middle of a capital murder case is highly unusual. And in my opinion, should never have been allowed by the court, no matter if my attorney(s) requested it, as it clearly was a major distraction + upsetting event to my attorneys + myself at a time when we needed to be focused solely on the matter at hand of my matter of life or death.

      I discovered that my attorneys, especially Ms. King, had been focusing on Ms. King's predicament rather than my case. Prior to this "attack" by the state, my attorneys conferred with me more, + shared documents with me. As a result of Ms. King not focusing on my case properly, I was not given the results of Dr. Bailey's study, + not able to ask her about what he was to testify to. It is my belief that Ms. King did not spend proper time or thought

on Dr. Bailey's written results. I feel even this court will agree that the state had a field day with those results on cross-examination, +, that Dr. Bailey's testimony ended up being harmful, + he should not have been called as a witness for me. Had Ms. King given me his results to read, as she had done with prior witnesses or documentation, I would have told her + Randy that I did NOT want him to testify. (I wanted Mark Cunningham to testify to my Marquart study results).

The state had the phone calls + photos already, + could have + should have waited until after the conclusion of my trial to notify my attorney(s) about any possibility of legal or ethical actions being taken. I believe they intentionally did not wait in order to purposely intimidate Ms. King, + cause her + Randy to spend time on her rather than me. And their strategy worked. As a result of the state's intentional unethical actions, my attorneys, or at least Ms. King, became ineffective, + even damaging to me. My right to a fair trial, due process, + effective assistance of counsel have been denied + violated, and this Court knows that by the events that have unfolded, + the state capitalizing on ~~them~~ them.

I feel it would be a miscarriage of justice to allow this blatant matter be decided on appeal when it ● is clearly evident now, + should be properly decided now. And that proper decision is to uphold my rights by declaring a mistrial, + I hereby request/motion for a mistrial.

Respectfully submitted,

*Fratta*    5/29/09

Robert A. Fratta

: 00668

To: Judge Hill, 230th District Court                                    5/31/09

    In furtherance of my 5/28/09 letter to the Court which I signed on the morning of 5/29/09 & showed to Ms. King, I cite the following:

    On 5/28/09 I informed Randy McDonald & Ms. King that I wanted to go on record to state my claims of ineffective assistance of counsel, etc., & ask for a mistrial. Mr. McDonald said Judge Hill would not allow me to speak, so Ms. King advised me to put it in writing & she would place it into the record. But on 5/29, Ms. King did not take my 5/28 letter, & asked me to wait until the next day (Saturday). Meanwhile during closing arguments on 5/29, my counsel was again ineffective in things they stated & did not object to, &, did not give adversarial testing to things I had pointed out prior to the State capitalizing on them during their closing argument. For example, Ms. King kept wrongly referring to defense witness Robin Karmeroff as "Paul". She also was extremely harmful in very wrongly referring to the "12 inch by 1½ inch piece of steel that could be used as a weapon or escape tool", as being a "shank". It most certainly was NOT a "shank", & ▓▓ was never referred to as such. (See the TDCJ report & their photos of it). But Ms. King said "shank", & Mia Magness jumped right on that harmful error. (see the transcripts as proof). Also, when the State played the phone conversations Judge Hill allowed (over objections) between myself & Betsy Gomez, I informed both Randy & Ms. King that the State was knowingly & intentionally omitting ▓▓ parts of the conversations to make it appear I was manipulating Betsy. I asked Randy & Ms. King to listen to the entire conversations, & play the relevant parts for the jurors to show that Betsy told/asked me to propose to her

right then; that she brought up about her working some extra job to make more money, so I ~~suggested~~ asked about the possibility of making money from doing a website; that the concubines were for her since I was imprisoned; that the "prenup" was primarily for her protection since she owns a house; that I did NOT ask for any photos exposing her nipple(s), etc., +, to tell the jurors she's a 44 year old woman with 2 adult sons because her voice makes her sound like a nieve teenage girl. My attorneys did none of this to counter the State's misconduct.

On 5/30/09 prior to the verdict, I asked Ms. King to give my 5/28 letter to Judge Hill. But Ms. King then instructed me to again wait, instead of putting it on the record then, before the verdict. (I had requested it be given to Judge Hill to read + hopefully rule on BEFORE the verdict).

Clearly my attorneys have been distracted, unfocused, ineffective, + even very harmful since the state's attack on Ms. King, + a mistrial should have been granted.

I also want to put on record that after the verdict was read + Judge Hill called all attorneys to the bench, Denise Bradley made it a point to leer at me + give me a sarcastic grin for approximately 2-3 seconds as she walked past me. My friend Cindy Tipton witnessed this prosecutor misconduct. There also was a deputy standing near me who may also have witnessed this. (Deputy Pat Henning (sp) ?)

In further support of this Court denying me a fair trial + due process of law, I also point out that Judge Hill displayed clear partiality for the state + the Baquers + their supporters by waiting until tomorrow, 6/1/09, to sentence me, just so the

Baquers, etc, could be present to witness it. They were not present yesterday due to attending my daughter Amber's High School graduation ceremony. The verdict was read at approximately 11:30 am yesterday, + there is/was no legal reason for not sentencing me immediately afterwards. (That I'm aware of).

Sincerely,

Rafpatta  5/31/09

Robert A. Fratta

Mrs Jackson/Appellate Division,

Enclosed is my Original/Initial Motion for New Trial + Motion
for Acquittal with 2 letters to Judge Hill attached to be read with
the Motion (7 pages total). Please place them into my appellate file
# 1195044 for Judge Hill to review + rule on. The deadline for my
filing is somewhere between 6/26 + 7/1.

Thank you.

Sincerely,

Robert A. Fratta

: 00672

R.A. Fratta. #999189
Polunsky Unit,
3872 FM 350 South
Livingston, Tx. 77351,

LEGAL

22 JUN 2008 PM 2 L

N HOUSTON TX 773

Loren Jackson, District Clerk
Appellate Division
P.O. Box 4651
Houston, Tx. 77210

77210+4651

: 00673

dms1141992

NO. 1195044

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, T E X A S |
| ROBERT FRATTA | § | 230th JUDICIAL DISTRICT |

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ALLEN C. ISBELL, appointed counsel on appeal, and files this Motion for New Trial, and for cause would show the following:

**FILED**
Loren Jackson
District Clerk

JUN 29 2009

Time: _____
By _____
Deputy
Harris County, Texas

**1.**

The verdict is contrary to the law and the evidence.

**2.**

The interests of justice require a new trial because defendant was denied due process and a fair trial.

**3.**

The prosecutor's office created a *per se* conflict of interest between attorney Vivian King and her client, Robert Fratta.

Attorney Vivian King was responsible for presenting the mitigation evidence in the punishment phase at trial. Just before time for presenting the mitigation evidence, a series of events started by the prosecution caused King to have a conflict of interest with her client, Fratta.

A.    In a telephone conversation to a female in Orlando, Florida, who had e-mailed some materials and photos to King's law office, Fratta said that King

: 00674

had given him the photos, one showing a bare breast of the female and another showing a suggestive pose in a bathtub.

B.    The sheriff''s department recorded that telephone conversation, and searched Fratta's cell for the contraband.

C.    On Friday night, May 22, 2009, a prosecutor called King's co-counsel Randy McDonald to tell him about the recorded telephone call and the finding of the photos which the prosecutors characterized as obscene and/or contraband. The prosecutor told McDonald: "We are not making any accusation against anyone, but it may appear that Vivian may have given him the photos."

D.    McDonald tells King about this conversation with the prosecutor on Friday night.  They listen to the recorded telephone conversation between Fratta and the female pictured in the photos.  McDonald tells King: "I think this is a serious problem.  We need to get this straight."

E.    Although King knew that she did not give the photos to Fratta, she knew immediately that the suggestion and/or accusation that she did is criminal in nature.  Any criminal behavior has serious consequences for a lawyer.

F.    On Wednesday, May 27, 2009, the trial judge conducted a hearing on how the photos got into Fratta's possession. Fratta testified that King did not give him the photos. The hearing showed that King's law clerk had printed out e-mails and attachments from various people who wanted to assist in Fratta's defense.  The clerk put this material, which included the questionable photos, in an envelope.  When she came to court during the trial to deliver this envelope, King and McDonald were at the bench for a conference.  The

: 00675

clerk placed the envelope on counsel table and left. Fratta took the envelope and placed it in his materials, which he took back to his cell where the deputies discovered the photographs after his recorded telephone call to the female in Orlando, Florida. The trial judge found that King was not responsible for the delivery of the several photos (contraband) to Fratta.

G.   As that hearing was ending, King's law clerk entered the court room. King asked if the judge wanted to confirm with the clerk what the judge had heard about how the photos came into Fratta's possession. Immediately, a prosecutor told the judge that the clerk may need an attorney appointed because of the investigation into this matter.

H.   This statement by the prosecutor about the clerk needing an attorney "because of the investigation" caused King to believe that there was an active investigation by the District Attorney's office into her conduct and the law clerk's conduct over the photos.

I.   On Thursday morning, May 28, 2009, the Houston Chronicle's headline read "PROSECUTORS: ATTORNEY SENT HALF-NUDE PHOTO OF WOMAN TO JAILED FRATTA." The lead article written by Brian Rogers reported: "County prosecutors said King may be investigated." The article quotes District Attorney spokeswoman Donna Hawkins as saying: "It's a class C misdemeanor to distribute obscene material to someone in a correctional facility. Any violation of the law will be investigated, although no charges are likely to be filed before the conclusion of the trial."

ATTACHED AS EXHIBIT A is the article that appeared in the Houston Chronicle on May 28, 2009.

J.     The Newspaper article, with quotations from the prosecutors and the District Attorney spokeswoman, convinced King that she was the target of a criminal investigation by the prosecutor's office, despite the finding by the trial judge the previous day.   ATTACHED AS EXHIBIT B is King's affidavit and incorporated herein as referenced.

K.     The District Attorney, through her prosecutors, created a conflict of interest between attorney King and her client, Fratta, at a critical stage in the trial. The District Attorney's office created a *per se* conflict between defense counsel and her client at a critical stage in the proceedings which cannot be waived, and which does not require a showing of harm by the conflict.  See *Ventry v. United States*, 539 F.3d 102 (2nd Cir. 2008); *United States v. Williams*, 372 F.3d 96 (2nd Cir. 2004).

M.     The District Attorney's office created an environment in which King felt conflicted because she had to defend herself during the same time she needed to defend Fratta against the imposition of death as punishment. This situation created by the District Attorney's office made it impossible to concentrate her full attention on the punishment phase of the trial.  Being distracted, she could not spend adequate time discussing with co-counsel Randy McDonald and/or her client, Fratta, the evidence to be presented on Fratta's behalf at the punishment phase of the trial.

: 00677

N.     Fratta sensed this conflict of interest which the District Attorney's office had forced between King and himself.  He wrote communications to the trial judge, which his counsel did not present to her.

ATTACHED AS EXHIBIT C are Fratta's affidavit/declaration and the two letters he wrote to Judge Hill.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Court grant a new trial on punishment.

Respectfully submitted,

*ALLEN C. ISBELL*

ALLEN C. ISBELL
202 Travis, Suite 208
Houston, Texas 77002
713/236-1000
Fax No. 713/236-1809
STATE BAR NO. 10431500

COUNSEL ON APPEAL

THE STATE OF TEXAS        §

COUNTY OF HARRIS          §

BEFORE ME, the undersigned authority, on this day personally appeared ALLEN C. ISBELL who after being duly sworn upon his oath did depose and state:

"My name is ALLEN C. ISBELL and I am familiar with the facts and allegations contained in the foregoing Motion for New Trial, and they are true and correct."

*ALLEN C. ISBELL*

ALLEN C. ISBELL

SUBSCRIBED AND SWORN TO before me on 29th of June, 2009.

NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
DEC. 20, 2011

Notary Public, State of Texas

c:\appeals\fratta\motion for new trial, order setting hearing & order

: 00678

## ORDER SETTING A HEARING

This Motion for New Trial, having been filed timely, is set for a hearing on the _____ day of _____, 2009, at _____ o'clock ___.m.

_____
JUDGE PRESIDING

### Certificate of Service

I hereby certify that on this 29th day of June, 2009, a true and correct copy of this Motion for New Trial was delivered to the Harris County District Attorney's Office for the 230th District Court, and to Mr. Robert Fratta, appellant.

_____
ALLEN C. ISBELL

## ORDER ON MOTION FOR NEW TRIAL

Having heard the defendant's Motion for New Trial, it is hereby:

_____ GRANTED

_____ DENIED

on this _____ day of _____, 2009.

_____
JUDGE PRESIDING

c:\appeals\fratta\motion for new trial, order setting hearing & order

Page 6 of 9

: 00679

# -EXHIBIT A-

: 00680

Case 4:14-cv-03152   Document 38-51   Filed on 09/01/16 in TXSD   Page 357 of 379



# TOP STORIES

Comments ⮞ | Recommended

# Prosecutors: Attorney sent half-nude photo of woman to jailed Fratta

08:53 AM CDT on Thursday, May 28, 2009

By Brian Rogers / The Houston Chronicle

MISSOURI CITY, Texas -- A half-nude photograph e-mailed to convicted killer Robert Fratta through his attorney's office sent the death penalty phase of the murder-for-hire trial through a tour of the inmate's personal phone calls Wednesday while the district attorney's office considers investigating his lawyer for giving him contraband.

Acting on a recorded phone call from Fratta to a woman with a Florida phone number, prosecutors last week confiscated a photograph of the woman exposing her breast from the former Missouri City public safety officer's cell.

State District Judge Belinda Hill ruled that prosecutors could argue Fratta violated jail rules with the explicit picture, but that his attorney, Vivian King, was not responsible for the delivery of several photos.

King said the photos, including one with the woman in a bathtub, were e-mailed to her law office during the trial. King said she has received dozens of e-mails and letters, some with photos or other attachments, from Fratta supporters hoping to aid his defense or hearten her client, who twice has been convicted of hiring two men to shoot his wife, Farah Fratta, in 1994. She said she asked Fratta to look through the documents to see if they were helpful, but did not know he kept the photo or several others the woman sent. She also said she did not believe the picture was contraband.

"I don't think it is inappropriate," King said. "And I don't think he's done anything wrong. It's a big to-do about nothing."

She described an obscene photo as one showing more than a bare breast.

Fratta testified Wednesday that he did not think the photo violated rules against contraband and that he had seen worse allowed in state prison.

Officials with the Texas Department of Corrections said inmates are not allowed to have nude photos or any pornographic images, spokesman Jason Clark said. If an inmate is caught with such an item, it is confiscated and the inmate disciplined.

County prosecutors said King may be investigated.

"It's a class C misdemeanor to distribute obscene material to someone in a correctional facility," District Attorney spokeswoman Donna Hawkins said. "Any violation of the law will be investigated, although no charges are likely to be filed before the conclusion of the trial."

00681

Case 4:14-cv-03152   Document 38-51   Filed on 09/01/16 in TXSD   Page 358 of 379

Prosecutors Denise Bradley and Mia Magness had jurors listen to excerpts from five phone calls Fratta made to the Florida woman after he was convicted May 15.

Jurors strained to hear conversations in which Fratta asks the woman to marry him — his second marriage while on death row — and talks of his sexual fantasies and his plans to blog for money.

Fratta's 1996 conviction was overturned by an appeals court ruling that the confessions of his co-conspirators, Howard Guidry and Joseph Prystash, should not have been admitted into evidence because Fratta's lawyers could not cross-examine the two men.

The two remain on death row.

Chronicle reporter Roma Khanna contributed to this report.

*This story has been brought to through our partnership with the Houston Chronicle:* www.Chron.com

# -EXHIBIT B-

: 00683

# VIVIAN R. KING, LAWYER



## AFFIDAVIT

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

"My name is Vivian R. King and I am over the age of 18 years old and mentally competent to make this affidavit.

I was appointed as second chair on the Robert Fratta case in October of 2008. Mr. Fratta was convicted of capital murder on May 15, 2009. On May 25, 2009, Memorial Day, I met Randy McDonald, lead counsel, at his office to prepare for the punishment trial of Robert Fratta. However, I ended up spending about 10 hours working on defending myself from possible prosecution. I had been falsely accused of smuggling contraband into the Harris County Jail, when in fact, I had gathered impeachment evidence of a potential rebuttal/punishment witness for the State. The State and Mr. McDonald had a tape recording wherein Mr. Fratta was making jokes about some photographs that he had received. There was a false impression made and false allegation implied that I had provided these photographs to him with the intent of violating jail rules.

I had to conduct an investigation to find documents that I had been provided via email such as photographs to impeach Fratta's ex-wife Jodi and some girl named Betsey. Also, I had received *via* email impeachment evidence that Jodi had stalked a professional athlete. I had to try to determine how and when the photographs were received and given to Robert Fratta because I did not have internet access during the trial. I was going from home to court in the mornings

---

440 Louisiana St., Ste. 800
Houston, Texas 77002
(713) 222-2019 Office

Board Certified ~ Criminal Lawyer
Texas Board of Legal Specialization

www.vivianrking.com
vivianrking@msn.com
(713) 224-6008 Fax

: 00684

[Affidavit of Vivian R. King]

and directly home after work.  On many occasions, I would get my assistant or investigator to bring me documents received via email to court in envelopes for review during the trial to determine if the documents could be used in the trial. After searching my emails, many of which were unopened, I realized that the photographs that I had my assistant print and bring to me in court, which were to be used to impeach Jodi, Mr. Fratta ex-wife, were the photos that the State had confiscated and ERRONEOUSLY CATAGORIZED as contraband.

Again, Jodi married Fratta awhile he was on death row but they divorced some time before his re-trial.  Jodi was rumored to be a witness for the State of Texas and a lady named Betsey had been investigating this rumor for Mr. Fratta *via* MYSPACE and other internet and related investigative tools.  The DA's investigator assigned to the Fratta case was in contact with Jodi as evidenced by an email that Betsey forwarded to me.  Betsey also discovered that Jodi had been in trouble previously for stalking a professional athlete.  This evidence plus the photographs were obtained with the intention of impeaching Jodi's credibility if she ever testified against Mr. Fratta.

As stated in the record in numerous bill of exceptions made during the week of Mr. Fratta's punishment hearing, I was distracted by the State's mis-characterization of this impeachment evidence.  I was also distracted by the article in the Houston Chronicle that stated that an Assistant District Attorney told the reporter that I might be investigated after the Fratta trial was over. (*See Attached Article, Exhibit "A", §*)

I knew that my intentions were honorable with the intent to defend Mr. Fratta.  My assistant is moving to New York in August 2009, so I needed to document all actions related to Fratta with her to protect myself if the Harris County Jail imposes communication sanctions on me, thus shutting down my practice or if the DA's office chooses to prosecute me for what Mia Magnus and Donna Hawkins stated were Class C misdemeanors and crimes of moral turpitude.

[Affidavit of Vivian R. King]

I was completed distracted by the pressure to protect my honor, my integrity, and my intentions.  I spent the majority of my time on self protection.  This is time I would have spent on Mr. Fratta's defense.  I did the best that I could under the circumstances.

WITNESS MY HAND this 26th day of JUNE, 2009.

VIVIAN R. KING
SBN: 00784399
440 LOUSISIANA ST., STE. 800
HOUSTON, TEXAS  77002
(713) 222-2019


SWORN TO AND SUBSCRIBED TO on this 26th day of February, 2009.

DEBBIE RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
February 27, 2011

Notary for the State of Texas

: 00686



Get Houston Chronicle home delivery for only 53 a week.

## Fratta's lawyer may face inquiry

BY BRIAN ROGERS HOUSTON CHRONICLE

May 28, 2009, 11:16AM



Johnny Hanson Houston Chronicle

Robert Fratta (shown in court earlier this month) testified Wednesday that he did not think the photo violated contraband rules and that he had seen worse allowed in state prison.



A half-nude photograph e-mailed to convicted killer Robert Fratta through his attorney's office sent the death penalty phase of the murder-for-hire trial through a tour of the inmate's personal phone calls Wednesday and could prompt an investigation of his lawyer.

Acting on a recorded phone call from Fratta to a woman with a Florida phone number, prosecutors last week confiscated from the former Missouri City public safety officer's cell a photograph of the woman exposing her breast.

State District Judge Belinda Hill ruled that prosecutors could argue Fratta violated jail rules with the explicit picture but that his attorney, Vivian King, was not responsible for the delivery of several photos.

King said the photos, including one with the woman in a bathtub, were e-mailed to her office during the trial. She said she's received dozens of e-mails and letters, some with photos or other attachments, from supporters of Fratta, who twice has been convicted of hiring two men to shoot his wife, Farah, in 1994.

King said she asked Fratta to look through the documents to see if they were helpful but did not know he kept the photo or several others the woman sent. King also said she did not believe the picture was contraband.

"I don't think it is inappropriate," she said. "And I don't think he's done anything wrong."

She described an obscene photo as one showing more than a bare breast.

Fratta testified Wednesday that he did not think the photo violated contraband rules and that he had seen worse allowed in state prison.

Inmates are not allowed to have nude photos or any pornographic images, Texas Department of

Advertisement

**Family** Wellness **Health**

**SAVE 10 - 60%**
ON YOUR HEALTH EXPENSES

**30 Day** FREE Product Trial

DENTAL DISCOUNTS
VISION CARE DISCOUNTS
DOCTOR & HOSPITAL DISCOUNTS
PRESCRIPTION DISCOUNTS
24/7 PHYSICIAN ACCESS - TelaDoc™

Print Powered By    Dynamics

http://www.chron.com/disp/story.mpl/front/6444364.html          6/4/2009

EXHIBIT "A"

: 00687



☆ **chron**.com | *Where Houston lives*

Get Houston Chronicle home delivery for only $3 a week.

Corrections spokesman Jason Clark said. If an inmate is caught with such an item, it is confiscated and the inmate disciplined.

County prosecutors said King may be investigated.

"It's a class C misdemeanor to distribute obscene material to someone in a correctional facility," District Attorney spokeswoman Donna Hawkins said. "Any violation of the law will be investigated, although no charges are likely to be filed before the conclusion of the trial."

Prosecutors Denise Bradley and Mia Magness had jurors listen to excerpts from five phone calls Fratta made to the Florida woman after he was convicted May 15.

Jurors strained to hear conversations in which Fratta asks the woman to marry him — his second marriage while on death row — and talks of his sexual fantasies and his plans to blog for money.

Fratta's 1996 conviction was overturned by an appeals court ruling that the confessions of his co-conspirators, Howard Guidry and Joseph Prystash, shouldn't have been admitted into evidence because Fratta's lawyers could not cross-examine them. The two remain on death row.

*Chronicle reporter Roma Khanna contributed to this report.*

*brian.rogers@chron.com*

Advertisement



Print Powered By

: 00688

Fratta's death sentence pleases victim's family



**Get Houston Chronicle home delivery for only $3 a week. Save 61%!**

## Jury sends former officer back to death row

### Fratta had been convicted twice for hiring two men to kill his wife

By BRIAN ROGERS
Copyright 2009 Houston Chronicle

May 31, 2009, 3:14PM



*Julio Cortez Chronicle*
Robert Fratta, left, stands with his lawyers, Vivian King and Randy McDonald, as the decision is read Saturday.

A taut and emotional roller coaster ride ended Saturday when 12 jurors decided to send Robert Fratta back to death row.

The former Missouri City public safety officer was convicted May 15 for the second time of hiring two men to shoot his wife, Farah, in 1994. His original conviction had been overturned.

Farah's father, Lex Baquer, thanked God and told an advocate that the decision was just.

Randy McDonald, one of Fratta's lawyer, pleaded with jurors Friday to reserve the death penalty for the worst killers — cop killers, serial killers and those who torture and murder children.

"We're not going to kill all capital murderers, just those who can't conform to the rules of society and prison is society," McDonald said. He said no parole board would let him out of jail.

"This is Texas. Mr. Fratta will die in prison."

Family members, defense lawyers and the convicted killer cried Friday during overwrought arguments, as prosecutors asked jurors to send Robert Fratta back to death row and defense lawyers asked for forgiveness.

"Hate and rage don't work," said Vivian King, Fratta's lawyer, who cried and held hands with Fratta after asking jurors to find forgiveness. "You can't have any kind of quality of life unless you forgive."

King had argued that Fratta has been a model prisoner for the past 15 years and deserved a life sentence instead.

Under 1994 law, Fratta would have been eligible for parole in 25 years, after 40 years in prison.

Prosecutors Denise Bradley and Mia Magness alternated between berating Fratta and invoking images of a broken family.

Advertisement



**Family Value Health**

**30 Day** FREE Product Trial

**SAVE 10 - 60%**
ON YOUR HEALTH EXPENSES

DENTAL DISCOUNTS
VISION CARE DISCOUNTS
DOCTOR & HOSPITAL DISCOUNTS
PRESCRIPTION DISCOUNTS
24/7 PHYSICIAN ACCESS - TelaDoc™

Print Powered By [ ] Dynamics

http://www.chron.com/disp/story.mpl/headline/metro/6448390.html   6/4/2009

EXHIBIT "B"

: 00689



Get Houston Chronicle home delivery for only $3 a week. Save 61%!

"This domineering, controlling narcissist is the reason we're all here," Bradley said pointing at Fratta.

During the trial, jurors strained to hear sexually-explicit recorded telephone conversations between Fratta and his girlfriend.

Jurors, selected in March, were sequestered Friday night and ordered by state District Judge Belinda Hill to continue deliberating on Saturday.

They spent a total of eight hours behind closed doors.

Hill is expected to officially sentence Fratta Monday, when Farah Fratta's friends and family can attend.

Baquer and his wife, Betty, raised Robert and Farah's three children, who were in elementary school when the slaying occurred. They were attending the high school graduation Saturday of Amber Baquer, the youngest of those children, when they received the news of the sentencing decision.

Fratta's original 1996 conviction was overturned when an appeals court ruled that the confessions of his co-conspirators, Howard Guidry and Joseph Prystash, should not have been admitted into evidence because Fratta's lawyers could not cross-examine them. The two remain on death row.

*brian.rogers@chron.com*

Advertisement



*red* ENVELOPE  celebrate the joy of gifting  SAVE 15% on your entire order  offer available only at: redenvelope.com/limited or call 1-877-275-3033  remember father's day june 21st

Print Powered By

: 00690

# -EXHIBIT C-

: 00691

_Affidavit / Declaration_

I, Robert Alan Fratta, solemnly swear/affirm the following to be the truth to the best of my recollection.

Firstly, upon my arrival back to the TDCJ Polunsky Unit on 6/3/09 with my 9 bags of legal material + electrical appliances, etc. I obtained from TDCJ, the property officer, Mr. Smith, + the Major (etc?), have all REFUSED to give me back ANY of that property. I received a 6/17/09 letter from my attorney, Allen Isbell, that's requesting me to do this affidavit/declaration. But since I now have no typewriter, original letters to Judge Hill, or my legal references of how to do a proper affidavit or declaration, I am forced to "wing it" due to time constraints + no quick or direct access to the law library. So please accept this document as an official affidavit or declaration.

Regarding the issue at hand of the ineffective assistance of counsel (IAC) in my trial, Mr. Isbell informed me he may NOT file any Motion for New Trial. Therefore I have filed one pro se, titled "Original/Initial Motion For New Trial + Ruling for Acquittal". That way if Mr. Isbell does file, it can be titled as a supplement, + added to mine since he won't be citing the legal + factual insufficiencies as I did. But I also cited my attorneys being obviously ineffective, + I hope Mr. Isbell does do a supplement to this issue (#3 in my Motion).

During my trial, I wrote 2 letters to Judge Hill that Vivian King was supposed to have placed into the record prior to the verdict, but then she + Randy McDonald didn't want to for some reason. Once Randy was told by the D.A.'s office that they were going to investigate Vivian King, it seemed to me he became so consumed with fear, that he started walking on eggshells + didn't want to do anything that might anger Mia Magness, Denise Bradley, or even Judge Hill. He also apparently did not read Dr. Bailey's assessment of me, nor did he hardly make any necessary objections or cross-examine effectively. In fact, after Ms. King walked out of the courtroom, he didn't do any cross-examination of John Denholm! And

②

Ms. King had walked out DURING the trial proceedings at least once for at least an hour, to apparently compose herself from being so upset by the state's "attack" on her. Naturally this entire fiasco was extremely upsetting for me, + it created clear conflict of interest between my attorney + I, as well as ~~creating~~ a great deal of tension.

On 6/1/09 I also asked the Bailiff Deputy, Ms. Lacy (sp), to give those 2 letters to the court clerk to place into my file as I signed some form for her, but she refused also. She is however, a witness to those 2 originals which are still in my confiscated property bags here, as I had shown them to her on 6/1/09; plus she had previously handed me copies of them made by Ms. King for which she had to remove the staples. One of the best things I can say + do for the purpose of this affidavit/declaration + issue of IAC, is to instruct the court to read the true copies of the 2 original letters I wrote to Judge Hill which are attached with my pro se motion, because they depict the actual events of what was transpiring right at that time, which help prove the IAC + increasing conflict of interest between my attorneys + myself. Ms. King + Mr. McDonald also have true copies of my 2 originals, + can give them to Mr. Isbell to attach with this affidavit/declaration if he chooses to file a supplement to my motion (or a replacement motion IF he also includes the 2 issues of legal + factual insufficiency of the evidence). The 2 letters I wrote to Judge Hill during my trial are dated 5/28/09 + 5/31/09. They are truthful, + I implore the court to accept them (and my pro se motion) + read them.

I truly was shocked, appalled (sp), + upset to be brought into the courtroom first thing on the morning of 5/27/09 for MY trial, only to discover a hearing was being conducted for my attorney instead! Instead of allowing such a hearing that also attacked me + forced me to defend myself + my attorney, Judge Hill should have put a halt to this prosecutor misconduct by ordering them to WAIT

until AFTER my trial to conduct any investigation. This clearly was a major distraction for my attorneys & I, & even the media reported on it. For the media to pick up on it, proves it's nothing to be dismissed or taken lightly.

I also point out that Ms. King cried almost uncontrollably (sp) throughout Mr. McDonald's entire closing argument. I felt bad for her, & tried consoling her. Ms. Lacy helped also by giving me some tissues I handed to Ms. King. Then Ms. King took hold of my hand for the last 15 or so minutes. Whereas the media & Mia Magness picked up on this also, & portrayed this display of emotions & compassion as a bad thing, the point is it clearly proves how emotionally, & mentally drained Ms. King was as a result of the state's intentional attack on her. She had become focused on that rather than me, & so had Mr. McDonald. Just view the media tapes to see Ms. King's "breakdown".

Finally, the record itself will prove that using Dr. Bailey as a witness, & their direct & cross examinations & closing arguments were not only ineffective, but also extremely harmful to me; as were the things they did not do (as I even requested), such as reading the TDCJ report about that piece of steel on my bunk, & listening to the phone conversations between Betsy Gomez & myself & playing the relevant parts for the jurors; all because Mr. McDonald & Ms. King became consumed with the prosecutorial misconduct attack on Ms. King, & did not focus on me & my case as the Constitution(s) & laws & State Bar rules require.


I, Robert Alan Fratta, do declare/solemnly swear/affirm under penalty of perjury & prosecution thereof, that the



aforementioned in this document, as well as everything I've written in my 5/28/09 + 5/31/09 letters to Judge Hill mentioned herein, is all true + correct to the best of my ability + recollection.

Signed X *Rafratta*

Robert Alan Fratta

On this 22nd day of June, 2009

I, Robert Alan Fratta, being presently incarcerated at the TDCJ Polunsky Unit, do solemnly swear/affirm/declare under penalty of perjury, that I tried all day today (6/22/09) via written request form (I60) at about 5⁰⁰am, + verbally via asking officers to call until about 440pm, to get a Notary Public from the Unit Law Library to come to my cell + notarize this affidavit/declaration, but no one ever came. I wrote the above affidavit/declaration on 6/21/09, + Mr. Isbell said he must file by 6/26/09. Therefore I must mail this in the outgoing mail pick-up tomorrow, 6/23/09, at about 5⁰⁰am without it being notarized. But I am signing above + below as this all being truthful as I stated above.

Signed X *Rafratta*

Robert Alan Fratta

On this 22nd day of June, 2009

00695

TO: Judge Hill, 230th District Court

5
5/28/09

I feel the need to put my opinion on record about the events that have taken place the past few days. As this Court is fully aware, Assistant D.A.'s Denise Bradley + Mia Magness made it an intentional point to let my attorney Randy McDonald know that they had what they deemed incriminating evidence against my other attorney Vivian King, whereby implying, at the very least, that criminal charges could be filed against Ms. King. Upon being told by Randy, Ms. King was understandably upset by this news, + immediately started focusing on clearing her name. I even got drawn into the fray on the morning of 5/27/09 + spoke to the court to defend Ms. King + myself about the photographs of Betsy Gomez seized from my cell. Certainly such a hearing in the middle of a capital murder case is highly unusual. And in my opinion, should never have been allowed by the court, no matter if my attorney(s) requested it, as it clearly was a major distraction + upsetting event to my attorneys + myself at a time when we needed to be focused solely on the matter at hand of my matter of life or death.

I discovered that my attorneys, especially Ms. King, had been focusing on Ms. King's perdicament rather than my case. Prior to this "attack" by the state, my attorneys conferred with me more, + shared documents with me. As a result of Ms. King not focusing on my case properly, I was not given the results of Dr. Bailey's study, + not able to ask her about what he was to testify to. It is my belief that Ms. King did not spend proper time or thought

on Dr. Bailey's written results. I feel even this court will agree that the state had a field day with those results on cross-examination, +, that Dr. Bailey's testimony ended up being harmful, + he should not have been called as a witness for me. Had Ms. King given me his results to read, as she had done with prior witnesses or documentation, I would have told her + Randy that I did NOT want him to testify. (I wanted Mark Cunningham to testify to my Marquart study results).

    The state had the phone calls + photos already, + could have + SHOULD have waited until after the conclusion of my trial to notify my attorney(s) about any possibility of legal or ethical actions being taken. I believe they intentionally did not wait in order to purposely intimidate Ms. King, + cause her + Randy to spend time on her rather than me. And their strategy worked. As a result of the state's intentional unethical actions, my attorneys, or at least Ms. King, became ineffective, + even damaging to me. My right to a fair trial, due process, + effective assistance of council have been denied + violated, and this Court knows that by the events that have unfolded, + the state capitalizing on ~~████~~ them.

    I feel it would be a miscarriage of justice to allow this blatant matter be decided on appeal when it ██ is clearly evident now, + should be properly decided now. And that proper decision is to uphold my rights by declaring a mistrial, + I hereby request/motion for a mistrial.

Respectfully submitted,

*Robert A. Fratta*   5/29/09

Robert A. Fratta

: 00697

To: Judge Hill, 230th District Court                                    5/31/09

In furtherance of my 5/28/09 letter to the Court which I signed on the morning of 5/29/09 + showed to Ms. King, I cite the following:

On 5/28/09 I informed Randy McDonald + Ms. King that I wanted to go on record to state my claims of ineffective assistance of counsel, etc., + ask for a mistrial. Mr. McDonald said Judge Hill would not allow me to speak, so Ms. King advised me to put it in writing + she would place it into the record. But on 5/29, Ms. King did not take my 5/28 letter, + asked me to wait until the next day (Saturday). Meanwhile during closing arguments on 5/29, my counsel was again ineffective in things they stated + did not object to, +, did not give adversarial testing to things I had pointed out prior to the state capitalizing on them during their closing argument. For example, Ms. King kept wrongly referring to defense witness Robin Karmeroff as "Paul". She also was extremely harmful in very wrongly referring to the "12 inch by 1½ inch piece of steel that could be used as a weapon or escape tool", as being a "shank". It most certainly was NOT a "shank", + ▓▓▓ was never referred to as such. (See the TDCJ report + their photos of it). But Ms. King said "shank", + Mia Magness jumped right on that harmful error. (See the transcripts as proof). Also, when the state played the phone conversations Judge Hill allowed (over objections) between myself + Betsy Gomez, I informed both Randy + Ms. King that the state was knowingly + intentionally omitting ▓▓ parts of the conversations to make it appear I was manipulating Betsy. I asked Randy + Ms. King to listen to the entire conversations, + play the relevant parts for the jurors to show that Betsy told/asked me to propose to her

: 00698

right then; that she brought up about her working some extra job to make more money, so I ~~suggested~~ asked about the possibility of making money from doing a website; that the concubines were for her since I was imprisoned; that the "prenup" was primarily for her protection since she owns a house; that I did NOT ask for any photos exposing her nipple(s) etc., +, to tell the jurors she's a 44 year old woman with 2 adult sons because her voice makes her sound like a nieve teenage girl. My attorneys did none of this to counter the State's misconduct.

~~On~~ On 5/30/09 prior to the verdict, I asked Ms. King to give my 5/28 letter to Judge Hill. But Ms. King then instructed me to again wait, instead of putting it on the record then, before the verdict. ( I had requested it be given to Judge Hill to read + hopefully rule on BEFORE the verdict).

Clearly my attorneys have been distracted, unfocused, ineffective, + even very harmful since the State's attack on Ms. King, + a mistrial SHOULD have been granted.

I also want to put on record that after the verdict was read + Judge Hill called all attorneys to the bench, Denise Bradley made it a point to leer at me + give me a sarcastic grin for approximately 2-3 seconds as she walked past me. My friend Cindy Tipton witnessed this prosecutor misconduct. There also was a deputy standing near me who may also have witnessed this. (Deputy Pat Henning (sp)?)

In further support of this Court denying me a fair trial + due process of law, I also point out that Judge Hill displayed clear partiality for the State + the Baquers + their supporters by waiting until tomorrow, 6/1/09, to sentence me, just so the

Baquera, etc, could be present to witness it. They were not present yesterday due to attending my daughter Amber's High School graduation ceremony. The verdict was read at approximately 11$^{30}$ am yesterday, + there is/was no legal reason for not sentencing me immediately afterwards. (That I'm aware of).

Sincerely,

Fafratta   5/31/09

Robert A. Fratta

: 00700



# LOREN JACKSON

### HARRIS COUNTY DISTRICT CLERK

## CORRECTION LETTER - MOTION FOR NEW TRIAL

June 30, 2009

ALLEN C. ISBELL
ATTORNEY OF RECORD
202 TRAVIS, SUITE 208
HOUSTON, TX 77002

Defendant's Name: ROBERT ALAN FRATTA

Cause No: 1195044

Court: 230TH DISTRICT COURT

Please note the following appeal updates on the above mentioned cause:

**Notice of Appeal Filed Date:** 06/01/09
**Sentence Imposed Date:** 06/01/09
**Court of Appeals Assignment:** **Court of Criminal Appeals**
**Appeal Attorney of Record:** ALLEN C. ISBELL
**Motion for New Trial Filed:** 06/29/09

Sincerely,

N. Salinas
Criminal Post Trial Deputy

CC: Patricia R. Lykos
District Attorney
Appellate Division
Harris County, Texas

MARY ANN RODRIGUEZ

CHERYL PIERCE

This is your notice to inform any and all substitute reporters in this cause.

1201 Franklin  P.O. Box 4651  Houston, Texas  77210-4651

: 00701

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711



July 20, 2009
Re: Case No. AP-76,188
230th District Court 1195044
STYLE:  FRATTA, ROBERT ALAN

The order appointing, Patrick F. McCann, counsel pursuant to Article 11.071, V.A.C.C.P., in the above styled and numbered cause, has been received and approved by the Court.

Louise Pearson, Clerk


DISTRICT CLERK HARRIS COUNTY
LOREN JACKSON
POST CONVICTION/APPEALS SECTION
P O  BOX 4651
HOUSTON TX  77210-4651


**FILED**
Loren Jackson
District Clerk

JUL 24 2009

Time _____
Harris County, Texas
By _____
Deputy

2009 JUL 24  PM 12: 30

: 00702

## CERTIFICATE OF THE CLERK

THE STATE OF TEXAS                    IN THE 230TH JUDICIAL DISTRICT COURT

COUNTY OF HARRIS                      OF HARRIS COUNTY, TEXAS

I, Loren Jackson, District Clerk of Harris County, Texas, do hereby certify that the above

and foregoing proceedings, instruments and other papers contained in these II Volumes,

Pages 1- *703*   inclusive, to which this certification is attached and made a part

thereof, are true and correct copies of all proceedings, instruments and other papers

specified by Rule 51 (a) and matter designated by the parties pursuant to Rule 51 (b) in

Cause No. 1195044, styled  ROBERT ALAN FRATTA  vs. The State of Texas in said

court.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Harris County,
Texas on  September 25TH , 2009

Loren Jackson
Harris County District Clerk

By: _____
N. Salinas, Deputy

: 00703